UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 4:05-CV-40014-FDS

| | |
|---|---|
| SANDRA S. KATZ,<br>　　　Plaintiff, | )<br>)<br>) |
| v. | )<br>) |
| MATTHEW DENN[1], INSURANCE<br>COMMISSIONER OF THE STATE OF DELAWARE<br>AS RECEIVER OF NATIONAL HERITAGE<br>LIFE INSURANCE COMPANY IN LIQUIDATION<br>　　　Defendant and Third Party Plaintiff | )<br>)<br>)<br>)<br>)<br>) |
| v. | )<br>) |
| FEDERAL DEPOSIT INSURANCE CORPORATION,<br>UNITED STATES OF AMERICA, E. PERRY KING,<br>ALAN MASON, ALAN MASON LEGAL<br>SERVICES, P.C., ALAN MASON LEGAL SERVICES,<br>INC., ALAN MASON D/B/A ALAN MASON LEGAL<br>SERVICES, P.C., ALAN MASON D/B/A ALAN<br>MASON LEGAL SERVICES, INC., AND ALAN<br>MASON LEGAL SERVICES, P.C. D/B/A ALAN<br>MASON LEGAL SERVICES, INC.,<br>　　　Third Party Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## MATTHEW DENN, INSURANCE COMMISSIONER OF THE STATE OF DELAWARE, OPPOSITION TO UNITED STATES' MOTION TO DISMISS AS TO THIRD PARTY COMPLAINT

Now comes the Third-Party Plaintiff, Matthew Denn, Insurance Commissioner of

the State of Delaware, as Receiver of National Heritage Life Insurance Company in

Liquidation ("NHL"), and respectfully requests this Honorable Court to deny the United

States' Motion to Dismiss As To Third Party Complaint.[2] As grounds therefore, NHL as

---

[1] Pursuant to F.R.C.P. 25(d)(1), Matthew Denn is substituted for Donna Lee H. Williams.

[2] The requirement under Rule 7.1(A)(2) of the Local Rules of the United States District Court for

follows:

## FACTUAL ALLEGATIONS

NHL relies upon the facts outlined in the Third Party Complaint. Emphasis is only placed on the conundrum that the FDIC caused:

1.    In 1994, the FDIC assigned a note and mortgage loan to a third party, which loan ultimately was determined to be owned by NHL through several foreign judgments domesticated in Massachusetts in 1997. Third Party Complaint, ¶¶ 14 and 15.

2.    In 2002, the FDIC issued a Satisfaction of Mortgage to the Mortgagor wiping out the outstanding debt, even though the FDIC had written documentation within its control evidencing that the FDIC had previously transferred and sold the mortgage asset in 1994.[3] Third Party Complaint, ¶¶ 23 and 24.

## STANDARD FOR REVIEW OF MOTIONS TO DISMISS UNDER F.R.C.P. 12

This Court must accept as true all well-pleaded factual averments of the complaint as true. The Court must draw from the alleged facts every reasonable inference that is helpful to the party whose claims are subject to dismissal. Carreiro v. Rhodes Gill and Co., Ltd., 68 F.3d 1443 (1st Cir. 1995). A motion to dismiss should be granted only if the complaint "shows no set of facts which could entitle plaintiff to relief." Gooley v. Mobil Oil Corp., 851 F.2d 513, 514 (1st Cir. 1988). An order of dismissal under Rule 12(b)(6) is justified only when the facts alleged, if proven, cannot support recovery. Aulson v.

---

the District of Massachusetts, requiring counsel to confer prior to the filing of a motion, was not complied with.

[3] The United States and FDIC admit that "the real property that is the subject of the claims has not been within the possession or control of the FDIC since the early 1990's." See Federal Defendants' Unopposed Motion For Extension Of Time To Answer, p. 2.

Blanchard, 83 F.3d 1 (1st Cir. 1996).[4]

In ruling on a motion to dismiss for lack of subject-matter jurisdiction, F.R.C.P. 12(b)(1), the court is liberally to construe the complaint, treating all well-pleaded facts as true and indulging all reasonable inferences in favor of the plaintiff. Aversa v. United States, 99 F.3d 1200, 1209 (1st Cir. 1996); Murphy v. United States, 45 F.3d 520, 522 (1st Cir. 1995).

## THE FTCA DOES NOT PRECLUDE THE CLAIMS MADE BY NHL IN COUNT II

"The Federal Rules reject the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome. The purpose of pleading is to facilitate a proper decision on the merits." Conley v. Gibson, 355 U.S. 41, 48, 78 S.Ct. 99, (1957). See also, FDIC v. Grant, 8 F.Supp.2d 1275 (D.C.Okl.1998); In re Hemingway Transp., Inc., 993 F.2d 915, 932 n. 22, (1st Cir. 1993), cert. denied 510 U.S. 914, 114 S.Ct. 303, ("The bankruptcy court based its section 502(e)(1)(B) [of the Bankruptcy Code] disallowance on the ground that [the party] had denominated its claim a derivative claim for 'contribution', thereby conceding its co-liability for future response costs. In our view this ruling exalts form over substance, and ignores both the liberality with which pleadings must be construed and the right to plead alternative or seemingly 'inconsistent' claims."). Rule 8(f) requires that "all pleadings shall be so construed as to do substantial

---

[4] NHL is filing a Motion to Strike Certain Documents Attached To The Motion to Dismiss since documents which are "outside the pleadings" are attached as exhibits. Beddall v. State Street Bank and Trust Company, 137 F. 3d 12, 16-17 (1st Cir. 1998). NHL is seeking to strike reference to the documents in lieu of having the motion converted to a Rule 56 motion. "[T]he motion shall be treated as one for summary judgment and disposed of as provided in Rule 56". F.R.C.P. 12(b)(6). Moreover, the documents attached as exhibits were never previously produced to NHL despite requests for information pursuant to the Freedom of Information Act, 5 USC §552 and the Massachusetts Freedom of Information Act, G.L. c.66, §10 in July, 2004, resulting in NHL disputing the authenticity of the documents.

justice."

Knowing the standard for review of pleadings under F.R.C.P. 8, in reviewing Count II labeled "Fraud, Deceit and Misrepresentation Against FDIC and USA", the form of the pleading must not be placed over the substance. NHL should not be bound by the labeling of the count in question.     This Court must first determine whether a misrepresentation has occurred, determining that all elements of a misrepresentation have occurred to otherwise preclude recovery by NHL under §2680(h).

Where the government's breach of duty is "distinct from any duty to use due care in communicating information", it is not a claim of misrepresentation within the meaning of §2680(h). Bateman v. FDIC, 112 F.Supp.2d 89, 93 (2000). In Ackerley v. United States, 741 F.Supp. 1519 (D. Wyoming 1990), the court held that the exception for misrepresentation under §2680(h) did not apply to allegations against FDIC employee's for statements indicating "that their funds would become unfrozen". Id., at 1521. The court stated that the allegation "is not the basis of a claim for misrepresentation, but is offered to prove that FDIC recognized its duty to make the payments to plaintiffs." Moreover, as stated by the Supreme Court in Block v. Neal, actions must be distinguished based upon the "failure to use due care in communicating information" from actions based upon the "breach of a different duty." 460 U.S. at 297, 103 S.Ct. at 1094.    Furthermore, misrepresentation and negligence claims may contain common factual and legal questions. Id., at 298, 103 S.Ct. at 1094. "Partial overlap" between tort actions does not mean that if the FTCA bars one action it also bars the other. Id.

See *14 Farmers State Sav. Bank v. FmHA, 891 F.2d 200, 202 (8th Cir.1989) (holding that injuries to FTCA plaintiffs who allege faulty inspection or assessment are "caused by

4

reliance on the representations of government officials and not by reliance on an undertaking that those officials performed negligently").

The court in <u>Bateman v. F.D.I.C.</u>, 112 F.Supp.2d 89 (D.Mass.,2000) examined caselaw involving misrepresentations, and concluded that <u>Bateman</u>'s allegations fell within the exception for misrepresentation, and therefore were precluded. <u>Id.</u>, at 93. Unlike the facts in Bateman, in the instant case, NHL did not allege that it rely upon the actions of the FDIC which proved to be false. See <u>Jimenez-Nieves v. United States, 682 F.2d 1, 4 (1st Cir.1982)</u> (holding that the essential element for determining whether or not a claim was a misrepresentation claim within the meaning of <u>section 2680(h)</u> was reliance by the plaintiff upon the false information). See <u>Block v. Neal</u>, 460 U.S. at 296, 103 S.Ct. 1089 ("[T]he essence of an action for misrepresentation ... is the communication of information on which the recipient relies.").

The United States and the FDIC relies upon <u>United States v. Neustadt</u>, 366 U.S. 696, 81 S.Ct. 1294 (1961), in support of its proposition that the exception under §2680(h) for misrepresentation would be a bar to NHL's claim. In fact, <u>Neustadt</u> identifies an element which FDIC cannot demonstrate is part of NHL's claim. Specifically, <u>Neustadt</u> defines negligent misrepresentation as the breach of "the duty to use due care in obtaining and communicating information upon which a party may reasonably be expected to rely in the conduct of his economic affairs." <u>Neustadt</u>, 366 U.S. 696, 706-07, 81 S.Ct. 1294, 1300 (1961). NHL did not rely on a negligent misrepresentation made by FDIC. "[O]ne essential element of misrepresentation remains reliance by the plaintiff himself upon the false information that has been provided." <u>Jimenez-Nieves v. United States</u>, 682 F.2d 1, 4 (1982)(citing the Restatement (Second) of Torts). Since NHL's claim does not met the

definition of misrepresentation, that claim cannot be barred by the exception contained in 28 U.S.C. §2680(h).

NHL's claim aligns with the analysis of the First Circuit Court of Appeals in Jimenez-Nieves v. United States, supra. The First Circuit concludes that the argument advanced by the government that the conduct relied upon by the plaintiff was precluded under §2680(h) due to being a misrepresentation was erroneous. Id., at 5. The outlined facts were that a government "keypuncher" entered a wrong date of death for plaintiff's mother, causing financial and emotional stress to the plaintiff when several banks dishonored benefit checks after the Social Security Administration had stopped payment on the checks. Id., at 1. The First Circuit ruled that the statement was not made to the plaintiff and he did not rely upon it, and concluded that the misrepresentation exception under §2680(h) did not apply. Id., at 5.

Additionally, the conduct of the FDIC in the instant case could be described as a "negligent performance of operational tasks". In re Franklin National Bank Securities Litigation, 445 F.Supp. 723 (1978). In that case, the FDIC sought to dismiss counts against it based on the misrepresentation exception under §2680(h). The facts demonstrated that the FDIC went beyond normal regulatory activities and substituted the government's decisions for that of banking officials. The court examined the actions of the FDIC and labeled them as 'operational'. Id., at 735. See also Jimenez – Nieves , 682 F.2d at 5. Therein, "the false statement not only conveys information but also operates as an instruction or a direction, taking the case some distance from the "providing information for making up one's mind" rationale." Jimenez-Nieves, 682 F.2d at 5. The issuance of a discharge by the FDIC in 2002 exonerating the loan obligation, and wiping out the mortgage lien, permitting third

parties to rely upon the discharge and proceed with real estate transactions, is akin to the entering of a wrong date of death as in <u>Jimenez-Nieves</u>, and akin to the directions given by FDIC employees which misled bankers in <u>In re Franklin National Bank Securities Litigation.</u>

## LIABILITY AGAINST FDIC FOR VIOLATIONS OF G.L.c. 93A

The FDIC and United States have argued that the FTCA bars liability under G.L.c. 93A, the Massachusetts Consumer Protection Act. That position is not consistent with established caselaw.

The first allegation is that "unfair and deceptive trade practices" are barred by 28 U.S.C. §2680(h) exception for misrepresentations and deceit. Massachusetts courts have determined otherwise. Specifically, "an act or practice may be "unfair" within meaning of the statutory meaning without being deceptive or fraudulent." <u>Massachusetts Farm Bureau Federation, Inc. v. Blue Cross of Massachusetts Inc.</u>, 403 Mass. 722, 729, 532 N. E. 2d 660 (1989). G.L.c. 93A, §2 proscribes conduct that is immoral, unethical, oppressive or unscrupulous, or causes substantial injury to consumers or other businessmen. <u>Glickman v. Brown</u>, 21 Mass.App.Ct. 229, 486 N.E.2d 737 (1985). <u>General Electric Co. v. Lyon</u>, 894 F.Supp. 544 (D.C. Mass.1995), <u>Interstate Brands Corp. v. Lily Transpor. Corp.</u> 256 F.Supp.2d 58 (D.C. Mass. 2003). The conduct in question may violate §11 if it is "within at least the penumbra of some common-law, statutory or other established concept of unfairness ... [or] is immoral, unethical, oppressive, or unscrupulous." <u>Zayre Corp. v. Computer Systems of America, Inc.</u>, 24 Mass.App.Ct. 559, 570, 511 N.E.2d 23 (1987). FDIC's assertion that any claim for relief under G.L.c. 93A solely stems from a misrepresentation or deceit does not follow the established caselaw. Therefore, the

exception for misrepresentation under §2680(h) does not bar the claim asserted by NHL under the Massachusetts Consumer Protection Act. [1]

Three[5] of the four cases relied upon by the FDIC and the United States in support of this premise fail to address the issue raised by the FDIC and the United States; the asserted cases merely restate the proposition that a misrepresentation is an exception found in §5680(h) which precludes liability under the FTCA. The cases relied upon do not outline any preclusion of recovery under the FTCA for violations of G.L.c.93A. The United States and the FDIC also allege that the fourth case, Washington v. Dept. of HUD, 953 F.Supp. 762, 778 (N.D. Tex. 1996), supports their proposition that claims made under an unfair and deceptive trade practice act should be dismissed because the claims fall within the misrepresentation exception of §2680(h). See Motion to Dismiss, p.10. In reviewing that case, it is very clear that the consumer protection law of Texas (the Deceptive Trade Practices Act) does not match the statutory language of the consumer protection act in Massachusetts. Specifically, in Texas, an element required for recovering under the consumer protection statute is that a false, misleading or deceptive act or practice occurred, and constituted a producing cause of actual damages. Id at 770. As previously stated, an act that is unfair without being deceptive or fraudulent is actionable. Massachusetts Farm Bureau Federation, Inc. v. Blue Cross of Massachusetts Inc., 403 Mass. 722, 729, 532 N. E. 2d 660 (1989).

Next, the FDIC and the United States argue that the FDIC does not engage in trade or commerce. Under Massachusetts law, a transaction is commercial in nature for purposes of unfair or deceptive acts or practices if it involves arm's-length exchange of services for

---

[5]Namely, United States v. Neustadt, 366 U.S. 696 (1961); Santoni v. FDIC, 677 F.2d 174 (1st Cir. 1982); and Jiminez-Nieves v. United States, 682 F.2d 1 (1st Cir. 1982).

compensation. <u>Trustees of Boston University v. ASM Communications, Inc.</u> 33 F.Supp.2d 66 (D.Mass. 1998). The FDIC argues that because it did not own, control or sell the loan to NHL, it had no economic interest at stake, limiting its analysis to the issuance of the Satisfaction of Judgment issued in 2002. Since this Court must accept as true all well-pleaded factual averments of the complaint as true, <u>Carreiro v. Rhodes Gill and Co., Ltd.</u>, 68 F.3d 1443 (1st Cir. 1995), that argument must fail, since the FDIC did receive value for issuing the 2002 Satisfaction of Judgment. See Third Party Complaint, ¶23. Furthermore, the FDIC did receive a significant payment of money upon the sale of the loan in 1994 to South Star, which fact is ignored by the FDIC.

In continuing to analyze the FDIC's actions to determine whether it engages in trade or commerce, this Court must consider whether the FDIC is considered a "person" under G.L.c. 93A, §1. That section states "[a]ny person who engages in the conduct of any trade or commerce and who suffers any loss of money or property, real or personal, as a result of the use or employment by another person who engages in any trade or commerce...." Massachusetts courts have determined that G.L.c. 93A defines "persons" which include legal entities such as governments. See <u>Republic of Turkey v. OKS Partners</u>, 797 F.Supp. 64 (D.Mass. 1992).

Furthermore, in analyzing whether the conduct occurred in trade or commerce, "[a]lthough it may later prove to be that there has been no trade or commerce in this case which is actionable under chapter 93A, at the pleading stage the allegations as pled are enough to stave off dismissal." <u>Id</u>. at 68. See <u>Schinkel v. Maxi-Holding, Inc.</u>, 30 Mass.App.Ct. 41, 565 N.E.2d 1219, review denied, 409 Mass. 1104, 569 N.E.2d 832 (1991) (question of whether act was within "trade or commerce" under c. 93A should be decided on

9

a record of facts rather than on a motion to dismiss).

## FDIC AND THE UNITED STATES ARE LIABLE FOR THEIR ACTIONS UNDER THE FTCA

The FDIC and the United States assert at page 13 of their Motion to Dismiss that no liability can be imposed against them under the FTCA for simple negligence since the simple negligence claim outlined in Count IV merely restates the excepted torts of slander, interference with contract claims, or misrepresentation outlined in §2680(h). The Defendants' assertions are misplaced. See <u>Block v. Neal</u>, 460 U.S. 289 (1983).

As stated above, NHL's claim aligns with the analysis of the First Circuit Court of Appeals in <u>Jimenez-Nieves v. United States</u>, supra. The First Circuit concludes that the argument advanced by the government that the conduct relied upon by the plaintiff was precluded under §2680(h) due to being a misrepresentation was erroneous. <u>Id</u>., at 5. The First Circuit found that the plaintiff had stated a cause of action which was separate to the tort of misrepresentation. <u>Id</u>., at 5. The First Circuit Court also stated that all of the cases relied upon by the court "suggest that the word "misrepresentation" in the Tort Claims Act should be confined to its traditional, or core, meaning as a separate tort." <u>Id</u>.

Additionally, the conduct of the FDIC in the instant case could be described as a "negligent performance of operational tasks". <u>In re Franklin National Bank Securities Litigation</u>, 445 F.Supp. 723 (1978). In its analysis, the court determined that a separate tort had occurred, which otherwise was not precluded by the exempted torts outlined in §2680(h). The issuance of a discharge by the FDIC in 2002 exonerating the loan obligation, and wiping out the mortgage lien, permitting third parties to rely upon the discharge and

proceed with real estate transactions, is akin to the entering of a wrong date of death as in Jimenez-Nieves, and akin to the directions given by FDIC employees which misled bankers in In re Franklin National Bank Securities Litigation.


### THE FTCA DOES NOT PRECLUDE A CLAIM FOR SLANDER OF TITLE

The FDIC and the United States argue that NHL's claim for slander of title is precluded by the exception contained in §2680(h) for slander. Since slander of title is a tort distinct from slander, NHL's claim should not be precluded. A claim for slander of title causes injury to ownership interests in real property, while the tort of slander does not.

Recently, the Massachusetts Superior Court Department, Agnes, J., in the case of Saloom v. Lister, Superior Court Department, Worcester County, C.A. No.99-1063, August 10, 2004 (2004 WL 1836027), examined the claim of slander of title. See Exhibit A. The Court wrote, as follows:

"'Slander of title is a tort action, dating back to the 1600's, involving real property which redresses "interference with title to real estate by falsehoods which, although not personally defamatory, cause the plaintiff pecuniary loss through interference with . . . domination over his property. Initially such cases involved oral aspersions cast upon the plaintiff's ownership of land, preventing the plaintiff from selling or leasing the land and later came to be known as 'slander of title.' Prosser & Keeton, *Torts,* §128 (5th ed. And supp. 1984).

"Although called by various names, 'injurious falsehood' was the term coined in the first Restatement of Torts and adopted in the Second Restatement. Dulgarian v. Stone, 420 Mass. 843, 852 (1995), quoting Restatement (Second) of Torts § 623A (1977). See Prosser

& Keeton, *Torts*, §128 (5th ed. And supp. 1984). The second Restatement categorizes slander of title as a special application of the general principle of injurious falsehood. Restatement (Second) of Torts §§ 623A and 624 (1977); <u>Powell v. Stevens</u>, 2004 WL 1047451, Civil Action No. 00-0089 (Mass. Super., May 3, 2000). The courts in Massachusetts have embraced the standard set forth in the Restatement for injurious falsehood as it relates to slander of title. <u>See Dulgarian</u>, 420 Mass. at 852. The Second Restatement defines injurious falsehood as follows:

> One who publishes a false statement harmful to the interests of another is subject to liability for pecuniary loss resulting to the other if (a) he intends for publication of the statement to result in harm to interests of the other having a pecuniary value, or either recognizes or should recognize that it is likely to do so, and (b) he knows that the statement is false or acts in reckless disregard of its truth or falsity.

Restatement (Second) of Torts §623A (1977).

"Section 624 applies the definition of injurious falsehood to the 'publication of false statements disparaging another's property rights in land, chattels or intangible things, that the publisher should recognize as likely to result in pecuniary harm to the other through the conduct of third persons in respect to the other's interest in property.' <u>Id</u>. *at* §624.

"In order to be liable for publishing an injurious falsehood, the party asserting the claim must present affidavits or other documents showing, or tending to show, that the statements made were both false and published in reckless disregard of the truth.

> In addition, slander of title, differs from personal defamation in at least three important respects. One is that proof of special harm is required in all cases. (See §633). Another is that there must be proof of a greater amount of fault than negligence on the part of the defendant regarding the falsity of the statement. (See §623A, especially Comment d). The third is that because of the economic interest involved the disparagement of property may in a proper case be enjoined, whereas defamation normally cannot.

Restatment (Second) of Torts 624, Comment (a) (1977).

". . .

"*Reckless disregard for the truth.* Reckless disregard is said to exist when there is "a high degree of probable falseness" of the statement, or there are "serious doubts as to [its] truth." St. Amant v. Thompson, 390 U.S. 727, 730-732 (1968) (To have acted with reckless disregard as to the truth of a statement, one must have entertained serious doubts as to the veracity of the published statement(s) or there must be obvious reasons to doubt its accuracy.); Stone v. Essex County Newspapers, Inc., 367 Mass. 849, 867 (1975), quoting St. Amant at 730-731, ("There must be sufficient evidence to permit the conclusion that the defendant entertained serious doubts as to the truth of his publication; publishing with such doubts shows reckless disregard for truth or falsity and demonstrates actual malice."); Restatement (Second) of Torts §580A (1977).  Evidence that the defendant acted negligently or with gross negligence does not establish reckless disregard.  A reckless disregard for the truth is tantamount to a willful or intentional wrong. Altman v. Aronson, 231 Mass. 588, 592 (1919) (While the degree of culpability which characterizes all negligence is magnified in gross negligence, it falls short of being such reckless disregard of probable consequences as is equivalent to a willful or intentional wrong)." Edward     G. Salloom, Jr. and Another v. Robert G. Lister, (2004 WL 1836027 (Mass. Super.)).

As outlined in Jimenez-Nieves v. United States, 682 F.2d 1, 4 (1982), the exempted torts of libel and slander constitute defamation, which has an element requiring that a communication must "harm the reputation of another". Id., at 6. Since the definition of defamation requires an element that is not present in the tort of slander of title, slander of title does not constitute an exempted tort.  Additionally, the FDIC acted with reckless disregard for the truth when it issued a Satisfaction of Mortgage in 2002 knowing it had

previously sold the mortgage loan to a different third party in 1994.

The FDIC and the United States rely solely on the decision in <u>Art-Metal, U.S.A., Inc.</u>

<u>v. United States</u>, 753 F2d 1151 (DC Cir. 1985), for its assertion that dismissal is warranted

under the "slander" exception under §2680(h). However, that case involved the publication

of false statements regarding the quality of the plaintiff's goods, not title to realty. Thus,

based on the distinction between its interest in its reputation and its pecuniary loss was too

technical and esoteric to hold that injurious falsehood does not arise out of libel or slander[6].

<u>Id.</u>, at 1156. Here there is no interest in reputation, only the interference with title to real

property, and its consequences. In that context, the claim must be examined under state law

in order to determine its viability under the Federal Tort Claims Act. As stated herein,

Massachusetts courts have interpreted the claim of "slander of title" as one of injurious

falsehood and have followed the Restatement (Second) of Torts §§623A and 624, and

"embraced the standard set forth for injurious falsehood" as it relates to such claims. <u>Id.</u>


### NHL'S CLAIM FOR TAKING UNDER THE FIFTH AMENDMENT

The FDIC and the United States allege that this Court lacks jurisdiction to hear

NHL's claim for just compensation pursuant to the Fifth Amendment under the so-called

"Takings" clause. They first allege that the "factual elements of a taking are not present in

this case, and that secondly, exclusive jurisdiction for 'takings' lies in the United States

Court of Federal Claims. On both issues the FDIC and United States has erred.

---

[6]The <u>Art-Metals</u> Court recognized limitations to its decision, and limited its holding to that case only, in stating, "We realize that distinctions exist between injurious falsehood and defamation. We also acknowledge that in some contexts those distinctions may be relevant. **In this case, we hold only that the distinctions are inapposite in determining whether injurious falsehood, trade libel, slander of goods or disparagement of property are claims arising out of libel or slander under the FTCA.**" <u>Id.</u> (Emphasis added).

The facts pertaining to a taking are outlined in the Third Party Complaint. Generally, the taking occurred when the FDIC issued a Satisfaction of Mortgage to a mortgagor of a property, when in fact the FDIC did not own or control the property in question. A taking will occur when the consequence of the governmental action is the permanent physical occupation of a person's property by someone other than the owner. In <u>Loretto v. Teleprompter Manhattan CATV Corp.</u>, 458 U.S. 419, 102 S.Ct. 3164 (1982), the Supreme Court stated "We conclude that a permanent physical occupation authorized by government is a taking without regard to the public interests that it may serve." <u>Loretto</u> at 426. "Property rights in a physical thing have been described as the rights 'to possess, use and dispose of it.' " <u>Id.</u>, at 435, citing to <u>United States v. General Motors Corp.</u>, 323 U.S. 373, 378, 65 S.Ct. 357, 359, 89 L.Ed. 311 (1945).

The FDIC alleges that for a taking to occur, the United States must acquire an interest in the disputed property. See United States' Motion to Dismiss As To Third Party Complaint, p. 15. Instead, the <u>Loretto</u> case relied upon by FDIC demonstrates the opposite conclusion: that a third party occupying a party at the permission of the government results in a taking. See <u>Loretto</u> at 426. There is no mandate that the occupation (or destruction) of the property be solely undertaken by the United States, or other governmental entity.

The permanent physical occupation authorized by the FDIC in the instant case was the destruction of the ownership interest held by NHL. The ownership interest was the assignment of the mortgage loan which was judicially determined to be owned by NHL. Third Party Complaint, ¶¶15 and 16. Since the action of the FDIC destroyed NHL's right to otherwise "possess, use and dispose of" the real property, <u>Loretto</u> at 435, a property right was interfered with. Additionally, as stated in <u>Loretto,</u> a taking can occur even though there

is no determination as to what public interest the taking may serve. Id., at 426. The fact that the FDIC did not acquire any property interest when it issued the Satisfaction of Mortgage is irrelevant. Instead, the FDIC took actions which encumbered and converted property owned by NHL, the same physical taking which occurred when the government in Loretto permitted cable companies to install cable boxes on buildings without the permission of the landlord/owners.

The FDIC and the United States has also argued that exclusive jurisdiction for 'takings' lies in the United States Court of Federal Claims. The Tucker Act provides jurisdiction in the United States Court of Federal Claims for any claim against the Federal Government to recover damages founded on the Constitution, a statute, a regulation, or an express or implied-in-fact contract. See 28 U.S.C. § 1491(a)(1) (1982). The FDIC argues that recovery sought by NHL through the "takings" claim under the Fifth Amendment precludes review by this Court.

In Preseault v. ICC, 494 U.S. 1, 11, 110 S.Ct. 914 (1990), the Supreme Court outlines in detail the requirement of a "reasonable, certain and adequate provision for obtaining compensation at the time of the taking. If the government has provided an adequate process for obtaining compensation, and if resort to that process 'yield[s] just compensation,' then the property owner 'has no claim against the Government' for a taking." Preseault at 11 (citations omitted.)

Normally, taking claims against the Federal Government are considered premature until the property owner has availed itself of the process provided by the Tucker Act, i.e., by filing a claim in the United States Court of Federal Claims. United States v. Causby, 328 U.S. 256, 267, 66 S.Ct. 1062, 1068, 90 L.Ed. 1206 (1946). The recognized exception to that

rule is if Congress has granted another court authority to hear such claims.  Bowen v. Massachusetts, 487 U.S. 879, 910, n. 48 (1988).

In this case, NHL has alleged tort violations under the FTCA against the FDIC and the United States, 28 U.S.C. Chapter 171.  The Federal Tort Claims Act grants a waiver of sovereign immunity.  28 U.S.C. §2674 .  Furthermore, 28 U.S.C. §1346(b)(1) specifically grants jurisdiction to the federal district courts to hear claims brought pursuant to 28 U.S.C. §2674.  There is no disputing that the jurisdiction of the United States Court of Federal Claims does not extend to cases founded in tort.  See Avery v. U.S., 330 F.2d 640, 165 Ct.Cl. 357 (1964).  Therefore, it is arguable that a "Takings" claim under the Fifth Amendment is not an exclusive claim to be decided by the Federal Claims Court, but instead, since sovereign immunity against the FDIC and United States is waived when a tort is alleged under 42 U.S.C. §1983, a waiver of sovereign immunity and jurisdiction could be found in 28 U.S.C. §1346(b)(1), granting this Court jurisdiction to hear the "Takings" claim.[7]  See Carey v. Piphus, 435 U.s. 247, 98 S.Ct. 1042 (1978)("The legislative history of §1983 demonstrates that it was intended to create a species of tort liability in favor of persons who are deprived of rights, privileges, or immunities secured to them by the Constitution.")

In the event this Court determines that the claims of NHL are within the jurisdiction of the United States Court of Federal Claims pursuant to 28 U.S.C. §1406(c), then the claims brought in the United States District Court may be transferred to the Federal Claims

---

[7]This analysis is consistent with the position of the United States Supreme Court that if "the government has provided an adequate process for obtaining compensation, and if resort to that process 'yield[s] just compensation,' then the property owner 'has no claim against the Government' for a taking." Preseault v. ICC, 494 U.S. 1, 11, 110 S.Ct. 914 (1990). The FTCA mandates that certain administrative actions be undertaken prior to filing a suit, specifically the filing of a "presentment letter". 28 U.S.C. §2675. The purpose of this administrative procedure is to avoid unnecessary litigation by enabling the government agency to promptly investigate and evaluate claims for early settlement and otherwise avoid litigation. Had the FDIC settled this action pursuant to 28 U.S.C. §2675, NHL would not have a "takings" claim under the Fifth Amendment.

Court. See <u>Burgos v. Milton</u>, 709 F.2d 1, 3 (1st Cir. 1983); <u>Lomas & Nettleton Co. v. Pierce</u>, 636 F.2d 971, (C.A.Tex., 1981). The FDIC and the United States improperly suggest that the remedy is dismissal for lack of jurisdiction.

Respectfully submitted,
Matthew Denn,
 Insurance Commissioner of
the State of Delaware As
Receiver of National Heritage
Life Insurance Company in

By his attorneys,

James F. Creed, Jr.
BBO#552138
Sara D. Trupe Cloherty
BBO#632528
CREED & FORMICA
1329 Highland Avenue
Needham, MA 02492
(781) 449-4600

Dated: 5/6/05

EXHIBIT A

18 Mass.L.Rptr. 165, 2004 WL 1836027 (Mass.Super.)
Superior Court of Massachusetts.
Edward G. SALLOOM, Jr. and Another [FN1]

FN1. **Claudia R. Sullivan**

v.
Robert G. LISTER. [FN2]

FN2. **d/b/a Legend Builders, et al.**

No. 99-1063.
Aug. 10, 2004.

### *MEMORANDUM OF DECISION ON DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT*

AGNES, Justice of the Superior Court.

**\*1** This is a civil action arising out of damages allegedly sustained by the plaintiffs as a result of the cutting and removal of trees by the defendant on the plaintiffs' property. In addition to loss of trees, the plaintiffs also allege that the actions of the defendant have put a cloud on their title. The parties are presently before the court on the defendant's motion for partial summary judgment as to Count IV, Slander of Title. There was no hearing on the matter; instead the motion was decided on the papers submitted by both parties. For the following reasons the defendant's motion for partial summary judgment is allowed.

### FINDINGS OF FACT

On October 22, 1998, the defendant purchased property on Swan Avenue in Worcester, Massachusetts. Situated across from the defendants, the plaintiffs' property line extends to the center line of Swan Avenue. Prior to conveyance, the defendant hired Land Planning, Inc. to draw a subdivision plan for the property. The plan was subsequently prepared and recorded in Plan Book 732, as Plan No. 82 at the Worcester Registry of Deeds. According to the plaintiffs, the width and location of Swan Avenue is not accurately portrayed in the recorded plan because Swan Avenue is depicted as a variable width way. The plan depicts Swan Avenue to be at least 50' wide along the southwesterly line, expanding to 112' feet at its northerly terminus. After the plan was completed and prior to its recording, the defendant was assured by Land Planning, Inc. that the northerly terminus of Swan Avenue was correctly depicted.

### CONCLUSIONS OF LAW

*1. Standard of Review*

Motions for summary judgment are governed by Rule 56 of the Massachusetts Rules of Civil Procedure. A motion for summary judgment should be granted when there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Mass. R. Civ. P. 56(c). Parties generally move for summary judgment after completing discovery. The moving party must demonstrate that the parties do not dispute any material facts. If any material facts are disputed the motion must be denied. Factual disputes can not be resolved at the summary judgment stage, but must be reserved for trial. Assuming there are no material facts in dispute, the court may grant a motion for summary judgment if the moving party is entitled to judgment as a matter of law. If the moving party does not bear the burden of proof at trial it must either: (i) submit affirmative evidence negating an essential element of the non-moving party's claim; or (ii) demonstrate that the non-moving party's evidence is insufficient to establish its claim. *Kourouvacilis v. General Motors Corp.*, 410 Mass. 706, 711 (1991). The moving party may support its motion with pleadings, deposition transcripts, answers to interrogatories, admissions on file and affidavits. Mass. R. Civ. P. 56(c). An adverse party may not defeat a motion for summary judgment by resting merely on the allegations and denials of its pleadings but must set forth specific facts with affidavits, deposition testimony, answers to interrogatories, or admissions on file showing that there is a genuine issue for trial. Mass. R Civ. P. 56(e).

*2. Slander of Title*

**\*2** Slander of title is a tort action, dating back to the 1600's, involving real property which redresses "interference with title to real estate by falsehoods which, although not personally defamatory, cause the plaintiff pecuniary loss through interference with ... dominion over his property." Karen McConnel, *Slander of Title: Onward Through the Fog*, 24 S. Tex. L.Rev. 171, 171 (1983). See *McDonald v. Green*, 176 Mass. 113,

115 (1900) ("[s]uch actions are well known and well described as actions of Tort for Slander."). Initially such cases involved oral aspersions cast upon the plaintiff's ownership of land, preventing the plaintiff from selling or leasing the land and later came to be known as "slander of title ." Prosser & Keeton, *Torts*, § 128 (5th ed. and supp.1984). *Id.* By analogy, the title or property was personified and the rules of personal slander were applied to property. *Id.* Over time, the tort has evolved to include "written aspersions and the title to property other than land, and then to cover disparagement of the quality of property, rather than its title ... many contemporary cases concern aspersions cast upon a commercial product ." *Id.* Although called by various names, "injurious falsehood" was the term coined in the first Restatement of Torts and adopted in the Second Restatement. *Dulgarian v. Stone*, 420 Mass. 843, 852 (1995), quoting Restatement (Second) of Torts § 623A (1977). *See* Prosser & Keeton, *Torts*, § 128 (5th ed. and supp.1984). The second Restatement categorizes slander of title as a special application of the general principle of injurious falsehood.

Restatement (Second) of Torts §§ 623A and 624 (1977); *Powell v. Stevens*, 2004 WL 1047451, Civil Action No. 00-0089 (Mass.Super., May 3, 2000). The courts in Massachusetts have embraced the standard set forth in the Restatement for injurious falsehood as it relates to slander of title. *See Dulgarian*, 420 Mass at 852.The Second Restatement defines injurious falsehood as follows:

One who publishes a false statement harmful to the interests of another is subject to liability for pecuniary loss resulting to the other if (a) he intends for publication of the statement to result in harm to interests of the other having a pecuniary value, or either recognizes or should recognize that it is likely to do so, and (b) he knows that the statement is false or acts in reckless disregard of its truth or falsity.
Restatement (Second) of Torts § 623A (1977).

Section 624 applies the definition of injurious falsehood to the "publication of false statements disparaging another's property rights in land, chattels or intangible things, that the publisher should recognize as likely to result in pecuniary harm to the other through the conduct of third persons in respect to the other's interest in property." *Id.* at § 624.

In order to be liable for publishing an injurious falsehood, the party asserting the claim must present affidavits or other documents showing, or tending to show, that the statements made were both false and published in reckless disregard of the truth. *Dulgarian v. Stone*, 420 Mass. 843, 852 (1995), quoting Restatement (Second) of Torts § 623A (1977). In addition, slander of title,

**\*3** differs from personal defamation in at least three important respects. One is that proof of special harm is required in all cases. (See § 633). Another is that there must be proof of a greater amount of fault than negligence on the part of the defendant regarding the falsity of the statement. (See § 623A, especially Comment d). The third is that because of the economic interest involved the disparagement of property may in a proper case be enjoined, whereas defamation normally cannot.
Restatement (Second) of Torts § 624, Comment (a) (1977).

A. *Accuracy of statement.* The plaintiffs have submitted a plan depicting the width of Swan Avenue at forty feet pursuant to an original agreement to widen the road, signed and recorded in 1895. Although the defendant contends that the subdivision plan he recorded does not purport to show the bounds of the plaintiffs' property, the location and width of Swan Avenue is defined by the defendant's plan and the plaintiffs own to the centerline of Swan Avenue. Therefore, there are genuine issues of material fact as to whether or not the subdivision plan of the defendant's property inaccurately portrayed the plaintiffs' boundary lines.

B. *Reckless disregard for the truth.* Reckless disregard is said to exist when there is "a high degree of probable falseness" of the statement, or there are "serious doubts as to [its] truth." *St. Amant v. Thompson*, 390 U.S. 727, 730-732 (1968) (To have acted with reckless disregard as to the truth of a statement, one must have entertained serious doubts as to the veracity of the published statement(s) or there must be obvious reasons to doubt its accuracy.); *Stone v. Essex County Newspapers, Inc.*, 367 Mass. 849, 867 (1975), quoting St. Amant at 730-731 ("There must be sufficient evidence to permit the conclusion that the defendant entertained serious doubts as to the truth of his publication; publishing with such doubts shows reckless disregard for truth or falsity and demonstrates actual malice."); Restatement (Second) of Torts § 580A (1977). Evidence that the defendant acted negligently or with gross negligence does not establish reckless disregard. A reckless disregard for the truth is tantamount to a willful or intentional wrong. *Altman v. Aronson*, 231 Mass. 588, 592 (1919) (While the degree of culpability which characterizes all negligence is magnified in gross negligence, it falls short of being such reckless disregard of probable consequences as is equivalent to a willful or intentional wrong). Sufficient time and opportunity to investigate the truth of the statement is a factor that may be relevant in determining whether the publisher acted with reckless disregard for the truth. Restatement (Second) of Torts § 580A.

Under this standard, the plaintiffs' have not submitted sufficient evidence to show that the defendant acted with reckless disregard for the truth when he recorded the subdivision plan produced by Land Planning, Inc. Land Planning, Inc., a professional land surveying company, was paid by the defendant to subdivide the land. No evidence has been submitted to show the defendant had any reason to believe the plans were prepared incorrectly).

**\*4** Although it may be said that Swan Avenue appears exceptionally wide on the subdivision plan and that this fact should have been recognized by the defendant, proof of a reckless disregard for the truth requires a much greater showing. It has to amount to a willful or intentional wrong and the plaintiffs have made no such showing regarding the defendant's behavior. In fact, the defendant raised the issue of the unusual width of Swan Avenue with Land Planning, Inc. In addition, the fact that the defendant was assured that the subdivision plan was correct is an indication that the defendant did not entertain serious doubts as to its veracity at the time it was recorded. It is unreasonable to suggest that the defendant should have continued to question the plan or pursue the opinion of another surveyor once he was assured it was correct. Therefore, the plaintiffs' have failed to demonstrate that the defendant acted in reckless disregard in recording the plan with the Registry of Deeds. [FN3]

> FN3. The question of whether the plaintiff must prove "malice" and whether this element is separate and distinct from reckless disregard remains open and need not be answered here. *Dulgarian,* 420 Mass. at 852, n. 9.

*C. Special Damages.* Because the plaintiffs have failed to show the defendant acted with reckless disregard for the truth, the court does not reach the issue of special damages.

**ORDER**

For the above reasons, the defendant's motion for summary judgment as to Count IV, Slander of Title, is **ALLOWED.**

Mass.Super.,2004.
Salloom v. Lister
18 Mass.L.Rptr. 165, 2004 WL 1836027 (Mass.Super.)
END OF DOCUMENT

(C) 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

CERTIFICATE OF SERVICE

I hereby certify that on this date, I caused a true copy of the within document to be served by first class mail, postage pre-paid to:

Robert B. Gibbons, Esq.
Kristin D. Thompson, Esq.
Mirick, O'Connell, DeMallie & Lougee, LLP
100 Front Street
Worcester, MA  01608

Anita Johnson
Assistant U.S. Attorney
U.S. Attorney's Office
Moakley United States Courthouse
One Courthouse Way – Suite 9200
Boston, MA  02210

Nancy C. Serventi, Esq.
McDonough, Hacking, & Lavoie, LLP
6 Beacon Street, Suite 815
Boston, MA  02108

James F. Creed Jr

Dated:

19