UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

C.A. NO. 4:05-CV-40014-FDS

| | |
|---|---|
| SANDRA S. KATZ, | ) |
|     Plaintiff | ) |
| | ) |
| v. | ) |
| | ) |
| DONNA LEE H. WILLIAMS, INSURANCE COMMISSIONER OF THE STATE OF DELAWARE AS RECEIVER OF NATIONAL HERITAGE LIFE INSURANCE COMPANY IN LIQUIDATION | ) ) ) ) ) |
|     Third Party Plaintiff | ) |
| | ) |
| v. | ) |
| | ) |
| FEDERAL DEPOSIT INSURANCE CORPORATION, UNITED STATES OF AMERICA, E. PERRY KING, ALAN MASON, ALAN MASON LEGAL SERVICES, P.C., ALAN MASON LEGAL SERVICES, INC., ALAN MASON SERVICES, P.C., ALAN MASON D/B/A ALAN MASON LEGAL SERVICES, INC. | ) ) ) ) ) ) ) |
|     Third Party Defendant | ) |
| and | ) |
| | ) |
| E. PERRY KING, | ) |
|     Fourth Party Plaintiff | ) |
| v. | ) |
| | ) |
| MANSOUR GAVAL, | ) |
|     Fourth Party Defendant | ) |

FOURTH PARTY COMPLAINT
E. PERRY KING v. MANSOUR GAVAL

1.   The fourth party plaintiff is E. Perry King who resides at 10-A Dodge Hill Road, Sutton, MA  01590.

2.   The fourth party defendant is Mansour Gaval who resides at 431 Salisbury Street, Worcester, MA 01609.

3.Mansour Gaval and E. Perry King were parties to a purchase and sale agreement, a copy of which is marked Exhibit 1 to this fourth party complaint and incorporated herein by reference.

4.Mansour Gaval agreed to hold E. Perry King harmless for any outstanding discharge(s) and taxes, and all outstanding judgments and mortgages to be discharged.

5.Mansour Gaval has breached his agreement with E. Perry King.

6.As a result of the breach of agreements, E. Perry King has been damaged and continues to suffer damages.

7.In the event that the third party plaintiff recovers a judgment against E. Perry King, E. Perry King seeks to be indemnified and held harmless for any damages, costs, expenses and attorneys fees arising therefrom, in accordance with the agreement marked Exhibit 1.

WHEREFORE, E. Perry King, demands judgment against Mansour Gaval and seeks:

1.Indemnification from Mansour Gaval for any judgments, damages, costs, expenses and attorneys fees arising herefrom, and

2.To be held harmless for any damages, costs, expenses and attorneys fees arising herefrom.

E. Perry King
by his attorney:


/s/ Timothy P. Wickstrom
Timothy P. Wickstrom
Tashjian, Simsarian & Wickstrom
370 Main Street
Worcester, MA 01608
(508) 756-1578
B.B.O. #541953


CERTIFICATE OF SERVICE

I, Timothy P. Wickstrom, hereby certify that I have forwarded a copy of the within Fourth Party Complaint to all counsel of record this 25th day of July, 2005 via first class mail.

/s/ Timothy P. Wickstrom

                                                                             Worcester, MA 01604
                                                                             (508) 752-7550: Phone
                                                                               (503) 756-9-131: Fax

                    PURCHASE AND SALE AGREEMENT DATE OF AGREEMENT

PARTIES:
SELLER                  SELLER ATTORNEY
'I'.A. King
E. Perry King
Sutton Associates

BUYER                   BUYER ATTORNEY
Mansour Gaval

PROPERTY: Beckman Street and Canton Street(s), Worcester, MA

                                      15

TIME FOR PERFORMANCE: JULYX8,2002

Time is of the essence.

PURCHASE PRICE:   SOUTSTANDING TAX               LIABILITY
                             DUE TO THE CITY OF                 WORCESTER
Deposit with Offer     .$0.00
Dcposit paid at  P&S    $30,000.00
funds due at closing*    $_____
To be paid in cash, certified, cashiers, or attorney trustee check.

MORTGAGE CONTINGENCY not applicable
Lending Institution -
Loan Amount -
Mortgage Contingency Date -
Inspections -

SPECIAL COJNDITIONS:
Inclusions:

Exclusions: ALL  PERSONAL PROPERTY

ADDITIONAL PROVISIONS BUYER AGREES T'O HOLD THE SELLER HARMLESS FOR ANY OUTSTANDING DISCHARGE(S) AND TAXES,  and all outstanding judgements .and mortgages to be dishcarged.


I. PARTIES

2. DESCRIPTION
*SELLER* agrees to sell and *BUYER* agrees to buy, upon the terms, provisions, conditions and covenants set forth herein, the land described in the Exhibit A hereto attached.

3. TIME FOR PERFORMANCE
The deed is to be delivered al the appropriate registry of deeds at 11:00 a.m. on (the date referenced on page 1 of this agreement unless otherwise agreed upon in writing.

4. MORTGAGE CONTINGENCY
This Agreement is contingent upon llie *BUYER,* obtaining a mortgage at prevailing interest rates on or before the mortgage contingency dale referenced on page 1, In the event the *BUYER* is unable to obtain such financing, in order to receive a return of *BUYER'S* deposit hereunder, *BUYER* must notify *SELLER,* in writing, of such inability to obtain financing on or before said date.

The failure to so notify (lie *SELLER* in writing for any reason shall be deemed an express waiver of this contingency and the parties shall then be governed by the terms and conditions of the remainder of this Agreement. The *BUYER* shall diligently, in good faith, and with their best efforts, proceed to seek and secure such mortgage financing, but if even then, *BUYER* shall fail to obtain such financing by said date and provided *SELLER* notification in writing of such fact by such date, then this agreement shall be void, all deposits shall be refunded and neither party shall have any further rights. In no event will the *BUYER* be deemed to have used diligent efforts to obtain such commitment unless the *BUYER* submits at least one completed mortgage loan application to a reputable lending institution ten days after the offer to purchase lias been fully executed.

5. BUILDINGS, STRUCTURES, IMPROVEMENTS, FIXTURES, ETC.
Included in the sale as a part of said premises are (lie buildings, structures, and improvements now thereon, and the fixtures belonging to the *SELLER* and used in connection therewith, including if any, screens, screen doors, shutters, furnaces, heaters, heating equipment, stoves, ranges, hot water heaters, plumbing and bathroom fixtures, electric and other lighting fixtures, mantels, television antennas, fences, gates, trees, slu-ubs and plants, and only if built in, air conditioning equipment, ventilators, dishwashers.

6. PLAN
If the deed refers to a plan necessary to be recorded therewith, the *SELLER* shall deliver such plan with the deed in form adequate for recording or registration.

7. TITLE DEED
Said premises are to be conveyed by a good and sufficient quitclaim deed running to the BUYER, or to the nominee designated by the BUYER by a written notice to the SELLER at least ten (10) days before the deed is to be delivered as provided herein; and said deed shall convey good, clear and marketable title to the subject premises, free of any and all liens, charges or encumbrances of whatsoever nature and description except:

A. Such real estate taxes for (lie then current year as are not yet due and payable on or before the date of delivery of the deed;

B. Any liens for municipal betterment assessments made after the date of execution by all parties of this Agreement.

C. Provisions of existing building and zoning laws.

D. Any and all rights, restrictions or easements of record if any, insofar as the same are in full force and applicable to (lie subject premises, but not affecting (he value or intended use thereof.

E. Existing rights and obligations in party walls which are not the subject of written agreement.

F. Usual public utilities servicing the property, if any,

G. Mortgage's not assumed which are to be discharged as a result of this transaction,

which discharges shall be recorded within a reasonable time after the recording of the closing documents.

**8. TITLE REFERENCE**
The title reference is unknown at this time. **SELLER'S** attorney shall be responsible for obtaining a certificate of title from a reputable title company. The cost for said title examination shall be borne by **SELLER.**

**9. INSPECTIONS**
The *BUYER* may, at his expense, on or before the inspection date have the properly inspected by a person or firm in the business of pest inspections. If, in the opinion of this person or Finn, the property contains termites or other wood boring insects, then (lie *BUYER* shall have the option of rescinding this Agreement within 48 hours of said inspection by a note in writing. Whereupon all deposits made by the *BUYER* shall forthwith be refunded and this Agreement shall be null and void without further recourse. *BUYER* shall provide proof to *the SELLER* by way of said inspection report. If notification is not forwarded to the *SELLER* within said 48 hours of said inspection, then this contingency will have been deemed waived by the *BUYER* and the parties shall be governed by the terms and conditions of the remainder of this Agreement.

The *BUYER* may, at his expense, or before the inspection date referenced on page 1, have the property septic and/or well inspected by a person or firm in the business of doing such inspections. Also, radon and any other tests required by the V.A. If, in the opinion of this person or firm, the property contains serious structural and/or mechanical defects, then tlie *BUYER* shall have the option of rescinding this Agreement within 48 hours of said inspection by a notice in writing. Whereupon all deposits made by the *BUYER* shall forthwith be refunded and this Agreement shall be null and void without further recourse. If notification is not forwarded to *SELLER* within 48 hours of said inspection (hen this contingency will have been deemed waived by the *BUYER* and the parties shall be governed by tlie terms and conditions of the remainder of this Agreement. *BUYER* shall provide to tlie *SELLER* proof of such defects by way of said inspection report (s).

In the event that the home inspection reveals major structural repairs in excess of $3,000.00, and/or the well test does not meet FHA standards and/or the property has a pest infestation, the *BUYER* shall have the option to withdraw from this Agreement and all deposits shall be returned and the parties discharged from any and all obligations hereunder.

The BUYER is afforded 10 days from the date of this Agreement to have the premises inspected for the presence of lead. If that inspection reveals the presence of dangerous levels of lead as defined by M.G.L. C. Ill Sections 190 ex. Seq., the BUYER may terminate this Agreement by written notice to the SELLER no later than 48 hours after said inspection. Whereupon all deposits made by the BUYER shall forthwith be refunded and this Agreement shall be null *and* void without further recourse. If notification is not forwarded to (lie SELLER within 48 hours then this contingency will have been deemed waived by the BUYER and the parties shall be governed by the terms and conditions of the remainder of this Agreement. BUYER will provide to me SELLER proof of dangerous levels of lead on the premises by way of said inspection report (s).

**10. POSSESSION AND CONDITION OF PREMISES**
Full possession of said premises free of all tenants and occupants, except as herein provided, is to be delivered at the lime of the delivery of the deed, said premises to be then a) in the same condition as they now are, reasonable use and wear thereof cxcepted and b) not in violation of said building and zoning laws. The *BUYER* shall be entitled to one inspection of said premises prior to the delivery of the deed in order to determine whether the condition thereof complies with the terms of this clause.

11. EXTENSION TO PERFECT TITLE OR MAKE PREMISES CONFORM If the *SELLER* shall be unable to give title or to make conveyance, or to deliver possession of the premises, all as herein stipulated, or if at the time of delivery of the deed the premises does not conform with the provisions hereof, the *SELLER* may elect to use reasonable effort to remove any defects in title or to deliver possession as provided herein, or to make the said premises conform to the provisions hereof as the case may be, in which event the *SELLER* shall give written notice thereof to the *BUYER* at or before the time for performance hereunder, and thereupon the time for performance hereof shall be extended for a period of thirty (30) days or until the earlier expiration *of BUYER'S* financing commitment, which shall mean the earliest date on which the amount, term and/or interest rate of (lie loan is no longer guaranteed.

**12. FAILURE TO GIVE TITLE OR MAKE PREMISES CONFORM**
If, at the expiration of the time for performance hereunder, the *SELLER* shall not be able to give title; or deliver possession; or except for a fire or other unavoidable casualty, make the premises conform; as the case may be, and all as herein agreed, then at the *BUYER'S* election, any and all payments made by the *BUYER* hereunder shall be forthwith refunded to the *BUYER* and all obligations of all parties hereto shall cease.

**13. BUYER'S ELECTION TO ACCEPT TITLE**
The *BUYER* shall have me right to elect, at the time for the performance hereunder, to accept such title as tlie *SELLER* can deliver to said premises in their then condition, provided that the acceptance of a deed by the *BUYER* shall be deemed to be a full performance and discharge of this agreemenc.

**14. INSURANCE, FIRE AND OTHER CASUALTY**
The *SELLER* shall maintain existing fire and extended coverage insurance on the premises. In the event that the premises shall, prior to transfer of title, be damaged or destroyed by (ire or other unavoidable casualty (other than reasonable use and wear prior to transfer of title liereunder), and (lie *SELLER* has not, prior to time for performance hereunder, restored the premises so as to conform with the terms hereof; then:

A.  If the cost to restore the premises shall exceed $5,000.00, then the *BUYER* may elect to receive all amounts recovered or recoverable on account of said insurance, plus any deductible or co-insurance, less any amounts reasonably expended by the *SELLER* for any partial restoration; or cancel this Agreement and any and all payments made by the *BUYER* hereunder shall forthwith be refunded to the *BUYER.*

B.  If the cost to restore the premises shall be $5,000,00 or less, the parties shall perform this Agreement and the *BUYER* shall receive all amounts recovered or recoverable on account of said insurance plus any deductible and co-insurance less any amounts reasonable expended by the *SELLER* for partial restoration.

C- If there is damage to the premises valued at $5,000.00 or less, and the premises are not completely restored prior to closing, then at the closing, there shall be a holdback from the purchase price of $5,000.00 to be held in escrow by the attorney for the *BUYER*. Said escrow amount shall be held until all insurance proceeds are paid and al restoration is completed. *If BUYER* is required to expend sums in addition to insurance proceeds to restore the premises, the amount expended by *BUYER* shall be paid to *BUYER* out of the escrow fund, and the balance, if any, shall be returned to the *SELLER. If BUYER is* not required to expend sums in addition to insurance proceeds to restore the premises, (lie entire escrow fund shall be returned to *SELLER.*

D.  Notwithstanding any provision of this paragraph to the contrary, if such damage or destruction of the premises materially interferes with *BUYER'S* ability to inhabit the premises then notwithstanding that the cost to restore the premises shall be $5,000.00 or less, *BUYER* shall not be obligated to perform hereunder until the premises are restored to habitable condition at or prior to the closing date or any extension thereof permitted by this Agreement.

**15. USE OF PURCHASE MONEY TO CLEAR TITLE**
To enable the *SELLER* to make conveyance as herein provided, the *SELLER* may at the time of (lie delivery of die deed use the purchase money or any portion thereof to clear the title of any and all encumbrances or interests, provided that all instruments so procured are recorded simultaneously with the delivery of said deed, or as soon thereafter as practical.

**16. ADJUSTMENTS**
Taxes for the then current year and, if any, water, sewer use, rents, and security deposits shall be apportioned and fuel value shall be adjusted as of the date of delivery of the deed, and the net amount thereof shall be added to or deducted from, as the case may be, the purchase price payable by the *BUYER* at the time of delivery of the deed.

17. DEPOSIT

All additional deposits made hereafter by the *BUYER* shall be held by Law office of Alan Mason, Attorney for the *SELLER,* in a non-interest bearing account, subject to the terms of the within Agreement and shall be duly accounted for at the time of the delivery of the deed. The initial deposit is to be held by (he broker.

18. BROKER'S COMMISSION

A broker's commission for professional service is due from the *SELLER* to NONE  , but only if, as, and when the *SELLER*

receives the full purchase price and the *BUYER* accepts and records *SELLER'S* deed and not otherwise.

19. BUYER'S DEFAULT

In the event *BUYER* shall fail to fulfill the *BUYER'S* agreements herein, all deposits made hereunder by the *BUYER* shall be retained by the *SELLER* as liquidated damages, whereupon the within Agreement shall be null, void and of no force and effect, with no party hereto to have further recourse against another.

20. SELLERS REPRESENTATIONS

No representative *of SELLER* shall be required to attend the closing in person, provided that *SELLER* delivers in escrow to the closing attorney on or before the closing date an executed deed for the premises and any other documents required hereunder. *SELLER* shall execute such other documents in connection with the closing as may be reasonably requested by *BUYER'S* lender, provided such documents shall be delivered to *SELLER* no later than two (2) business days prior to the date of closing.

The *SELLER* shall, prior to transfer of title, provide and pay for the smoke detectors in compliance with M.G.L.C. 148, Section 26F, and furnish the *BUYER* a Certificate of Compliance and/or occupancy permit if required, in accordance with the provisions of such statute.

*SELLER* represents and warrants that *SELLER* has complied with the provisions of 105 CMR 651 willi respect to urea formaldehyde foam insulation (UFFI) in the premises, and that based on (he inspections required by such regulation, the premises do not contain UFFI. In the event that UFFI is found in the premises, *SELLER* shall cooperate as necessary in any action for removal.

The *SELLER* makes no representation to the *BUYER* concerning the existence or non-existence of lead paint within, without, or on the premises, and makes no representations of compliance with provisions of MGLC. Ill, Sec. 197. The parties understand that if a child or children under 6 years of age becomes a resident in the building after purchase of the premises by the *BUYER,* the duty of removing such material or making it inaccessible to such child or children will be that of the *BUYER.*

Except as otherwise provided in this Agreement, the premises are being conveyed in an "AS IS" condition. Any appliances which are included with the sale are sold "AS IS" without any warranty as to condition or operating capacity.

**21. TITLE 5**

Should the properly being conveyed herein be serviced by an on site treatment and disposal of sanitary sewage system, the *SELLER* shall cause said system to be inspected prior to closing. The *SELLER* shall present to the *BUYER a.* certificate authored by a "Certified Soil ^valuator" that the system has met all of the requirements of TITLE 5 of the Massachusetts 13nviroiunental Code.

In the event that the above referenced system shall have failed the inspection the *SELLER* shall:

1. At Seller's expense cause the system to be repaired and or replaced in accordance with TITLE 5; or
2. Withdraw from this transaction and return all deposits to the Buyer. In such event this purchase and sale agreement shall be null and void.

**22. VOLUNTARY EXECUTION**

The parties declare and acknowledge that they, and each of them, had the opportunity to have independent legal advice by counsel of their own selection; (hat each party hereto fully understands the provisions of the within Agreement; and that each party signs this Agreement freely and voluntarily.

The *BUYER* acknowledges that the *BUYER* has not been influenced to enter into this transaction nor has he/she relied upon any warranties or representations not set forth or incorporated in this Agreement or previously made in writing.

The *BUYER* has examined the premises to be conveyed and except as otherwise provided in this Agreement, hereby accepts said premises in their present condition, AS IS. The *BUYER* does not rely on any representation or warranty made by the *SELLER* or its representatives relating to the physical condition of the premises or its suitability for any purposes for which the *BUYER* may desire to use them, unless specifically set forth in this Agreement. The contracting parties agree that this contract contains all the conditions of this sale. It is mutually agreed that any oral representation made by either party or their representatives prior to the signing of this Agreement is null and void.

**23. CONSTRUCTION OF AGREEMENT**
This instrument, executed in triplicate, **is** to be construed as a Massachusetts contract, is to take effect as a sealed instrument, sets forth the entire contract between the parties, is binding upon and inures to me benefit of the parties hereto and their respective heirs, devisees, executors, administrators, successors and assigns, and may be canceled, modified or amended only by a written instrument executed by both the *SELLER* and the *BUYER*. If two or more persons are named herein as *BUYER,* their obligations hereundcr shall be joint and several. The captions are used only as a matter of convenience and are not to be considered a part of this Agreement or to be used in determining the intent of the parties to it.

**24. I.R.S. FILING REQUIREMENTS**
In the event the lender's attorney does not designate himself/ herself as the reporting agent, the *BUYER'S* attorney shall report the information needed to comply with I.R.C. 6045 (e).

25. ACCEPTANCE OF DEED
The acceptance of a deed by the *BUYER* or his/her nominee, as the case may be, shall be deemed to be a full performance and discharge of every agreement and obligation herein contained or expressed, except such as are by the terms hereof, to be performed after me delivery of said deed.

IN WITNESS WHEREOF, the several parties have hereunto set (heir hands and seals this _____day of_____,

_____
SELLER

BUYER

| SELLER | BUYER. |
|--------|--------|
|        |        |