UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS
WORCESTER DIVISION

SANDRA S. KATZ,
    Plaintiff

V.

MATTHEW DENN, INSURANCE
COMMISSIONER OF THE STATE OF
DELAWARE, AS RECEIVER OF
NATIONAL HERITAGE LIFE INSURANCE
COMPANY IN LIQUIDATION,
    Defendant and Third-Party Plaintiff,

V.

FEDERAL DEPOSIT INSURANCE
CORPORATION, UNITED STATES OF
AMERICA, E. PERRY KING, ALAN
MASON d/b/a ALAN MASON LEGAL
SERVICES, P.C. d/b/a ALAN MASON
LEGAL SERVICES, INC., ALAN MASON
LEGAL SERVICES, P.C., ALAN MASON
LEGAL SERVICES, INC., and ALAN
MASON LEGAL SERVICES, P.C. d/b/a
ALAN MASON LEGAL SERVICES, INC.,
    Third-Party Defendants,

V.

E. PERRY KING and MANSOUR GAVAL,
    Fourth-Party Defendants.

DOCKET NO. 05-CV-40014-FDS

## PLAINTIFF'S MEMORANDUM IN SUPPORT OF HER MOTION FOR SUMMARY JUDGMENT

### I.    INTRODUCTION

This action arises out of a dispute involving a 1988 mortgage on property located at 19 Canton Street, Worcester, Massachusetts (the "Property") granted by the then owners of the

Property, E. Perry King and Terry A. King (the "Kings") to Home National Bank of Milford ("HNBM") to secure a note in the original amount of $112,000.00 (the "Mortgage"). By deed dated July 15, 2002, Mansour Gavel and Nader Gaval (the "Gavals") purchased the Property from the Kings. On July 19, 2002, the Federal Deposit Insurance Corporation ("FDIC"), as receiver of HNBM, and the undisputed record holder of the Mortgage, recorded a discharge of the Mortgage. On December 19, 2003, the plaintiff, Sandra Katz ("Katz"), purchased the Property from the Gavals for $210,000. Katz now seeks a declaratory judgment that she acquired the Property free and clear of the Mortgage.

The defendant, Matthew Denn, Insurance Commissioner of the State of Delaware as Receiver of National Heritage Life Insurance Company in Liquidation ("Commissioner") has opposed the relief sought by Katz, claiming that the FDIC's discharge of the Mortgage is invalid because the FDIC purportedly assigned the Mortgage to a third-party, through which the Commissioner now asserts its rights to the Mortgage. However, the purported pre-discharge assignment from the FDIC was never recorded, nor were the subsequent assignments by which the Commissioner allegedly obtained an interest in the Property.

Notably, the Commissioner has filed a third-party claim against the FDIC, E. Perry King and Mr. King's attorney, alleging that the FDIC negligently discharged the Mortgage, and that Mr. King and his attorney fraudulently obtained the FDIC discharge. The Commissioner does not allege that Katz was in any way a participant in any of the alleged fraudulent or wrongful conduct, or that Katz had knowledge of the wrongful conduct or the purported assignment to the FDIC.

The FDIC removed this case to this Court on January 21, 2005. Katz now files this summary judgment motion on the sole count of her complaint for declaratory relief since she

took title to the Property free and clear of the Mortgage as a result of the FDIC's recorded

Discharge of the Mortgage. Here, the Commissioner apparently recognizes that his remedy lies

with the third-party defendants, not with Katz.

## II.    CONCISE STATEMENT OF UNDISPUTED FACTS

On or about January 27, 1988, the Kings executed and delivered the Mortgage on the

Property to HNBM in order to secure a note in the amount of $112,000. *Plaintiff's Complaint*

("Compl.") ¶ 4; *Defendant's Answer* ("Answer") ¶ 4. The Mortgage was recorded with the

Worcester District Registry of Deeds (the "Registry") in Book 11097, Page 122. Affidavit of

Christopher T. Meier ("Meier Aff.") ¶2, Ex. A. On or about June 2, 1990, HNBM failed, and

control of HNBM was assumed by the FDIC as receiver for HNBM. Compl. ¶ 5; Answer ¶ 5.

Meier Aff. ¶3, Ex. B.

By assignment of mortgage dated March 29, 1994, the FDIC purportedly assigned its

interest in the Mortgage to South Star Management Company ("South Star"). Meier Aff. ¶4,

Ex. C. The FDIC's assignment of the Mortgage to South Star was not recorded with the

Registry. Compl. ¶ 7; *Answer* ¶ 7. By assignment of mortgage also dated March 29, 1994,

South Star purportedly assigned its interest in the Mortgage to National Housing Exchange, Inc.

("National Housing"). Meier Aff. ¶5, Ex. D. South Star's assignment of mortgage to National

Housing was not recorded with the Registry. Compl. ¶ 7; Answer ¶ 7. The unrecorded

assignments of March 29, 1994 are hereinafter collectively referred to as the "Assignments."

On or about September 15, 1997, and October 21, 1997, the Commissioner recorded with

the Registry two Judgments by Default (the "Judgments") entered in his favor which

"terminate[d] all right, title and interest of National Housing in certain listed mortgages and vest

those rights with the Insurance Commissioner." Meier Aff. ¶6, Ex. E; Compl. ¶9; Answer ¶9.

When recording the Judgments, the Commissioner did not marginally reference the Judgments to any specific deeds, mortgages or assignments.  Compl. ¶ 10; Answer ¶ 10.  By deed dated July 15, 2002, the Kings transferred the Property to the Gavals in consideration of $110,000.  Meier Aff. ¶7, Ex. F.  On July 19, 2002, the FDIC, as Receiver, issued a Satisfaction of Mortgage for the Mortgage (the "FDIC Discharge").  Meier Aff. ¶8, Ex. G.  The FDIC Discharge was recorded with the Registry on August 1, 2002.  Id.  By deed dated December 19, 2003 and recorded January 28, 2004, the Gavals transferred the Property to Katz in consideration of $210,000.  Meier Aff. ¶9, Ex. H.  Katz had no actual knowledge of the unrecorded and alleged Assignments, or the Judgments, at the time of her purchase of the Property.  Affidavit of Sandra S. Katz ("Katz Aff.") ¶¶ 3, 4.

### III.    ARGUMENT

A.    Standard for Declaratory Judgment

The purpose of an action for declaratory judgment is "to remove, and to afford relief from, uncertainty and insecurity with respect to rights, duties, status and other legal relations." M.G.L. c. 231A, § 9.  The declaratory judgment statute, M.G.L. c. 231A, should be liberally construed and administered.  M.G.L. c. 231A, §9; Pazott v. Director of the Div. of Marine Fisheries, 417 Mass. 565, 569 (1994).  In this action, the parties agree that there exists an actual controversy between them as to their rights and obligations under the Mortgage.

B.    Katz Took the Property Free and Clear of the Mortgage and the Commissioner's Remedy is Properly Against the Third-Party Defendants

Simply for the fact that the Assignments were not recorded at the time of the Discharge, Katz took the Property free and clear of the Mortgage under Massachusetts law.

G.L. c. 183, §54 provides in relevant part that:

> The recordation of a duly executed and acknowledged deed of
> release or written acknowledgement of payment or satisfaction as
> provided herein shall be conclusive evidence that the mortgage has
> been discharged notwithstanding the fact that the party signing
> such instrument may have assigned the note or other evidence of
> debt to another party, unless such assignment had been duly
> recorded prior to the instrument discharging the mortgage."
> G.L. c. 183, § 54.

Here, it is undisputed upon the pleadings that the purported Assignments, through which the

Commissioner derives any colorable claim to the Mortgage or the Property, were unrecorded at

the time the FDIC Discharge was recorded with the Registry. The recorded Discharge is

therefore "conclusive evidence that the mortgage ha[d] been discharged," and Katz took the

Property free and clear of the discharged Mortgage, despite any evidence that the discharge may

have been obtained wrongfully by one of Katz's predecessors-in-interest.

C.     Recording Of The Judgments Does Nothing To Assist The Survival
       Of The Mortgage

The Commissioner's argument that the Mortgage survived both the Discharge and the

transfer to Katz because of his recording of the Judgments fails on multiple grounds. See

*Defendant's Answer*, at Counterclaim ¶¶ 9 & 13. First, the Judgments are not in the chain of title

to the Property such as could have provided actual notice or even record notice to Katz or anyone

else. The Commissioner admits that the Judgments did not marginally reference the Property. A

title search accomplished even to the present day with regard to the Kings, the Gavals, the

Property and HNBM does not uncover the recorded Judgments. Meier Aff. ¶¶10-11. Rather, the

Judgments were only referenced by the purported assignees of the Mortgage, which likewise

were never in the Property's chain of title because the Assignments were never recorded with the

Registry.

Second, even if Katz could have somehow found the Judgments and their mention of the Property, the Commissioner gains nothing from the ambiguous notation in the Judgments that the Commissioner took any rights to the Mortgage of National Housing, where there is no record evidence that National Housing ever had any rights to the Mortgage, or that National Housing's rights superceded the FDIC Discharge. The Judgments do not attach the unrecorded and purported Assignments related to the subject Property, nor do they reference an assignment of any mortgage from the FDIC or anyone else. Therefore, even if Katz could have found the Judgments, which she didn't, it is indeterminable on the face of the Judgments that, at the time of their entry, any of the parties thereto had any interest in the subject Property.

Notwithstanding that the Judgments were clearly outside the Property's chain of title, the recording of such ambiguous information does not constitute notice to Katz. Massachusetts' case law is rife with examples of similar references being held to be insufficient. In re Daylight Dairy Products, Inc., 125 B.R. 1, 3 (D. Mass. 1991) (reference in recorded second mortgage to unrecorded first mortgage held insufficient); Richardson v. Lee Realty Corp., 364 Mass. 632, 635 (1974) (knowledge of ambiguous facts in related lawsuit insufficient to vitiate bona fide purchaser status); Tramontozzi v. D'Amicis, 344 Mass. 514 (1962) (reference to unrecorded mortgage in probate inventory of seller held insufficient).

Here, all the Commissioner needed to do to protect his purported interest as against subsequent bona fide purchasers such as Katz was to record the Assignments in the Property's chain of title. Richardson v. Lee Realty Corp., 364 Mass. 632, at 635. Instead, the Commissioner recorded the uninformative Judgments where no purchaser of the Property could ever find them. The Commissioner is now seeking to bind Katz by what she could never have found. Massachusetts law does not allow such a result, and the Commissioner must pursue his

claims against the original grantors of the Mortgage, or the entity which purportedly discharged the Mortgage in error. He has no claim under the Mortgage against Katz.

D.  <u>Katz Is A Bona Fide Purchaser Who Took Title To The Property Free Of The Mortgage</u>

While the recorded Discharge is conclusive evidence that the Mortgage was discharged, there is also no evidence in the record, nor any allegation within the four corners of the Commissioner's pleadings, which would suggest that Katz had actual knowledge of the purported pre-discharge Assignments or the recorded Judgments. An unrecorded assignment of mortgage is invalid as against third parties who do not have actual notice thereof, and the party relying upon an unrecorded assignment has the burden of proving actual notice. <u>Tramontozzi v. D'Amicis</u>, 344 Mass. 514 (1962). Here, the undisputed record supports that Katz was a *bona fide* purchaser of the Property who took her title free of the Mortgage.

## IV.    <u>CONCLUSION</u>

For the reasons stated above, the plaintiff, Sandra S. Katz, requests that this Court grant summary judgment in her favor on her declaratory judgment count.

The Plaintiff,
SANDRA S. KATZ

By her attorneys,

Robert B. Gibbons, BBO #631049
Christopher T. Meier, BBO #640995
Mirick, O'Connell, DeMallie & Lougee, LLP
1700 West Park Drive
Westborough, MA 01581
Phone: (508) 898-1501
Fax:    (508) 898-1502

Dated: December 23, 2005

CERTIFICATE OF SERVICE

I, Christopher T. Meier, hereby certify that I have this day served a copy of the foregoing document, by mailing a copy, first class mail, postage prepaid, to all counsel of record.

Christopher T. Meier

Dated: December 23, 2005