UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 05-CV-40014-FDS

| | |
|---|---|
| SANDRA S. KATZ,<br>    Plaintiff, | )<br>)<br>) |
| v. | )<br>) |
| MATTHEW DENN, INSURANCE<br>COMMISSIONER OF THE STATE OF DELAWARE<br>AS RECEIVER OF NATIONAL HERITAGE<br>LIFE INSURANCE COMPANY IN LIQUIDATION<br>    Defendant and Third Party Plaintiff | )<br>)<br>)<br>)<br>)<br>) |
| v. | )<br>) |
| FEDERAL DEPOSIT INSURANCE CORPORATION,<br>UNITED STATES OF AMERICA, E. PERRY KING,<br>ALAN MASON, ALAN MASON LEGAL<br>SERVICES, P.C., ALAN MASON LEGAL SERVICES,<br>INC., ALAN MASON D/B/A ALAN MASON LEGAL<br>SERVICES, P.C., ALAN MASON D/B/A ALAN<br>MASON LEGAL SERVICES, INC., AND ALAN<br>MASON LEGAL SERVICES, P.C. D/B/A ALAN<br>MASON LEGAL SERVICES, INC.,<br>    Third Party Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |
| v.<br>E. PERRY KING AND MANSOUR GAVAL,<br>    Fourth Party Defendants. | )<br>)<br>) |

**MATTHEW DENN'S, INSURANCE COMMISSIONER OF THE STATE OF
DELAWARE, OPPOSITION TO
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

Now comes the Defendant Matthew Denn, Insurance Commissioner of the State of

Delaware, as Receiver of National Heritage Life Insurance Company in Liquidation

("NHL"), and respectfully requests this Honorable Court to deny the Plaintiff's Motion for

Summary Judgment, and instead enter a declaratory judgment in favor of NHL determining that the subject property at 19 Canton Street, Worcester, Massachusetts ("Canton property") is encumbered by the mortgage held by NHL. Declaratory judgment should enter in favor of NHL because (1) NHL held a mortgage interest recorded prior in time to the release relied upon by Katz, and (2) Katz had actual notice of the outstanding mortgage held by NHL prior to her purchase of the subject property. Furthermore, declaratory judgment should be denied Katz since she no longer owns the Canton property, and therefore has no standing to maintain her action for a declaratory judgment against NHL.

## I. FACTS

A.    NHL'S OWNERSHIP OF CANTON LOAN

Matthew Denn is the Insurance Commissioner of the State of Delaware, and is the court appointed[1] Receiver of the National Heritage Life Insurance Company, a Delaware-domiciled life insurance company. NHL was the largest life and health insurance carrier in the United States ever to be declared insolvent. It had 28,000 policy and annuity holders averaging 65 years of age. On May 24, 1994, the Delaware Court of Chancery appointed the Insurance Commissioner for the State of Delaware as receiver of NHL to protect the interests of the policy and annuity holders. This included managing and rehabilitating NHL and its assets. The assets included a bond comprised of mortgage debentures, which in turn consisted of a portfolio of real estate mortgages that served as collateral for that bond, NHL's largest asset, having an alleged face value of $126 million (hereinafter, the "Bond"). The Bond was issued by the National Housing Exchange, Inc. to NHL.

Due to extensive fraud orchestrated by a former corporate officer and by National

---

[1] Chancery Court of the Sate of Delaware in and for New Castle County, CA No. 13530 (1995)

2

Housing Exchange, Inc. and several other corporations, the Insurance Commissioner as Receiver of NHL filed suit against these corporations and defended actions in several states, in order to protect the assets of NHL.    These corporations were found responsible for, among other things, intentionally misrepresenting by inflating the value and performance aspect of the bond sold to NHL by $91 million, and illegally transferring servicing of the bond asset to a dummy-corporation created specifically to avoid the jurisdiction of a court order.

After civil actions were filed in the United States District for the Southern District of New York and Northern District of Illinois and thereafter consolidated in the Northern District of Illinois, judgment entered in favor of the Receiver in these actions.    (See, REPORT AND RECOMMENDATION of United States District Court Magistrate Judge Rebecca R. Pallmeyer, Northern District of Illinois, Exhibit "A" of the Appendix).    As a result of these actions, all right, title, and interest in certain real property, commercial paper, and other loan obligations, were determined to be owned by NHL.    By Court Order, NHL was determined to be the owner of the liquidated assets for purposes of distributing the proceeds from the sale of those assets among NHL's former policy-holders.

The Canton Property, the subject of this current action, is one of the real estate mortgages listed as an asset held by NHL.

Thereafter, even though NHL's interests had been confirmed by other courts, the record title to the Massachusetts mortgages, real estate, foreclosure documents, and other assets covered by the various judgments and orders did not properly identify the rightful owner, NHL.

NHL then sought recognition of the foreign judgments aforementioned in order to succeed to, and perfect, its record title of its property located in the Commonwealth of Massachusetts. The Insurance Commissioner of Delaware as Receiver of NHL filed a civil action in the Superior Court Department seeking to have the foreign judgments recognized for purposes of enforcing the same. The Massachusetts Trial Court Department, Superior

Court, Suffolk County, entered judgment for NHL domesticating these foreign judgments and thereby recognizing NHL's ownership of, rights to any and all proceeds therefrom, and title to real property and the loan obligations listed in the following judgments:

1) The Chancery Court of the State of Delaware in and for New Castle County Liquidation and Injunction Order in Civil Action No. 13530, dated November 21, 1995;

2) The United States District Court, Northern District of Illinois, Eastern Division's Amended Declaratory Judgment Order in No. 95 C 4243, dated April 12, 1996, nunc pro tunc, April 3, 1996;

3) The United States District Court, Northern District of Illinois, Eastern Division's Revised Order Regarding Massachusetts Mortgages No. 95 C 4243, dated February 20, 1997;

4) The United States District Court, Northern District of Illinois, Eastern Division's Order Particularly Identifying the I-250 Assets No. 95 C 5253 dated February 7, 1997;

5) The United States District Court, Northern District of Illinois, Eastern Division's Revised Order Regarding Additional Massachusetts Mortgages No. 95 C 4243, dated April 15, 1997.

(Copies of the two Superior Court Judgments by Default in Civil Action 97-02013 B, are attached hereto as Exhibits E and F.)

Each of the judgments of the U.S. District Court included an index outlining each asset subject to the orders of the courts by county and with recording information of the asset.

B.    CONCISE STATEMENT OF MATERIAL FACTS OF RECORD DEMONSTRATING THE EXISTANCE OF GENUINE ISSUES TO BE TRIED

On January 27, 1988, Perry King and Terry King ("the Kings") executed a Promissory Note to The Home National Bank of Milford in the amount of $112,000.00, and granted a mortgage to The Home National Bank of Milford in the amount of $112,000.00.

4

The mortgage is recorded at the Worcester County Registry of Deeds, Book 11097 Page 122. (Hereinafter, "Canton Mortgage"). (Copies of the Promissory Note and Canton Mortgage are attached as Exhibits A and B).

On June 1, 1990, the FDIC recorded a Declaration of Insolvency and Appointment of Receiver for The Home National Bank of Milford in the Worcester County Registry of Deeds, Book 12875 Page 161. Complaint of Katz ¶6.

On March 29, 1994, the FDIC assigned the Canton Mortgage to South Star Management Company, Inc.. ("South Star") (Copy of South Star Assignment attached as Exhibit C).

On March 18, 1994, South Star assigned the Canton Mortgage to National Housing Exchange, Inc. ("NHE")(Copy of NHE Assignment attached as Exhibit D).

On September 15, 1997, and on October 21, 1997, NHL recorded the two Massachusetts default judgments from the Superior Court Department, Suffolk County, which judgments domesticated the foreign judgments and orders from Delaware and the United States District Court in Illinois, at the Worcester County Registry of Deeds which contained specific reference to the Canton Property and the Canton Mortgage.[2] (Copies attached as Exhibits E and F). The default judgments are recorded at Book 19167 Page 306, and Book 19273, Page 342, respectively. These documents are self-indexed, and list all real estate mortgages in Massachusetts determined to be owned by NHL by county, mortgagor, property address, and recording information. For the Canton Property, the following is

---

[2] In the Motion for Summary Judgment filed by Katz, Attorney Christopher Meier's affidavit is attached in support of Katz's motion. Meier's affidavit states it contains copies of the default judgments, but instead only has the first page of each default judgment. The list of mortgages appended to each default judgment was not included in Meier's affidavit.

listed: the name of the Mortgagor, King; address, 19 Canton Street, Worcester, Worcester

County, and reference to the Canton Mortgage recording information: Document # 7662,

Book 11097, Page 122. See Exhibits E and F.

On October 15, 1998, the Superior Court Department, Worcester County, entered

Judgment by Default against the Kings and in favor of NHL in Civil Action WOCV1998-

00897. Through that civil action, NHL sought to collect from the Kings through the

Promissory Note secured by the Canton Mortgage obligation. See Exhibit G, Complaint of

NHL and Judgment by Default. After in-hand service, both defendants were defaulted. The

Complaint of NHL contained factual information outlining that the FDIC had assigned the

Canton Mortgage to South Star. The Complaint of NHL also had a copy of the South Star

Assignment and a copy of the NHE assignment attached thereto. See Exhibit G. Through

the Complaint of NHL, notice was given to the Kings that the Canton Mortgage had been

assigned by the FDIC. See Exhibit G.

In July, 2002, the Kings and Attorney Alan Mason forwarded affidavits to the FDIC,

suggesting that the Canton Mortgage had been satisfied by "normal payoff" in August, 1991.

See Exhibit H, Affidavits of the Kings and Mason.

On July 19, 2002, the FDIC recorded a Satisfaction of Mortgage at the Worcester

County Registry of Deeds, Book 27135 Page 365.

On January 28, 2004, Sandra Katz purchased the Canton Property from the Gavals

for the purchase price of $205,000.00. On October 26, 2004, Katz filed the Complaint in

this action in the Worcester Superior Court seeking a declaratory judgment. On March 18,

2005, Katz deeds the property to a third party, Fatu Miller, for consideration of $300,000.00.

See Exhibit I.

Katz had knowledge of the outstanding title problems at the time of her purchase of the property in January 28, 2004. The Gavals sold the Canton Property to Katz "at a lower resale value than what could have been obtained if there were no existing encumbrances". See Exhibit J, Complaint of Gaval at ¶15, and Exhibit K, Affidavit of Gavals, ¶9.[3] Katz purchased the property at a reduced price due to the outstanding title problems on the Canton Property. See Exhibits J and K.

## II. ARGUMENT

A.    STANDARD FOR REVIEW

In order for a court to review a request for declaratory judgment, an "actual controversy" sufficient to withstand a motion to dismiss must appear on the pleadings. G.L.c. 231A, § 1. Even if there is an actual controversy, a plaintiff must demonstrate the requisite legal standing to secure the resolution of the controversy. Hillman v. Second Bank-State St. Trust Co., 338 Mass. 15, 19, 153 N.E.2d 651 (1958). The question whether an actual controversy exists is closely related to the issue of standing. South Shore Nat'l Bank v. Board of Bank Incorporation, 351 Mass. 363, 366- 367, 220 N.E.2d 899 (1966).

"The purpose of both the actual controversy and the standing requirements is to ensure the effectuation of the statutory purpose of G. L. c. 231A, which is to enable a court "to afford relief from . . . uncertainty and insecurity with respect to rights, duties, status and other legal relations." G. L. c. 231A, s 9. Such proceedings are concerned with

---

[3] The Affidavit of Steve Nader Gaval and Mansour Gaval was filed in the Worcester Superior Court Department as part of pending litigation in a civil action. As part of their affidavit, the Gavals describe the damages they suffered resulting from the unsatisfied encumbrances, including the Canton Mortgage, in their sale of that property to Katz.

the resolution of real, not hypothetical, controversies; the declaration issued is intended to have an immediate impact on the rights of the parties." Massachusetts Association of Independent Ins. Agents & Brokers, Inc. v. Commissioner of Ins., 373 Mass. 290, 367 N.E.2d 796 (1977).


B.    SINCE KATZ RECENTLY SOLD THE CANTON PROPERTY, SHE HAS NO
       STANDING TO MAINTAIN THIS ACTION

       In order to maintain this action for declaratory judgment under G.L.c. 231A §1, Katz must meet the requirement of standing. Prior to issuing a declaratory judgment, this Court must be satisfied that the plaintiff has demonstrated that an actual controversy exists and that she has legal standing to sue. District Atty. For Suffolk Dist. V. Watson, 381 Mass. 648, 412 N.E.2d 325 (1980).[4]

       By merely requesting relief pursuant to G.L.c. 231A §1, standing has not been established. The requirement of standing is not avoided by a prayer for declaratory relief. Doe v. Governor, 381 Mass. 702, 412 N.E.2d 325 (1980). Although the standing requirements under declaratory judgment statute should be liberally construed, there are limits to the matters that can be heard in an action for a declaratory judgment. Enos v. Secretary of Enviornmental Affairs, 432 Mass. 132, 731 N.E.2d 525 (2000). An actual controversy necessary for a declaratory judgment action exists, where there is a real dispute caused by one party's assertion of a legal relation, status, or right in which he has a definite interest, and the denial of such assertion by another party also having a definite interest in

---

[4] Katz states at page 4 of her Motion for Summary Judgment that "the parties agree that there exists an actual controversy between them as to their rights and obligations under the Mortgage." This statement is now disputed by NHL since Katz's status as a property owner has changed since the inception of this civil action.

the subject matter. <u>Gay & Lesbian Advocates & Defenders v. Attorney General</u>, 436 Mass. 132, 763 N.E.2d 38 (2002).

When Katz initiated this civil action in October, 2004, Katz was the owner of the Canton Property.  Complaint of Katz.  By selling the Canton Property to a third party in March, 2005, Katz terminated her interest in the real estate, thus destroying her standing to maintain an action for declaratory relief.  See Exhibit I.  <u>Hillman v. Second Bank-State Street Trust Co.</u>, 338 Mass. 15, 19, 153 N.E.2d 651, 653 (1958) (holding that even though a controversy may exist, a person who has no interest in the subject matter of the controversy is not entitled to seek declaratory relief.)  Furthermore, the record holder of title for the Canton Property has not been made a party to this action, and Katz cannot maintain an action on behalf of the third party.  See, <u>Uliasz v. Gillette,</u> 357 Mass. 96, 256 N.E.2d 290 (1970) (All parties who were entitled to be heard on issue of ownership of real property must be present in court before a declaratory judgment will be entered by the court.)  See also, <u>Kilroy v. O'Connor</u>, 324 Mass. 238, 241-243, 85 N.E.2d 441, 442-443 (1949)(Request for declaratory relief properly denied when all persons having interest in controversy were not made parties to proceeding).

As the plaintiff in <u>Hillman</u>, Katz has no interest in the subject matter of the controversy.  In October, 2004, when this present litigation was initiated, Katz was the owner of the Canton Property.  In March, 2005, Katz sold the Canton Property to another person, terminating her interest in the real estate.  See Exhibit I.  The real property was transferred by quitclaim deed without any reservation of interest to the title by Katz. Therefore, Katz is not entitled to relief in the form of a declaratory judgment.

C.    KATZ HAD STATUTORY CONSTRUCTIVE NOTICE OF NHL'S INTEREST

Katz's claim for ownership rests upon a discharge of mortgage issued by FDIC and recorded by the FDIC on June 19, 2002.   Since the default judgments of NHL were recorded five years prior to the recording of the discharge of mortgage, Katz's title is subject to NHL's interest.[5] See G.L.c. 183 §4. Each default judgment contains specific reference to the properties encumbered by the judgment in questions.  See Exhibits E and F.

G.L.c. 183 §4 was enacted to permit persons to learn of the condition of title to a parcel of land and to protect purchasers from conveyances which are not recorded and of which they have no notice.  Lamson & Co. v. Abrams, 305 Mass. 238, 25 N.E.2d 374 (1940).  HRPT Advisors, Inc. v. MacDonald, Levine, Jenkins & Co., 43 Mass.App.Ct. 613, 686 N.E.2d 203 (1997).

"A deed is considered to be recorded when it is noted by the recording officer as having been received for recording, if the recording officer "places upon it his certificate that it has been so received, even though he afterwards fails in his duty, by recording it inaccurately . . . or even by altogether suppressing it from the records, yet, in contemplation of law, the whole world has constructive notice of it, just the same as if it had been accurately copied in full upon the records." King v. Stephens, 9 Mass.App.Ct. 919, 404 N.E.2d 115 (1980), citing to Gillespie v. Rogers, 146 Mass. 610, 612, 16 N.E. 711, 714 (1888). "Human fallibility is bound to account for some instruments either being

---

[5]  Katz makes a sweeping statement that "the Commissioner apparently recognizes that his remedy lies with the third-party defendants, not with Katz."  Motion for Summary Judgment, p. 3.  It is an elementary proposition of law that "a party may also state as many separate claims or defenses as the party has regardless of consistency…" F.R.C.P. Rule 8(e)(2).  Therefore, the existence of a Third Party Complaint against other parties can in no way be construed against NHL as an admission that NHL recognizes that its "remedy lies with the third-party defendants, not with Katz."  Plaintiff's Motion for Summary Judgment, p. 3.

never transcribed, or transcribed in a wrong book. Some courts stress the fact that the recording grantee has done all that he can do, and give him the benefit of recordation in these circumstances." 6 Powell, Real Property par. 918, at 298.2 (1979). <u>King</u>, supra.  See also <u>Sykes v. Keating,</u> 118 Mass. 517 (1875).

As the plaintiff in <u>National Lumber Co. v. Lombardi</u> was found to have properly caused notice to be recorded, NHL presented the attested copy of the declaratory judgments to the registry for filing. See Exhibits E and F.  The judgments of the United States District Court contain an index of all properties in the county affected by the order with reference to the mortgagor, street address, and recording information for the mortgage.  Under these circumstances, NHL "did everything it reasonably could to achieve the requisite recording, was not obligated to follow up or supervise the performance by registry officials of their duty to record the instrument in a timely manner, could properly presume that those officials would perform their duties in accordance with their statutory obligations, and did not lose its lien as a result of those officials' failure or neglect of duty." See, <u>National Lumber Co. v. Lombardi</u>, 64 Mass.App.Ct. 490, 834 N.E.2d 267 (2005).

Katz has misplaced her reliance on G.L.c. 183, §54, which provides that a discharge of mortgage by an entity is valid even though previously an unrecorded assignment was transferred to another party.  Her reliance on § 54 sidesteps the recordation of the default judgments by NHL, which were recorded five years prior to the recording of the discharge.  The recording of the default judgments effectuated the transfer of the mortgage rights to NHL, as directed in the recorded court orders.  See Exhibits E and F.  The actions directed by the court orders resulted in the vesting of title

11

in NHL, as otherwise described in G.L.c. 183, §§43 and 44.[6]  Katz's argument that §54

precludes recovery by NHL is not legally tenable in light of G.L.c. 183, §4.

D.    PRIOR TO PURCHASING THE CANTON PROPERTY, KATZ HAD ACTUAL
NOTICE OF NHL'S INTEREST

Katz has alleged in her affidavit that she had no knowledge of a "mortgage recorded

against the Property had purportedly been assigned by the FDIC".  ¶4 of Katz's Affidavit.

This statement contradicts facts stated by Steve Nader Gaval and Mansour Gaval, who sold

the property to Katz.  See Exhibit J, Complaint of Gaval, ¶15.  Specifically, the allegation of

the Gavals is that the Canton Property was sold to Katz at a "lower resale value than what

could have been obtained if there were no encumbrances".  Exhibit J, Complaint of Gaval,

¶15.  Exhibit K, Affidavit of Gavals.  Indeed, Exhibit D of the Gaval Complaint outlines

reference to the outstanding mortgage, through Sterling & Locke, the collection agent for

NHL.  The allegations made by the Gavals in their complaint, at minimum, raise a question

of fact as to whether Katz had knowledge of the mortgage interest held by NHL.

By purchasing the Canton Property for a reduced value, and being told of the

---

[6] G.L.c. 183, §43, Vesting of title, states:
Whenever a final decree in equity shall be made by the supreme judicial,
superior, probate or land court directing that a deed, conveyance or
release of any real estate or interest therein shall be made, and the
party directed to make such deed, conveyance or release does not duly
execute it within the time specified in the decree, the decree itself
shall operate to vest title to the real estate or interest in the party
entitled thereto by the decree as fully and completely as if such deed,
conveyance or release had duly been executed by the party directed to
make it.

G.L.c. 183, §44 states:
The recording or registration of a duly certified copy of such decree,
attested by the clerk, assistant clerk, register or assistant register,
recorder or deputy recorder, as the case may be, of the court where made,
in the registry of deeds of the district where said real estate is
situated, shall have the same force and effect as if a duly executed deed,
conveyance or release had so been recorded or registered.

encumbrances against the property, the conveyance to Katz is subject to the ownership

interest of NHL. If a buyer has "information of a defect in the title" prior to a conveyance of

title, the Buyer's interest is subject to that defect. Stark v. Boynton 167 Mass. 443, 45 N.E.

764 (1897). Massachusetts operates under a 'notice' recording act, as adopted at G.L. c. 183,

§4. Actual notice of a prior unrecorded interest defeats a subsequently recorded interest; the

mortgagee is charged to have actual notice of the unrecorded interest. G.L. c. 183, §4,

*"Effect of recordation or actual notice of deeds or leases, or of assignment of rents or*

*profits"*, establishes the "actual notice" standard, as follows:

> A conveyance of an estate in fee simple, fee tail or for life, or a lease for more than
> seven years from the making thereof, or an assignment of rents and profits from an
> estate or lease, shall not be valid as against any person, **except the grantor or lessor,**
> **his heirs and devisees and persons having actual   notice of it**, unless it, or an
> office copy as provided in section thirteen of chapter thirty-six, or, with respect to
> such lease or an assignment of rents and profits, a notice of lease or a notice of
> assignment of rents and profits, as hereinafter defined, is recorded in the registry of
> deeds for the county or district in which the land to   which   it   relates   lies.
> (Emphasis added)

"The clause relating to persons having actual notice thereof was intended substantially to

confirm the decisions which had been made theretofore, and which had placed such persons

in the same condition as if they had had the notice which was to be given by the registry.

This would be constructive notice;  and the actual notice, however, given or obtained, is

equivalent to the constructive notice which is given by the recording ..." Curtis v. Mundy,

44 Mass. (3 Metc.) 405, 406 (1841); Dudley v. Sumner, 5 Mass. 438, 450 (1809).

Intelligible information of a fact, either verbally or in writing, and coming from a

source which a party ought to give heed to, is generally considered as notice of it, except in

cases where particular forms are necessary. In this case no particular form is necessary."

George v. Kent , 89 Mass. (7 Allen) 15, 18 (1863).  Since actual notice of certain facts

destroys a status of a party as a bona fide purchaser for value, reformation should occur to remedy a mutual mistake. General Builders Supply Co. v. Arlington Co-op. Bank, 359 Mass. 691, 271 N.E.2d 342 (1971). Reformation should occur when one party has actual notice of the correct facts. Reformation of instrument may be warranted not only by fraud or by mutual mistake, but also by mistake of one party which is known to other party. Torrao v. Cox, 26 Mass.App.Ct. 247, 525 N.E.2d 1349 (1988). Reformation of a recorded document should occur when a party has actual notice of facts, which he chooses to ignore. Buk Lhu v. Dignoti, 431 Mass. 292, 727 N.E.2d 73 (2000). Since Katz had notice of NHL's interest in the Canton Property prior to her purchase of the property, this Court should enforce the mortgage interest held by NHL. See Exhibits J and K.

## III. CONCLUSION

For the reasons outlined above, NHL respectfully requests this Honorable Court to deny the Plaintiff's Motion for Summary Judgment, deny the request for summary judgment on NHL's counterclaims, and instead grant a declaratory judgment to NHL determining that the Canton property is encumbered by the mortgage held by NHL, and for such other and further relief as this Court deems just and proper.

Respectfully submitted,
Matthew Denn,
Insurance Commissioner of
the State of Delaware As
Receiver of National Heritage
Life Insurance Company in

By his attorneys,


James F. Creed, Jr.
BBO#552138
Sara D. Trupe Cloherty
BBO#632528
CREED & FORMICA
1329 Highland Avenue
Needham, MA 02492
(781) 449-4600

Dated: 1|20|06

CERTIFICATE OF SERVICE

I hereby certify that on this date, I caused a true copy of the within document to be served by first class mail to:

Robert B. Gibbons, Esq.
Christopher T. Meier, Esq.
Mirick, O'Connell, DeMallie & Lougee, LLP
100 Front Street
Worcester, MA  01608

Anita Johnson
Assistant U.S. Attorney
U.S. Attorney's Office
Moakley United States Courthouse
One Courthouse Way – Suite 9200
Boston, MA  02210

Paul D. Maggioni, Jr.
FDIC, Legal Services Office
New York Legal Services Office
20 Exchange Place
 New York, NY  10005

Nancy C. Serventi, Esq.
McDonough, Hacking, & Lavoie, LLP
6 Beacon Street, Suite 815
Boston, MA  02108

Timothy Wickstrom, Esq.
Tashjian, Simsarian & Wickstrom
370 Main Street
Worcester, MA  01608

Dated: 1/20/06

_____
James F. Creed Jr.

16

LOCAL RULE 7.1 CONFERENCE

I hereby certify that on January 10, 2006, Sara D. Trupe Cloherty conferenced with the following counsel regarding the Motion for Extension of Time to File Opposition, in an effort in good faith to resolve or narrow the issues presented therein: Christopher Meier, Esq.

Dated: 1\20\06

_____
James F. Creed Jr.

"A"




EXHIBIT

A

PROMISSORY NOTE

FOR VALUE RECEIVED, the undersigned, jointly and severally, promise to pay to THE HOME NATIONAL BANK OF MILFORD, a banking association duly established under the laws of the United States of America, or order, at said Bank, or such other place as the holder of the Note may designate, the principal sum of ONE HUNDRED TWELVE THOUSAND AND 00/100 ($112,000.00) DOLLARS, IN TWENTY (20) YEARS, with interest computed daily at a rate of TEN AND THREE QUARTERS (10.75%) PERCENT PER ANNUM on all unpaid balances of said principal sum, with monthly payments of principal and interest of ONE THOUSAND ONE HUNDRED THIRTY SEVEN AND 07/100 ($1,137.07) DOLLARS made on the 27th day of each month and continuing on the 27th day of each month thereafter until all principal and interest is paid in full. Notwithstanding the foregoing sentence, the holder of this Note shall have the right to adjust the rate of interest payable hereunder one (1) YEAR from the date of this Note and every one (1) YEAR thereafter. In the event that an adjustment is to be made in the interest rate, the holder shall give the maker at least 15 days written notice prior to the effective date of the adjustment and shall include an explanation of the adjustment and the notice. Failure by the Bank to notify the maker of this adjustment does not preclude the Bank from making this adjustment. The adjustment shall be made to a rate of TWO (2%) PERCENT above the then current base loan rate of The First National Bank of Boston. Any adjustment shall be effected by an increase or decrease, as the case may be, in the periodic payment amounts commencing with the first payment due after the effective date of the change. A fee of $187.00 shall be paid by the Borrower at the time of the loan closing.

Each payment shall be credited first to interest than due, and the remainder to principal. The mortgage given hereunder is also to secure any future advances, and it is agreed by the Borrower that any future advances are deemed to be given in contemplation of this loan.

If this note is prepaid within three (3) years from the date hereof, such prepayment shall be accompanied by a charge equal to a percentage of the then outstanding principal balance which percentage, to the extent permitted by law, shall be three (3%) percent for the period of one (1) year from the date hereof and shall decrease by one percent (1%) on each anniversary date of this Note to one (1%) percent in the third (3rd) year.

This Note is secured by a Mortgage and Security Agreement of the Borrower of even date herewith (the "Mortgage") covering certain real estate located at 19 Canton Street, Worcester, County of Worcester, Massachusetts, (the "Mortgaged Premises".), which, together with any other instrument securing this Note, being hereinafter collectively referred to as the

"Security Instruments". This Note is entitled to the benefits of the Security Instruments and specific reference is hereby made to such instruments for all purposes.

Upon occurrence of (which events shall be an Event of Default hereunder):

(i) the failure of Borrower to make any payment hereunder within thirty (30) days after the same is due or

(ii) an Event of Default as described and defined in any of the Security Instruments, or any other instrument evidencing any indebtedness of the Borrower to the Lender and the expiration of any period provided in such instrument to cure such default, then the holder hereof may declare the entire unpaid principal balance hereunder immediately due and payable without notice, demand or presentment and may exercise any of its rights under the Security Instruments. In the event that the Lender or any subsequent holder of this Note shall exercise or endeavor to exercise or endeavor to exercise any of its remedies hereunder or under the Security Instruments, the Borrower shall pay on demand all reasonable costs and expenses incurred in connection therewith, including, without limitation, reasonable attorney's fees and the Lender may take judgement for all such amounts in addition to all other sums due hereunder, Irrespective of the exercise or non-exercise of any of the aforesaid rights, if any payment of principal or interest hereunder is not paid in full within fifteen (15) days after the same is due, the Borrower shall pay to the Lender a late charge on such unpaid amount equal to five (5%) percent of such late payment.

The Borrower waives presentment for payment, protest and demand, and notice of protest, demand and/or dishonor and non-payment of this Note, notice of any Event of Default under the Security Instruments except as specifically provided therein, and all other notices or demands otherwise required by law that the Borrower may lawfully waive. The Borrower expressly agrees that this Note, or any payment hereunder, may be extended from time to time, without in any way affecting the liability of the Borrower. No unilateral consent or waiver by the Lender with respect to any action or failure to act which, without consent, would constitute a breach of any provision of this Note shall be valid and binding unless in writing and signed by the Lender.

The rights and obligations of the Borrower and all provisions hereof shall be governed by and construed in accordance with the laws of the Commonwealth of Massachusetts.

All agreements between the Borrower and the Lender are hereby expressly limited so that in no contingency or event whatsoever, whether by reason of acceleration of maturity of the indebtedness evidenced hereby or otherwise, shall the amount paid or agreed to be paid to the Lender for the use, forbearance or detention of the indebtedness evidenced hereby exceed the maximum

"B"




## MORTGAGE

  E. PERRY KING AND TERRY A. KING (the "Mortgagor"), having a principal place of business at  188  Route  146 Sutton, Massachusetts, FOR CONSIDERATION PAID GRANT(S) TO THE HOME NATIONAL BANK OF MILFORD, a national banking association (the "Mortgagee"), whose address is 221 Main Street, Milford, Worcester County, Massachusetts 01757;

WITH MORTGAGE COVENANTS, to secure the payment of the indebtedness described in Paragraph 10 below (the "Obligation"), the property described in Exhibit A annexed hereto and by this reference made a part hereof (the "Property"):

Together with (a) insofar as the same are or can by agreement of the parties be made a part of the Property, all fixtures and appliances now or hereafter attached to, placed on, installed in or used in any way in connection with the Property and/or buildings and structures thereon, including without being limited to, portable or sectional buildings; screens, awnings, screen doors, storm and other detachable windows and doors; window shades and blinds; inlaid or attached floor coverings; boilers, tanks, furnaces, radiators, water heaters, elevators, fire and other alarm systems, cooling towers and compressors; heating, lighting, plumbing, gas, electric, ventilating, refrigerating, air conditioning, ice making, sprinkler and incinerating controls, apparatus and equipment; garbage and trash incinerators and receptacles, ovens, boilers, stoves, refrigerators, dishwashers, washing machines, driers, television antennas; fences and partitions; trees and hardy shrubs; all of which fixtures, including accessories and additions thereto and replacements thereof, are hereby declared and shall be deemed to be accessory to the freehold and a part of the Property as between the parties hereto, their successors and assigns and all persons claiming by, through, or under them, and shall constitute security for the Obligation and be subject to this Mortgage; (b) all improvements now or hereafter erected on the Property; and (c) all easements, rights, appurtenances, rents, water and water rights.

All of the foregoing being hereinafter sometimes referred to as the "mortgaged premises."

AND Mortgagor (a) herewith assigns to Mortgagee all future rents and profits from the mortgaged premises, provided, however, until default under the Obligation, this Mortgage, or the other instruments securing the Obligation or otherwise executed in connection therewith, Mortgagor may continue to collect and retain such rents and profits as they become due and payable; (b) shall perform and observe all the obligations imposed upon it under any lease of the mortgaged premises or any portion thereof, and shall not do, or permit to be done, anything to impair the security thereof; and, in addition to the obligations contained

BOOK 11097 PAGE 123

elsewhere herein, if such leases shall include any residential units, Mortgagor shall conform to any law or regulation applicable thereto; and (c) agrees that if the Obligation shall become due and payable in accordance with the terms hereof, it will, upon demand of the Mortgagee, assign any and all leases of the mortgaged premises then existing to the Mortgagee, and agrees that after such assignments Mortgagee may modify and otherwise deal with such leases as if the owner of the mortgaged premises.

The Mortgagor, for the Mortgagor and the Mortgagor's successors and assigns, covenants and agrees in addition to the STATUTORY CONDITION:

1. To keep the buildings, structures, improvements and fixtures now or hereafter standing on the mortgaged premises insured against fire with extended coverage and/or such other perils as the Mortgagee shall reasonably request in such amounts and companies and in such forms as shall be satisfactory to the Mortgagee, all insurance to be for the benefit of and payable in case of loss to the Mortgagee and the Mortgagor as their interests may appear of record and to contain a provision that it shall not be cancelled or modified without at least ten (10) days prior written notice to the Mortgagee; to pay or cause to be paid when due all premiums for such insurance and, upon demand, to pay the same to the Mortgagee in the manner provided in Paragraph 2 with respect to taxes; that the Mortgagee is hereby authorized, at the expense of the Mortgagor, to obtain and/or renew any such insurance, and to do all necessary acts therefor in the name of the Mortgagor; to do no act, nor suffer any to be done, that shall cause, directly or indirectly, any such insurance to be void or vacated in whole or in part; and to deliver to the Mortgagee, at any time upon the Mortgagee's request, all insurance policies or memoranda thereof and to deliver to the Mortgagee new policies or memoranda thereof for any insurance about to expire at least ten (10) days prior to such expiration (hereby granting to the Mortgagee in the event of foreclosure, full authority, as attorney irrevocable of the Mortgagor, to cancel such insurance and retain the return premiums thereof and apply the same to the satisfaction of the Obligation or to transfer such insurance to any person claiming title to the mortgaged premises or any part thereof by virtue of foreclosure proceedings).

2. To pay or cause to be paid when due all taxes, charges, assessments and rates with respect to the mortgaged premises to whomsoever laid or assessed; and, upon demand, to deposit with Mortgagee on each day that periodic payments are required by the terms of the Obligation, in addition to the payments of principal and interest provided therein, a sum equal to such fraction of the real estate taxes and betterment assessments for each year as shall be estimated by Mortgagee to be sufficient to provide in the aggregate, a sum adequate to pay said taxes and betterment assessments as and when they become due and payable, and, in addition, to deposit with Mortgagee any balance necessary to pay

BOOK 11097 PAGE 124

in full said taxes and betterment assessments prior to the date when such taxes or betterment assessments become due and payable; and to forward to the Mortgagee real estate tax bills as soon as the same have been received by Mortgagor.

3. That the Mortgagor will not further encumber the mortgaged premises; and that, in the event the ownership of or title to the mortgaged premises or any part thereof shall become vested in any person other than the Mortgagor without the prior written consent of the Mortgagee, then at any time thereafter, at the option of the Mortgagee, the Obligation shall become due and payable on demand, and the Mortgagee may, without notice to the Mortgagor, deal with any successor in interest with reference to the Mortgage and the Obligation in the same manner as with the Mortgagor without in any way vitiating or discharging the Mortgagor's liability hereunder or upon the Obligation. No sale of the mortgaged premises, no forbearance on the part of the Mortgagee, no extension (whether oral or in writing) of the time for the payment and satisfaction of the whole or any part of the Obligation, and no other indulgence given by the Mortgagee to any person other than the Mortgagor, shall operate to release or in any manner affect the original liability of the Mortgagor, notice of any thereof being waived. The proceeds of any award for damages in connection with any condemnation or other taking of the mortgaged premises or any part thereof, or for conveyance in lieu of condemnation are hereby assigned and shall be paid to the Mortgagee. If the mortgaged premises are abandoned by the Mortgagor or if the Mortgagor fails, after thirty (30) days written notice from the Mortgagee to negotiate a reasonable settlement with the condemnor of an offer to make an award, the Mortgagee is authorized to collect and apply the proceeds of such an award at Mortgagee's option either to the restoration or repair of the mortgaged premises or to the Obligation.

4. That Mortgagee is hereby authorized at its option to pay all costs and expenses which it in good faith determines to be required or desirable to effect compliance with the agreements of the Mortgagor set forth herein or in the Obligation or to protect or maintain the mortgaged premises or Mortgagee's interest therein, such authorization to be in addition to and not in limitation of the rights of Mortgagee under law and under other applicable provisions hereof; and any sum so expended shall be deemed to be a principal advance and shall be equally secured with and be a part of the Obligation.

5. That the Mortgagor is now in a solvent condition and no bankruptcy or insolvency proceedings are pending or contemplated by or against the Mortgagor; and that the Obligation, this Mortgage and the other instruments securing the Obligation or otherwise executed in connection therewith are valid and binding obligations enforceable in accordance with their respective terms and the execution and delivery thereof do not contravene any contact or agreement to which the Mortgagor is a party or by which the Mortgagor or any of the Mortgagor's properties may be

BOOK 11097 PAGE 125

bound or any law, order, decree or regulation to which the Mortgagor is subject.

6. To keep the mortgaged premises in the same repair, order and condition as the same now are or may hereafter be put, reasonable wear and tear only excepted; not to permit or suffer any strip or waste of the mortgaged premises, nor any material change therein, nor any violation of any law or ordinance affecting the same or the use thereof; not to allow to lapse or be revoked any licenses or other governmental authorizations issued to Mortgagor or to any affiliate for the operation of any business on the mortgaged premises; to permit Mortgagee, upon reasonable notice to Mortgagor, to make entry upon and inspect the mortgaged premises; and Mortgagor shall, at Mortgagee's request at reasonable intervals, demonstrate compliance with this and other covenants of this Mortgage.

7. At the option of the Mortgagee, the Obligation shall become immediately due and payable, without notice or demand (a) upon the sale or transfer of any substantial portion of the mortgaged premises (and for purposes of the foregoing, both a transfer of a substantial portion of the beneficial ownership of the Mortgagor and a lease of any substantial portion of the mortgaged premises to or for the benefit of a single lessee for a term (including renewal or option periods) in excess of one (1) year, shall constitute such a sale or transfer giving the Mortgagee the right to accelerate hereunder); (b) in the event of a default in the performance or observance of the terms and provisions of the Obligation, this Mortgage and the other instruments securing the Obligation or otherwise executed in connection therewith; (c) in the event of a default under any other agreement of the Mortgagor in favor of the Mortgagee, whether now existing or hereafter arising;or (d) in the event of a default in the payment of the principal of or the interest on any other indebtedness of the Mortgagor continued for a period sufficient to permit the acceleration of the maturity of such indebtedness. Any forbearance by the Mortgagee in exercising any right or remedy hereunder or otherwise afforded by applicable law shall not be a waiver of or preclude the exercise of any such right or remedy. All remedies provided herein, in the Obligation and other instruments securing the Obligation shall be deemed to be cumulative remedies and may be exercised in any manner the Mortgagee elects.

8. That if any legal proceedings of any nature shall involve the Mortgagee's interest under this Mortgage, however such proceedings shall be commenced and whether or not such proceedings shall be completed, or if the Mortgagee shall enter into possession of the mortgaged premises, then the Mortgagee shall be entitled to collect (and the Mortgagor agrees to reimburse the Mortgagee on demand for) all costs and expenses, including attorneys' fees, incurred by the Mortgagee in any such proceeding or in the protection, care or management of the mortgaged premises; the Mortgagee shall be entitled to purchase the mortgaged premises at

BOOK 11697 PAGE 126

any foreclosure sale; and that if surplus proceeds are realized from a foreclosure sale, the Mortgagee shall not be liable for any interest thereon pending distribution of such proceeds by the Mortgagee.

9. That, if the Mortgagee exercises the POWER OF SALE herein contained, then: the Mortgagee may sell the mortgaged premises in parcels; such sales may be held from time to time and said Power of Sale shall not be exhausted until all of the mortgaged premises shall have been sold, notwithstanding the Mortgagee's releasing, from time to time, certain such parcels which are a part or parts of the mortgaged premises; the Mortgagee may do all things and take any action, all in the name of the Mortgagor, which may be necessary to subdivide the mortgaged premises or any parcel included therein; and the Mortgagee may sell any or all of such parcels then subject to this Mortgage, notwithstanding that the proceeds of such sales may exceed the obligations secured by this Mortgage.

10. That this Mortgage is to secure the payment of the sum of $ 112,000.00, together with interest thereon and all other charges, all as provided in a promissory note and/or guarantee of even date herewith given by Mortgagor to Mortgagee and also to secure the performance of all agreements and conditions herein contained and all other obligations now existing or hereafter arising of Mortgagor to Mortgagee, direct or indirect, absolute or contingent, as well as all other sums (with interest at the rate provided in said promissory note) advanced to or on behalf of Mortgagor by Mortgagee for any purpose, whether dependent or independent of this transaction, all of which shall be equally secured with and have the same priority as the original advance hereunder.

11. Other:

BOOK 11897 PAGE 127

This Mortgage is upon the STATUTORY CONDITION, and upon the further condition that all agreements and covenants of the Mortgagor contained in the Obligation, in this Mortgage and in the other instruments securing the Obligation or otherwise executed in connection therewith, shall be kept and fully performed as therein provided, for any breach of which the Mortgagee shall have the STATUTORY POWER OF SALE.

IN WITNESS WHEREOF, the Mortgagor has executed this Mortgage under seal this_____27th_____day of_____Jun_____, 19 88

_____
E. PERRY KING                    (Borrower)

_____
TERRY A. KING                    (Borrower)

Commonwealth of  Massachusetts                    Jun 27 ,19 88

 WORCESTER, SS.

Then personally appeared the above-named  E. PERRY KING AND TERRY A.  KING  and acknowledged the foregoing instrument to be their free act and deed, before me.

_____
Notary Public

My Commission Expires_____6/10/88

SCHEDULE A

Worcester, Worcester County, Massachusetts, in the southerly part thereof, in the section known as Irvington, on the southerly side of Canton Street, shown as Lot 17 on a plan of lots drawn for the Ballard Land Company by Buttrick & Pratt, recorded in Book 1537, Page 653 and bounded and described as follows:

BEGINNING at a stone monument set at the northwesterly corner of the herein described premises on the southerly side of Canton Street, formerly known as Albion Avenue;
THENCE southerly by Lot 18, a distance of 100 feet to a stone monument;
THENCE easterly by Lot 35 and Lot 36, a distance of 50 feet to a stone monument;
THENCE northerly by Lot 16, a distance of 100 feet to a stone monument on the southerly side of said Canton Street, formerly Albion Avenue;
THENCE westerly by said Canton Street 50 feet to the point of beginning.

For our Title see Book 8344    Page 333    .

ATTEST: WORC., Anthony J. Vigliotti, Register

Pay to the order of National Housing Exchange, Inc.,
WITHOUT RECOURSE
SOUTH STAR MANAGEMENT COMPANY, INC.
also known as South Star Management Co., Inc.

By: _____

Jan R. Schneiderman, V.P.

permissible under applicable law. As used herein, the term "applicable law" shall mean the law in effect as of the date hereof, provided, however, that in the event there is a change in the law which results in a higher permissible rate of interest, then this Note shall be governed by such new law as of its effective date. In this regard, it is the intent of Borrower and Lender in the execution, delivery and acceptance of this Note to contract in strict compliance with the laws of the Commonwealth of Massachusetts from time to time in effect. If, from any circumstances whatsoever, fulfillment of any provision hereof or of any of the Security Instruments at the time performance of such provision shall be due, shall involve transcending the limit of validity prescribed by law, than the obligation to be fulfilled shall automatically be reduced to the limit of such validity, and if from any circumstances the Lender should ever receive as interest an amount which would exceed the highest lawful rate, such amount which would be excessive interest shall be applied to the reduction of the principal balance evidenced hereby and not to the payment of interest. This provision shall control every other provision of all agreements between the Borrower and the Lender.

The Borrower shall remain primarily liable on this Note and the Security Instruments until full payment, unaffected by an alienation of the Mortgaged Premises, by an agreement or transaction between the Lender any subsequent owner or assignee of the Mortgaged Premises as to payment of principal, interest or other monies, by any forbearance or extension of time, guaranty or assumption by others, or by any other matter, as to all of which notice is hereby waived by the Borrower.

This instrument shall take effect as a sealed instrument on this 27th day of Jan, 1988, and shall be governed by the laws of the United States of America, and the Commonwealth of Massachusetts.

SIGNED IN THE PRESENCE OF:

_____

_____

E. Perry King

_____

Terry A. King

Pay to the order of South Star Management
Co., Inc.  Without Recourse.

FEDERAL DEPOSIT INSURANCE CORPORATION in its
corporate capacity as Assignee of the Receiver
of Home National Bank of Milford.

By: _____
   Kirby N. Schaefer
Title: Attorney-in-fact

Pay to the order of Continental Stock Transfer
& Trust Company,
WITHOUT RECOURSE
NATIONAL HOUSING EXCHANGE, INC.

By: _____
   Albert J. Sonnenblik, V.P.

"C"

Record and Return to:
Blutrich, Herman & Miller
Two Park Avenue
New York, NY 10016
Attn: Michael Blutrich, Esq.

## ASSIGNMENT OF MORTGAGE

**FEDERAL DEPOSIT INSURANCE CORPORATION**, in its corporate capacity as of the Receiver of The Home National Bank of Milford, Milford, Massachusetts, holder of a mortgage from E. Perry King and Terry A. King to The Home National Bank of Milford dated January 27, 1988 and recorded on January 28, 1988 in the Worcester District Registry of Deeds as Instrument No. 7662 in Book 11097 at Page 122, hereby assigns said mortgage and the Note and claim secured thereby to **SOUTH STAR MANAGEMENT COMPANY, INC.**, a Florida corporation also known as South Star Management Co., Inc., having a mailing address at 5005 Collins Avenue, Suite 1507, Miami, Florida 33140.

**FEDERAL DEPOSIT INSURANCE CORPORATION** was appointed in its corporate capacity as Receiver of The Home National Bank of Milford on June 1, 1990. See documents recorded in said Registry of Deeds in Book __12950__ at Page __364__.

For authority for the execution of this Assignment, see Power of Attorney recorded in said Registry of Deeds in Book __15369__ at Page __54__.

IN WITNESS WHEREOF, the FEDERAL DEPOSIT INSURANCE CORPORATION has caused these presents to be signed, acknowledged and delivered in its name and behalf by Kirby N. Schaefer, its duly appointed Attorney-in-Fact, this 29 of March, 1994, but effective as of December 17, 1993.

FEDERAL DEPOSIT INSURANCE CORPORATION in its corporate capacity as Receiver of The Home National Bank of Milford

By: _____
        Attorney-in-Fact

## COMMONWEALTH OF MASSACHUSETTS

NORFOLK, SS

Then personally appeared the above named Kirby N. Schaefer, Attorney-in-Fact, and acknowledged the foregoing instrument to the free act and deed of the FEDERAL DEPOSIT INSURANCE CORPORATION.

_____
Notary Public

My commission expires:

7-1-99

"D"

Attn: Michael Blutrich

**EXHIBIT**

## ASSIGNMENT OF MORTGAGE

**SOUTH STAR MANAGEMENT COMPANY, INC.**, a Florida corporation also known as South Star Management Co., Inc. ("Assignor"), having a mailing address at 5005 Collins Avenue, Suite 1507, Miami, Florida 33140, holder of a mortgage from E. Perry King and Terry A. King to The Home National Bank of Milford dated January 27, 1988 and recorded on January 28, 1988 in the Worcester District Registry of Deeds as Instrument No. 7662 in Book 11097 at Page 122, hereby assigns said mortgage and the Note and claim secured thereby to **NATIONAL HOUSING EXCHANGE, INC.**, a North Carolina corporation, having a mailing address at 620 South Elm Street, Suite 363, Greensboro, North Carolina 27606.

This Assignment is made without recourse to Assignor and without representation or warranty by Assignor, express or implied.

IN WITNESS WHEREOF, Assignor has caused these presents to be signed by its duly authorized officer on this 8th day of March, 1994, but effective as of December 28, 1993.

**SOUTH STAR MANAGEMENT COMPANY, INC.**
a/k/a South Star Management Co., Inc.

By: _____
Jan R. Schneiderman, Vice President

STATE OF NEW YORK    )
                     ) SS.
COUNTY OF NEW YORK )

The undersigned, a notary public in and for the aforesaid County, does hereby acknowledge that on the day and year set forth below, personally appeared Jan R. Schneiderman, as Vice President of South Star Management Company, Inc., as specified above, and being duly sworn by and personally known to the undersigned to be the person who executed the foregoing instrument on behalf of said corporation, acknowledged to the undersigned that he voluntarily executed the same for the purposes therein stated as the free act and deed of said corporation.

WITNESS my hand and official seal, this ___ day of March, 1994.

_____
Notary Public for the State of New York

[SEAL]                    My Commission Expires: _____

NILDA E. HILL
Notary Public, State of New York
No. 03-4796809  Bronx County
Cert. filed with New York County Clk.
Commission Expires November 30, 1995

199

"E"

*Please Return To: Creed + Formica, Attys.
1254 Chestnut Street
Newton Upper Falls, MA 02164*

*Inst #*

# 98905

## COMMONWEALTH OF MASSACHUSETTS

SUFFOLK, ss.                    SUPERIOR COURT DEPARTMENT
                               CIVIL ACTION NO. 97-02013 B

*32MB*

DONNA LEE H. WILLIAMS, INSURANCE          )
COMMISSIONER OF THE STATE OF DELAWARE,    )
AS RECEIVER OF NATIONAL HERITAGE LIFE     )
INSURANCE COMPANY IN LIQUIDATION,         )
          Plaintiff,                      )
                                          )
                                          )
     v.                                   )
                                          )
                                          )
NATIONAL HOUSING EXCHANGE, INC.,          )
APX MORTGAGE SERVICES, INC.,              )
RESOURCE ASSET MANAGEMENT, INC. and       )
SOUTH STAR MANAGEMENT CORPORATION,        )
          Defendants.                     )

97 SEP 15 PM 1:45

### JUDGMENT BY DEFAULT

    This action came on for hearing before the Court, KING, J.,
presiding, upon the marking of Plaintiff, Donna Lee H. Williams,
Insurance Commissioner of the State of Delaware as Receiver of
National Heritage Life Insurance Company in Liquidation
(hereinafter, "NHL") in the above entitled action, for a default
judgment by the court, pursuant to Rule 55(b)(2) of Mass. R. Civ.
P., and it appearing to the court that the Complaint in said action
was filed on the 17'th day of April, 1997, and that no answer or
other defense has been filed by the said defendants, National
Housing Exchange, Inc. and Resource Asset Management, Inc., and
that default was entered on the 16 th day of June, 1997,
in the office of the clerk of this court, and that no proceedings
have been taken by the said defendant since said default was
entered, it is ordered and adjudged, that judgment by default enter
as against the Defendants, National Housing Exchange, Inc. and
Resource Asset Management, Inc. on Counts I, II and III of NHL's
Complaint, in accordance with the Prayers of that Complaint,
thereby recognizing and giving effect to the following judgments in
Massachusetts:

*Return To: Creed Formica
1254 Chestnut Street
Newton Upper Falls, MA 02164*

*JUDGMENT ENTERED ON DOCKET 9100-16/9/97
PURSUANT TO THE PROVISIONS OF MASS. R. CIV. P.
AND NOTICE SENT TO PARTIES PURSUANT TO THE PRO-*

*AK.*

BOOK 1916 PAGE 307

# United States District Court

### Northern District of Illinois

### Eastern Division

I, MICHAEL W. DOBBINS, Clerk of the United States District Court for the Northern District of Illinois, do hereby attest and certify that the annexed document is a full, true and correct copy of the original(s) on file in my office and in my legal custody.

IN TESTIMONY WHEREOF, I have hereunto subscribed my name and affixed the seal of this aforesaid Court at Chicago, Illinois, on

MICHAEL W. DOBBINS, CLERK

BY: _____
                              Deputy Clerk

BOOK 1 21 0 PAGE 316

COMMONWEALTH OF MASSACHUSETTS

SUFFOLK, ss.
SUPERIOR COURT DEPARTMENT
CIVIL ACTION NO. 97-02013 B

DONNA LEE H. WILLIAMS, INSURANCE      )
COMMISSIONER OF THE STATE OF DELAWARE, )
AS RECEIVER OF NATIONAL HERITAGE LIFE )
INSURANCE COMPANY IN LIQUIDATION,     )
        Plaintiff,                    )
                                      )
                                      )
        v.                            )
                                      )
                                      )
NATIONAL HOUSING EXCHANGE, INC.,      )
APX MORTGAGE SERVICES, INC.,          )
RESOURCE ASSET MANAGEMENT, INC. and   )
SOUTH STAR MANAGEMENT CORPORATION,    )
        Defendants.                   )

JUDGMENT BY DEFAULT

        This action came on for hearing before the Court, _____ J.,
presiding, upon the marking of Plaintiff, Donna Lee H. Williams,
Insurance Commissioner of the State of Delaware as Receiver of
National Heritage Life Insurance Company in Liquidation
(hereinafter, "NHL") in the above entitled action, for a default
judgment by the court, pursuant to Rule 55(b)(2) of Mass. R. Civ.
P., and it appearing to the court that the Complaint in said action
was filed on the 17'th day of April, 1997, and that no answer or
other defense has been filed by the said defendants, National
Housing Exchange, Inc. and Resource Asset Management, Inc., and
that default was entered on the ____ day of _____ 1997,
in the office of the clerk of this court, and that no proceedings
have been taken by the said defendant since said default was
entered, it is ordered and adjudged, that judgment by default enter
as against the Defendants, National Housing Exchange, Inc. and
Resource Asset Management, Inc. on Counts I, II and III of NHL's
Complaint, in accordance with the Prayers of that Complaint,
thereby recognizing and giving effect to the following judgments in
Massachusetts:

RETURN TO: CREG FORMICA
1254 CHESTNUT STREET
NEWTON UPPER FALLS, MA 02164

JUDGMENT ENTERED ON DOCKET June 16 19 97
PURSUANT TO THE PROVISIONS OF MASS. R. CIV. P. 58(a)
AND NOTICE SENT TO PARTIES PURSUANT TO THE PRO-
VISIONS OF MASS. R. CIV. P. 77(d) AS FOLLOWS:

A TRUE COPY OF JUDGMENT DULY ENTERED ON 6/16/97

Prayer 1:  The Chancery Court of the State of Delaware in and for New Castle County's Liquidation and Injunction Order in Civil Action No. 13530, dated November 21, 1995, a copy of which is attached hereto as Exhibit "A";  and,

Prayer 2:  The United States District Court, Northern District of Illinois, Eastern Division's Amended Declaratory Judgment Order in No. 95 C 4243, dated April 12, 1996, *nunc pro tunc*, April 3, 1996, a copy of which is attached hereto as Exhibit "B";  and,

Prayer 3:  The United States District Court, Northern District of Illinois, Eastern Division's Revised Order Regarding Massachusetts Mortgages No. 95 C 4243, dated February 20, 1997, a copy of which is attached hereto as Exhibit "C".

SO ORDERED:

_____ , J.
Superior Court Department

Dated: June 16, 1997

I HEREBY ATTEST AND CERTIFY ON
_____ 18, 1997, THAT THE
FOREGOING DOCUMENT IS A FULL,
TRUE AND CORRECT COPY OF THE
ORIGINAL ON FILE IN MY OFFICE,
AND IN MY LEGAL CUSTODY.

MICHAEL JOSEPH DONOVAN
CLERK/MAGISTRATE
SUFFOLK SUPERIOR CIVIL COURT
DEPARTMENT OF THE TRIAL COURT

BY:_____

IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE ORIGINAL

IN AND FOR NEW CASTLE COUNTY

IN THE MATTER OF THE            )
REHABILITATION OF NATIONAL      )   C.A. No. 13530
HERITAGE LIFE INSURANCE COMPANY )

## LIQUIDATION AND INJUNCTION ORDER

WHEREAS, the Honorable Donna Lee H. Williams, the Insurance Commissioner for the State of Delaware, heretofore appointed as the Receiver of the National Heritage Life Insurance Company in Rehabilitation by Order dated May 25, 1994 (the "Receiver"), has filed with the Court a petition seeking a Liquidation and Injunction Order concerning National Heritage Life Insurance Company ("National Heritage") pursuant to Title 18 Del. C. §5901, et seq.;

WHEREAS, a hearing on the financial status of National Heritage and for interested parties to show cause why National Heritage should not be declared insolvent and ordered liquidated was held by the Court on 11/2/95                ; and

WHEREAS, the Receiver has submitted evidence that National Heritage is insolvent, in that as of September 30, 1995, National Heritage's liabilities exceeded its assets by approximately $214 million and that as of the hearing date, the negative surplus was approximately $214 million.

NOW THEREFORE, the Court finds and IT IS HEREBY ORDERED as follows:

1. National Heritage is insolvent as that term is defined in 18 Del. C. §5901.

2. Sufficient cause exists for the liquidation of the respondent, National Heritage, pursuant to 18 Del. C. §§ 5906 and 5910 and a Liquidation and Injunction Order is hereby entered against National Heritage.

3. The May 25, 1994 Rehabilitation and Injunction Order and the June 27, 1994 Supplemental Rehabilitation Order entered by this Court in this matter are hereby superseded, upon entry of this Order, and the Commissioner shall continue to serve as Receiver of National Heritage for the purpose of liquidation as set forth below.

4. The appointment of the Honorable Donna Lee H. Williams, Commissioner of Insurance of the State of Delaware, and her successors in office, as the Receiver of National Heritage is hereby continued and the Receiver is hereby directed to immediately take or maintain her exclusive possession and control of and to continue or be vested with all right, title and interest in, of or to the property of National Heritage, including, without limitation, all of National Heritage's assets, contracts, rights of action, funds recoverable under treaties and agreements of reinsurance heretofore entered into by National Heritage as the ceding insurer, books, records, bank accounts, certificates of deposit, collateral securing obligations to, or for the benefit of, National Heritage or any trustee, bailee or any agent acting for, or on behalf of, National Heritage (collectively, the "Trustees"), securities or other funds, and all real or personal property of any nature of National Heritage including, without limitation, furniture, fixtures and office supplies, wherever located, and including such property of National Heritage or collateral securing obligations to, or for the benefit of, National Heritage or any Trustee thereof that may be discovered hereafter, and all proceeds of or accessions to any of the foregoing, wherever located, in the possession, custody or control of National Heritage or any Trustee therefore (collectively, the "Assets"), and to liquidate the same pursuant to the provisions of Chapter 59 of the Delaware Insurance Code, and the Receiver is further authorized

to take such actions as the nature of this cause and interests of the policyholders, creditors and stockholders of National Heritage and the public may require.

5. The Receiver is hereby authorized to continue to deal with the Assets, business and affairs of National Heritage, including, without limitation, the right to sue for, defend for or continue suits already commenced by the Receiver for National Heritage, or for the benefit of National Heritage's policyholders, stockholders and creditors, in the courts and tribunals, agencies or arbitration panels in this State and other states in her name as the Commissioner of Insurance of the State of Delaware, or in the name of National Heritage.

6. The filing or recording of this Order or a certified copy hereof with the Clerk of this Court and with the recorder of deeds of the jurisdiction in which National Heritage's corporate and administration offices are located, or, in the case of real estate, with the recorder of deeds of the jurisdictions where the property is located, shall impart the same notice as would be imparted by a deed, bill of sale or other evidence of title duly filed or recorded with that recorder of deeds. Without limiting the foregoing, the filing of this Order with the Clerk of this Court also constitutes notice to all sureties and fidelity bondholders of National Heritage of all potential claims against National Heritage under such policies and shall constitute the perfection of a lien in favor of National Heritage under the Uniform Commercial Code or any like Federal or state law, regulation or order dealing with the priority of claims.

7. Except as otherwise indicated elsewhere in this Order, and upon notice provided by the Receiver, all agents and brokers, former officers, former directors, stockholders and all other persons or entities now or prospectively holding Assets of, or on behalf of, National

Heritage shall forthwith file an accounting of those Assets with the Receiver and shall within ten (10) days of the entry of this Order, turn those Assets over to the Receiver.

8. The Receiver may, in her discretion, appoint or continue the appointment of a consultant or other person or persons to serve as Special Deputy Receiver(s) to assist the Receiver in accomplishing the directive of this Order. The Special Deputy Receivers shall serve at the pleasure of the Receiver and, subject to the approval of the Receiver, shall be entitled to exercise all of the powers and authorities vested in the Receiver pursuant to this Order and applicable law.

9. The Receiver may employ or continue to employ and fix the compensation of such deputies, counsel, clerks, employees, accountants, actuaries, consultants, assistants and other personnel (collectively, the "Designees") as considered necessary, and all compensation and expenses of the Special Deputy Receiver(s) and the Designees and of taking possession of National Heritage and conducting this proceeding shall be paid out of the funds and assets of National Heritage as administrative expenses under Title 18 Del. C. §5913(f). Each and every Designee shall be deemed to have submitted to the jurisdiction of this Court for the resolution of any disputes between the Receiver and such Designee concerning such Designee's rights, obligations and compensation.

10. The Receiver, the Special Deputy Receivers and the Designees (collectively, the "Indemnitees") shall have no personal liability for their acts or omissions in connection with their duties during the rehabilitation and liquidation periods, provided that such acts or omissions are or were undertaken in good faith and without willful misconduct, gross negligence or criminal intent. All expenses, costs and attorney's fees incurred by the Indemnitees in

4

connection with any lawsuit brought against them in their representative capacities shall be subject to the approval of the Receiver and shall be exclusively paid out of the funds and assets of National Heritage.  The Indemnitees shall not be deemed to be employees of the State of Delaware.

11.  The Receiver's right, title and interest in and to all funds recoverable under treaties and agreements of reinsurance heretofore entered into by National Heritage as the ceding insurer shall continue, and all reinsurance companies involved with National Heritage are enjoined and restrained from making any settlements with any claimant or policyholder of National Heritage other than the Commissioner as Receiver.  The amounts recoverable by the Receiver from any reinsurer of National Heritage shall not be reduced as a result of this liquidation proceeding or by reason of any partial payment or distribution on a reinsured policy, contract or claim, and each such reinsurer of National Heritage is hereby enjoined and restrained from terminating, cancelling, failing to extend or renew, or reducing or changing coverage under any reinsurance policy or contract with National Heritage, except for non-payment of premium.  The Receiver may terminate or rescind any contract with a reinsurer or reinsurers that is contrary to the best interests of the estate in liquidation.

12.  The Receiver is hereby authorized to transfer National Heritage's assets and liabilities, to the extent such liabilities are not covered by a state guaranty association, to an affiliate, subsidiary or trust for the overall benefit of National Heritage's policyholders, other creditors, and stockholder, subject to approval by this Court.

13. The Receiver may change to her own name the name of any of National Heritage's accounts, funds or other property or assets held with any bank, savings and loan association or other financial institution, and may withdraw such funds, accounts and other property or assets from such institutions or take any lesser action necessary for the proper conduct of this liquidation.

14. The Receiver may reject any executory contract to which National Heritage is a party that the Receiver may in her discretion determine is burdensome to National Heritage or is otherwise not in its best interest. Any party to a rejected contract may file a claim only for damages arising from such rejection in accordance with paragraph 18, below. All claims of policyholders enumerated in 18 Del. C. §5918(e) shall have priority over all non-policyholder claims arising from the rejection of executory contracts.

15. National Heritage, its former officers, former directors, stockholders, agents, servants and employees and all other persons having notice of these proceedings or of this Order are hereby prohibited from transacting any business of, or on behalf of, National Heritage or selling, transferring, destroying, wasting, encumbering or disposing of any of the Assets, without the prior written permission of the Receiver or until further Order of this Court.

16. All banks, brokerage houses, agents, reinsurers, or other companies or persons, either having in their possession Assets or possible Assets (including, without limitation, books or records of National Heritage), or having notice of these proceedings or of this Order, are hereby enjoined and restrained from disposing of, selling, wasting, encumbering, transferring or destroying any such Assets or possible Assets (including, without limitation, books or records of National Heritage). This prohibition includes, without limitation, Assets, possible Assets,

6

books or records pertaining to any business transaction between National Heritage and any of said parties. No actions concerning, involving, or relating to such Assets, possible Assets, books or records may be taken by any of the aforesaid persons or entities enumerated herein, without the prior written consent of the Receiver, or until further Order of this Court.

17. All former officers, former directors, stockholders, agents, servants and employees of National Heritage, and all other persons and companies having notice of these proceedings or of this Order, are hereby enjoined and restrained from instituting or further prosecuting any action at law or in equity or in other proceedings against National Heritage, the Commissioner as Receiver, the Special Deputy Receiver(s) or the Designees in connection with their duties as such, or from obtaining preferences, judgments, attachments or other like liens or encumbrances, or foreclosing upon or making of any levy against National Heritage or the Assets, or exercising any right adverse to the right of National Heritage to or in the Assets, or in any way interfering with the Receiver, the Special Deputy Receiver(s) or the Designees either in their possession and control of the Assets, books, and records of National Heritage or in the discharge of their duties hereunder.

18. All persons and companies are hereby enjoined and restrained from asserting any claim against the Commissioner as Receiver of National Heritage, or against the Special Deputy Receiver(s) or the Designees in connection with their duties as such, or against the Assets, except insofar as such claims are brought in the liquidation proceedings of National Heritage.

· 19.  The Court hereby imposes a temporary moratorium on payment of cash values, surrenders, policy loans or any other right to withdraw funds held in conjunction with the policies or contracts of National Heritage, in addition to the Receiver's and the state guaranty associations' right to implement any contractual provision for deferral of cash payment or policy loans, for a period of 120 days from the date of this Order, provided that any state guaranty association may voluntarily choose to permit a full or partial payment of cash values, surrenders, policy loans or any other right to withdraw funds for claims covered by the applicable state guaranty association law.

20.  Within a reasonable time after receipt of a claim in the liquidation proceedings of National Heritage, the Receiver shall give notice by mail to any and all persons interested in such claim of the Receiver's proposed report and recommendation to the Court regarding the allowance or denial (in whole or in part) of such claim.

21.  Within sixty (60) days of the mailing of the proposed report and recommendation, the interested person being given notice of such proposed report and recommendation may file a written objection thereto with the New Castle County Register in Chancery, 1000 King Street, Wilmington, Delaware, 19801, and the Receiver.

22.  Within a reasonable time after such sixty (60) days, there being no objection to the proposed report and recommendation, the Receiver shall file with the Court such report and recommendation.

23.  No hearing will be held regarding the proposed report and recommendation in the absence of a written objection thereto by a person interested therein.

8

24. The Receiver shall provide semiannual reports on the financial condition of National Heritage and on the actions of the Receiver pursuant to this Order.

25. Hereafter the caption of this cause and all pleadings in this matter shall read as:

"IN THE MATTER OF THE LIQUIDATION OF
NATIONAL HERITAGE LIFE INSURANCE COMPANY"

26. This Court shall retain jurisdiction in this cause for the purpose of granting such other and further relief as this cause, the interests of the policyholders, creditors, stockholders of National Heritage and the public may require. The Receiver, or any interested party upon reasonable notice to the Receiver, may at any time make application for such other and further relief as either sees fit.

27. On or before June 30, 1996, the Receiver shall mail a Notice of Liquidation and Bar Date and a proof of claim form to all known claimants and creditors or persons or entities reasonably believed to be claimants or creditors of National Heritage, by first class mail, postage prepaid, and obtain proof of such mailing on United States Postal Form 3606.

28. ANY AND ALL CLAIMS AGAINST THE NATIONAL HERITAGE LIFE INSURANCE COMPANY IN LIQUIDATION NOT PRESENTED TO THE RECEIVER ON OR BEFORE JUNE 30, 1997 SHALL BE FOREVER BARRED FROM SHARING IN DISTRIBUTIONS OF THE ASSETS OF NATIONAL HERITAGE UNLESS THERE IS A SURPLUS AND NATIONAL HERITAGE IS DEEMED SOLVENT PURSUANT TO 18 DEL. C. §5928(a)(2).

SO ORDERED this 21 day of _____, 1995.

_____
Chancellor

CERTIFIED
AS A TRUE COPY:
ATTEST;
PRISCILLA B. HANESTRAW
REGISTER IN CHANCERY
By _____

9

BOOK 19167 PAGE 319

*Exhibit "A"*

Minute Order Form    (rev. 12/90)

## UNITED STATES DISTRICT COURT, NORTHERN DISTRICT OF ILLINOIS

| Name of Assigned Judge or Magistrate Judge | Elaine E. Bucklo | Sitting Judge if Other Than Assigned Judge | |
|---|---|---|---|
| Case Number | 95 C 4243 | Date | April 15, 1996 |
| Case Title | Williams, et al. Vs. National Housing, et al. | | |

[In the following box (a) indicate the party filing the motion, e.g. plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**MOTION:**

**DOCKET ENTRY:**

(1) ☐ Filed motion of [use listing in "MOTION" box above]                    Sent for Microfilming

(2) ☐ Brief in support of motion due _____    APR 16 1996

(3) ☐ Answer brief to motion due _____ Reply to answer brief due _____

(4) ☐ Ruling / Hearing on _____ set for _____ at _____    Filed on _____

(5) ☐ Status hearing ☐ held ☐ continued to ☐ set for ☐ re-set for _____ at _____

(6) ☐ Pretrial conf. ☐ held ☐ continued to ☐ set for ☐ re-set for _____ at _____

(7) ☐ Trial ☐ Set for ☐ re-set for _____ at _____

(8) ☐ Bench Trial ☐ Jury Trial ☐ Hearing held and continued to _____ at _____

(9) ☐ This case is dismissed ☐ without ☐ with prejudice and without costs ☐ by agreement ☐ pursuant to
☐ FRCP 4(j) (failure to serve) ☐ General Rule 21 (want of prosecution) ☐ FRCP 41(a)(1) ☐ FRCP 41(a)(2)

(10) ☒ [Other docket entry] Receiver's motion for an order confirming his authority to convey certain REO property to purchaser and his motion for an order confirming his authority with respect to Arapaho Car wash Loans are granted. Nominal defendants' motion to enlarge time until May 3, 1996 to respond to the counterclaim of RAM is granted. Accordingly, reply is extended to May 24, 1996. Commissioner shall set aside escrow to provide for Continental fees, if ordered by it. Enter Amended Declaratory judgment order nunc pro tunc April 3, 1996 on plaintiff's motion for summary judgment on Count I. RAM has until May 13, 1996 to respond to motions to dismiss count I of RAM's counterclaim by Commissioner and Continental. Ruling set for July 11, 1996 at 8:45 A.M.

[For further detail see order on the reverse of / order attached to the original minute order form.]

| | | | number of notices |
|---|---|---|---|
| ☐ | No notices required, advised in open court. | | |
| ☐ | No notices required. | | number of notices |
| ☐ | Notices mailed by judge's staff. | | |
| ☑ | Notified counsel by telephone. | APR 16 1996 | date docketed |
| ☑ | Docketing to mail notices. | | docketing dpty. initials |
| ☐ | Mail AO 450 form. | APR 16 1996 | date mailed notice |
| ☐ | Copy to judge/magistrate judge | | |
| | courtroom deputy's | Date/time received in | mailing |

Document #

BOOK19167PAGE320

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

DONNA LEE H. WILLIAMS, INSURANCE )
COMMISSIONER OF THE STATE OF DELAWARE, )
AS RECEIVER OF NATIONAL HERITAGE LIFE )
INSURANCE COMPANY IN REHABILITATION, )
CONTINENTAL STOCK TRANSFER & TRUST )
COMPANY, MIDWEST INDEPENDENT BANK, )
and MIDWEST MORTGAGE SERVICING, L.L.C., )
                                        )
            Plaintiffs,                 )    Civil Action 95 C 4243
                                        )    Hon. Elaine E. Bucklo
        v.                              )    Magistrate Judge
                                        )    Rebecca R. Pallmeyer
NATIONAL HOUSING EXCHANGE INC., APX     )
MORTGAGE SERVICES, INC., and            )
RESOURCE ASSET MANAGEMENT, INC.         )
                                        )
            Defendants.                 )

## AMENDED DECLARATORY JUDGMENT ORDER

This cause coming to be heard on the Motion for Summary
Judgment on Count I, filed by the plaintiff Donna H. Lee Williams,
Insurance Commissioner of the State of Delaware, as Receiver of
National Heritage Life Insurance Company in Liquidation (the
"Commissioner"), due notice having been given and the Court being
fully advised in the premises,

IT IS HEREBY ORDERED, ADJUDGED, DECLARED AND DECREED:

1.  The Commissioner's Motion for Summary Judgment on
    Count I is granted;

2.  All the rights of National Housing Exchange, Inc.
    under the Indenture and Servicing Agreement dated
    December 28, 1993 were terminated on November 7,
    1994;

BOOK**19167**PAGE**321**

3.    All the rights of APX Mortgage Services, Inc. under
the Indenture and Servicing Agreement dated
December 28, 1993 were terminated on November 7,
1994;

4.    The rights of both National Housing Exchange, Inc.
and APX Mortgage Services, Inc. with respect to the
Mortgages, Mortgage Files, Mortgage Loans, Mortgage
Impairment Insurance Policy, Mortgage Notes,
Mortgaged Property, Pool of Mortgages, Related
Security Documents and any and all proceeds
thereof, as those terms are defined in the
Indenture and Servicing Agreement dated December
28, 1993, are hereby terminated;

5.    No approvals, agreements, consents, signatures or
other action of any nature whatsoever of either or
both of National Housing Exchange, Inc. and APX
Mortgage Services, Inc. is required in connection
with any action pursuant to the Indenture and
Servicing Agreement dated December 28, 1993;
provided however that nothing herein shall be
deemed to relieve either or both of National
Housing Exchange, Inc. and APX Mortgage Services,
Inc. of their respective obligations under the
Indenture and Servicing Agreement dated December
28, 1993;

2

BOOK 19167 PAGE 322

6.  The Commissioner is entitled to unencumbered ownership of the Mortgages, Mortgage Files, Mortgage Loans, Mortgage Impairment Insurance Policy, Mortgage Notes, Mortgaged Property, Pool of Mortgages, Related Security Documents and any and all proceeds thereof, as those terms are defined in the Indenture and Servicing Agreement dated December 28, 1993; and,

7.  All right, title and interest in and to the Mortgages, Mortgage Files, Mortgage Loans, Mortgage Impairment Insurance Policy, Mortgage Notes, Mortgaged Property, Pools of Mortgage, Related Security Documents and any and all proceeds thereof, as those terms are defined in the Indenture and Servicing Agreement dated December 28, 1993 is vested in the National Heritage Life Insurance Company in Liquidation (or any affiliate designated by National Heritage Life Insurance Company in Liquidation with respect to any environmentally impaired Mortgaged Property).

ENTER ORDER:

DATED: APRIL 12, 1996,
nunc pro tunc APRIL 3, 1996

Elaine E. Bucklo
United States District Court
Judge

3

BOOK**19167**PAGE 323

*Exhibit "B"*

## UNITED STATES DISTRICT COURT, NORTHERN DISTRICT OF ILLINOIS

| Name of Assigned Judge or Magistrate Judge | Elaine E. Bucklo | Sitting Judge if Other Than Assigned Judge | |
|---|---|---|---|
| Case Number | 95 C 4243 | Date | February 20, 1997 |
| Case Title | Williams, et al. VS. National Housing, et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd-party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**                                                    Sent for Microfilming

(1)  ☐  Filed motion of [use listing in "MOTION" box above]

(2)  ☐  Brief in support of motion due _____    FEB 21 1997

(3)  ☐  Answer brief to motion due _____  Reply to answer brief ~~Entered on~~  FEB 24 1997

(4)  ☐  ☐ Ruling / ☐ Hearing  on _____ set for _____ at _____

(5)  ☐  Status hearing ☐ held ☐ continued to ☐ set for ☐ re-set for _____ at _____

(6)  ☐  Pretrial conf. ☐ held ☐ continued to ☐ set for ☐ re-set for _____ at _____

(7)  ☐  Trial ☐ Set for ☐ re-set for _____ at _____

(8)  ☐  ☐ Bench Trial ☐ Jury Trial ☐ Hearing  held and continued to _____ at _____

(9)  ☐  This case is dismissed ☐ without ☐ with  prejudice and without costs ☐ by agreement ☐ pursuant to
     ☐ FRCP 4(j) (failure to serve)  ☐ General Rule 21 (want of prosecution)  ☐ FRCP 41(a)(1)  ☐ FRCP 41(a)(2)

(10) ☒  [Other docket entry]  The Commissioner's motion for the entry of a revised order regarding Massachusetts Mortgage is granted. Enter Revised Order. Plaintiff's motion for reassignment of case number 96 C 8477 based on relatedness is also granted.

(11) ☑  [For further detail see  ☐ order on the reverse of  ☐ order attached to  the original minute order form.]

| | |
|---|---|
| ☐ No notices required, advised in open court. | number of notices |
| ☐ No notices required. | |
| ☐ Notices mailed by judge's staff. | FEB 21 1997  date docketed |
| ☐ Notified counsel by telephone. | |
| ✓ Docketing to mail notices. | docketing dpty. initials |
| ☐ Mail AO 450 form. | |
| ☐ Copy to judge/magistrate Judge. | FEB 21 1997  date mailed notice |
| courtroom deputy's initials | Date/time received in central Clerk's Office  mailing dpty. initials |

97 FEB 20  PM 5:35
RECEIVED FOR DOCKETING
ED-11

Document # **325**

BOOK19167PAGE324

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

DOCKETED

FEB 21 1997

DONNA LEE H. WILLIAMS, ET AL.          )
                                       )
                 Plaintiffs,           )     Civil Action 95 C 4243
                                       )     Hon. Elaine E. Bucklo
         v.                            )     Magistrate Judge
                                       )     Rebecca R. Pallmeyer
NATIONAL HOUSING EXCHANGE INC., APX    )
MORTGAGE SERVICES, INC., and           )
RESOURCE ASSET MANAGEMENT, INC.        )
                                       )
                 Defendants.           )

## REVISED ORDER REGARDING MASSACHUSETTS MORTGAGES

This matter having come to be heard on the Commissioner's Motion for the Entry of a Revised Order Regarding Massachusetts Mortgages subject to the Amended Declaratory Judgment Order entered April 12, 1996, nunc pro tunc April 3, 1996, a copy of which is attached hereto as Exhibit 1, the Court hereby orders that National Heritage Life Insurance Company, in Liquidation ("NHL"), as to any claim of title and possession by or through National Housing Exchange Inc., APX Mortgage Services, Inc., Resource Asset Management, Inc., and South Star Management Corp. (collectively "the Parties"), has good, valid, and indefeasible ownership of any and all interests, free and clear, and free of any adverse equities and any other claims in and to the mortgages, deeds of trust, trust deeds, deeds to secure debt, security devises or other title retention instruments, whether or not of record, with respect to the real property located in the Commonwealth of Massachusetts and listed in Exhibit 2, which is attached to this Order and incorporated herein (hereinafter such mortgages, deeds of trust, trust deeds, deeds to secure debt, security devises or other title retention instruments shall be referenced as the "Mortgages"), together with:

(1)   any and all notes, loan agreements, credit agreements, guaranties, and any other evidence of indebtedness secured by the Mortgages;

(2)   any and all other security interests or claims pertaining to any indebtedness secured by the Mortgages, including but not limited to any and all (a) security agreements or chattel mortgages, (b) assignments or collateral assignments of rents, leases, and profits, (c) assignments or collateral assignments of accounts receivable, (d) assignments, collateral assignments, or pledges of stock, (e) assignments or collateral assignments of business licenses, permits, service contracts and equipment leases, (f) interests in any insurance proceeds or condemnation awards, (g)

interests in any indemnification agreements, whether with respect to environmental matters or otherwise, (h) interests in any leases, ground leases, proprietary leases, or occupancy agreements, (i) interests in any UCC financing statements, (j) creditor's claims, and (k) if the subject Mortgage is in the process of being foreclosed, any proceeds being held in the registry of the court of competent jurisdiction or held by the court-appointed receiver; and

(3)    any proceeds thereof.

It is further ordered that to the extent that any Mortgages have been foreclosed or repossessed, or title has otherwise reverted to Defendant prior to this Order, that, as between the Parties and NHL, NHL has good, valid and indefeasible fee simple title, free and clear, and free and clear of any claims in and to the real property that is encumbered by said Mortgages, together with all improvements thereon and easements and appurtenances thereto, and together with any and all proceeds concerning such real property held (1) in the registry of any court where such foreclosure action was pending, (2) by any court-appointed receiver for such real property, (3) by any property manager for such real property, and (4) by any other third party. (Hereinafter all Mortgages and related assets and real property and related assets shall be referenced as the "Assets".)

It is further ordered that, if necessary, in order to fulfill the terms and intent of this Order, NHL shall have the right (1) to unilaterally record any documents transferring or conveying any rights relating to the Assets and encompassed by this Order into the name of NHL, including but not limited to any assignment of any of the Mortgages or any UCC-3 financing statements, and (2) to unilaterally record any new financing statements to perfect NHL's security interests in the Assets.

It is further ordered that the Commissioner and NHL are not bound by the terms of any oral agreements affecting the Assets made by any predecessor in interest or former servicer of the Assets.

The recording of a certified copy of this Order in any jurisdiction where any Assets are located shall (1) convey title to such Assets to NHL, pursuant to the terms of this Order, and (2) re-establish any lost original instruments or documents pertaining to such Assets.

Dated: _2/20/97_        ENTER: _____

                        Hon. Elaine E. Bucklo
                        United States District Court Judge

BOOK 19167 PAGE 326

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

DONNA LEE H. WILLIAMS, INSURANCE          )
COMMISSIONER OF THE STATE OF DELAWARE,    )
AS RECEIVER OF NATIONAL HERITAGE LIFE     )
INSURANCE COMPANY IN REHABILITATION,      )
CONTINENTAL STOCK TRANSFER & TRUST        )
COMPANY, MIDWEST INDEPENDENT BANK,        )
and MIDWEST MORTGAGE SERVICING, L.L.C.,   )
                                          )
                Plaintiffs,               )   Civil Action 95 C 4243
                                          )   Hon. Elaine E. Bucklo
        v.                                )   Magistrate Judge
                                          )   Rebecca R. Pallmeyer
NATIONAL HOUSING EXCHANGE INC., APX       )
MORTGAGE SERVICES, INC., and              )
RESOURCE ASSET MANAGEMENT, INC.           )
                                          )
                Defendants.               )
                                          )

## AMENDED DECLARATORY JUDGMENT ORDER

This cause coming to be heard on the Motion for Summary Judgment on Count I, filed by the plaintiff Donna H. Lee Williams, Insurance Commissioner of the State of Delaware, as Receiver of National Heritage Life Insurance Company in Liquidation (the "Commissioner"), due notice having been given and the Court being fully advised in the premises,

IT IS HEREBY ORDERED, ADJUDGED, DECLARED AND DECREED:

1. The Commissioner's Motion for Summary Judgment on Count I is granted;

2. All the rights of National Housing Exchange, Inc. under the Indenture and Servicing Agreement dated December 28, 1993 were terminated on November 7, 1994;

BOOK 19167 PAGE 327

6.  The Commissioner is entitled to unencumbered ownership of the Mortgages, Mortgage Files, Mortgage Loans, Mortgage Impairment Insurance Policy, Mortgage Notes, Mortgaged Property, Pool of Mortgages, Related Security Documents and any and all proceeds thereof, as those terms are defined in the Indenture and Servicing Agreement dated December 28, 1993; and,

7.  All right, title and interest in and to the Mortgages, Mortgage Files, Mortgage Loans, Mortgage Impairment Insurance Policy, Mortgage Notes, Mortgaged Property, Pools of Mortgage, Related Security Documents and any and all proceeds thereof, as those terms are defined in the Indenture and Servicing Agreement dated December 28, 1993 is vested in the National Heritage Life Insurance Company in Liquidation (or any affiliate designated by National Heritage Life Insurance Company in Liquidation with respect to any environmentally impaired Mortgaged Property).

ENTER ORDER:

DATED: APRIL 12, 1996,
nunc pro tunc APRIL 3, 1996

Elaine E. Bucklo
United States District Court
Judge

3

BOOK 13157 PAGE 328

| St. | County | Series | Mortgagor | Address | City | Document # | Book # | Page # |
|-----|--------|--------|-----------|---------|------|-----------|--------|--------|
| A | | 15 | Duprey | 81 Sterling Lane | Bradford | 800162 | 9479 | 524 |
| | | 16 | Gilet | 71 Princeton, Unit 108 | North Chelmsford | 33553 | 3538 | 179 |
| | Barnstable | 16 | Most | 108 Howland Circle, #102 | Brewster | 32748 | 6308 | 112 |
| | Bristol | 14 | Drumheiser | 14 Spruce Street | New Bedford | 22979 | 2228 | 90 |
| | Essex | 15 | Daigle | 200 Wilson Street, Units 2 & 4 | Haverhill | 364 | 10392 | 472 |
| | | | Roberts | 4 Central Avenue | Methuen | 42312 | 67 | 333 |
| | | 16 | Gauthier/Roderick | 407 Forest Hill Road | Dunstable | 79019 | 3841 | 233 |
| | | | Moran | 415 Lafayette St. | Salem | 53 | 9067 | 169 |
| | Hampshire | 15 | Duquette | 72 Barrett Street, Unit 11G | Northhampton | 19366 | (none) | (none) |
| | Hillsborough | 16 | Driscoll/Zuker | 143 Baboosic Lake Rd. | Merrimack | 802728 | 4591 | 115 |
| | Middlesex | 13 | Elliot Group Inc. | 38-40 Sarah Ave./771 Broadway/285-287 Dutton St. | Lowell | 11569 | B05490 | 278 |
| | | 14 | Gavriel | 26-28 Alma | Lowell | 20595 | 4507 | 61 |
| | | 15 | Babcock | 54 Glenside Avenue | Billerica | 12834 | B04452 | 21 |
| | | | Dabilis | 861-871 Middlesex Road | Lowell | 78706 | 3839 | 259 |
| | | | Dabilis/Gavriel | 42 Marshall St. | Lowell | 13934 | 3956 | 338 |
| | | | Duffy | 97 Daniels Street | Malden | 682632 | 998 | 129 |
| | | | Grant | 810B Lawrence Street | Lowell | 36079 | 3556 | 12 |
| | | | Oehley | 11 Pike Street | Hopkinton | (none) | 15414 | 174 |
| | | | Torres/Ramos | 29-31 Queen St. | Lowell | 35435 | 5005 | 150 |
| | | 16 | Arbetter | 78 Captian Eames Circle, #U2B | Ashland | (none) | 18215 | 80 |
| | | | Hague | 40 Aberdeen Street | Lowell | 18871 | 3436 | 109 |
| | | | Hipp | 65 Indian Brook Road | Ashland | 471 | 20144 | 600 |
| | | | Landry | 361 Aiken Avenue, No. 4 | Lowell | 44158 | B05373 | 195 |
| | | | McInnis | 369 Aiken Avenue, Unit 16 | Lowell | 34328 | B04998 | 134 |
| | | 17 | Games | 6 Ledgewood Way, Unit 16 | Peabody | 91 | 9605 | 576 |
| | | | Keomouangchanh | 204 Ludlam St. | Lowell | 24133 | B04533 | 29 |
| | New Haven | 16 | O'Malley | 208 West St., Unit 4A | Milford | (none) | 11971 | 298 |

EXHIBIT 2                                    November 4, 1996

S      le of XXX Bond Loans Secured by Real      te

| St. | County | Series | Mortgagor | Address | City | Document # | Book # | Page # |
|-----|--------|--------|-----------|---------|------|-----------|--------|--------|
| MA | Norfolk | 15 | Giordano | 660 Franklin Street | Wrentham | 2654 | 7474 | 518 |
| | | | Magri | 7-9 Pierce Street | Milton | 44301 | 7047 | 467 |
| | | | Padula | 131, 133, & 135 Creek St. | Wrentham | 492121 | 619 | 119 |
| | | | Reed | 691 Washington Street | Braintree | 25552 | 889 | 695 |
| | | 16 | Brustin | 133 Commander Shea Blvd., Unit 116 | Quincy | 13421 | 7436 | 151 |
| | Plymouth | 15 | Feingold/Connolly | 45 Manomet Rd. | Plymouth | 9742 | 10728 | 95 |
| | | 16 | McCann | 50 Pinewood Lane | Duxbury | (none) | 7044 | 85 |
| | | 17 | Melone | 131 Chapel Street | Pembroke | 76854 | 10509 | 342 |
| | | | Pasquariello | 3-12 School Street | Marshfield | 65134 | 6922 | 146 |
| | | | | 3-7 School Street | Marshfield | 65137 | 6922 | 162 |
| | Suffolk | 14 | Pal | 461 Washington Street, Unit 406 | Boston | 143 | 13522 | 64 |
| | | 15 | Deo | 56 Round Hill Street | Jamaica Plain | 290 | 15403 | 128 |
| | | | Glades Realty Trust | 36-38 Grove St. | Chelsea | 213 | 13630 | 336 |
| | | | Lewis | 135-137 Sydney Street | Boston | (none) | 13669 | 175 |
| | | | Mannix | 29 Vinton Street | South Boston | (none) | 16204 | 136 |
| | | 16 | Cheletzky | 8 Kittredge Street, No. 5K | Rosendale | 239 | 16232 | 60 |
| | | | Glades Realty Trust | 30-34 Grove St. | Chelsea | 213 | 13630 | 336 |
| | | | Grubbs | 20 American Legion Highway | Boston | 33106 | 14939 | 1 |
| | | | Krell | 1607 Commonwealth, Unit 30 | Boston | 41645 - C114-62 | (none) | (none) |
| | | | Mullings | 40 Kingsdale Street | Dorchester | 457044 | (none) | (none) |
| | | 17 | Brown | 18 Burnett Road, #18 | Revere | 173 | 14918 | 220 |
| | Worcester | 14 | Reinold/Firelli | 135 East Main St., Unit C-8 | Westborough | 42917 | 8276 | 321 |
| | | 15 | Choquette | 257 E. Main St. | East Douglas | 8559 | 11900 | 127 |
| | | | Griffin | 5 Griswold Court | Uxbridge | 112513 | 13821 | 265 |
| | | 16 | Humphrey's LTD | 208 West Street, Unit 4A | Hopedale | (none) | 10285 | 188 |
| | | | King | 6 Beckman St. | Worcester | 121706 | 10883 | 243 |

BOOK19167PAGE330

**EXHIBIT 2**                                                      November 8, 1996
Schedule of MHE Bond Loans Secured by Real Estate

| County | Series | Mortgagor | Address | City | Document # | Book # | Page # |
|--------|--------|-----------|---------|------|-----------|--------|--------|
| Worcester | 16 | King | 19 Canton Street | Worcester | 7662 | 11097 | 122 |
| | 17 | Alex | 61A Fox Meadow Road, Unit 61A | Leominister | 7686 | 1561 | 44 |
| | | Pasquariello | 4 Oak St., #12/12 Williamsburg Ct., #28/3 & 12 Castle Green, #3 | Shrewsbury | 5730 | 9192 | 161 |
| | | | 12-4 Oak Street | Shrewsbury | 5733 | 9192 | 171 |

BOOK 19167 PAGE 331

## CERTIFICATE OF SERVICE

I, William P. Ziegelmueller, an attorney, certify that on February 14, 1997, I caused a copy of the foregoing **MOTION FOR A REVISED ORDER REGARDING MASSACHUSETTS MORTGAGES** to be served by U.S. Mail, postage prepaid:

Richard Waris
Pretzel & Stouffer Chartered
One South Wacker Drive
Suite 2500
Chicago, Illinois 60606

James Rolfes
Sachnoff & Weaver, Ltd.
30 S. Wacker Drive
Suite 2900
Chicago, lllinois 60606

David J. Krupp
Miller, Shakman, Hamilton,
 Kurtzon & Schlifke
208 South LaSalle Street
Suite 1100
Chicago, Illinois 60604

Robert E. Davy, Jr.
180 N. LaSalle, Suite 2315
Chicago, Illinois 60611

APX Mortgage Services, Inc.
c/o Robert Gorski
P.O. Box 909
Lake Zurich, Illinois  60047-0909

_____
William P. Ziegelmueller

\42272\010\50COUBA7.036

ATTEST: WORC. Anthony J. Vigliotti, Register

"F"

BOOK 15273 PAGE 342

115416

12

COMMONWEALTH OF MASSACHUSETTS

SUFFOLK, ss.                        SUPERIOR COURT DEPARTMENT
                                   CIVIL ACTION NO. 97-02013 B


DONNA LEE H. WILLIAMS, INSURANCE      )
COMMISSIONER OF THE STATE OF DELAWARE, )
AS RECEIVER OF NATIONAL HERITAGE LIFE  )
INSURANCE COMPANY IN LIQUIDATION,      )
          Plaintiff,                   )
                                       )
                                       )
          v.                           )
                                       )
                                       )
NATIONAL HOUSING EXCHANGE, INC.,       )
APX MORTGAGE SERVICES, INC.,           )
RESOURCE ASSET MANAGEMENT, INC. and    )
SOUTH STAR MANAGEMENT CORPORATION,     )
          Defendants.                  )



JUDGMENT BY DEFAULT

        This action came on for hearing before the Court, KING, J.,
presiding, upon the marking of Plaintiff, Donna Lee H. Williams,
Insurance Commissioner of the State of Delaware as Receiver of
National Heritage Life Insurance Company in Liquidation
(hereinafter, "NHL") in the above entitled action, for a default
judgment by the court, pursuant to Rule 55(b)(2) of Mass. R. Civ.
P., and it appearing to the court that the Amended Complaint in
said action was filed on the 14'th day of July, 1997, and that no
answer or other defense has been filed by the said Defendants,
National Housing Exchange, Inc., Resource Asset Management, Inc.,
APX MOrtgage Services, Inc., and/or South Star Management Co.,
Inc., and that default on those Counts of the Amended Complaint
wherein default had not previously been entered, was entered on the
_2d_ day of _OCTOBER_ 1997, in the office of the clerk of
this court, and that no proceedings have been taken by the said
Defendants since said default was entered, it is ordered and
adjudged, that judgment by default enter as against the Defendants,
as follows:  as against National Housing Exchange, Inc. and
Resource Asset Management, Inc. on Counts IV and V of the Amended
Complaint;  and, as against APX Mortgage Services, Inc. and South
Star Management Co., Inc. on Counts I, II, III, IV and V of the
Amended Complaint, all in accordance with the Prayers of that
Amended Complaint, thereby recognizing and giving effect to the
following judgments in Massachusetts:

JUDGMENT ENTERED ON DOCKET _October 6, 19 97_
PURSUANT TO THE PROVISIONS OF MASS.R.CIV.P. 58(a)
AND NOTICE SENT TO PARTIES PURSUANT TO THE PRO-
VISIONS OF MASS.R.CIV.P. 77(d) AS FOLLOWS:

JTICE
SLT
D/5/97
J.F.C. Jr.

**AS TO APX AND SOUTH STAR:**

Prayer 1:  The Chancery Court of the State of Delaware in and for New Castle County's Liquidation and Injunction Order in Civil Action No. 13530, dated November 21, 1995, a copy of which is attached hereto as Exhibit "A";  and,

Prayer 2:  The United States District Court, Northern District of Illinois, Eastern Division's Amended Declaratory Judgment Order in No. 95 C 4243, dated April 12, 1996, *nunc pro tunc*, April 3, 1996, a copy of which is attached hereto as Exhibit "B";  and,

Prayer 3:  The United States District Court, Northern District of Illinois, Eastern Division's Revised Order Regarding Massachusetts Mortgages No. 95 C 4243, dated February 20, 1997, a copy of which is attached hereto as Exhibit "C".

**AS TO ALL DEFENDANTS:**

Prayer 4:  The United States District Court, Northern District of Illinois, Eastern Division's Order Particularly Identifying the I-250 Assets No. 95 C 4243 dated February 7, 1997, a copy of which is attached hereto as Exhibit "D".

Prayer 5:  The United States District Court, Northern District of Illinois, Eastern Division's Revised Order Regarding Additional Massachusetts Mortgages No. 95 C 4243, dated April 15, 1997, a copy of which is attached hereto as Exhibit "E".

**SO ORDERED:**

_____
                                        ,J.
Superior Court Department

Dated: October 6, 1997

I HEREBY ATTEST AND CERTIFY ON
Oct. 9, 1997, THAT THE
FOREGOING DOCUMENT IS A FULL,
TRUE AND CORRECT COPY OF THE
ORIGINAL ON FILE IN MY OFFICE,
AND IN MY LEGAL CUSTODY.
MICHAEL JOSEPH DONOVAN
CLERK/MAGISTRATE
SUFFOLK SUPERIOR CIVIL COURT
DEPARTMENT OF THE TRIAL COURT
BY
                    Asst. Clerk

BOOK 19273 PAGE 344



Bk 10816

ORIGINAL

By

IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

IN AND FOR NEW CASTLE COUNTY

IN THE MATTER OF THE            )
REHABILITATION OF NATIONAL      )   C.A. No. 13530
HERITAGE LIFE INSURANCE COMPANY )

## LIQUIDATION AND INJUNCTION ORDER

WHEREAS, the Honorable Donna Lee H. Williams, the Insurance Commissioner for the State of Delaware, heretofore appointed as the Receiver of the National Heritage Life Insurance Company in Rehabilitation by Order dated May 25, 1994 (the "Receiver"), has filed with the Court a petition seeking a Liquidation and Injunction Order concerning National Heritage Life Insurance Company ("National Heritage") pursuant to Title 18 Del. C. §5901, et seq.;

WHEREAS, a hearing on the financial status of National Heritage and for interested parties to show cause why National Heritage should not be declared insolvent and ordered liquidated was held by the Court on 11/2/95 ; and

WHEREAS, the Receiver has submitted evidence that National Heritage is insolvent, in that as of September 30, 1995, National Heritage's liabilities exceeded its assets by approximately $214 million and that as of the hearing date, the negative surplus was approximately $214 million.

NOW THEREFORE, the Court finds and IT IS HEREBY ORDERED as follows:

1. National Heritage is insolvent as that term is defined in 18 Del. C. §5901.

2. Sufficient cause exists for the liquidation of the respondent, National Heritage, pursuant to 18 Del. C. §§ 5906 and 5910 and a Liquidation and Injunction Order is hereby entered against National Heritage.

Bk 10816 102 34043

3.   The May 25, 1994 Rehabilitation and Injunction Order and the June 27, 1994 Supplemental Rehabilitation Order entered by the Court in this matter are hereby superseded, upon entry of this Order, and the Commissioner shall continue to serve as Receiver of National Heritage for the purpose of liquidation as set forth below.

4.   The appointment of the Honorable Donna Lee H. Williams, Commissioner of Insurance of the State of Delaware, and her successors in office, as the Receiver of National Heritage is hereby continued and the Receiver is hereby directed to immediately take or maintain her exclusive possession and control of and to continue or be vested with all right, title and interest in, of or to the property of National Heritage, including, without limitation, all of National Heritage's assets, contracts, rights of action, funds recoverable under treaties and agreements of reinsurance heretofore entered into by National Heritage as the ceding insurer, books, records, bank accounts, certificates of deposit, collateral securing obligations to, or for the benefit of, National Heritage or any trustee, bailee or any agent acting for, or on behalf of, National Heritage (collectively, the "Trustees"), securities or other funds, and all real or personal property of any nature of National Heritage including, without limitation, furniture, fixtures and office supplies, wherever located, and including such property of National Heritage or collateral securing obligations to, or for the benefit of, National Heritage or any Trustee thereof that may be discovered hereafter, and all proceeds of or accessions to any of the foregoing, wherever located, in the possession, custody or control of National Heritage or any Trustee therefore (collectively, the "Assets"), and to liquidate the same pursuant to the provisions of Chapter 59 of the Delaware Insurance Code, and the Receiver is further authorized

BOOK 19273 PAGE 346

Bk 10816 103   34843

to take such actions as the nature of this cause and interests of the policyholders, creditors and stockholders of National Heritage and the public may require.

5. The Receiver is hereby authorized to continue to deal with the Assets, business and affairs of National Heritage, including, without limitation, the right to sue for, defend for or continue suits already commenced by the Receiver for National Heritage, or for the benefit of National Heritage's policyholders, stockholders and creditors, in the courts and tribunals, agencies or arbitration panels in this State and other states in her name as the Commissioner of Insurance of the State of Delaware, or in the name of National Heritage.

6. The filing or recording of this Order or a certified copy hereof with the Clerk of this Court and with the recorder of deeds of the jurisdiction in which National Heritage's corporate and administration offices are located, or, in the case of real estate, with the recorder of deeds of the jurisdictions where the property is located, shall impart the same notice as would be imparted by a deed, bill of sale or other evidence of title duly filed or recorded with that recorder of deeds. Without limiting the foregoing, the filing of this Order with the Clerk of this Court also constitutes notice to all sureties and fidelity bondholders of National Heritage of all potential claims against National Heritage under such policies and shall constitute the perfection of a lien in favor of National Heritage under the Uniform Commercial Code or any like Federal or state law, regulation or order dealing with the priority of claims.

7. Except as otherwise indicated elsewhere in this Order, and upon notice provided by the Receiver, all agents and brokers, former officers, former directors, stockholders and all other persons or entities now or prospectively holding Assets of, or on behalf of, National

Bk •10016  104   34043

Heritage shall forthwith file an accounting of these Assets with the Receiver and shall within ten (10) days of the entry of this Order, turn those Assets over to the Receiver.

8.   The Receiver may, in her discretion, appoint or continue the appointment of a consultant or other person or persons to serve as Special Deputy Receiver(s) to assist the Receiver in accomplishing the directive of this Order.  The Special Deputy Receivers shall serve at the pleasure of the Receiver and, subject to the approval of the Receiver, shall be entitled to exercise all of the powers and authorities vested in the Receiver pursuant to this Order and applicable law.

9.   The Receiver may employ or continue to employ and fix the compensation of such deputies, counsel, clerks, employees, accountants, actuaries, consultants, assistants and other personnel (collectively, the "Designees") as considered necessary, and all compensation and expenses of the Special Deputy Receiver(s) and the Designees and of taking possession of National Heritage and conducting this proceeding shall be paid out of the funds and assets of National Heritage as administrative expenses under Title 18 Del. C. §5913(f).  Each and every Designee shall be deemed to have submitted to the jurisdiction of this Court for the resolution of any disputes between the Receiver and such Designee concerning such Designee's rights, obligations and compensation.

10.   The Receiver, the Special Deputy Receivers and the Designees (collectively, the "Indemnitees") shall have no personal liability for their acts or omissions in connection with their duties during the rehabilitation and liquidation periods, provided that such acts or omissions are or were undertaken in good faith and without willful misconduct, gross negligence or criminal intent.   All expenses, costs and attorney's fees incurred by the Indemnitees in

BOOK 19273 PAGE 348

Bk: 10816 105 34843

connection with any lawsuit brought against them in their representative capacities shall be subject to the approval of the Receiver and shall be exclusively paid out of the funds and assets of National Heritage.  The Indemnitees shall not be deemed to be employees of the State of Delaware.

11.  The Receiver's right, title and interest in and to all funds recoverable under treaties and agreements of reinsurance heretofore entered into by National Heritage as the ceding insurer shall continue, and all reinsurance companies involved with National Heritage are enjoined and restrained from making any settlements with any claimant or policyholder of National Heritage other than the Commissioner as Receiver.  The amounts recoverable by the Receiver from any reinsurer of National Heritage shall not be reduced as a result of this liquidation proceeding or by reason of any partial payment or distribution on a reinsured policy, contract or claim, and each such reinsurer of National Heritage is hereby enjoined and restrained from terminating, cancelling, failing to extend or renew, or reducing or changing coverage under any reinsurance policy or contract with National Heritage, except for non-payment of premium.  The Receiver may terminate or rescind any contract with a reinsurer or reinsurers that is contrary to the best interests of the estate in liquidation.

12.  The Receiver is hereby authorized to transfer National Heritage's assets and liabilities, to the extent such liabilities are not covered by a state guaranty association, to an affiliate, subsidiary or trust for the overall benefit of National Heritage's policyholders, other creditors, and stockholder, subject to approval by this Court.

BOOK 19273 PAGE 349

BK=10818=106    34849

13. The Receiver may change to her own name the name of any of National Heritage's accounts, funds or other property or assets held with any bank, savings and loan association or other financial institution, and may withdraw such funds, accounts and other property or assets from such institutions or take any lesser action necessary for the proper conduct of this liquidation.

14. The Receiver may reject any executory contract to which National Heritage is a party that the Receiver may in her discretion determine is burdensome to National Heritage or is otherwise not in its best interest. Any party to a rejected contract may file a claim only for damages arising from such rejection in accordance with paragraph 18, below. All claims of policyholders enumerated in 18 Del. C. §5918(e) shall have priority over all non-policyholder claims arising from the rejection of executory contracts.

15. National Heritage, its former officers, former directors, stockholders, agents, servants and employees and all other persons having notice of these proceedings or of this Order are hereby prohibited from transacting any business of, or on behalf of, National Heritage or selling, transferring, destroying, wasting, encumbering or disposing of any of the Assets, without the prior written permission of the Receiver or until further Order of this Court.

16. All banks, brokerage houses, agents, reinsurers, or other companies or persons, either having in their possession Assets or possible Assets (including, without limitation, books or records of National Heritage), or having notice of these proceedings or of this Order, are hereby enjoined and restrained from disposing of, selling, wasting, encumbering, transferring or destroying any such Assets or possible Assets (including, without limitation, books or records of National Heritage). This prohibition includes, without limitation, Assets, possible Assets,

6

BOOK 19273 PAGE 350

Bk: 10816  187  34343

books or records pertaining to any business transaction between National Heritage and any of said parties. No actions concerning, involving or relating to such Assets, possible Assets, books or records may be taken by any of the aforesaid persons or entities enumerated herein, without the prior written consent of the Receiver, or until further Order of this Court.

17. All former officers, former directors, stockholders, agents, servants and employees of National Heritage, and all other persons and companies having notice of these proceedings or of this Order, are hereby enjoined and restrained from instituting or further prosecuting any action at law or in equity or in other proceedings against National Heritage, the Commissioner as Receiver, the Special Deputy Receiver(s) or the Designees in connection with their duties as such, or from obtaining preferences, judgments, attachments or other like liens or encumbrances, or foreclosing upon or making of any levy against National Heritage or the Assets, or exercising any right adverse to the right of National Heritage to or in the Assets, or in any way interfering with the Receiver, the Special Deputy Receiver(s) or the Designees either in their possession and control of the Assets, books, and records of National Heritage or in the discharge of their duties hereunder.

18. All persons and companies are hereby enjoined and restrained from asserting any claim against the Commissioner as Receiver of National Heritage, or against the Special Deputy Receiver(s) or the Designees in connection with their duties as such, or against the Assets, except insofar as such claims are brought in the liquidation proceedings of National Heritage.

BOOK 19273 PAGE 351

~~Bk : 10816~~ ~~103~~ ~~34843~~

19.  The Court hereby imposes a temporary moratorium on payment of cash values, surrenders, policy loans or any other right to withdraw funds held in conjunction with the policies or contracts of National Heritage, in addition to the Receiver's and the state guaranty associations' right to implement any contractual provision for deferral of cash payment or policy loans, for a period of 120 days from the date of this Order, provided that any state guaranty association may voluntarily choose to permit a full or partial payment of cash values, surrenders, policy loans or any other right to withdraw funds for claims covered by the applicable state guaranty association law.

20.  Within a reasonable time after receipt of a claim in the liquidation proceedings of National Heritage, the Receiver shall give notice by mail to any and all persons interested in such claim of the Receiver's proposed report and recommendation to the Court regarding the allowance or denial (in whole or in part) of such claim.

21.  Within sixty (60) days of the mailing of the proposed report and recommendation, the interested person being given notice of such proposed report and recommendation may file a written objection thereto with the New Castle County Register in Chancery, 1000 King Street, Wilmington, Delaware, 19801, and the Receiver.

22.  Within a reasonable time after such sixty (60) days, there being no objection to the proposed report and recommendation, the Receiver shall file with the Court such report and recommendation.

23.  No hearing will be held regarding the proposed report and recommendation in the absence of a written objection thereto by a person interested therein.

BOOK 19273 PAGE 352

Bk: 10818 109   34843

24. The Receiver shall provide semiannual reports on the financial condition of National Heritage and on the actions of the Receiver pursuant to this Order.

25. Hereafter the caption of this cause and all pleadings in this matter shall read as:

"IN THE MATTER OF THE LIQUIDATION OF
NATIONAL HERITAGE LIFE INSURANCE COMPANY"

26. This Court shall retain jurisdiction in this cause for the purpose of granting such other and further relief as this cause, the interests of the policyholders, creditors, stockholders of National Heritage and the public may require. The Receiver, or any interested party upon reasonable notice to the Receiver, may at any time make application for such other and further relief as either sees fit.

27. On or before June 30, 1996, the Receiver shall mail a Notice of Liquidation and Bar Date and a proof of claim form to all known claimants and creditors or persons or entities reasonably believed to be claimants or creditors of National Heritage, by first class mail, postage prepaid, and obtain proof of such mailing on United States Postal Form 3606.

28. ANY AND ALL CLAIMS AGAINST THE NATIONAL HERITAGE LIFE INSURANCE COMPANY IN LIQUIDATION NOT PRESENTED TO THE RECEIVER ON OR BEFORE JUNE 30, 1997 SHALL BE FOREVER BARRED FROM SHARING IN DISTRIBUTIONS OF THE ASSETS OF NATIONAL HERITAGE UNLESS THERE IS A SURPLUS AND NATIONAL HERITAGE IS DEEMED SOLVENT PURSUANT TO 18 DEL. C. §5928(a)(2).

SO ORDERED this 21 day of MAY , 1995.

CERTIFIED
AS A TRUE COPY:
ATTEST:
FRANK B. CROTHERGRAW
REGISTER IN CHANCERY

_____
Chancellor

9

Bk:10816-110

Minute Order Form   (rev 12/90)

## UNITED STATES DISTRICT COURT, NORTHERN DISTRICT OF ILLINOIS

| Name of Assigned Judge or Magistrate Judge | Elaine E. Bucklo | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| Case Number | 95 C 4243 | Date | April 15, 1996 |
| Case Title | Williams, et al. Vs. National Housing, et al. | | |

**MOTION:**   In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.

**DOCKET ENTRY:**

(1)  ☐  Filed motion of [use listing in "MOTION" box above]    Sent for Microfilming

(2)  ☐  Brief in support of motion due _____    APR 16 1996

(3)  ☐  Answer brief to motion due _____ Reply to answer brief due _____

(4)  ☐  Ruling on   ☐ hearing   _____   Filmed on _____   set for ____ at ____

(5)  ☐  Status hearing  ☐ held  ☐ continued to  ☐ set for  ☐ re-set for  ____ at ____

(6)  ☐  Pretrial conf.  ☐ held  ☐ continued to  ☐ set for  ☐ re-set for  ____ at ____

(7)  ☐  Trial  ☐ Set for  ☐ re-set for  ____ at ____

(8)  ☐  ☐ Bench Trial  ☐ Jury Trial  ☐ Hearing  held and continued to ____ at ____

(9)  ☐  This case is dismissed  ☐ without  ☐ with  prejudice and without costs  ☐ by agreement  ☐ pursuant to
   ☐ FRCP 4(j) (failure to serve)  ☐ General Rule 21 (want of prosecution)  ☐ FRCP 41(a)(1)  ☐ FRCP 41(a)(2)

(10)  ☒  [Other docket entry] Receiver's motion for an order confirming his authority to convey certain REO property to purchaser and his motion for an order confirming his authority with respect to Arapaho Car wash Loans are granted. Nominal defendants' motion to enlarge time until May 3, 1996 to respond to the counterclaim of RAM is granted. Accordingly, reply is extended to May 24, 1996. Commissioner shall set aside escrow to provide for Continental fees, if ordered by it. Enter Amended Declaratory judgment order nunc pro tunc April 3, 1996 on plaintiff's motion for summary judgment on Count I. RAM has until May 13, 1996 to respond to motions to dismiss count I of RAM's counterclaim by Commissioner and Continental. Ruling set for July 11, 1996 at 9:45 A.M.

(11)  ☐  [For further detail see  ☐ order on the reverse of  ☐ order attached to] the original minute order form.

| | | | | |
|---|---|---|---|---|
| ☐ | No notices required, advised in open court | | | number of notices |
| ☐ | No notices required | | | |
| ☐ | Notices mailed by judge's staff | | APR 16 1996 | date docketed |
| ☐ | Notified counsel by telephone | | | |
| ☒ | Docketing to mail notices | | | docketing dpty. initials |
| ☐ | Mail AO 450 form | | | |
| ☐ | Copy to judge/magistrate judge | | APR 16 1996 | date mailed notice |
| | courtroom deputy's initials  mly | | Date/time received in central Clerk's Office | mailing dpty. initials |

Document #

BOOK 19273 PAGE 354

BK: 10816  117  34843

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DONNA LEE H. WILLIAMS, INSURANCE COMMISSIONER OF THE STATE OF DELAWARE, AS RECEIVER OF NATIONAL HERITAGE LIFE INSURANCE COMPANY IN REHABILITATION, CONTINENTAL STOCK TRANSFER & TRUST COMPANY, MIDWEST INDEPENDENT BANK, and MIDWEST MORTGAGE SERVICING, L.L.C., )<br><br>Plaintiffs, )<br><br>v. )<br><br>NATIONAL HOUSING EXCHANGE INC., APX MORTGAGE SERVICES, INC., and RESOURCE ASSET MANAGEMENT, INC. )<br><br>Defendants. ) | Civil Action 95 C 4243<br>Hon. Elaine E. Bucklo<br>Magistrate Judge<br>Rebecca R. Pallmeyer |

## AMENDED DECLARATORY JUDGMENT ORDER

This cause coming to be heard on the Motion for Summary Judgment on Count I, filed by the plaintiff Donna H. Lee Williams, Insurance Commissioner of the State of Delaware, as Receiver of National Heritage Life Insurance Company in Liquidation (the "Commissioner"), due notice having been given and the Court being fully advised in the premises,

IT IS HEREBY ORDERED, ADJUDGED, DECLARED AND DECREED:

1.   The Commissioner's Motion for Summary Judgment on Count I is granted;

2.   All the rights of National Housing Exchange, Inc. under the Indenture and Servicing Agreement dated December 28, 1993 were terminated on November 7, 1994;

BOOK19273PAGE355

Bk:10816 118 34843

6. The Commissioner is entitled to unencumbered ownership of the Mortgages, Mortgage Files, Mortgage Loans, Mortgage Impairment Insurance Policy, Mortgage Notes, Mortgaged Property, Pool of Mortgages, Related Security Documents and any and all proceeds thereof, as those terms are defined in the Indenture and Servicing Agreement dated December 28, 1993; and,

7. All right, title and interest in and to the Mortgages, Mortgage Files, Mortgage Loans, Mortgage Impairment Insurance Policy, Mortgage Notes, Mortgaged Property, Pools of Mortgage, Related Security Documents and any and all proceeds thereof, as those terms are defined in the Indenture and Servicing Agreement dated December 28, 1993 is vested in the National Heritage Life Insurance Company in Liquidation (or any affiliate designated by National Heritage Life Insurance Company in Liquidation with respect to any environmentally impaired Mortgaged Property).

ENTER ORDER:

DATED: APRIL 12, 1996,
nunc pro tunc APRIL 3, 1996

Elaine E. Bucklo
United States District Court
Judge

3

BOOK 19273 PAGE 356

Bk 10818 119 3484

EXHIBIT 2

Schedule of KKK Bond Loans Secured by Real Estate

November 8, 19

| St. | County | Series | Mortgagor | Address | City | Document # | Book # | Page # |
|-----|--------|--------|-----------|---------|------|-----------|--------|--------|
| A | | 15 | Duprey | 81 Sterling Lane | Bradford | 800162 | 9479 | 524 |
| | | 16 | Gilet | 71 Princeton, Unit 108 | North Chelmsford | 33553 | 5508 | 179 |
| | Barnstable | 16 | Most | 108 Howland Circle, #102 | Brewster | 32748 | 6308 | 112 |
| | Bristol | 14 | Drumheiser | 14 Spruce Street | New Bedford | 22979 | 2228 | 90 |
| | Essex | 15 | Daigle | 200 Wilson Street, Units 2 & 4 | Haverhill | 364 | 10392 | 472 |
| | | | Roberts | 4 Central Avenue | Methuen | 42312 | 67 | 333 |
| | | 16 | Gauthier/Roderick | 407 Forest Hill Road | Dunstable | 79019 | 3841 | 233 |
| | | | Moran | 415 Lafayette St. | Salem | 53 | 9067 | 169 |
| | Hampshire | 15 | Duquette | 72 Barrett Street, Unit 11G | Northhampton | 19366 | (none) | (none) |
| | Hillsborough | 16 | Driscoll/Zuker | 143 Baboosic Lake Rd. | Merrimack | 802728 | 4591 | 115 |
| | Middlesex | 13 | Elliot Group Inc. | 38-40 Sarah Ave./771 Broadway/285-287 Dutton St. | Lowell | 11569 | B05490 | 278 |
| | | 14 | Gavriel | 26-28 Alma | Lowell | 20595 | 4507 | 61 |
| | | 15 | Babcock | 54 Glenside Avenue | Billerica | 12834 | B04452 | 21 |
| | | | Dabilis | 861-871 Middlesex Road | Lowell | 78706 | 3839 | 259 |
| | | | Dabilis/Gavriel | 42 Marshall St. | Lowell | 13934 | 3956 | 338 |
| | | | Duffy | 97 Daniels Street | Malden | 682632 | 998 | 129 |
| | | | Grant | 810B Lawrence Street | Lowell | 36079 | 3556 | 12 |
| | | | Oehley | 11 Pike Street | Hopkinton | (none) | 15414 | 174 |
| | | | Torres/Ramos | 29-31 Queen St. | Lowell | 35435 | 5005 | 150 |
| | | 16 | Arbetter | 78 Captian Eames Circle, #U2B | Ashland | (none) | 18215 | 80 |
| | | | Hague | 40 Aberdeen Street | Lowell | 18871 | 3436 | 109 |
| | | | Hipp | 65 Indian Brook Road | Ashland | 471 | 20144 | 600 |
| | | | Landry | 361 Aiken Avenue, No 4 | Lowell | 44158 | B05373 | 195 |
| | | | McInnis | 369 Aiken Avenue, Unit 16 | Lowell | 34328 | B04995 | 134 |
| | | 17 | Games | 6 Ledgewood Way, Unit 16 | Peabody | 91 | 9605 | 576 |
| | | | Keomouangchanh | 204 Ludlam St. | Lowell | 24133 | B04533 | 29 |
| | New Haven | 16 | O'Malley | 208 West St., Unit 4A | Milford | (none) | 11971 | 298 |

BOOK 19273 PAGE 357

Bk 10816 120 34843

EXHIBIT 2

Schedule of MMR Bond Loans Secured by Real Estate

November 8, 1996

| St. | County | Series | Mortgagor | Address | City | Document # | Book # | Page # |
|-----|--------|--------|-----------|---------|------|-----------|--------|--------|
| MA | Norfolk | 15 | Giordano | 660 Franklin Street | Wrentham | 1654 | 7474 | 613 |
| | | | Magri | 7-9 Pierce Street, | Milton | 44301 | 7247 | 487 |
| | | | Padula | 131, 133, & 135 Creek St. | Wrentham | 492121 | 619 | 119 |
| | | | Reed | 691 Washington Street | Braintree | 25552 | 989 | 695 |
| | | 16 | Brustin | 133 Commander Shea Blvd., Unit 116 | Quincy | 13421 | 7436 | 161 |
| | Plymouth | 15 | Feingold/Connolly | 45 Manomet Rd. | Plymouth | 9742 | 10728 | 95 |
| | | 16 | McCann | 50 Pinewood Lane | Duxbury | (none) | 7044 | 85 |
| | | 17 | Melone | 131 Chapel Street | Pembroke | 76854 | 10509 | 342 |
| | | | Pasquariello | 3-12 School Street | Marshfield | 65134 | 6922 | 146 |
| | | | | 3-7 School Street | Marshfield | 65137 | 6922 | 162 |
| | Suffolk | 14 | Pal | 461 Washington Street, Unit 406 | Boston | 143 | 13522 | 64 |
| | | 15 | Deo | 56 Round Hill Street | Jamaica Plain | 290 | 15403 | 128 |
| | | | Glades Realty Trust | 36-38 Grove St. | Chelsea | 213 | 13630 | 336 |
| | | | Levis | 135-137 Sydney Street | Boston | (none) | 13669 | 175 |
| | | | Mannix | 29 Vinton Street | South Boston | (none) | 16204 | 136 |
| | | 16 | Cheletzky | 8 Kittredge Street, No. 5K | Rosendale | 239 | 16232 | 60 |
| | | | Glades Realty Trust | 30-34 Grove St. | Chelsea | 213 | 13630 | 336 |
| | | | Grubbs | 20 American Legion Highway | Boston | 33106 | 14939 | 1 |
| | | | Krell | 1607 Commonwealth, Unit 30 | Boston | 41645 - C114-62 | (none) | (none) |
| | | | Mullings | 40 Kingsdale Street | Dorchester | 457044 | (none) | (none) |
| | | 17 | Brown | 18 Burnett Road, #18 | Revere | 173 | 14918 | 220 |
| | Worcester | 14 | Reinold/Firelli | 135 East Main St., Unit C-8 | Westborough | 42917 | 8276 | 321 |
| | | 15 | Choquette | 257 E. Main St. | East Douglas | 8559 | 11900 | 127 |
| | | | Griffin | 5 Griswold Court | Uxbridge | 112513 | 13821 | 265 |
| | | 16 | Humphrey's LTD | 208 West Street, Unit 4A | Hopedale | (none) | 10285 | 188 |
| | | | King | 6 Beckman St. | Worcester | 121706 | 10883 | 243 |

BOOK 19273 PAGE 358

BK:10816-121    34843

EXHIBIT 2

November 4, 1996

Schedule of XXX Bond Loans Secured by Real Estate

| County | Series | Mortgagor | Address | City | Document # | Book # | Page # |
|--------|--------|-----------|---------|------|-----------|--------|--------|
| Worcester | 16 | King | 19 Canton Street | Worcester | 7662 | 11097 | 122 |
| | 17 | Alex | 61A Fox Meadow Road, Unit 61A | Leominister | 7686 | 1561 | 44 |
| | | Pasquariello | 4 Oak St., #12/12 Williamsburg Ct., #28/3 & 12 Castle Green, #1 | Shrewsbury | 5733 | 9192 | 16 |
| | | | 12-4 Oak Street | Shrewsbury | 5733 | 9192 | 171 |

BOOK19273PAGE359

Bk 10816 122 34849

## CERTIFICATE OF SERVICE

I, William P. Ziegelmueller, an attorney, certify that on February 14, 1997, I caused a copy of the foregoing MOTION FOR A REVISED ORDER REGARDING MASSACHUSETTS MORTGAGES to be served by U.S. Mail, postage prepaid:

Richard Waris
Pretzel & Stouffer Chartered
One South Wacker Drive
Suite 2500
Chicago, Illinois 60606

James Rolfes
Sachnoff & Weaver, Ltd.
30 S. Wacker Drive
Suite 2900
Chicago, Illinois 60606

David J. Krupp
Miller, Shakman, Hamilton,
 Kurtzon & Schlifke
208 South LaSalle Street
Suite 1100
Chicago, Illinois 60604

Robert E. Davy, Jr.
180 N. LaSalle, Suite 2315
Chicago, Illinois 60611

APX Mortgage Services, Inc.
c/o Robert Gorski
P.O. Box 909
Lake Zurich, Illinois  60047-0909

_____
William P. Ziegelmueller

BOOK **19273** PAGE **360**

Bk: IU816- 

### UNITED STATES DISTRICT COURT, NORTHERN DISTRICT OF ILLINOIS

| Name of Assigned Judge or Magistrate Judge | Elaine E. Bucklo | Sitting Judge if Other Than Assigned Judge | |
|---|---|---|---|
| Case Number | 95 C 4243 | Date | February 20, 1997 |
| Case Title | Williams, et al. VS. National Housing, et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion e.g. plaintiff, defendant, 3rd-party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

Sent for Microfilming

(1)  Filed motion of [use listing in "MOTION" box above]

(2)  Brief in support of motion due

(3)  Answer brief to motion due _____ Reply to answer brief due _____ Filed on FEB 24 1997

(4)  Ruling / Hearing  on _____ set for _____ at _____

(5)  Status hearing  [ ] held  [ ] continued to  [ ] set for  [ ] re-set for  at _____

(6)  Pretrial conf.  [ ] held  [ ] continued to  [ ] set for  [ ] re-set for  at _____

(7)  Trial  [ ] Set for  [ ] re-set for  _____ at _____

(8)  [ ] Bench Trial  [ ] Jury Trial  [ ] Hearing  held and continued to  at _____

(9)  This case is dismissed  [ ] without  [ ] with  prejudice and without costs  [ ] by agreement  [ ] pursuant to  [ ] FRCP 4(j) (failure to serve)  [ ] General Rule 21 (want of prosecution)  [ ] FRCP 41(a)(1)  [ ] FRCP 41(a)(2)

(10)  [Other docket entry]  The Commissioner's motion for the entry of a revised order regarding Massachusetts Mortgage is granted. Enter Revised Order. Plaintiff's motion for reassignment of case number 96 C 8477 based on relatedness is also granted.

(11)  [✓] [For further detail see  [ ] order on the reverse of  [✓] order attached to  the original minute order form.]

| | | | |
|---|---|---|---|
| No notices required, advised in open court. | | | number of notices |
| No notices required | | | |
| Notices mailed by judge's staff | | | |
| Notified counsel by telephone. | FEB 21 1997 | | date docketed |
| [✓] Docketing to mail notices | | | |
| Mail AO 450 form. | | | docketing dpty. initials |
| Copy to judge/magistrate Judge. | FEB 21 1997 | | date mailed notice |
| courtroom deputy's | Date/time received in | | |

97 FEB 20 PM 5: 35
RECEIVED FOR DOCKETING
EO-11

Document # **375**

BOOK 19273 PAGE 361

~~Bk. 10816   115   34843~~

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

DOCKETED

FEB 2 1 1997

DONNA LEE H. WILLIAMS, ET AL.                )
                                             )
                    Plaintiffs,              )   Civil Action 95 C 4243
                                             )   Hon. Elaine E. Bucklo
          v.                                 )   Magistrate Judge
                                             )   Rebecca R. Pallmeyer
NATIONAL HOUSING EXCHANGE INC., APX          )
MORTGAGE SERVICES, INC., and                 )
RESOURCE ASSET MANAGEMENT, INC.              )
                                             )
                    Defendants.              )

### REVISED ORDER REGARDING MASSACHUSETTS MORTGAGES

This matter having come to be heard on the
Commissioner's Motion for the Entry of a Revised Order Regarding
Massachusetts Mortgages subject to the Amended Declaratory
Judgment Order entered April 12, 1996, <u>nunc pro tunc</u> April 3,
1996, a copy of which is attached hereto as Exhibit 1, the Court
hereby orders that National Heritage Life Insurance Company, in
Liquidation ("NHL"), as to any claim of title and possession by
or through National Housing Exchange Inc., APX Mortgage Services,
Inc., Resource Asset Management, Inc., and South Star Management
Corp. (collectively "the Parties"), has good, valid, and
indefeasible ownership of any and all interests, free and clear,
and free of any adverse equities and any other claims in and to
the mortgages, deeds of trust, trust deeds, deeds to secure debt,
security devises or other title retention instruments, whether or
not of record, with respect to the real property located in the
Commonwealth of Massachusetts and listed in Exhibit 2, which is
attached to this Order and incorporated herein (hereinafter such
mortgages, deeds of trust, trust deeds, deeds to secure debt,
security devises or other title retention instruments shall be
referenced as the "Mortgages"), together with:

(1)   any and all notes, loan agreements, credit agreements,
      guaranties, and any other evidence of indebtedness
      secured by the Mortgages;

(2)   any and all other security interests or claims
      pertaining to any indebtedness secured by the
      Mortgages, including but not limited to any and all (a)
      security agreements or chattel mortgages, (b)
      assignments or collateral assignments of rents, leases,
      and profits, (c) assignments or collateral assignments
      of accounts receivable, (d) assignments, collateral
      assignments, or pledges of stock, (e) assignments or
      collateral assignments of business licenses, permits,
      service contracts and equipment leases, (f) interests
      in any insurance proceeds or condemnation awards, (g)

BOOK 19273 PAGE 362

Bk 10016-116   34843

interests in any indemnification agreements, whether
with respect to environmental matters or otherwise, (h)
interests in any leases, ground leases, proprietary
leases, or occupancy agreements, (i) interests in any
UCC financing statements, (j) creditor's claims, and
(k) if the subject Mortgage is in the process of being
foreclosed, any proceeds being held in the registry of
the court of competent jurisdiction or held by the
court-appointed receiver; and

(3)   any proceeds thereof.

It is further ordered that to the extent that any
Mortgages have been foreclosed or repossessed, or title has
otherwise reverted to Defendant prior to this Order, that, as
between the Parties and NHL, NHL has good, valid and indefeasible
fee simple title, free and clear, and free and clear of any
claims in and to the real property that is encumbered by said
Mortgages, together with all improvements thereon and easements
and appurtenances thereto, and together with any and all proceeds
concerning such real property held (1) in the registry of any
court where such foreclosure action was pending, (2) by any
court-appointed receiver for such real property, (3) by any
property manager for such real property, and (4) by any other
third party.   (Hereinafter all Mortgages and related assets and
real property and related assets shall be referenced as the
"Assets".)

It is further ordered that, if necessary, in order to
fulfill the terms and intent of this Order, NHL shall have the
right (1) to unilaterally record any documents transferring or
conveying any rights relating to the Assets and encompassed by
this Order into the name of NHL, including but not limited to any
assignment of any of the Mortgages or any UCC-3 financing
statements, and (2) to unilaterally record any new financing
statements to perfect NHL's security interests in the Assets.

It is further ordered that the Commissioner and NHL are
not bound by the terms of any oral agreements affecting the
Assets made by any predecessor in interest or former servicer of
the Assets.

The recording of a certified copy of this Order in any
jurisdiction where any Assets are located shall (1) convey title
to such Assets to NHL, pursuant to the terms of this Order, and
(2) re-establish any lost original instruments or documents
pertaining to such Assets.

Dated:  2/20/97          ENTER: _____
                                Hon. Elaine E. Bucklo
                                United States District Court Judge

BOOK19273 PAGE 363 

## UNITED STATES DISTRICT COURT, NORTHERN DISTRICT OF ILLINOIS

| Name of Assigned Judge or Magistrate Judge | Elaine E. Bucklo | Sitting Judge if Other Than Assigned Judge | |
|---|---|---|---|
| Case Number | 95 C 4243 | Date | February 7, 1997 |
| Case Title | Williams, et al. Vs. National Housing, et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd-party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) Filed motion of [use listing in "MOTION" box above]

Sent for Microfilming

(2) Brief in support of motion due _____

FEB 10 1997

(3) Answer brief to motion due _____ Reply to answer brief due _____

(4) ☐ Ruling ☐ Hearing on _____ set for Filed on _____ at _____

(5) Status hearing ☐ held ☐ continued to ☐ set for ☐ re-set for _____ at _____

(6) Pretrial conf. ☐ held ☐ continued to ☐ set for ☐ re-set for _____ at _____

(7) Trial ☐ Set for ☐ re-set for _____ at _____

(8) ☐ Bench Trial ☐ Jury Trial ☐ Hearing held and continued to _____ at _____

(9) This case is dismissed ☐ without ☐ with prejudice and without costs ☐ by agreement ☐ pursuant to

☐ FRCP 4(j) (failure to serve) ☐ General Rule 21 (want of prosecution) ☐ FRCP 41(a)(1) ☐ FRCP 41(a)(2)

(10) ☒ [Other docket entry]  Commissioner's motion for the entry of an order particularly identifying the I-250 assets is granted. Enter Order.

(11) ☑ [For further detail see ☐ order on the reverse of ☑ order attached to the original minute order form.]

| | | | |
|---|---|---|---|
| ☐ No notices required, advised in open court. | | | number of notices |
| ☐ No notices required. | | | |
| ☐ Notices mailed by judge's staff. | | FEB 10 1997 | date docketed |
| ☐ Notified counsel by telephone. | | | |
| ☑ Docketing to mail notices. | | | docketing dpty. initials |
| ☐ Mail AO 450 form. | | | date mailed notice |
| ☐ Copy to judge/magistrate Judge | | | |
| courtroom deputy's | Date/time received in | | |

Document #

320

BOOK 19273 PAGE 364

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DONNA LEE H. WILLIAMS, ET AL. | ) |
| | ) |
| Plaintiffs, | ) Civil Action 95 C 4243 |
| | ) Hon. Elaine E. Buckio |
| v. | ) Magistrate Judge |
| | ) Rebecca R. Pallmeyer |
| NATIONAL HOUSING EXCHANGE INC., APX | ) |
| MORTGAGE SERVICES, INC., and | ) |
| RESOURCE ASSET MANAGEMENT, INC. | ) |
| | ) |
| Defendants. | ) |

DOCKETED
FEB 10 1997

## ORDER PARTICULARLY IDENTIFYING THE I-250 ASSETS

    This matter having come to be heard on the
Commissioner's Motion for the Entry of an Order Particularly
Identifying the I-250 Assets, the Court hereby orders that
National Heritage Life Insurance Company, in Liquidation ("NHL")
has good, valid, and indefeasible ownership of any and all
interests, all free and clear of any defects of title and free
and clear of any leases, liens, security interests, encumbrances,
adverse equities and any other claims of any other person or
entity, in and to the mortgages, deeds of trust, trust deeds,
deeds to secure debt, security devises or other title retention
instruments, whether or not of record, with respect to the real
property listed in Exhibit A, which is attached to this Order and
incorporated herein (hereinafter such mortgages, deeds of trust,
trust deeds, deeds to secure debt, security devises or other
title retention instruments shall be referenced as the
"Mortgages"), together with:

    (1)    any and all notes, loan agreements, credit agreements,
            guaranties, and any other evidence of indebtedness
            secured by the Mortgages;

    (2)    any and all other security interests or claims
            pertaining to any indebtedness secured by the
            Mortgages, including but not limited to any and all (a)
            security agreements or chattel mortgages, (b)
            assignments or collateral assignments of rents, leases,
            and profits, (c) assignments or collateral assignments
            of accounts receivable, (d) assignments, collateral
            assignments, or pledges of stock, (e) assignments or
            collateral assignments of business licenses, permits,
            service contracts and equipment leases, (f) interests
            in any insurance proceeds or condemnation awards, (g)
            interests in any indemnification agreements, whether
            with respect to environmental matters or otherwise, (h)
            interests in any leases, ground leases, proprietary
            leases, or occupancy agreements, (i) interests in any

BOOK 19273 PAGE 365

UCC financing statements, (j) creditor's claims, and (k) if the subject Mortgage is in the process of being foreclosed, any proceeds being held in the registry of the court of competent jurisdiction or held by the court-appointed receiver;  and

(3)   any proceeds thereof.

It is further ordered that to the extent that any Mortgages have been foreclosed, NHL has good, valid and indefeasible fee simple title, free and clear of any defects of title and free and clear of any claims of any other person or entity, in and to the real property that is encumbered by said Mortgages, together with all improvements thereon and easements and appurtenances thereto, and together with any and all proceeds concerning such real property held (1) in the registry of any court where such foreclosure action was pending, (2) by any court-appointed receiver for such real property, (3) by any property manager for such real property, and (4) by any other third party.  (Hereinafter all Mortgages and related assets and real property and related assets shall be referenced as the "Assets".)

It is further ordered that, if necessary, in order to fulfill the terms and intent of this Order, NHL shall have the right (1) to unilaterally record any documents transferring or conveying any rights relating to the Assets and encompassed by this Order into the name of NHL, including but not limited to any assignment of any of the Mortgages or any UCC-3 financing statements, and (2) to unilaterally record any new financing statements to perfect NHL's security interests in the Assets.

It is further ordered that the Commissioner and NHL are not bound by the terms of any oral agreements affecting the Assets made by any predecessor in interest or former servicer of the Assets.

The recording of a certified copy of this Order in any jurisdiction where any Assets are located shall (1) convey title to such Assets to NHL, pursuant to the terms of this Order, and (2) re-establish any lost original instruments or documents pertaining to such Assets.

Dated:  __2/7/97__          ENTER: _____
                                   Hon. Elaine E. Bucklo
                                   United States District Court Judge

\42272\010\50COUBAZ.028

BOOK 19273 PAGE 366

Page 1

SEARCH PHRASE:  CLASSIF CONTAINS 1-250 AND NOT CLASSIF CONTAINS bond AND NOT CURSTAT        CONTAINS "paid off"

| STATE COUNTY | MORTGAGR | ADDR | CITY | DOCNO. | BK# | PAGENO. | SHARES | UCC# | COOP |
|---|---|---|---|---|---|---|---|---|---|
| San Bernadino | Hobbs | 1358 N. Idyllwild | Rialto | 84-304157 | (none) | (none) | | | |
| Fairfield | Bacon | 120 Huntington Tpk., Unit 303 | Bridgeport | 16789 | 2355 | 211 | | | |
| Lucas | Lenci | 248 Willow St. | Waterbury | 2145 | 2586 | 106 | | | |
| New Haven | Lenci | 242-244 Willow St. | Waterbury | 2143 | 2586 | 94 | | | |
| New Haven | Batam Associates | 1070 New Haven, Unit 53 | Milford | 10648 | 1607 | 125 | | | |
| Orleans Parish | Davis | 1371-1373 St. Bernard Avenue | New Orleans | 482917 | MOB2414 | 136 | | | |
| St. Bernard Parish | Aries Enterprise | 201, 203 & 205 South Pl. | Chalmette | (none) | 142 | 196 | | | |
| Essex | Chimenti | F-1 Colonial Dr., Unit 6 | Andover | (none) | 2522 | 105 | | | |
| Gloucester | Afotey | 520 Cascade Ct., Unit 520 | Sewell | 11348 | MB 1528 | 87 | | | |
| New York | Eisenberg | 66-33 98th Pl., Unit 3J | Rego Park | Stock #154 | | | 204 | (none) | 98th Place Owners |
| New York | Poupon | 5 Tudor City Pl., Unit 308 | New York | Stock #A602 | | | 156 | 95PN18564 | Windsor Owners |
| New York | Verigan | 5 Tudor City Pl., Unit 237 | New York | Stock #A610 | | | 145 | 95PN18563 | Windsor Owners |
| New York | Jenkins | 5 Tudor City Pl., Unit 437 | New York | Stock #A580 | | | 149 | 95PN34567 | Windsor Owners |
| New York | Suh | 5 Tudor City Pl., Unit B-17 | New York | Stock #A582 | | | 284 | 95PN18119 | Windsor Owners |
| New York | McKennan | 5 Tudor City Pl., Unit 715 | New York | Stock #B364 | | | 189 | 38PN67159 | Tudor Owners |
| Queens | Brodigan | 5 Bedford Ave. | Rockaway Park | Stock #9471 | | | 175 | 151741 | Breezy Point Cooperative, Inc. |
| Suffolk | Gill | 365 County Rd., Unit 39 | Shinnecock Hills | CO 53814 | 12307 | 391 | | | |

BOOK 19273 PAGE 367

EARCH PHRASE:  CLASSIF CONTAINS I-250 AND NOT C   IF CONTAINS bond AND NOT CURSTAT   ONTAINS "paid off"

| TATE | COUNTY | MORTGAGR | ADDR | CITY | DOCNO. | BK# | PAGENO. | SHARES | UCC# | COOP |
|------|--------|----------|------|------|--------|-----|---------|--------|------|------|
| H | Franklin | Messenger | 6798 Lehman Rd. | Canal Winchester | (none) | 3469 | 633 | | | |
| H | Franklin | Singer | 809-811 E. 2nd Ave. | Columbus | 23694 | 11293 | 803 | | | |
| H | Franklin | Mullen | 333 S. Sylvan Ave. | Columbus | 5710 | 11073 | 820 | | | |
| H | Lucas | Hudson | 2741 Stickney Ave. | Toledo | 20062 | 83 | 912C09 | | | |
| H | Warren | Green | 395 Morrow Rd. | South Lebanon | 12684 | 037 | 89 | | | |
| A | Philadelphia | Laren | 213 S. 46th St. | Philadelphia | (none) | M0922 | 316 | | | |
| X | Collin | Malone, II | Lot 1 in Block 6 of Bent Trail Addition 3 | Dallas | 43529 | 2894 | 384 | | | |
| X | Lubbock | Patton | 1205-1207 34th St. | Lubbock | 11558 | 2794 | 32 | | | |
| X | Nueces | Loas Tire & Auto Supply | 4015 Ayers | Corpus Christi | 596050 | Roll 195 | 1705 | | | |
| A | Loudoun | Ritenour | South-West corner of Church & State Sts. | Leesburg | 11314 | 1043 | 1333 | | | |
| A | Washington | Kassir/KHS Associates | 920-924 Business Pk. | Chesapeake | 22634 | 2324 | 697 | | | |

BOOK **19273** PAGE **368**



## UNITED STATES DISTRICT COURT, NORTHERN DISTRICT OF ILLINOIS

| Name of Assigned Judge or Magistrate Judge | Elaine E. Bucklo | Sitting Judge if Other Than Assigned Judge | |
|---|---|---|---|
| Case Number | 95 C 4243 | Date | April 16, 1997 |
| Case Title | Williams, et al. Vs. National Housing, et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd-party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [use listing in "MOTION" box above]

Sent for Microfilming

(2) ☐ Brief in support of motion due _____

(3) ☐ Answer brief to motion due _____  Reply to answer brief due _____

APR 17 1997

(4) ☐ Ruling / Hearing  on _____  set for _____

Filmed on __APR 21 1997

(5) ☐ Status hearing ☐ held ☐ continued to ☐ set for ☐ re-set for _____ at _____

(6) ☐ Pretrial conf. ☐ held ☐ continued to ☐ set for ☐ re-set for _____ at _____

(7) ☐ Trial ☐ Set for ☐ re-set for _____ at _____

(8) ☐ Bench Trial ☐ Jury Trial ☐ Hearing  held and continued to _____ at _____

(9) ☐ This case is dismissed ☐ without ☐ with prejudice and without costs ☐ by agreement ☐ pursuant to
☐ FRCP 4(j) (failure to serve) ☐ General Rule 21 (want of prosecution) ☐ FRCP 41(a)(1) ☐ FRCP 41(a)(2)

(10) ☒ [Other docket entry]  Enter order regarding additional Massachusetts mortgages.

(11) ☑ [For further detail see ☐ order on the reverse of ☐ order attached to  the original minute order form.]

| | |
|---|---|
| ☐ No notices required, advised in open court. | number of notices |
| ☐ No notices required. | |
| ☐ Notices mailed by judge's staff. | date docketed |
| ☐ Notified counsel by telephone. | |
| ☑ Docketing to mail notices. | docketing dpty. initials |
| ☐ Mail AO 450 form. | date mailed notice |
| ☐ Copy to judge/magistrate Judge. | |
| courtroom deputy's | Date/time received in central Clerk's Office | mailing |

APR 17 1997

APR 17 1997

Document #

351

BOOK19273 PAGE 369

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

DOCKETED

APR 17 1997

DONNA LEE H. WILLIAMS, ET AL.    )
                                 )
                Plaintiffs,      )    Civil Action 95 C 4243
                                 )    Hon. Elaine E. Bucklo
        v.                       )    Magistrate Judge
                                 )    Rebecca R. Pallmeyer
NATIONAL HOUSING EXCHANGE INC., APX )
MORTGAGE SERVICES, INC., and     )
RESOURCE ASSET MANAGEMENT, INC.  )
                                 )
                Defendants.      )

## ORDER REGARDING ADDITIONAL MASSACHUSETTS MORTGAGES

This matter having come to be heard on the
Commissioner's Emergency Motion for an Order Confirming Title to
Additional Massachusetts Mortgages, the Court hereby orders that
National Heritage Life Insurance Company, in Liquidation ("NHL")
has good, valid, and indefeasible ownership of any and all
interests, all free and clear of any defects of title and free
and clear of any leases, liens, security interests, encumbrances,
adverse equities and any other claims of any other person or
entity, in and to the mortgages, deeds of trust, trust deeds,
deeds to secure debt, security devises or other title retention
instruments, whether or not of record, with respect to the real
property located in the State of Massachusetts and listed in
Exhibit A, which is attached to this Order and incorporated
herein (hereinafter such mortgages, deeds of trust, trust deeds,
deeds to secure debt, security devises or other title retention
instruments shall be referenced as the "Mortgages"), together
with:

(1)    any and all notes, loan agreements, credit agreements,
       guaranties, and any other evidence of indebtedness
       secured by the Mortgages;

(2)    any and all other security interests or claims
       pertaining to any indebtedness secured by the
       Mortgages, including but not limited to any and all (a)
       security agreements or chattel mortgages, (b)
       assignments or collateral assignments of rents, leases,
       and profits, (c) assignments or collateral assignments
       of accounts receivable, (d) assignments, collateral
       assignments, or pledges of stock, (e) assignments or
       collateral assignments of business licenses, permits,
       service contracts and equipment leases, (f) interests
       in any insurance proceeds or condemnation awards, (g)
       interests in any indemnification agreements, whether
       with respect to environmental matters or otherwise, (h)
       interests in any leases, ground leases, proprietary

BOOK 19273 PAGE 370

leases, or occupancy agreements, (i) interests in any UCC financing statements, (j) creditor's claims, and (k) if the subject Mortgage is in the process of being foreclosed, any proceeds being held in the registry of the court of competent jurisdiction or held by the court-appointed receiver; and

(3)    any proceeds thereof.

It is further ordered that to the extent that any Mortgages have been foreclosed, NHL has good, valid and indefeasible fee simple title, free and clear of any defects of title and free and clear of any claims of any other person or entity, in and to the real property that is encumbered by said Mortgages, together with all improvements thereon and easements and appurtenances thereto, and together with any and all proceeds concerning such real property held (1) in the registry of any court where such foreclosure action was pending, (2) by any court-appointed receiver for such real property, (3) by any property manager for such real property, and (4) by any other third party.  (Hereinafter all Mortgages and related assets and real property and related assets shall be referenced as the "Assets".)

It is further ordered that, if necessary, in order to fulfill the terms and intent of this Order, NHL shall have the right (1) to unilaterally record any documents transferring or conveying any rights relating to the Assets and encompassed by this Order into the name of NHL, including but not limited to any assignment of any of the Mortgages or any UCC-3 financing statements, and (2) to unilaterally record any new financing statements to perfect NHL's security interests in the Assets.

It is further ordered that the Commissioner and NHL are not bound by the terms of any oral agreements affecting the Assets made by any predecessor in interest or former servicer of the Assets.

The recording of a certified copy of this Order in any jurisdiction where any Assets are located shall (1) convey title to such Assets to NHL, pursuant to the terms of this Order, and (2) re-establish any lost original instruments or documents pertaining to such Assets.

Dated: _____    ENTER: _____
                                   Hon. Elaine E. Bucklo
                                   United States District Court Judge

\42272\010\50COUBAZ.042

Page 1

SEARCH PHRASE: CURSTAT CONTAINS nf AND CLASSIF CONTAINS bond AND BK# EXISTS AND STATE

| STATE | COUNTY | MORTGAGR | ADDR | CITY | DOCNO. | BK# | PAGENO. |
| --- | --- | --- | --- | --- | --- | --- | --- |
| A | Bristol | Briarcliff 90 Realty Trust | 152 N. Main St., Units 1-8 172 N. Main St., Units 1-8 110 Briarcliff Rd., Units 1-8 100 Briarclif Rd., Units 1-8 90 Briarcliff Rd., Units 1-8 | Raynham | | 4650 | 137 |
| A | Middlesex | Tiger Realty Trust | 225 Steadman St., Units 29 & 30 | Lowell | 34116 | 4602 | 181 |
| A | Middlesex | Adams | 223 Courtland Street | Holliston | | 21050 | 88 |
| A | Plymouth | Ciampa | 40 Matakeesett St., Unit 24 | Pembroke | 14473 | 10170 | 112 |
| A | Suffolk | Thomas | 151 Tremont Street, No. 23P | Boston | 464 | 14983 | 325 |
| A | Suffolk | Watkins/Williams | 158 Glenway St. | Dorchester | 283 | 14751 | 151 |

ATTEST: WORC. Anthony J. Vigliotti, Register

"G"

COMMONWEALTH OF MASSACHUSETTS

WORCESTER, ss.                          SUPERIOR COURT DEPARTMENT
                                        CIVIL ACTION NO.

FRED A. BUCK, EMILE L. LELAND, JR.,     )
AND STEPHEN J. THOMPSON, AS TRUSTEES    )
OF NHL TRUST,                      )
            Plaintiffs,                 )
                                        )
            v.                          )
                                        )
                                        )
E. PERRY KING AND TERRY A. KING,        )
      Defendants.                       )


COMPLAINT ON PROMISSORY NOTE


PARTIES


1.    The Plaintiffs are Fred A. Buck, Emile L. Leland, Jr. and

      Stephen J. Thompson, as they are Trustees of the NHL Trust, a

      Delaware trust (hereinafter, "NHL Trust").   NHL Trust was

      established by National Heritage Life Insurance Company, in

      Liquidation, (hereinafter, "NHL") through its Receiver, Donna

      Lee H. Williams, Insurance Commissioner of the State of

      Delaware after the National Heritage Life Insurance Company

      was placed in liquidation upon being declared insolvent on

      November 21, 1995 by the Court of Chancery of the State of

      Delaware in and for New Castle County.   The principal place of

      administration of  NHL  Trust is Dover, Delaware, with

      administrative offices located at 950 South Winter Park Drive,

      Suite 200, Casselberry, Florida.

2.    The Defendant, E. Perry King, is an individual and resident of

      Massachusetts with a last and usual residential address of 10A

Dodge Hill Road, Sutton, Worcester County, Massachusetts (hereinafter, "Perry King").

3.  The Defendant, Terry A. King, is an individual and resident of Massachusetts with a last and usual residential address of 20 Carroll Road, North Grafton, Worcester County, Massachusetts (hereinafter, "Terry King").

### FACTS

4.  NHL Trust is the owner of a Note originally granted by Perry King and Terry King to The Home National Bank of Milford.

5.  On or about January 27, 1988, Perry King and Terry King executed and delivered a Promissory Note (hereinafter "Note") to The Home National Bank of Milford in the sum of $112,000.00, dated January 27, 1988. In the Note, Perry King and Terry King promised to pay monthly principal and interest payments in the amount of $1,137.07 to the Home National Bank of Milford or Noteholder for twenty years, with variable rate interest thereon. If unpaid by the maturity date, January 27, 2008, Perry King and Terry King agreed to pay any remaining amount outstanding on that date.

6.  The Note was secured by a mortgage on real estate located at 19 Canton Street, Worcester, County of Worcester, Massachusetts. Said mortgage was recorded in the Worcester District Registry of Deeds at Book 11097 and Page 122. (The Promissory Note and Mortgage for 19 Canton Street hereinafter referred to as "Canton Loan.") (Copies of the Note and Mortgage for 19 Canton Street are attached hereto as Exhibit "A" and "B", respectively.)

7.  On March 29, 1994, the Federal Deposit Insurance Corporation,

as assignee of the Receiver of the Home National Bank of Milford, Massachusetts, assigned the Canton Loan to South Star Management Company, Inc., a Florida corporation of 5005 Collins Avenue, Suite 1507, Miami, Florida, effective as of December 17, 1993. (A copy of this assignment is attached hereto as Exhibit "C".)

8.   On March 18, 1994, South Star Management Company, Inc. assigned the Canton Loan to the National Housing Exchange, Inc., a North Carolina corporation, of 620 South Elm Street, Suite 363, Greensboro, North Carolina, effective as of December 28, 1993. (A copy of this assignment is attached hereto as Exhibit "D".)

9.   Thereafter, unencumbered ownership of the Canton Loan for 19 Canton Street, Worcester, Massachusetts was determined to be vested in NHL, of 950 South Winter Park Drive, Suite 200, Casselberry, Florida 32707.  Ownership, and rights to any and all proceeds therefrom, of the Canton Loan was recognized by the Superior Court Department for Suffolk County, in Civil Action No. 97-02013 B, which entered two default judgments thereby recognizing and giving effect to the following judgments in Massachusetts:

1)   The Chancery Court of the State of Delaware in and for New Castle County Liquidation and Injunction Order in Civil Action No. 13530, dated November 21, 1995;

2)   The United States District Court, Northern District of Illinois, Eastern Division's Amended Declaratory Judgment Order in No. 95 C 4243, dated April 12, 1996, nunc pro tunc, April 3, 1996;

3)   The United States District Court, Northern District of Illinois, Eastern Division's Revised Order Regarding Massachusetts Mortgages No. 95 C 4243, dated February 20, 1997;

4)  The United States District Court, Northern District of Illinois, Eastern Division's Order Particularly Identifying the I-250 Assets No. 95 C 5253 dated February 7, 1997;

5)  The United States District Court, Northern District of Illinois, Eastern Division's Revised Order Regarding Additional Massachusetts Mortgages No. 95 C 4243, dated April 15, 1997.

(Copies of the two Superior Court Judgments by Default in Civil Action 97-02013 B, are attached hereto as Exhibit "E" and "F", respectively, with copies of the foreign judgments attached thereto. Exhibit 2 to the February 20, 1997 Revised Order Regarding Massachusetts Mortgages from the U.S. District Court for the Northern District of Illinois, Eastern Division, specifically makes reference to 19 Canton Street, in Worcester, Massachusetts.)

10. On January 22, 1997, NHL assigned the Note for 19 Canton Street to the Plaintiff, NHL Trust. (A copy of this assignment is attached hereto as Exhibit "G".)

11. It is provided in the Note for the Canton Loan that the entire debt shall become immediately due and payable, without notice, demand, or presentment, upon default in the performance of the conditions of the Promissory Note. Default under the Note includes the borrowers' failure to make any payment within thirty (30) days after it is due.

12. Beginning January 27, 1989 and thereafter, the Defendants have failed to make any payments as required in the Promissory Note, and therefore are in default under the terms of the Canton Loan.

13.  Notice[1] of acceleration for the Canton Loan was provided by
     certified mail to Perry King and Terry King.  (A copy of the
     notice of acceleration letters, with return receipts, is
     attached hereto as Exhibit "H".)

## COUNT I
## BREACH OF CONTRACT

14.  The Plaintiffs repeat and reaver each and every allegation of
     Paragraphs 1 through 13 as if the same were set forth herein.

15.  On or about January 27, 1988, the Defendants signed the Note.
     Pursuant to the terms of this Note, the Defendants promised to
     pay the Noteholder the principal amount of $112,000.00 with
     variable rate interest for the first year to be calculated at
     10.75% per annum, and thereafter subject to change.  (See
     Exhibit A).  The Defendants signed the Note individually.

16.  Plaintiffs, the Note holders, have made demand for payment due
     under the Note but the Defendants have breached the terms of
     the Note by failing, refusing, and neglecting to pay as
     provided in the agreement.

## COUNT II
## MONEY OWED - PROMISSORY NOTE

17.  The Plaintiffs repeat and reaver each and every allegation of
     Paragraphs 14 through 16 as if the same were set forth herein.

18.  On or about January 27, 1988, the Defendants borrowed the sum

---

[1] The Notices of Acceleration sent to the Terry and Perry King were in the
name of Wendover Funding, Inc., which is the servicer of loans for the Plaintiff
NHL Trust, and NHL.  Wendover Funding Inc., through a servicing agreement, is
charged to take action to protect the interests of NHL Trust and NHL and is
specifically authorized by NHL to contact the debtors in connection with
collection actions.

of $112,000.00 with interest for the first year thereafter to be calculated at 10.75% per annum, and thereafter subject to change, for which the Defendants have not paid the Plaintiffs, the Note holders.

19. The Defendants promised to pay the holder the full amount of the loan plus interest.  The amount of the loan is now due, owing and unpaid.

## COUNT III
## QUANTUM MERUIT

20. The Plaintiffs repeat and reaver each and every allegation of Paragraphs 17 through 19 as if the same were set forth herein.

21. The Defendants signed the Note wherein they promised to pay to the Noteholder the principal amount of ·$112,000.00 with interest for the first year thereafter to be calculated at 10.75% per annum, and thereafter subject to change.   (See Exhibit "A").  The Defendants signed the Note individually.

22. The Defendants accepted the proceeds in order to purchase the property located at 19 Canton Street.

23. The Defendants had reasonable notice that the Plaintiffs, the Note holders, expected to be paid as described under the provisions of the Note.

24. The Defendants have been unjustly enriched by their receipt of the proceeds without complying with the repayment terms of the Note.

## COUNT IV
## RESTITUTION

25. The Plaintiffs repeat and reaver each and every allegation of Paragraphs 20 through 24 as if the same were set forth herein.

26. The Defendants entered into a contract for the loan of

$112,000.00, for the benefit of the Defendants.

27. Plaintiffs, the Note holders, have fully performed under the contract, and the Defendants have failed, refused and neglected to tender full payment.

28. The Defendants have breached the contract by not making timely payments under the Note and failing to make payments under the provisions of the Note.

29. The Plaintiffs should be restored to the position they held prior to the breach by the Defendants.


## COUNT V
## ACCOUNT ANNEXED

30. The Plaintiffs repeat and reaver each and every allegation of Paragraphs 25 through 29 as if the same were set forth herein.

31. As of November 15, 1997, the Plaintiffs are owed $163,863.62, subject to interest and late charges incurred thereafter, by the Defendants according to the account hereto annexed as Exhibit "I".


WHEREFORE, the Plaintiffs pray of the Honorable Court as follows:

1. Award and assess actual damages in favor of the Plaintiffs and against the Defendants in the amount of $163,863.62 as of November 15, 1997, resulting from the unpaid principal balance in the amount of $108,623.91, unpaid interest calculated at 8.00% per annum totalling $53,727.33, legal fees incurred totalling $201.50, escrow/impound overdraft charges totalling $461.50, and unpaid late charges totalling $849.38; and

2. Assess interest and late charges pursuant to the requirements of the Note; and,

3. Assess statutory interest and costs of collection, including additional reasonable attorney's fees; and

4. Such other and further relief as this Court deems just and proper.

Respectfully submitted,
For the Plaintiffs,
By their attorney,


James F. Creed, Jr.
BBO# 552138
CREED & FORMICA
1254 Chestnut Street, 3rd Floor
Newton Upper Falls, MA 02164
(617) 332-9449

Dated: 3/31/98

**COMMONWEALTH OF MASSACHUSETTS**
**DEPARTMENT OF THE TRIAL COURT**

WORCESTER, SS.

SUPERIOR COURT
CIVIL ACTION
NO. *98-0897C*

*Fred A. Budd, Emile L. Leland,*
*Jr. a Stephen J. Thompson, as*
*Trustee of        MHL Trust*
            v.
*E. Perry King and Deryl A.*
*King*

JUDGMENT BY DEFAULT
UPON
ASSESSMENT OF DAMAGES BY
THE COURT (M.R.C.P. 55(b)2)

This action came on for hearing before the Court, *Barr* , J.,
presiding, upon the marking of *Fred A. Budd, Emile L. Leland Jr. a Stephen*
*J. Thompson as Trustee of MHL Trust*
plaintiff, in the above entitled action, for an assessment of damages
after default by the Court, pursuant to Rule 55(b)(2) of the Mass.R.
C.P., and it appearing to the Court that the Complaint in said action
was filed on the ___*2nd*___ day of *April* 19*98* and that the
summons and complaint were duly served on the defendant(s)
___*E. Perry King & Deryl King*___ on the *27* day of *April* 19 *1998,*
and that no answer or other defense has been filed by the said
defendant(s), and that default was entered on the ___*21st* day of
*September* 19*98* , in the office of the Clerk of this Court,
and that no proceedings have been taken by the said defendant(s)
since said default was entered,

It is ORDERED and ADJUDGED:

That the Plaintiff(s) *Fred A. Budd, Emile L. Leland, Jr. a MHL Trust*
*a Stephen J. Thompson, as Trustee of MHL Trust*
recover of the defendant(s) *E. Perry King & Deryl King*
the sum of $*110,662.83* with interest thereon
in the sum of $*56,246.88*___ as provided by law, and the costs of
action *in the sum of $233.00 plus attorney fees in the sum of $1,803.25.*
Dated at Worcester, Massachusetts this ___*16th* day of *October* , 19*98*.

10/19/98    Entered on docket sheet
            & copies mailed.   /mjm

*Mary S. Strupel*
Assistant Clerk

COMMONWEALTH OF MASSACHUSETTS
COUNTY OF WORCESTER
THE SUPERIOR COURT

CIVIL DOCKET# WOCV98-00897

RE:  Buck trustee et al v King et al


TO:  James F Creed Jr
     Creed & Formica
     1254 Chestnut Street
     Newton Upr Falls MA 02464



---                         CLERK'S NOTICE



        This is to notify you that in the above referenced case the
Court's action on 10/15/98 is as follows:


Reqst for entry of judgment by default and application for
assessment of damages pursuant to 55(b)(2) re: E Perry King &
Terry A King

**After hearing Motion (P#5) allowed .Judgment by default is to
enter in the amount of $168,392.61. (Robert H Bohn Jr., Justice)
Copies mailed on 10/19/98.**


Dated at Worcester, Massachusetts this 19th day of October,
1998.



Loring P Lamoureux,
Clerk of the Courts

BY:

    Asst Clerk (to be assigned)

    Location: Rm 16 (Worcester)
    Telephone: 508-770-1899, Ext 125-FOR MOTIONS & EXT 103 FOR TRIALS

"H"

**AFFIDAVIT (Third Party)**
*Mortgage/Deed of Trust*

STATE OF ___Massachusetts___ )
) ss:
COUNTY OF ___Worcester___ )

___E. Perry King and Terry A. King___
Mortgagor(s)/Trustor(s)
___January 27, 1988___
Date of Mortgage/Trust Deed                    $ ___112,000___
                                              Amount of Mortgage/Trust Deed

The undersigned, ___E. Perry King and Terry A. King___, being duly sworn, deposes and says:

1. I am over the age of eighteen years and the ___Mortgagor___ of certain real property known as:
   ___19 Canton Street___
   (street address) _____, city of ___Worcester___
   State of ___Massachusetts___. I am familiar with and have personal knowledge of the facts stated herein.

2. The premises is encumbered by a Mortgage/Trust deed in favor of the Federal Deposit Insurance Corporation as Receiver of (name of failed bank) ___Home National Bank of Milford___ The Mortgage/Trust Deed was given to secure a note in the original principal amount of $ ___112,000___, (the "Note"). The Mortgage/Trust Deed was recorded in the county of ___Worcester___, State of ___Massachusetts___, in book ___11097___ ___122___ on (date recorded) ___January 28, 1988___ Assignment of Leases, at page _____, and Rents     Book 11097 Page 129

3. I certify that the Note and Mortgage/Trust Deed was paid in full on (date) ___August 1991___ by refinancing _____, or normal payoff ___X___, or other (explain) _____.

4. In the event that it is determined that there are monies due and owing ...'er the Note, said monies will immediately be remitted to the Federal Deposit Insurance Corporation as Receiver of (name of failed bank) ___Home National Bank of Milford___

5. I make this Affidavit in order to induce the Federal Deposit Insurance Corporation as Receiver of (name of failed bank) ___Home National Bank of Milford___ to discharge Mortgage/Trust Deed. I agree to indemnify the FDIC against any and all loss as a result of a claim for wrongful discharge of the Mortgage/Trust Deed. I am aware that the FDIC will rely on the Truthfulness and the statements contained herein. I am aware that any person who makes false representations to the Federal Deposit Insurance Corporation is subject to criminal prosecution pursuant to 18 U.S.C. § 1007

Signature ___E. PERRY KING___                    Signature ___T.A. KING___

Sworn and subscribed to before me this ___18th___ day of ___July 2002___

Notary Public ___Alan Mason___
My commission expires: ___March 21, 2008___

Whoever, for the purpose of influencing in any way the action of the Federal Deposit Insurance Corporation knowingly makes or invites reliance on a false, forged, or counterfeit statement, document, or thing ...

## AFFIDAVIT (Third Party)
*Mortgage/Deed of Trust)*

STATE OF __Massachusetts__ )

COUNTY OF __Worcester__ ) ss: __July 9, 2002__ ~~2000x~~

__E. Perry King and Terry A. King__

Mortgagor(s)/Trustor(s)
__January 27, 1988__                        $ __$112,000__

Date of Mortgage/Trust Deed                 Amount of Mortgage/Trust Deed

The undersigned, __Alan Mason, Attorney__ , being duly sworn, deposes and says:

1. I am over the age of eighteen years and the owner of a certain real property known as:

   (fixed address) __19 Canton Street__ , city of __Worcester__
   State of __Massachusetts__ . I am familiar with and have personal knowledge of
   the facts stated herein.

2. The premises is encumbered by a Mortgage/Trust deed in favor of the Federal Deposit
   Insurance Corporation as Receiver of (name of failed bank) __Home National__ Bank of Milford
   The Mortgage/Trust Deed was given to secure a note in the original principal amount of
   $ __112,000__ (the "Note"). The Mortgage/Trust Deed was recorded in the county of __Worcester__, State of __Massachusetts__ , in book __11097__ , at page __122__ on
   (date recorded) __January 28, 1988__     Assignment of Leases and Rents Book 11097 Page 129

3. I certify that the Note and Mortgage /Trust Deed was paid in full on (date) __August 1991__,
   by refinancing _____ , or normal payoff __X__ , or other (explain) _____

4. In the event that it is determined that there are monies due and owing under the Note, said
   monies will immediately be remitted to the Federal Deposit Insurance Corporation as
   Receiver of (name of failed bank) __Home National Bank of Milford__

5. I make this Affidavit in order to induce the Federal Deposit Insurance Corporation as
   Receiver of (name of failed bank) __Home National Bank of Milford__ to
   discharge Mortgage/Trust Deed. I agree to indemnify the FDIC against any and all loss as
   a result of a claim for wrongful discharge of the Mortgage/Trust Deed. I am aware that
   the FDIC will rely on the Truthfulness and the statements contained herein. I am aware
   that any person who makes false representations to the Federal Deposit Insurance
   Corporation is subject to criminal prosecution pursuant to 18 U.S.C. § 1007.

Signature __Attorney Alan Mason__                Signature

Sworn and subscribed to before me this __9th__ day of __July__ __2002__

Notary Public __Sheila A. Rodgers__
My commission expires: __11/6/2003__

*Whoever, for the purpose of influencing in any way the action of the Federal Deposit Insurance Corporation knowingly*
*makes or invites reliance on a false, forged, or counterfeit statement, document, or thing shall be fined not more than*

"I"



Bk: 35934 Pg: 39

Pg: 39  Doc: DEED
1 of 2  03/22/2005 11:44 AM

Metropolitan Title Co.
96 W. Main St.
Northborough, MA

### QUITCLAIM DEED

I, Sandra Katz  of Worcester, Worcester County, Massachusetts in consideration of THREE HUNDRED THOUSAND AND 00/100 ($300,000.00) DOLLARS

grant to           Fatu Miller

of                 19 Canton Street
                   Worcester, Massachusetts

with **QUITCLAIM covenants**

**PROPERTY ADDRESS:**    19 Canton Street, Worcester, MA

The land in Worcester, Worcester County, Massachusetts, mi the southerly part thereof, in the section known as Irvington, on the southerly side of Canton Street, shown as Lot 17 on a plan of lots drawn for the Ballard Land Company by Buttrick & Pratt, recorded in Book 1537, Page 653, and bounded and described as follows:

BEGINNING at a stone monument set at the northwesterly corner of the herein described premises on the southerly side of Canton Street, formerly known as Albion Avenue;

THENCE Southerly by Lot 18, a distance of 100 feet to a stone monument;

THENCE Easterly by Lot 35 and 36, a distance of 50 feet to a stone monument;

THENCE Northerly by Lot 18, a distance of 100 feet to a stone monument on the southerly side of said Canton Street, formerly of Albion Avenue;

THENCE Westerly by said Canton Street, 50 feet to the point of beginning.

19 CANTON STREET, WORCESTER

MASSACHUSETTS EXCISE TAX
Worcester District ROD #20 001
Date:  03/22/2005 11:44 AM
Ctrl# 033457 32307  Doc# 00043493
Fee: $1,368.00 Cons: $300,000.00

Return To:

The Law Office Of Joseph P Lussier
484 Main St.
Suite 420
Worcester, MA  01608
(508)799-7400

②

Page 1 of 2

BEING the same premises conveyed to the grantors by deed dated December 19, 2003 and recorded with the Worcester District Registry of Deeds in Book 32728, Page 33.

Executed as a sealed instrument this ___18th___ day of **March**_____, 2005.

_____
Sandra Katz

COMMONWEALTH OF MASSACHUSETTS      WORCESTER SS

On this ___18th___ day of **March**_____, 2005, before me, the undersigned notary public, personally appeared Sandra Katz , proved to me through satisfactory evidence of identification which were Driver's Licenses to be the person whose name is signed on the preceeding or attached document, and acknowledged to me that he/she/they signed it voluntarily for its stated purpose.

_____
Official signature and seal of notary **Cheryl J. Morrill**
My commission expires: **February 23, 2012**

OFFICIAL SEAL
CHERYL J. MORRILL
NOTARY PUBLIC
COMMONWEALTH OF MASSACHUSETTS
My Comm. Expires Feb. 23, 2012

Page 2 of 2

"J"

## COMMONWEALTH OF MASSACHUSETTS

WORCESTER, ss.

SUPERIOR COURT DEPARTMENT
CIVIL ACTION NO.:  **04-0762**

STEVE NADER GAVAL and )
MANSOUR GAVAL, )
    Plaintiffs )
  )
  )
vs. )
  )
ALAN MASON, ESQUIRE, and )
d/b/a ALAN MASON LEGAL )
SERVICES, INC., and TERRY A. )
KING and E. PERRY KING )
    Defendants )
_____)

**COMPLAINT**

**FILED**

APR 2 2 2004

ATTEST:

### PARTIES

1.    The plaintiff, Steve Nader Gaval, is an individual residing at 25 Lynnwood Lane, Worcester, County of Worcester, Massachusetts 01609.

2.    The plaintiff, Mansour Gaval, is an individual residing at 431 Salisbury Street, Worcester, County of Worcester, Massachusetts 01609.

3.    The defendant, Alan Mason, Esquire, and d/b/a Alan Mason Legal Services, Inc., resides in Princeton, Massachusetts and has a principal place of business at 428 Shrewsbury Street, Worcester, County of Worcester, Massachusetts 01604.

4.    The defendant, E. Perry King, is an individual residing at 10A Dodge Hill Road, Sutton, MA.

5.    The defendant, Terry A. King, is an individual residing at unknown.

### STATEMENT OF FACTS

6.    Plaintiffs, Steve Nader Gaval and Mansour Gaval, are in the business of purchasing distressed properties to refurbish and resell at a higher value.

7.    In or about July 2002, Plaintiffs retained Alan Mason, Esquire's legal services regarding the purchasing of property located at 6 Beckman Street, Worcester, Massachusetts and at 19 Canton Street, Worcester, Massachusetts from Terry A. King and E. Perry King (hereinafter collectively referred to as "the Kings").

8.      Plaintiffs relied on Attorney Mason's legal expertise and at no time prior to the purchase of the King properties, did Attorney Mason indicate that there were existing encumbrances on either property.

9.      As Buyers' attorney, Attorney Mason was obligated to perform or order a title rundown to ensure there were no encumbrances on the properties.

10.     Alan Mason did not prepare a Purchase and Sale Agreement for the properties.

11.     On or about July 15, 2002, Plaintiffs purchased each of the King properties for One Hundred Ten Thousand ($110,000.00) Dollars and were deeded the properties, copies of which are attached and marked "A".

12.     Unbeknownst to Plaintiffs, a Purchase and Sale Agreement between the plaintiffs and the Kings materialized originally dated July 18, 2002 (after the sale of the property) and adjusted to read July 15, 2002.  In the Purchase and Sale Agreement it addresses outstanding tax liability owed to the City of Worcester and states under the section titled "Additional Provisions" that "Buyer agrees to hold the Seller harmless for any outstanding discharge(s) and taxes, and all outstanding judgments and mortgages to be discharged." A copy of Agreement is attached hereto and marked "B".

13.     Plaintiffs neither signed nor viewed the contents of the Purchase and Sale Agreement dated July 15, 2002.  The plaintiff, Mansour Gaval, states that the signature on the Purchase and Sale Agreement is false and a forgery. A copy of Mansour Gaval's Affidavit is attached hereto and marked "C".

14.     After the purchase of the King properties, Plaintiffs learned that there were several encumbrances on each of the properties and were responsible for their payment as current title holders.  A copy of itemization of the King encumbrances is attached hereto and marked "D".

15.     Plaintiffs have since sold both properties at a lower resale value than what could have been obtained if there were no existing encumbrances and Plaintiffs have suffered severe monetary losses as a result.

16.     Plaintiffs learned after the transactions that the Kings believed that Alan Mason represented them in the transactions.

17.     The Board of Bar Overseers is investigating the transaction involving the plaintiffs and Defendant.

## COUNT I
### Steve Nader Gaval and Mansour Gaval v. Alan Mason, Esquire, and d/b/a Alan Mason Legal Services, Inc.
### (Fraud/Misrepresentation)

18.    Plaintiffs reallege and reincorporate the allegations contained in paragraphs 1 through 17 above as if fully set forth herein.

19.    Attorney Mason represented to Plaintiffs that titles to the King properties located at 6 Beckman Street, Worcester, Massachusetts and at 19 Canton Street, Massachusetts, were free and clear of any encumbrances, which representations were false, as the defendant knew or should have known being legal counsel.

20.    The defendant, as counsel for Plaintiffs, owed a duty to research and ensure that both of the King properties were absent of encumbrances.

21.    The plaintiffs relied upon representations made by the defendant and were thereby induced to purchase the King properties which were severely encumbered.

22.    As a result of the false and/or fraudulent representations made by the defendant, the plaintiffs suffered estimated damages in the amount of $357,000.

WHEREFORE, the plaintiffs pray that judgment enter against the defendant in the amount of the plaintiffs' damages, plus interest from the date of said fraud and costs, including reasonable attorney's fees.

## COUNT II
### Steve Nader Gaval and Mansour Gaval v. Alan Mason, Esquire, and d/b/a Alan Mason Legal Services, Inc.
### (Malpractice Against Defendant)

23.    Plaintiffs reallege and reincorporate the allegations contained in paragraphs 1 through 22 above as if fully set forth herein.

24.    The defendant negligently failed to perform his duties according to the generally accepted standards of care known in practice by the average legal practitioner in the Commonwealth of Massachusetts, causing the plaintiffs to suffer damages.

25.    Defendant failed to perform or order title rundowns on the properties.

26.    Defendant failed to disclose that the properties were severely encumbered.

27.    Defendant's actions fall below the standard of care for the average real estate attorney.

28.    Defendant's actions caused Plaintiffs damages, including additional attorneys fees to clear title and for the encumbrances themselves.

WHEREFORE, the plaintiffs pray that judgment enter against the defendant in the amount of the plaintiffs' damages, plus interest from the date of said malpractice and costs, including reasonable attorney's fees.

## COUNT III
### Steve Nader Gaval and Mansour Gaval v. Alan Mason, Esquire
### (Violation of the Massachusetts Rules of Professional Conduct)

29.     Plaintiffs reallege and reincorporate the allegations contained in paragraphs 1 through 28 above as if fully set forth herein.

30.     Defendant, as sworn counsel in the Commonwealth of Massachusetts, owes a duty to abide by the established rules set forth for practicing attorneys and breached his duty by representing both Seller and Buyer in the same property transaction resulting in a direct conflict of interest in violation of Rule 1.7 of the Massachusetts Rules of Professional Conduct.

        WHEREFORE, the plaintiffs pray that judgment enter against the defendant in the amount of the plaintiffs' damages, plus interest from the date of said violation and costs, including reasonable attorney's fees.

## COUNT IV
### Steve Nader Gaval and Mansour Gaval v. E. Perry King and Terry A. King
### (Breach of Contract)

31.     Plaintiffs reallege and reincorporate the allegations contained in paragraphs 1 through 30 above as if fully set forth herein.

32.     Defendants E. Perry King and Terry A. King breached their agreement with the Gavals that they would transfer clear title to the properties in exchange for the purchase prices.

33.     Defendants have acknowledged, post-transfer, that they had knowledge that the properties had valid liens against them, specifically one from the Department of Revenue.

34.     Plaintiffs have been damaged as a result of Defendants' conduct.

        WHEREFORE, the plaintiffs pray that judgment enter against the defendants in the amount of the plaintiffs' damages, plus interest from the date of the breach and costs, including reasonable attorney's fees.


**PLAINTIFFS REQUEST A TRIAL BY JURY ON ALL ISSUES SO TRIABLE.**

Dated: 4/22/04

Respectfully submitted,
Steve Nader Gaval and
Mansour Gaval,
By Their Attorney,

Scott S. Sinrich, BBO# 551440
Erin O. Bradbury, BBO# 637411
Phillips, Silver, Talman, Aframe &
Sinrich, P.C.
340 Main Street, Suite 900
Worcester, MA 01608
(508) 754-6852

BK27191PG106

152485

## DEED

45-6
20

We, E. PERRY KING AND T.A. KING, D/B/A SUTTON ASSOCIATES

Of

grant to MANSOUR GAVAL    and    NADER GAWAL

of   431 SALISBURY    SIT WORCESTER    MA 01609

for consideration of XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX
 ONE HUNDRED TEN THOUDAND AND 00/100 DOLLARS ($110,000.00)
with quitclaim covenants

SEE LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF.

*Witness* our hands and seals this  15TH     day of  July, 2002

E. PERRY KING                           T.A. KING

( E. PERRY KING )                    ( T.A. KING )
SUTTON ASSOCIATES                 SUTTON ASSOCIATES

THE COMMONWEALTH OF MASSACHUSETTS

Worcester, ss.                                      *JULY 15, 2002*

Then personally appeared the above named E. PERRY KING AND T.A. KING, D/B/A SUTTON
ASSOCIATES and acknowledged the foregoing to be THEIR free act and deed before me.

Notary Public: ALAN MASON
My commission expires: MARCH 21, 2008

WORCESTER:

02 AUG -9 PH 2:02

BK27119TPG1O

SCHEDULE A

**Mass.**

The land in said Worcester, / on the easterly side of Beckman Street, a street extending northerly from Whipple Street, and bounded and described as follows:

BEGINNING at a point in the east line of said Beckman Street at land now or formerly of Lars M. Muhr;

THENCE easterly by said Muhr's land one hundred five (105) feet to land now or formerly of John Henry;

THENCE northerly by said Henry Land, sixty (60) feet to a point at land now or formerly of Charles G. Steele;

THENCE westerly by said Steele land one hundred five (105) feet to said Beckman Street;

THENCE southerly by said Beckman Street, sixty (60) feet to the place of beginning.

TITLE REF BOOK 10883   PG 242

ATTEST: WORC. Anthony J. Vigliotti, Register

BK 27191 PG 112

152487

## DEED

We, E. PERRY KING AND T.A. KING

of

grant to ~~XXXXXXXXXXXXXXX XXXXXXXXXXXXXXXXXXXXXXXXX~~ Mansour Gaval    and Nader Gawal

of 431 SALISBURY St WORC MA 01609

for consideration of ~~XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX~~
ONE HUNDRED TEN THOUSAND AND 00/100 DOLLARS    ($110,000.00)

with quitclaim covenants

SEE LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF.

*Witness* our hands and seals this  151H     day of  July, 2002

_____          _____
E. PERRY KING                            T.A. KING

### THE COMMONWEALTH OF MASSACHUSETTS

Worcester, ss.                                          JULY 15, 2002

Then personally appeared the above named E. PERRY KING AND T.A. KING and acknowledged the
foregoing to be THEIR free act and deed before me.

_____
Notary Public: ALAN MASON
My commission expires: MARCH 21, 2008

SCHEDULE A

Worcester, Worcester County, Massachusetts, in the southerly part
thereof, in the section known as Irvington, on the southerly side
of Canton Street, shown as Lot 17 on a plan of lots drawn for the
Ballard Land Company by Buttrick & Pratt, recorded in Book 1537,
Page 653 and bounded and described as follows:

BEGINNING at a stone monument set at the northwesterly
corner of the herein described premises on the southerly side of
Canton Street, formerly known as Albion Avenue;
THENCE southerly by Lot 18, a distance of 100 feet to a
stone monument;
THENCE easterly by Lot 35 and Lot 36, a distance of 50 feet
to a stone monument;
THENCE northerly by Lot 16, a distance of 100 feet to a
stone monument on the southerly side of said Canton Street,
formerly Albion Avenue;
THENCE westerly by said Canton Street 50 feet to the point
of beginning.

TiTle Ref   Book 8344   Page 333-334

19 Canton Street, Worcester, MA

428 Shrewsbury Street
Worcester, MA 01604
(508) 752-7550: Phone
(508) 756-9431: Fax

## PURCHASE AND SALE AGREEMENT

DATE OF AGREEMENT:

PARTIES:                                         SELLER ATTORNEY
SELLER
T.A. King
E.. Perry King
Sutton Associates

BUYER                                            BUYER ATTORNEY
Mansour Gaval

PROPERTY:  Beckman Street and Canton Street(s), Worcester, MA

TIME FOR PERFORMANCE: JULY 15, 2002
Time is of the essence.

PURCHASE PRICE:        $OUTSTANDING TAX LIABILITY
                        DUE TO THE CITY OF WORCESTER

Deposit with Offer      $0.00
Deposit paid at P&S     $30,000.00
Funds due at closing*   $_____
*To be paid in cash, certified, cashiers, or attorney trustee check.

MORTGAGE CONTINGENCY: not applicable
Lending Institution –
Loan Amount -
Mortgage Contingency Date –
Inspections –

SPECIAL CONDITIONS:
Inclusions:

Exclusions:  ALL PERSONAL PROPERTY

ADDITIONAL PROVISIONS
BUYER AGREES TO HOLD THE SELLER HARMLESS FOR ANY OUTSTANDING
DISCHARGE(S) AND TAXES, and all outstanding judgements and mortgages
        to be dishcarged.

1.  PARTIES

## 2. DESCRIPTION

*SELLER* agrees to sell and *BUYER* agrees to buy, upon the terms, provisions, conditions and covenants set forth herein, the land described in the Exhibit A hereto attached.

## 3. TIME FOR PERFORMANCE

The deed is to be delivered at the appropriate registry of deeds at 11:00 a.m. on the date referenced on page 1 of this agreement unless otherwise agreed upon in writing.

## 4. MORTGAGE CONTINGENCY

This Agreement is contingent upon the *BUYER* obtaining a mortgage at prevailing interest rates on or before the mortgage contingency date referenced on page 1. In the event the *BUYER* is unable to obtain such financing, in order to receive a return of *BUYER'S* deposit hereunder, *BUYER* must notify *SELLER*, in writing, of such inability to obtain financing on or before said date.

The failure to so notify the *SELLER* in writing for any reason shall be deemed an express waiver of this contingency and the parties shall then be governed by the terms and conditions of the remainder of this Agreement. The *BUYER* shall diligently, in good faith, and with their best efforts, proceed to seek and secure such mortgage financing, but if even then, *BUYER* shall fail to obtain such financing by said date and provided *SELLER* notification in writing of such fact by such date, then this agreement shall be void, all deposits shall be refunded and neither party shall have any further rights. In no event will the *BUYER* be deemed to have used diligent efforts to obtain such commitment unless the *BUYER* submits at least one completed mortgage loan application to a reputable lending institution ten days after the offer to purchase has been fully executed.

## 5. BUILDINGS, STRUCTURES, IMPROVEMENTS, FIXTURES, ETC.

Included in the sale as a part of said premises are the buildings, structures, and improvements now thereon, and the fixtures belonging to the *SELLER* and used in connection therewith, including if any, screens, screen doors, shutters, furnaces, heaters, heating equipment, stoves, ranges, hot water heaters, plumbing and bathroom fixtures, electric and other lighting fixtures, mantels, television antennas, fences, gates, trees, shrubs and plants, and only if built in, air conditioning equipment, ventilators, dishwashers.

## 6. PLAN

If the deed refers to a plan necessary to be recorded therewith, the *SELLER* shall deliver such plan with the deed in form adequate for recording or registration.

## 7. TITLE DEED

Said premises are to be conveyed by a good and sufficient quitclaim deed running to the BUYER, or to the nominee designated by the BUYER by a written notice to the SELLER at least ten (10) days before the deed is to be delivered as provided herein; and said deed shall convey good, clear and marketable title to the subject premises, free of any and all liens, charges or encumbrances of whatsoever nature and description except:

A.    Such real estate taxes for the then current year as are not yet due and payable on or before the date of delivery of the deed;

B.   Any liens for municipal betterment assessments made after the date of execution by all parties of this Agreement.

C.   Provisions of existing building and zoning laws.

D.   Any and all rights, restrictions or easements of record if any, insofar as the same are in full force and applicable to the subject premises, but not affecting the value or intended use thereof.

E.   Existing rights and obligations in party walls which are not the subject of written agreement.

F.   Usual public utilities servicing the property, if any.

G.   Mortgage's not assumed which are to be discharged as a result of this transaction, which discharges shall be recorded within a reasonable time after the recording of the closing documents.

8.  **TITLE REFERENCE**
The title reference is unknown at this time. **SELLER'S** attorney shall be responsible for obtaining a certificate of title from a reputable title company. The cost for said title examination shall be borne by **SELLER**.

9.  **INSPECTIONS**
The *BUYER* may, at his expense, on or before the inspection date have the property inspected by a person or firm in the business of pest inspections. If, in the opinion of this person or firm, the property contains termites or other wood boring insects, then the *BUYER* shall have the option of rescinding this Agreement within 48 hours of said inspection by a note in writing. Whereupon all deposits made by the *BUYER* shall forthwith be refunded and this Agreement shall be null and void without further recourse. *BUYER* shall provide proof to the *SELLER* by way of said inspection report. If notification is not forwarded to the *SELLER* within said 48 hours of said inspection, then this contingency will have been deemed waived by the *BUYER* and the parties shall be governed by the terms and conditions of the remainder of this Agreement.

The *BUYER* may, at his expense, or before the inspection date referenced on page 1, have the property septic and/or well inspected by a person or firm in the business of doing such inspections. Also, radon and any other tests required by the V.A. If, in the opinion of this person or firm, the property contains serious structural and/or mechanical defects, then the *BUYER* shall have the option of rescinding this Agreement within 48 hours of said inspection by a notice in writing. Whereupon all deposits made by the *BUYER* shall forthwith be refunded and this Agreement shall be null and void without further recourse. If notification is not forwarded to *SELLER* within 48 hours of said inspection then this contingency will have been deemed waived by the *BUYER* and the parties shall be governed by the terms and conditions of the remainder of this Agreement. *BUYER* shall provide to the *SELLER* proof of such defects by way of said inspection report (s).

In the event that the home inspection reveals major structural repairs in excess of $3,000.00, and/or the well test does not meet FHA standards and/or the property has pest infestation, the *BUYER* shall have the option to withdraw from this Agreement and all deposits shall be returned and the parties discharged from any and all obligations hereunder.

The BUYER is afforded 10 days from the date of this Agreement to have the premises inspected for the presence of lead. If that inspection reveals the presence of dangerous levels of lead as defined by M.G.L. C. 111 Sections 190 ex. Seq., the BUYER may terminate this Agreement by written notice to the SELLER no later than 48 hours after said inspection. Whereupon all deposits made by the BUYER shall forthwith be refunded and this Agreement shall be null and void without further recourse. If notification is not forwarded to the SELLER within 48 hours then this contingency will have been deemed waived by the BUYER and the parties shall be governed by the terms and conditions of the remainder of this Agreement. BUYER will provide to the SELLER proof of dangerous levels of lead on the premises by way of said inspection report (s).

## 10. POSSESSION AND CONDITION OF PREMISES

Full possession of said premises free of all tenants and occupants, except as herein provided, is to be delivered at the time of the delivery of the deed, said premises to be then a) in the same condition as they now are, reasonable use and wear thereof excepted and b) not in violation of said building and zoning laws. The *BUYER* shall be entitled to one inspection of said premises prior to the delivery of the deed in order to determine whether the condition thereof complies with the terms of this clause.

## 11. EXTENSION TO PERFECT TITLE OR MAKE PREMISES CONFORM

If the *SELLER* shall be unable to give title or to make conveyance, or to deliver possession of the premises, all as herein stipulated, or if at the time of delivery of the deed the premises does not conform with the provisions hereof, the *SELLER* may elect to use reasonable effort to remove any defects in title or to deliver possession as provided herein, or to make the said premises conform to the provisions hereof as the case may be, in which event the *SELLER* shall give written notice thereof to the *BUYER* at or before the time for performance hereunder, and thereupon the time for performance hereof shall be extended for a period of thirty (30) days or until the earlier expiration of *BUYER'S* financing commitment, which shall mean the earliest date on which the amount, term and/or interest rate of the loan is no longer guaranteed.

## 12. FAILURE TO GIVE TITLE OR MAKE PREMISES CONFORM

If, at the expiration of the time for performance hereunder, the *SELLER* shall not be able to give title; or deliver possession; or except for a fire or other unavoidable casualty, make the premises conform; as the case may be, and all as herein agreed, then at the *BUYER'S* election, any and all payments made by the *BUYER* hereunder shall be forthwith refunded to the *BUYER* and all obligations of all parties hereto shall cease.

## 13. BUYER'S ELECTION TO ACCEPT TITLE

The *BUYER* shall have the right to elect, at the time for the performance hereunder, to accept such title as the *SELLER* can deliver to said premises in their then condition, provided that the acceptance of a deed by the *BUYER* shall be deemed to be a full

performance and discharge of this agreement.

## 14. INSURANCE, FIRE AND OTHER CASUALTY

The *SELLER* shall maintain existing fire and extended coverage insurance on the premises. In the event that the premises shall, prior to transfer of title, be damaged or destroyed by fire or other unavoidable casualty (other than reasonable use and wear prior to transfer of title hereunder), and the *SELLER* has not, prior to time for performance hereunder, restored the premises so as to conform with the terms hereof; then:

A.    If the cost to restore the premises shall exceed $5,000.00, then the *BUYER* may elect to receive all amounts recovered or recoverable on account of said insurance, plus any deductible or co-insurance, less any amounts reasonably expended by the *SELLER* for any partial restoration; or cancel this Agreement and any and all payments made by the *BUYER* hereunder shall forthwith be refunded to the *BUYER*.

B.    If the cost to restore the premises shall be $5,000.00 or less, the parties shall perform this Agreement and the *BUYER* shall receive all amounts recovered or recoverable on account of said insurance plus any deductible and co-insurance less any amounts reasonable expended by the *SELLER* for partial restoration.

C.    If there is damage to the premises valued at $5,000.00 or less, and the premises are not completely restored prior to closing, then at the closing, there shall be a holdback from the purchase price of $5,000.00 to be held in escrow by the attorney for the *BUYER*. Said escrow amount shall be held until all insurance proceeds are paid and al restoration is completed. If *BUYER* is required to expend sums in addition to insurance proceeds to restore the premises, the amount expended by *BUYER* shall be paid to *BUYER* out of the escrow fund, and the balance, if any, shall be returned to the *SELLER*. If *BUYER* is not required to expend sums in addition to insurance proceeds to restore the premises, the entire escrow fund shall be returned to *SELLER*.

D.    Notwithstanding any provision of this paragraph to the contrary, if such damage or destruction of the premises materially interferes with *BUYER'S* ability to inhabit the premises then notwithstanding that the cost to restore the premises shall be $5,000.00 or less, *BUYER* shall not be obligated to perform hereunder until the premises are restored to habitable condition at or prior to the closing date or any extension thereof permitted by this Agreement.

## 15. USE OF PURCHASE MONEY TO CLEAR TITLE

To enable the *SELLER* to make conveyance as herein provided, the *SELLER* may at the time of the delivery of the deed use the purchase money or any portion thereof to clear the title of any and all encumbrances or interests, provided that all instruments so procured are recorded simultaneously with the delivery of said deed, or as soon thereafter as practical.

## 16. ADJUSTMENTS

Taxes for the then current year and, if any, water, sewer use, rents, and security deposits shall be apportioned and fuel value shall be adjusted as of the date of delivery of the deed, and the net amount thereof shall be added to or deducted from, as the case may be, the purchase price payable by the *BUYER* at the time of delivery of the deed.

## 17. DEPOSIT

All additional deposits made hereafter by the *BUYER* shall be held by Law office of Alan Mason, Attorney for the *SELLER*, in a non-interest bearing account, subject to the terms of the within Agreement and shall be duly accounted for at the time of the delivery of the deed. The initial deposit is to be held by the broker.

## 18. BROKER'S COMMISSION

A broker's commission for professional service is due from the *SELLER* to NONE     , but only if, as, and when the *SELLER* receives the full purchase price and the *BUYER* accepts and records *SELLER'S* deed and not otherwise.

## 19. BUYER'S DEFAULT

In the event *BUYER* shall fail to fulfill the *BUYER'S* agreements herein, all deposits made hereunder by the *BUYER* shall be retained by the *SELLER* as liquidated damages, whereupon the within Agreement shall be null, void and of no force and effect, with no party hereto to have further recourse against another.

## 20. SELLERS REPRESENTATIONS

No representative of *SELLER* shall be required to attend the closing in person, provided that *SELLER* delivers in escrow to the closing attorney on or before the closing date an executed deed for the premises and any other documents required hereunder. *SELLER* shall execute such other documents in connection with the closing as may be reasonably requested by *BUYER'S* lender, provided such documents shall be delivered to *SELLER* no later than two (2) business days prior to the date of closing.

The *SELLER* shall, prior to transfer of title, provide and pay for the smoke detectors in compliance with M.G.L.C. 148, Section 26F, and furnish the *BUYER* a Certificate of Compliance and/or occupancy permit if required, in accordance with the provisions of such statute.

*SELLER* represents and warrants that *SELLER* has complied with the provisions of 105 CMR 651 with respect to urea formaldehyde foam insulation (UFFI) in the premises, and that based on the inspections required by such regulation, the premises do not contain UFFI. In the event that UFFI is found in the premises, *SELLER* shall cooperate as necessary in any action for removal.

The *SELLER* makes no representation to the *BUYER* concerning the existence or non-existence of lead paint within, without, or on the premises, and makes no representations of compliance with provisions of  MGL C. 111, Sec. 197. The parties understand that if a child or children under 6 years of age becomes a resident in the building after purchase of the premises by the *BUYER*, the duty of removing such material or making it inaccessible to such child or children will be that of the *BUYER*.

Except as otherwise provided in this Agreement, the premises are being conveyed in an "AS IS" condition. Any appliances which are included with the sale are sold "AS IS" without any warranty as to condition or operating capacity.

## 21. TITLE 5

Should the property being conveyed herein be serviced by an on site treatment and disposal of sanitary sewage system, the *SELLER* shall cause said system to be inspected prior to closing. The *SELLER* shall present to the *BUYER* a certificate authored by a "Certified Soil Evaluator" that the system has met all of the requirements of TITLE 5 of the Massachusetts Environmental Code.

In the event that the above referenced system shall have failed the inspection the *SELLER* shall:

1. At Seller's expense cause the system to be repaired and or replaced in accordance with TITLE 5; or

2. Withdraw from this transaction and return all deposits to the Buyer. In such event this purchase and sale agreement shall be null and void.

## 22. VOLUNTARY EXECUTION

The parties declare and acknowledge that they, and each of them, had the opportunity to have independent legal advice by counsel of their own selection; that each party hereto fully understands the provisions of the within Agreement; and that each party signs this Agreement freely and voluntarily.

The *BUYER* acknowledges that the *BUYER* has not been influenced to enter into this transaction nor has he/she relied upon any warranties or representations not set forth or incorporated in this Agreement or previously made in writing.

The *BUYER* has examined the premises to be conveyed and except as otherwise provided in this Agreement, hereby accepts said premises in their present condition, AS IS. The *BUYER* does not rely on any representation or warranty made by the *SELLER* or its *BUYER* does not rely on any representation or warranty made by the *SELLER* or its representatives relating to the physical condition of the premises or its suitability for any purposes for which the *BUYER* may desire to use them, unless specifically set forth in this Agreement. The contracting parties agree that this contract contains all the conditions of this sale. It is mutually agreed that any oral representation made by either party or their representatives prior to the signing of this Agreement is null and void.

## 23. CONSTRUCTION OF AGREEMENT

This instrument, executed in triplicate, is to be construed as a Massachusetts contract, is to take effect as a sealed instrument, sets forth the entire contract between the parties, is binding upon and inures to the benefit of the parties hereto and their respective heirs, devisees, executors, administrators, successors and assigns, and may be canceled, modified or amended only by a written instrument executed by both the *SELLER* and the *BUYER*. If two or more persons are named herein as *BUYER*, their obligations hereunder shall be joint and several. The captions are used only as a matter of convenience and are not to be considered a part of this Agreement or to be used in determining the intent of the parties to it.

24. **I.R.S. FILING REQUIREMENTS**
In the event the lender's attorney does not designate himself / herself as the reporting agent, the *BUYER'S* attorney shall report the information needed to comply with I.R.C. 6045 (e).

25. **ACCEPTANCE OF DEED**
The acceptance of a deed by the *BUYER* or his/her nominee, as the case may be, shall be deemed to be a full performance and discharge of every agreement and obligation herein contained or expressed, except such as are by the terms hereof, to be performed after the delivery of said deed.

    IN WITNESS WHEREOF, the several parties have hereunto set their hands and seals this _____ day of _____,

_____ SELLER        _____ BUYER

_____ SELLER        _____ BUYER

I, Mansour Gaval, hereby say and depose:

I did not ever sign or review the Purchase and Sale Agreement purportedly entered into between T.A. King and E. Perry King d/b/a Sutton Associates and Mansour Gaval drawn up by Alan Mason Legal Services relating to Beckman Street and Canton Street, Worcester, Massachusetts reciting consideration of $30,000.

SIGNED UNDER THE PAINS AND PENALTIES OF PERJURY THIS 3 0 DAY OF 3 /3 0 , 2004.

_____
Mansour Gaval

_____
Notary Public
My commission expires:

**Erin Bradbury**
**Notary Public**
**My Commission Expires**
**December 6, 2006**

## **EXHIBIT D**

ITEMIZATION OF DAMAGES

Property at 19 Canton Street, Worcester, MA

| | |
|---|---|
| Massachusetts Department of Revenue Tax Lien | $53,639.42 |
| Sterling & Locke, Inc. mortgage | $70,000.00 |

Property at 6 Beckman Street, Worcester, MA

| | |
|---|---|
| Mortgage from E. Perry King and Terry A. King, d/b/a Sutton Associates, to The Home National Bank of Milford and now National Heritage Life Insurance Company ("NHL") Outstanding Mortgage | $30,000.00 |

Legal Fees

| | |
|---|---|
| Gershon M. Gulko, Esquire Retained to clear title to 6 Beckman Street | $ 3,500.00 |
| Mirick O'Connell, DeMallie & Lougee, LLP Retained to clear title to both properties | $ 7,000.00 |
| Lost profit on sales of two homes | $192,000 |
| **Total Damages** | **$357,000** |

"K"

## COMMONWEALTH OF MASSACHUSETTS

WORCESTER, ss.                     SUPERIOR COURT DEPARTMENT
                                   WORCESTER DIVISION
                                   CIVIL ACTION NO.:    04-0762 C

STEVE NADER GAVAL and        )
MANSOUR GAVAL,               )
    Plaintiffs            )                    FILED
                             )
                             )               APR 2 2 2004
vs.                          )
                             )          ATTEST:
ALAN MASON, ESQUIRE, and     )
d/b/a ALAN MASON LEGAL       )
SERVICES, INC., and TERRY A. )
KING and E. PERRY KING       )
    Defendant            )
_____)

## STEVE NADER GAVAL AND MANSOUR GAVAL'S JOINT AFFIDAVIT IN SUPPORT OF PLAINTIFFS' MOTION FOR LEAVE TO ATTACH EX PARTE DEFENDANT, ALAN MASON, ESQUIRE, and d/b/a ALAN MASON LEGAL SERVICES, INC.'S MOTOR VEHICLES

We, the undersigned, do on oath depose and say as follows:

1)     We are the Plaintiffs in the within action against the defendant.

2)     The ex parte attachments of the motor vehicles of the defendant, Alan Mason, Esquire, and d/b/a Alan Mason Legal Services, Inc., are hereby requested, said attachments being necessary and reasonable as security for judgment that we expect to recover.

3)     We retained the Defendant as Buyer's counsel for the purchase of property located at 6 Beckman Street, Worcester, Massachusetts and at 19 Canton Street, Worcester, Massachusetts from Terry A. King and E. Perry King (hereinafter referred to as the "King properties").

4)     On or about July 15, 2002, we purchased each of the King properties for One Hundred Ten Thousand ($110,000.00) Dollars.

5)     We relied on Attorney Mason's legal expertise to represent us in this real

5)    We relied on Attorney Mason's legal expertise to represent us in this real estate transaction and at no time prior to the purchase of the King properties, did Attorney Mason indicate to us that there were existing encumbrances on either property.

6)    Attorney Mason did not follow the standard practice of a Buyer's attorney by ordering a title search on the properties.

7)    After our purchase of the King properties, we learned that there were encumbrances on each of the properties and that we were responsible for their payment as title holders.

8)    Attorney Mason breached the standard of care by failing to order a title search, and unbeknownst to us, by representing the Sellers in the same transaction.

9)    We have since sold both properties at a lower resale value than what could have been obtained if there were no existing encumbrances and have suffered severe monetary losses in mitigating the encumbrances.

10)    The individual Defendant owes us the approximate sum of $295,000 together with fair and reasonable amount of interest and costs, as more fully set forth in the plaintiffs' complaint.

11)    We have spent at least Ninety-Four Thousand Five Hundred ($94,500.00) Dollars over and above the total purchase price of Two Hundred Twenty Thousand ($220,000.00) Dollars to clear title to the two properties. Just recently, another mortgagor has declared we owe it a minimum of $70,000.00.

12)    Additionally, it is our typical course of action to rehabilitate dilapidated multi-family homes and quickly resell them.

13)    Because of the complicated and expensive title issues, we spent less money on the rehabilitations and sold the properties for much less than the Worcester market bears.

14)    We estimate that without the title defects on the properties, we could have sold the properties for $300,000 each.

15)    We sold 19 Canton Street for Two Hundred Five Thousand ($205,000.00) Dollars and 6 Beckman Street for Two Hundred Three Thousand ($203,000.00) Dollars.

16)    Further, to the best of the affiants' knowledge there is no liability insurance coverage with respect to the plaintiffs' claim against the defendant.

17)    Even a cursory search of Alan Mason's assets shows many are held in trust by a family member or friend.

18)    This attachment is needed as pre-judgment security.

WHEREFORE, the ex parte attachments of the defendant, Alan Mason, Esquire, and d/b/a Alan Mason Legal Services, Inc. motor vehicles are hereby requested, said attachments being necessary and reasonable as security for judgment the plaintiffs expect to recover. Further, there is no liability insurance known to the plaintiffs which may be available to satisfy said judgment, and further there is a clear danger that, if the defendant is notified in advance of allowance of the within attachments the defendant will cause the motor vehicles to be conveyed, and his assets otherwise concealed.

Subscribed and sworn to under the pains and penalties of perjury this 19th day of April, 2004.

_Steve Nader Gavel_  5-17-04          _Mansour Gavel_  5-17-04
Steve Nader Gavel                     Mansour Gavel