UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 05-CV-40014-FDS

SANDRA S. KATZ,                                                      )
    Defendant In Counterclaim                                )
                                                                     )
                                                                     )
              v.                            )
                                                                     )
MATTHEW DENN, INSURANCE                                              )
COMMISSIONER OF THE STATE OF DELAWARE                                )
AS RECEIVER OF NATIONAL HERITAGE                                     )
LIFE INSURANCE COMPANY IN LIQUIDATION                                )
    Plaintiff in Counterclaim and Third Party Plaintiff      )
                                                                     )
                                                                     )
              v.                            )
                                                                     )
FEDERAL DEPOSIT INSURANCE CORPORATION,                              )
UNITED STATES OF AMERICA, E. PERRY KING,                            )
ALAN MASON, ALAN MASON LEGAL                                        )
SERVICES, P.C., ALAN MASON LEGAL SERVICES,                         )
INC., ALAN MASON D/B/A ALAN MASON LEGAL                            )
SERVICES, P.C., ALAN MASON D/B/A ALAN                              )
MASON LEGAL SERVICES, INC., AND ALAN                               )
MASON LEGAL SERVICES, P.C. D/B/A ALAN                              )
MASON LEGAL SERVICES, INC.,                                         )
    Third Party Defendants.                                  )
                                                                     )
                                                                     )
              v.                            )
E. PERRY KING AND MANSOUR GAVAL,                                    )
    Fourth Party Defendants.                                 )

**MATTHEW DENN'S, INSURANCE COMMISSIONER OF THE STATE OF
DELAWARE, MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR
RECONSIDERATION OF DISMISSAL OF
THIRD-PARTY COMPLAINT**

Now comes the Defendant Matthew Denn, Insurance Commissioner of the State of

Delaware, as Receiver of National Heritage Life Insurance Company in Liquidation

("NHL"), and respectfully requests this Honorable Court to reconsider its dismissal of the

Third-Party Complaint, or in the alternative leave to amend the Third-Party Complaint

pursuant to Fed.R.Civ.P. 15(a).  As grounds therefore, NHL states that the Third-Party

Complaint meets the requirements of Fed.R.Civ.P. 14(a), by specifically outlining the

liability of the third-party defendants to NHL in the event that the NHL's interest is

compromised through Katz's Complaint against NHL, or NHL's Counterclaims against

Katz. For factual outline of claim, see Third-Party Complaint, ¶'s 14, 18-24.

## I. FACTS

The following is a brief description of the relevant conveyances and dates of

litigation involving the Canton Property.

1.      On January 27, 1988, Perry King and Terry King, the then-owners of the Canton

Property, granted a mortgage to the Home National Bank of Milford ("Canton Mortgage").

See Exhibit A attached hereto.

2.      To summarize the chain of title for the Canton Mortgage as outlined in detail in the

Third-Party Complaint, the Canton Mortgage was transferred between banking entities as

follows:

   a.  The original mortgagee, Home National Bank of Milford failed.

   b.  FDIC then took the interest of the Canton Mortgage from the Home National

   Bank of Milford in 1994.

   c.  FDIC transferred Canton Mortgage to South Star Management Company Inc. in

   1994.

   d.  South Star Management Company Inc. transferred Canton Mortgage to National

   Housing Exchange, Inc. in 1994.

   e.  NHL was determined to be the owner and holder of the Canton Mortgage after

   several years of litigation in 1997.  See ¶15, Third-Party Complaint.

   f.  Eight years after originally transferring the Canton Mortgage to South Star

   Management Company Inc., FDIC, acting negligently, issues discharge of Canton

   Mortgage in 2002.  See ¶¶ 21, 22, and 23, Third-Party Complaint.

3.     On July 19, 2002, Perry King and Terry King transferred the Canton Property to Mansour Gaval and Nader Gavel. See Exhibit B attached hereto.

4.     On or about January 28, 2004, the Canton Property was transferred to Sandra S. Katz, the former plaintiff in this civil action. See Exhibit C attached hereto.

5.     On October, 2004, Katz initiated this civil action against NHL.

6.     On March 18, 2005, Katz transferred the property to Fatu Miller. See Exhibit D attached hereto. Title remains in the name of Fatu Miller. See Exhibit D.

## II. ARGUMENT

Fed.R.Civ.P. 14(a) permits impleader as stated in the rule:

> At any time after commencement of the action a defendant party, as a third-party plaintiff, may cause a summons and complaint to be served upon a person not a party to the action who is or may be liable to the third-party plaintiff for all or part of the plaintiff's claim against the third-party plaintiff.

A courtshould "allow impleader on any colorable claim of derivative liability that will not unduly delay or otherwise prejudice the ongoing proceedings." *Lehman v. Revolution Portfolio LLC*, 166 F.3d 389, 393 (1st Cir. 1991). An impleader action is proper when the "third party's liability is in some way dependent on the outcome of the main claim or when the third party is secondarily liable to the defendant." 6 Wright, Miller & Kane, *Federal Practice & Procedure*, Civ.2nd, §1446.

Rule 14 is procedural only; substantive rights of a third-party plaintiff must be determined by applying the appropriate state law principles. *Id.* "Impleader is only proper when a right to relief exists under the applicable substantive law." 6 Wright, Miller & Kane, *Federal Practice & Procedure*, Civ.2nd, §1446. The substantive law in Massachusetts

3

recognizes a tort-based right to indemnification where one party incurs liability as a result of the tortuous acts of another. *F.D.I.C. v. Caolo*, 478 F.Supp. 1185 (D. Mass. 1979). Tort-based indemnity is "permitted only when one does not join in the negligent act but is exposed to derivative or vicarious liability for the wrongful act of another. *Id.* As in *Lehman v. Revolution Portfolio LLC*, it is appropriate for NHL to implead a non-party when the "non-party is or may be liable "for all or part of the plaintiff's claim against the defendant" ". *Lehman*, 166 F.3d 389, 393 (1st Cir. 1991)(citing to Rule 14(a)). Additionally, impleader is proper when recovery is sought against the United States as a third-party defendant, since the Federal Tort Claims Act permits actions to be maintained against the United States for its torts. 6 Wright, Miller & Kane, *Federal Practice & Procedure*, Civ.2nd, §1450.

"A district court must oversee third-party practice with the core purpose of Rule 14(a) in mind: avoiding unnecessary duplication and circuity of action." *Id.*, at §1443.
"As long as a third-party action falls within the general contours outlined by Rule 14(a), does not contravene customary jurisdictional and venue requirements, and will not work unfair prejudice, a district court should not preclude its prosecution." Lehman v. Revolution Portfolio L.L.C., 166 F.3d 389, 395 (1st Cir. 1999).

Courts have separately held that third party impleader practice is appropriate, even though monetary damages were not sought in the complaint filed against the defendant. See *Lehman v. Revolution Portfolio L.L.C.*, 166 F.3d 389 (1st Cir. 1999)(wherein complaint against FDIC sought only restraint or rescission of property sales, First Circuit Court of Appeals held that FDIC could properly implead a third-party defendant.) Even when seeking declaratory judgment relief in the main claim between the plaintiff and defendant

4

it is appropriate for impleader to occur when "third party's liability is in some way dependent on the outcome of the main claim or when the third party is secondarily liable to the defendant." Impleader practice is not limited by the form of remedy requested in the main claim. *Id.* See also, *Monarch Life Ins. Co. v. Donahue,* 702 F.Supp. 1195 ( D.Pa.1989)(when insurer sought declaratory judgment that the life insurance policy was invalid due to false statements made on application, survivors of insured could implead investment broker who assisted in completion of application, claiming that if application was filled out improperly, it was due to the fault of the investment broker). See also, *Prudential Ins. Co. of America v. BMC Industries, Inc.,* 113 F.R.D. 100, 102, (D.C.N.Y.1986); *Certain Interested Underwriters at Lloyds v. Gulf Nat. Ins. Co.,* 898 F.Supp. 381 (D.C.Miss.1995)(Reinsurer filed declaratory judgment action against insured, who in turn impleaded insurer; third-party claim determined to be proper by court, which held "(t)he rule's general purpose is to adjudicate interrelated matters in one litigation, so as to obtain consistent and fair results for the parties and avoid duplication of effort for the courts. *See American Fidelity and Casualty Co. v. Greyhound Corp.,* 232 F.2d 89, 92 (5th Cir.1956). Coupled with this intention is the rule that declaratory judgments should completely dispose of a controversy.")

The allegations contained in the Complaint, Answer, and Counterclaim are summarized as follows: Katz's Complaint alleges that the Canton Mortgage was discharged by the discharge of mortgage granted by the FDIC in 2002. As stated in her Complaint, "Katz relied upon the FDIC's Discharge of Mortgage when she purchased the Property." Complaint, ¶13. Katz also asserts that the title to the Property is free and clear of the Canton Mortgage, since the Canton Mortgage was discharged by the FDIC. Complaint ¶14.

Conversely, NHL states that the Canton Mortgage is not discharged, since the 2002 FDIC

Discharge of the Canton Mortgage was issued when the FDIC did not have rights to the

Canton Mortgage, having sold its rights to the Canton Mortgage to a separate party in 1994.

Third-Party Complaint, ¶'s, 14, 21-24.  NHL also alleges that Katz purchased the Property

with knowledge of the existing Canton Mortgage, agreeing to buy the property at a reduced

cost in return for accepting the Property with the outstanding Canton Mortgage.  Answer

and Counterclaim of NHL, ¶18.

The allegations of the Third-Party Complaint are directly related, and show that the

third parties are liable to NHL in the event that Canton Mortgage is determined to be

satisfied by the discharge issued by the FDIC in 2002.  Stated concisely, if this Court

determines that NHL cannot prevail in its claims against Katz based on a conclusion that the

Canton Mortgage was discharged by the 2002 FDIC Discharge, then NHL would turn to

FDIC and the other defendants to hold them responsible for their fraudulent and negligent

actions.  Had the FDIC and the other defendants not acted to issue, obtain, and record a

discharge of the Canton Mortgage, NHL would have no claim against them, and

furthermore, Katz would have no claim against NHL, and the Canton Property would

remain subject to the Canton Mortgage.  NHL has clearly shown in the Third-Party

Complaint that the third-party defendants' "liability is in some way dependent on the

outcome of the main claim" and that "the third party is secondarily liable" to NHL.  *F.D.I.C.*

*v. Bathgate*, 27 F.3d 850, 873 (3d Cir. 1994)(holding that claims of mortgagor against

directors of bank were not related to the main claim wherein the FDIC sought to recover

under certain promissory notes and mortgages, and that the third-party complaint did not

demonstrate that the bank director's liability was in some way dependent on the outcome of

the main claim.)  It is clear that the third-party defendants' liability is derivative of NHL's

liability which would result from an adverse finding of declaratory judgment sought by both

Katz and NHL in the main claim.

This Court relies upon *Damar Inc. v. Advanced Global Design Inc.*, No. 98-CV-

3435, 1998 WL 967549, in determining that the Third-Party Complaint of NHL is

improperly pled.  To the extent that this Court finds that the failure of NHL to include the

words "derivative or secondary liability" should result in dismissal of the Third-Party

Complaint, NHL respectfully requests this Court for leave to file an amended Third-Party

Complaint pursuant to Fed.R.Civ.P. 15(a).

### III. CONCLUSION

For the reasons outlined above, NHL respectfully requests this Honorable Court to reconsider its dismissal of the Third-Party Complaint , or in the alternative leave to amend the Third-Party Complaint pursuant to Fed.R.Civ.P. 15(a), and for such other and further relief as this Court deems just and proper.

Respectfully submitted,
Matthew Denn,
 Insurance Commissioner of
the State of Delaware As
Receiver of National Heritage
Life Insurance Company in

By his attorneys,

*/s/ James F. Creed, Jr.*

James F. Creed, Jr.
BBO#552138
Sara D. Trupe Cloherty
BBO#632528
CREED & FORMICA
1329 Highland Avenue
Needham, MA 02492
Dated:                                      (781) 449-4600

Exhibit "A"

MORTGAGE

 <u>E. PERRY KING</u> AND <u>TERRY A. KING</u> (the "Mortgagor"), having a principal place of business at <u>188 Route 146 Sutton, Massachusetts,</u> FOR CONSIDERATION PAID GRANT(S) TO THE HOME NATIONAL BANK OF MILFORD, a national banking association (the "Mortgagee"), whose address is 221 Main Street, Milford, Worcester County, Massachusetts 01757;

WITH MORTGAGE COVENANTS, to secure the payment of the indebtedness described in Paragraph 10 below (the "Obligation"), the property described in Exhibit A annexed hereto and by this reference made a part hereof (the "Property"):

Together with (a) insofar as the same are or can by agreement of the parties be made a part of the Property, all fixtures and appliances now or hereafter attached to, placed on, installed in or used in any way in connection with the Property and/or buildings and structures thereon, including without being limited to, portable or sectional buildings; screens, awnings, screen doors, storm and other detachable windows and doors; window shades and blinds; inlaid or attached floor coverings; boilers, tanks, furnaces, radiators, water heaters, elevators, fire and other alarm systems, cooling towers and compressors; heating, lighting, plumbing, gas, electric, ventilating, refrigerating, air conditioning, ice making, sprinkler and incinerating controls, apparatus and equipment; garbage and trash incinerators and receptacles, ovens, boilers, stoves, refrigerators, dishwashers, washing machines, driers, television antennas; fences and partitions; trees and hardy shrubs; all of which fixtures, including accessories and additions thereto and replacements thereof, are hereby declared and shall be deemed to be accessory to the freehold and a part of the Property as between the parties hereto, their successors and assigns and all persons claiming by, through, or under them, and shall constitute security for the Obligation and be subject to this Mortgage; (b) all improvements now or hereafter erected on the Property; and (c) all easements, rights, appurtenances, rents, water and water rights.

All of the foregoing being hereinafter sometimes referred to as the "mortgaged premises."

AND Mortgagor (a) herewith assigns to Mortgagee all future rents and profits from the mortgaged premises, provided, however, until default under the Obligation, this Mortgage, or the other instruments securing the Obligation or otherwise executed in connection therewith, Mortgagor may continue to collect and retain such rents and profits as they become due and payable; (b) shall perform and observe all the obligations imposed upon it under any lease of the mortgaged premises or any portion thereof, and shall not do, or permit to be done, anything to impair the security thereof; and, in addition to the obligations contained

elsewhere herein, if such leases shall include any residential units, Mortgagor shall conform to any law or regulation applicable thereto; and (c) agrees that if the Obligation shall become due and payable in accordance with the terms hereof, it will, upon demand of the Mortgagee, assign any and all leases of the mortgaged premises then existing to the Mortgagee, and agrees that after such assignments Mortgagee may modify and otherwise deal with such leases as if the owner of the mortgaged premises.

The Mortgagor, for the Mortgagor and the Mortgagor's successors and assigns, covenants and agrees in addition to the STATUTORY CONDITION:

1. To keep the buildings, structures, improvements and fixtures now or hereafter standing on the mortgaged premises insured against fire with extended coverage and/or such other perils as the Mortgagee shall reasonably request in such amounts and companies and in such forms as shall be satisfactory to the Mortgagee, all insurance to be for the benefit of and payable in case of loss to the Mortgagee and the Mortgagor as their interests may appear of record and to contain a provision that it shall not be cancelled or modified without at least ten (10) days prior written notice to the Mortgagee; to pay or cause to be paid when due all premiums for such insurance and, upon demand, to pay the same to the Mortgagee in the manner provided in Paragraph 2 with respect to taxes; that the Mortgagee is hereby authorized, at the expense of the Mortgagor, to obtain and/or renew any such insurance, and to do all necessary acts therefor in the name of the Mortgagor; to do no act, nor suffer any to be done, that shall cause, directly or indirectly, any such insurance to be void or vacated in whole or in part; and to deliver to the Mortgagee, at any time upon the Mortgagee's request, all insurance policies or memoranda thereof and to deliver to the Mortgagee new policies or memoranda thereof for any insurance about to expire at least ten (10) days prior to such expiration (hereby granting to the Mortgagee in the event of foreclosure, full authority, as attorney irrevocable of the Mortgagor, to cancel such insurance and retain the return premiums thereof and apply the same to the satisfaction of the Obligation or to transfer such insurance to any person claiming title to the mortgaged premises or any part thereof by virtue of foreclosure proceedings).

2. To pay or cause to be paid when due all taxes, charges, assessments and rates with respect to the mortgaged premises to whomsoever laid or assessed; and, upon demand, to deposit with Mortgagee on each day that periodic payments are required by the terms of the Obligation, in addition to the payments of principal and interest provided therein, a sum equal to such fraction of the real estate taxes and betterment assessments for each year as shall be estimated by Mortgagee to be sufficient to provide in the aggregate, a sum adequate to pay said taxes and betterment assessments as and when they become due and payable, and, in addition, to deposit with Mortgagee any balance necessary to pay

BOOK 11897 PAGE 124

in full said taxes and betterment assessments prior to the date when such taxes or betterment assessments become due and payable; and to forward to the Mortgagee real estate tax bills as soon as the same have been received by Mortgagor.

3. That the Mortgagor will not further encumber the mortgaged premises; and that, in the event the ownership of or title to the mortgaged premises or any part thereof shall become vested in any person other than the Mortgagor without the prior written consent of the Mortgagee, then at any time thereafter, at the option of the Mortgagee, the Obligation shall become due and payable on demand, and the Mortgagee may, without notice to the Mortgagor, deal with any successor in interest with reference to the Mortgage and the Obligation in the same manner as with the Mortgagor without in any way vitiating or discharging the Mortgagor's liability hereunder or upon the Obligation. No sale of the mortgaged premises, no forbearance on the part of the Mortgagee, no extension (whether oral or in writing) of the time for the payment and satisfaction of the whole or any part of the Obligation, and no other indulgence given by the Mortgagee to any person other than the Mortgagor, shall operate to release or in any manner affect the original liability of the Mortgagor, notice of any thereof being waived. The proceeds of any award for damages in connection with any condemnation or other taking of the mortgaged premises or any part thereof, or for conveyance in lieu of condemnation are hereby assigned and shall be paid to the Mortgagee. If the mortgaged premises are abandoned by the Mortgagor or if the Mortgagor fails, after thirty (30) days written notice from the Mortgagee to negotiate a reasonable settlement with the condemnor of an offer to make an award, the Mortgagee is authorized to collect and apply the proceeds of such an award at Mortgagee's option either to the restoration or repair of the mortgaged premises or to the Obligation.

4. That Mortgagee is hereby authorized at its option to pay all costs and expenses which it in good faith determines to be required or desirable to effect compliance with the agreements of the Mortgagor set forth herein or in the Obligation or to protect or maintain the mortgaged premises or Mortgagee's interest therein, such authorization to be in addition to and not in limitation of the rights of Mortgagee under law and under other applicable provisions hereof; and any sum so expended shall be deemed to be a principal advance and shall be equally secured with and be a part of the Obligation.

5. That the Mortgagor is now in a solvent condition and no bankruptcy or insolvency proceedings are pending or contemplated by or against the Mortgagor; and that the Obligation, this Mortgage and the other instruments securing the Obligation or otherwise executed in connection therewith are valid and binding obligations enforceable in accordance with their respective terms and the execution and delivery thereof do not contravene any contact or agreement to which the Mortgagor is a party or by which the Mortgagor or any of the Mortgagor's properties may be

BOOK 11097 PAGE 125

bound or any law, order, decree or regulation to which the Mortgagor is subject.

6. To keep the mortgaged premises in the same repair, order and condition as the same now are or may hereafter be put, reasonable wear and tear only excepted; not to permit or suffer any strip or waste of the mortgaged premises, nor any material change therein, nor any violation of any law or ordinance affecting the same or the use thereof; not to allow to lapse or be revoked any licenses or other governmental authorizations issued to Mortgagor or to any affiliate for the operation of any business on the mortgaged premises; to permit Mortgagee, upon reasonable notice to Mortgagor, to make entry upon and inspect the mortgaged premises; and Mortgagor shall, at Mortgagee's request at reasonable intervals, demonstrate compliance with this and other covenants of this Mortgage.

7. At the option of the Mortgagee, the Obligation shall become immediately due and payable, without notice or demand (a) upon the sale or transfer of any substantial portion of the mortgaged premises (and for purposes of the foregoing, both a transfer of a substantial portion of the beneficial ownership of the Mortgagor and a lease of any substantial portion of the mortgaged premises to or for the benefit of a single lessee for a term (including renewal or option periods) in excess of one (1) year, shall constitute such a sale or transfer giving the Mortgagee the right to accelerate hereunder); (b) in the event of a default in the performance or observance of the terms and provisions of the Obligation, this Mortgage and the other instruments securing the Obligation or otherwise executed in connection therewith; (c) in the event of a default under any other agreement of the Mortgagor in favor of the Mortgagee, whether now existing or hereafter arising;or (d) in the event of a default in the payment of the principal of or the interest on any other indebtedness of the Mortgagor continued for a period sufficient to permit the acceleration of the maturity of such indebtedness. Any forbearance by the Mortgagee in exercising any right or remedy hereunder or otherwise afforded by applicable law shall not be a waiver of or preclude the exercise of any such right or remedy. All remedies provided herein, in the Obligation and other instruments securing the Obligation shall be deemed to be cumulative remedies and may be exercised in any manner the Mortgagee elects.

8. That if any legal proceedings of any nature shall involve the Mortgagee's interest under this Mortgage, however such proceedings shall be commenced and whether or not such proceedings shall be completed, or if the Mortgagee shall enter into possession of the mortgaged premises, then the Mortgagee shall be entitled to collect (and the Mortgagor agrees to reimburse the Mortgagee on demand for) all costs and expenses, including attorneys' fees, incurred by the Mortgagee in any such proceeding or in the protection, care or management of the mortgaged premises; the Mortgagee shall be entitled to purchase the mortgaged premises at

any foreclosure sale; and that if surplus proceeds are realized from a foreclosure sale, the Mortgagee shall not be liable for any interest thereon pending distribution of such proceeds by the Mortgagee.

9. That, if the Mortgagee exercises the POWER OF SALE herein contained, then: the Mortgagee may sell the mortgaged premises in parcels; such sales may be held from time to time and said Power of Sale shall not be exhausted until all of the mortgaged premises shall have been sold, notwithstanding the Mortgagee's releasing, from time to time, certain such parcels which are a part or parts of the mortgaged premises; the Mortgagee may do all things and take any action, all in the name of the Mortgagor, which may be necessary to subdivide the mortgaged premises or any parcel included therein; and the Mortgagee may sell any or all of such parcels then subject to this Mortgage, notwithstanding that the proceeds of such sales may exceed the obligations secured by this Mortgage.

10. That this Mortgage is to secure the payment of the sum of $ 112,000.00, together with interest thereon and all other charges, all as provided in a promissory note and/or guarantee of even date herewith given by Mortgagor to Mortgagee and also to secure the performance of all agreements and conditions herein contained and all other obligations now existing or hereafter arising of Mortgagor to Mortgagee, direct or indirect, absolute or contingent, as well as all other sums (with interest at the rate provided in said promissory note) advanced to or on behalf of Mortgagor by Mortgagee for any purpose, whether dependent or independent of this transaction, all of which shall be equally secured with and have the same priority as the original advance hereunder.

11. Other:

This Mortgage is upon the STATUTORY CONDITION, and upon the further condition that all agreements and covenants of the Mortgagor contained in the Obligation, in this Mortgage and in the other instruments securing the Obligation or otherwise executed in connection therewith, shall be kept and fully performed as therein provided, for any breach of which the Mortgagee shall have the STATUTORY POWER OF SALE.

IN WITNESS WHEREOF, the Mortgagor has executed this Mortgage under seal this_____27th_____day of_____Jun_____, 19 88

_____    (Borrower)
E. PERRY KING

_____    (Borrower)
TERRY A. KING

Commonwealth of  Massachusetts                        Jun 27 , 19 88

 WORCESTER, SS.

Then personally appeared the above-named  E. PERRY KING AND TERRY A. KING  and  acknowledged  the foregoing instrument to be their free act and deed, before me.

_____
Notary Public

My Commission Expires____6/10/88

## SCHEDULE A

Worcester, Worcester County, Massachusetts, in the southerly part thereof, in the section known as Irvington, on the southerly side of Canton Street, shown as Lot 17 on a plan of lots drawn for the Ballard Land Company by Buttrick & Pratt, recorded in Book 1537, Page 653 and bounded and described as follows:

BEGINNING at a stone monument set at the northwesterly corner of the herein described premises on the southerly side of Canton Street, formerly known as Albion Avenue;

THENCE southerly by Lot 18, a distance of 100 feet to a stone monument;

THENCE easterly by Lot 35 and Lot 36, a distance of 50 feet to a stone monument;

THENCE northerly by Lot 16, a distance of 100 feet to a stone monument on the southerly side of said Canton Street, formerly Albion Avenue;

THENCE westerly by said Canton Street 50 feet to the point of beginning.

For our Title see Book *8344*    Page *333*    .

ATTEST: WORC., Anthony J. Vigliotti, Register

Exhibit "B"

152487

BK27191PG112

45 14
20

## DEED

We, E. PERRY KING AND T.A. KING

Of

grant to ~~Manuel Silva and Maria Silva~~ Mansour Gaval    and Nader Gawal

of  431 SALISBURY ST  WORC MA 01609

for consideration of ~~FIFTY-SEVEN THOUSAND AND 00/100 DOLLARS ($57,000.00)~~
ONE HUNDRED TEN THOUSAND AND 00/100 DOLLARS    ($110,000.00)

with quitclaim covenants

SEE LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF.

02 AUG -9 PM 2 02

*Witness* our hands and seals this  15TH     day of  July, 2002

E. PERRY KING

T.A. KING

THE COMMONWEALTH OF MASSACHUSETTS

Worcester, *s.s.*                                    *JULY 15, 2002*

Then personally appeared the above named E. PERRY KING AND T.A. KING and acknowledged the foregoing to be THEIR free act and deed before me,

Notary Public: ALAN MASON
My commission expires: MARCH 21, 2008

WORCESTER
DEEDS REG 20
WORCESTER

CANCELLED                 01

FEE              $501.60

CASH      $501.60

PROPERTY ADDRESS: 19 CANTON STREET, WORCESTER, MA

BK27191PG113

SCHEDULE A

Worcester, Worcester County, Massachusetts, in the southerly part
thereof, in the section known as Irvington, on the southerly side
of Canton Street, shown as Lot 17 on a plan of lots drawn for the
Ballard Land Company by Buttrick & Pratt, recorded in Book 1537,
Page 653 and bounded and described as follows:

BEGINNING at a stone monument set at the northwesterly
corner of the herein described premises on the southerly side of
Canton Street, formerly known as Albion Avenue;
THENCE southerly by Lot 18, a distance of 100 feet to a
stone monument;
THENCE easterly by Lot 35 and Lot 36, a distance of 50 feet
to a stone monument;
THENCE northerly by Lot 16, a distance of 100 feet to a
stone monument on the southerly side of said Canton Street,
formerly Albion Avenue;
THENCE westerly by said Canton Street 50 feet to the point
of beginning.

TiTLE REF    BOOK 8344    PAGE 333-334

19 Canton Street, Worcester, MA

Exhibit "C"

2004 00014541

Bk: 32728 Pg: 33    Doc: DEED
Page: 1 of 2    01/28/2004 04:01 PM

# QUITCLAIM DEED

a/k/a Nader Gawal

## WE, MANSOUR GAVAL and NADER GAVAL, TENANTS IN COMMON, OF WORCESTER,    WORCESTER COUNTY, MASSACHUSETTS

For consideration paid TWO HUNDRED FIVE THOUSAND AND 00/100--
($205,000.00) ------------------------dollars

## Grants to SANDRA KATZ, INDIVIDUALLY, OF WORCESTER WORCESTER COUNTY, MASSACHUSETTS

### With quitclaim covenants:

The land in Worcester, Worcester County, Massachusetts, ini the southerly part thereof, in the section known as Irvington, on the southerly side of Canton Street, shown as Lot 17 on a plan of lots drawn for the Ballard Land Company by Buttrick & Pratt, recorded in Book 1537, Page 653, and bounded and described as follows:

BEGINNING at a stone monument set at the northwesterly corner of the herein described premises on the southerly side of Canton Street, formerly known as Albion Avenue;

THENCE Southerly by Lot 18, a distance of 100 feet to a stone monument;

THENCE Easterly by Lot 35 and 36, a distance of 50 feet to a stone monument;

THENCE Northerly by Lot 18, a distance of 100 feet to a stone monument on the southerly side of said Canton Street, formerly of Albion Avenue;

THENCE Westerly by said Canton Street, 50 feet to the point of beginning.

See Title reference recorded in Book 8344, Pages 333-334.

PROPERTY ADDRESS:    19 CANTON STREET, WORCESTER, MA

MASSACHUSETTS EXCISE TAX
Worcester District ROD #20 001
Date: 01/28/2004 04:01 PM
Ctrl# 014565 17630 Doc# 00014541
Fee: $934.80 Cons: $205,000.00



BEING the same premises conveyed to the grantors by deed recorded at the Worcester District Registry of Deeds in Book 27191, Page 112.

Witness our hands and seals this 19th day of December, 2003.

~~19 CANTON STREET REALTY TRUST~~

By: _____
    Mansour Gaval, ~~Trustee~~

    *Nader Gaval*   ~~XXXXXXXXXXXXX~~
    Nader Gaval, ~~Trustee~~

THE COMMONWEALTH OF MASSACHUSETTS

*WORCESTER* , ss.                 DECEMBER 19 , 2003

Then personally appeared the above-named MANSOUR GAVAL and NADER GAVAL ~~XXRUSXXEEX~~ ~~OEXX9XCANXXONXSTREEXXREALXXXXTRXXXT~~ and acknowledged the foregoing instrument to be their free act and deed, before me,

_____
Notary Public:  Alan Mason

My commission expires: 3/21/08

Exhibit "D"



**2005 00043493**
Bk: 35934 Pg: 39    Doc: DEED
Page: 1 of 2    03/22/2005 11:44 AM

QUITCLAIM DEED

Metropolitan Title Co.
96 W. Main St.
Northborough, MA

I, Sandra Katz   of Worcester, Worcester County, Massachusetts in consideration of THREE HUNDRED THOUSAND AND 00/100 ($300,000.00) DOLLARS

grant to            Fatu Miller

of                  19 Canton Street
                    Worcester, Massachusetts

with **QUITCLAIM covenants**

**PROPERTY ADDRESS:**    19 Canton Street, Worcester, MA

The land in Worcester, Worcester County, Massachusetts, mi the southerly part thereof, in the section known as Irvington, on the southerly side of Canton Street, shown as Lot 17 on a plan of lots drawn for the Ballard Land Company by Buttrick & Pratt, recorded in Book 1537, Page 653, and bounded and described as follows:

BEGINNING at a stone monument set at the northwesterly corner of the herein described premises on the southerly side of Canton Street, formerly known as Albion Avenue;

THENCE Southerly by Lot 18, a distance of 100 feet to a stone monument;

THENCE Easterly by Lot 35 and 36, a distance of 50 feet to a stone monument;

THENCE Northerly by Lot 18, a distance of 100 feet to a stone monument on the southerly side of said Canton Street, formerly of Albion Avenue;

THENCE Westerly by said Canton Street, 50 feet to the point of beginning.

*(handwritten, left margin, vertical)* 19 CANTON STREET, WORCESTER

MASSACHUSETTS EXCISE TAX
Worcester District ROD #20 001
Date:   02/22/2005 11:44 AM
Ctrl# 033457 32307 Doc# 00043493
Fee:  $1,368.00 Cons: $300,000.00

Return To:

The Law Office Of Joseph P Lussier
484 Main St.
Suite 420
Worcester, MA  01608
(508)799-7400



*(handwritten)* Page 1 of 2

BEING the same premises conveyed to the grantors by deed dated December 19, 2003 and recorded with the Worcester District Registry of Deeds in Book 32728, Page 33.

Executed as a sealed instrument this     18th     day of March          , 2005.

_____ *Sandra Katz* _____
Sandra Katz

COMMONWEALTH OF MASSACHUSETTS     WORCESTER SS

On this     18th     day of March          , 2005, before me, the undersigned notary public, personally appeared Sandra Katz , proved to me through satisfactory evidence of identification which were  Driver's Licenses  to be the person whose name is signed on the preceeding or attached document, and acknowledged to me that he/she/they signed it voluntarily for its stated purpose.

_____
Official signature and seal of notary  **Cheryl J. Morrill**
My commission expires: **February 23, 2012**

OFFICIAL SEAL
CHERYL J. MORRILL
NOTARY PUBLIC
COMMONWEALTH OF MASSACHUSETTS
My Comm. Expires Feb. 23, 2012

Page 2 of 2

ATTEST: WORC. Anthony J. Vigliotti, Register