UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 05-CV-40014-FDS

SANDRA S. KATZ,                                                    )
    Defendant In Counterclaim                              )
                                                                   )
                v.                                        )
                                                                   )
MATTHEW DENN, INSURANCE                                            )
COMMISSIONER OF THE STATE OF DELAWARE                              )
AS RECEIVER OF NATIONAL HERITAGE                                   )
LIFE INSURANCE COMPANY IN LIQUIDATION                              )
    Plaintiff in Counterclaim and Third Party Plaintiff    )
                                                                   )
                v.                                        )
                                                                   )
FEDERAL DEPOSIT INSURANCE CORPORATION,                             )
UNITED STATES OF AMERICA, E. PERRY KING,                           )
ALAN MASON, ALAN MASON LEGAL                                       )
SERVICES, P.C., ALAN MASON LEGAL SERVICES,                         )
INC., ALAN MASON D/B/A ALAN MASON LEGAL                            )
SERVICES, P.C., ALAN MASON D/B/A ALAN                              )
MASON LEGAL SERVICES, INC., AND ALAN                               )
MASON LEGAL SERVICES, P.C. D/B/A ALAN                              )
MASON LEGAL SERVICES, INC.,                                        )
    Third Party Defendants.                                )
                                                                   )
                v.                                        )
E. PERRY KING AND MANSOUR GAVAL,                                   )
    Fourth Party Defendants.                               )

**MATTHEW DENN'S, INSURANCE COMMISSIONER OF THE STATE OF
DELAWARE, MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO
SUBSTITUTE DEFENDANT IN COUNTERCLAIM**

Now comes the Defendant Matthew Denn, Insurance Commissioner of the State of

Delaware, as Receiver of National Heritage Life Insurance Company in Liquidation

("NHL"), and respectfully requests this Honorable Court to order that Fatu Miller ("Miller"),

the current owner of 19 Canton Street, Worcester, Massachusetts, ("Canton property") be

made a party to this action pursuant to Fed.R.Civ.P. 25(c).

## I. FACTS

The following is a brief description of the relevant conveyances and dates of litigation involving the Canton Property.

1.     On January 27, 1988, Perry King and Terry King, the then-owners of the Canton Property, granted a mortgage to the Home National Bank of Milford ("Canton Mortgage"). See Exhibit A attached hereto.

2.     As outlined in its counterclaim, NHL has a mortgage interest in the Canton Property. After several years of litigation, NHL was determined to be the owner and holder of the Canton Mortgage. The Canton Mortgage is dated January 27, 1988 and is recorded at the Worcester County Registry of Deeds Book 11097 Page 122.   In order to confirm its ownership, on September 15, 1997, and on October 21, 1997, NHL recorded two default judgments at the Worcester County Registry of Deeds which contained specific reference to the Canton Property and the Canton Mortgage.  The default judgments are recorded at Book 19167 Page 306, and Book 19273, Page 342.  The default judgments list all real estate mortgages in Massachusetts determined to be owned by NHL.  For the Canton Property, the following is listed in the recorded Default Judgments: the name of the Mortgagor, King; address, 19 Canton Street, Worcester, Worcester County, and reference to the Canton Mortgage recording information: Document # 7662, Book 11097, Page 122.   See Exhibits B and C attached hereto.

3.     On July 19, 2002, Perry King and Terry King transferred the Canton Property to Mansour Gaval and Nader Gavel, both of Worcester, Massachusetts.  See Exhibit D attached hereto.

4.     On or about January 28, 2004, the Canton Property was transferred to Sandra S. Katz, the former plaintiff in this civil action.  See Exhibit E attached hereto.

5.      On October, 2004, Katz initiated this civil action against NHL.

6.      On March 18, 2005, Katz transferred the property to Fatu Miller. See Exhibit F

attached hereto. Title remains in the name of Fatu Miller. See Exhibit F.

7.      On March 12, 2007, this Court dismissed Katz's complaint as being moot.[1]


## II. ARGUMENT

.        When Katz initiated this civil action in October, 2004, Katz was the owner of the

Canton Property. By selling the Canton Property to a third party in March, 2005, Katz

transferred her interest in the real estate. See Exhibit F. Through substitution under

Fed.R.Civ.P. 25(c), the transferee of the interest can be made a party in the action.

Fed.R.Civ.P. 25(c) permits a substitution of parties when there is a transfer of interest. The

rule states:

> In the case of any transfer of interest, the action may be
> continued by or against the original party, unless the court
> upon motion directs the person to whom the interest is
> transferred to be substituted in the action or joined with the
> original party.

See Fed.R.Civ.P. 25(c).

Rule 25(c) "does not require that anything be done after an interest has been

transferred. The action may be continued by or against the original party, and the judgment

will be binding on the successor in interest even though the successor is not named." 7C

Wright, Miller & Kane, *Federal Practice & Procedure*, Civ.2nd, §1958. See also *Walker v.*

*Providence Journal Co.*, 493 F.2d 82 (1st Cir. 1974); *Blachy v. Butcher*, 221 F.3d 896, 911

---

[1]  For declaratory judgment actions, reference is made to the relevant state law, which
requires that "even when relief is denied, rights of parties must be declared." *Williams v.*
*Secretary of Executive Office of Human Services*, 414 Mass. 551, 609 N.E.2d 447 (1993).

(6th Cir. 2000). The rule applies to ordinary transfers, such as real property transfers. 7C

Wright, Miller & Kane, *Federal Practice & Procedure*, Civ.2[nd], §1958. See *Blachy v.*

*Butcher*, 221 F.3d 896, 911 (6th Cir. 2000).

Furthermore, Rule 25(c) encompasses situations when interests are transferred

during a pending civil action. The analysis of Rule 25(c) starts with considering

Fed.R.Civ.P. 17, which requires that "every action shall be prosecuted in the name of the

real party in interest". The analysis distinguishing the two rules is that Rule 17 controls

"where a transfer of interest such as by an assignment takes place prior to the

commencement of the action", whereas Rule 25(c) applies when a transfer of interest has

occurred during the pendency of an action. *Explosives Corp. of America v. Garlam*

*Enterprises Corp.*, 817 F.2d 894, 907 (1st Cir. 1987). In other words, Rule 25(c) "applies

only to transfers that occur after the filing of an action." *Metlife Capital Corp. v. Water*

*Quality Insurance Syndicate*, 198 F.Supp.2d 97, 103 (D. Puerto Rico, 2002).

Since Sandra S. Katz, the original plaintiff and defendant in counterclaim to this

action, during the pendency of this action transferred her interest to Miller through a deed,

Miller should be substituted as a defendant in counterclaim. See *Blachy v. Butcher*, 221

F.3d 896, 911 (6th Cir. 2000)(holding transfer of interest of real property through deed from

husband to wife during pending action permitted substitution under Rule 25(c)). Otherwise,

any party, such as Katz, could effect a dismissal of any case by transferring his/her interest

in the cause of action during its pendency.

Furthermore, jurisdiction of this Court would not be destroyed by the addition of

Fatu Miller as a Defendant in Counterclaim. If jurisdiction exists at the time an action is

commenced, such jurisdiction may not be divested by subsequent events, including

4

substitution pursuant to Fed.R.Civ.P. 25(c). *Freeport-McMoRan v. KN Energy Inc.,* 498

U.S. 426, 111 S.Ct. 858 (1991). "Personal jurisdiction and venue will be extended over the

successor; it is not necessary to re-establish those requirements." 7C Wright, Miller & Kane,

*Federal Practice & Procedure*, Civ.2nd, §1958.

This Court in its March 12, 2007 Memorandum and Order on Plaintiff's Motion for

Summary Judgment and Third-Party Defendant's Motion to Dismiss requested NHL to

"show cause why the counterclaim should not be dismissed for failure to join a necessary

party under Rule 19(a) of the Federal Rules of Civil Procedure." After analysis of Rule

25(c), NHL states that substitution of a party due to a transfer of interest is the appropriate

relief that should be granted by this Court.

This Court also went on to conclude that in the event the Counterclaim of NHL is

dismissed, NHL "will have an adequate remedy available to him—that is, he can simply

attempt to foreclose on the property." Foreclosure is not an available remedy to NHL, since

the FDIC negligently issued a discharge of the Canton Mortgage based on the fraudulent

representation of other Defendants, which discharge states that the Canton Mortgage debt is

satisfied and paid in full. The discharge issued by FDIC was recorded, creating a cloud on

NHL's title interest. To foreclose, NHL would have to show that it is the title holder of the

Canton Mortgage.[2] In summary, Katz's Complaint against NHL stated that the Canton

Mortgage had been satisfied due to the discharge issued by the FDIC; NHL counterclaimed

against Katz stating that the Canton Mortgage was not satisfied, and that Katz knew at the

time she purchased the property that the Canton Mortgage was not satisfied. NHL then filed

a Third Party Complaint against the parties who would be liable to NHL in the event that

---

[2] A foreclosure of the Canton Mortgage by under these circumstances would not
determine the interests of the parties.

Katz's Complaint was successful. Paragraphs 18 through 24 of the Third Party Complaint state how those parties fraudulently acted to have the FDIC issue a discharge of the Canton Mortgage, and that the FDIC acted negligently by issuing a discharge of the Canton Mortgage. **The negligence of FDIC is due to their issuing a discharge when they no longer owned the Canton Mortgage. FDIC issued the discharge of the Canton Mortgage on July 19, 2002, purporting to memorialize that the Canton Mortgage was satisfied; however, previously on March 29, 1994 the FDIC sold and assigned the Canton Mortgage to a third party assignee, South Star Management Company Inc. The FDIC had a duty to maintain and check their records to determine if they still held the Canton Mortgage prior to issuing the July 19, 2002 discharge.** If they had, it would have been determined that they could not have issued the July 19, 2002 discharge. If the discharge had not been issued by the FDIC, NHL's ownership of the Canton Mortgage would not be compromised.

### III. CONCLUSION

For the reasons outlined above, NHL respectfully requests this Honorable Court to allow Fatu Miller to be substituted as a Defendant in Counterclaim, in place of Sandra S. Katz, and for such other and further relief as this Court deems just and proper.

Respectfully submitted,
Matthew Denn,
Insurance Commissioner of
the State of Delaware As
Receiver of National Heritage
Life Insurance Company in

By his attorneys,

/s/ James F. Creed, Jr.

James F. Creed, Jr.
BBO#552138
Sara D. Trupe Cloherty
BBO#632528
CREED & FORMICA
1329 Highland Avenue
Needham, MA 02492
(781) 449-4600

Dated:

Exhibit "A"

#19 CANTON ST., WORCESTER, MA.

## MORTGAGE

E. PERRY KING AND TERRY A. KING (the "Mortgagor"), having a principal place of business at 188 Route 146 Sutton, Massachusetts, FOR CONSIDERATION PAID GRANT(S) TO THE HOME NATIONAL BANK OF MILFORD, a national banking association (the "Mortgagee"), whose address is 221 Main Street, Milford, Worcester County, Massachusetts 01757;

WITH MORTGAGE COVENANTS, to secure the payment of the indebtedness described in Paragraph 10 below (the "Obligation"), the property described in Exhibit A annexed hereto and by this reference made a part hereof (the "Property"):

Together with (a) insofar as the same are or can by agreement of the parties be made a part of the Property, all fixtures and appliances now or hereafter attached to, placed on, installed in or used in any way in connection with the Property and/or buildings and structures thereon, including without being limited to, portable or sectional buildings; screens, awnings, screen doors, storm and other detachable windows and doors; window shades and blinds; inlaid or attached floor coverings; boilers, tanks, furnaces, radiators, water heaters, elevators, fire and other alarm systems, cooling towers and compressors; heating, lighting, plumbing, gas, electric, ventilating, refrigerating, air conditioning, ice making, sprinkler and incinerating controls, apparatus and equipment; garbage and trash incinerators and receptacles, ovens, boilers, stoves, refrigerators, dishwashers, washing machines, driers, television antennas; fences and partitions; trees and hardy shrubs; all of which fixtures, including accessories and additions thereto and replacements thereof, are hereby declared and shall be deemed to be accessory to the freehold and a part of the Property as between the parties hereto, their successors and assigns and all persons claiming by, through, or under them, and shall constitute security for the Obligation and be subject to this Mortgage; (b) all improvements now or hereafter erected on the Property; and (c) all easements, rights, appurtenances, rents, water and water rights.

All of the foregoing being hereinafter sometimes referred to as the "mortgaged premises."

AND Mortgagor (a) herewith assigns to Mortgagee all future rents and profits from the mortgaged premises, provided, however, until default under the Obligation, this Mortgage, or the other instruments securing the Obligation or otherwise executed in connection therewith, Mortgagor may continue to collect and retain such rents and profits as they become due and payable; (b) shall perform and observe all the obligations imposed upon it under any lease of the mortgaged premises or any portion thereof, and shall not do, or permit to be done, anything to impair the security thereof; and, in addition to the obligations contained

elsewhere herein, if such leases shall include any residential units, Mortgagor shall conform to any law or regulation applicable thereto; and (c) agrees that if the Obligation shall become due and payable in accordance with the terms hereof, it will, upon demand of the Mortgagee, assign any and all leases of the mortgaged premises then existing to the Mortgagee, and agrees that after such assignments Mortgagee may modify and otherwise deal with such leases as if the owner of the mortgaged premises.

The Mortgagor, for the Mortgagor and the Mortgagor's successors and assigns, covenants and agrees in addition to the STATUTORY CONDITION:

1. To keep the buildings, structures, improvements and fixtures now or hereafter standing on the mortgaged premises insured against fire with extended coverage and/or such other perils as the Mortgagee shall reasonably request in such amounts and companies and in such forms as shall be satisfactory to the Mortgagee, all insurance to be for the benefit of and payable in case of loss to the Mortgagee and the Mortgagor as their interests may appear of record and to contain a provision that it shall not be cancelled or modified without at least ten (10) days prior written notice to the Mortgagee; to pay or cause to be paid when due all premiums for such insurance and, upon demand, to pay the same to the Mortgagee in the manner provided in Paragraph 2 with respect to taxes; that the Mortgagee is hereby authorized, at the expense of the Mortgagor, to obtain and/or renew any such insurance, and to do all necessary acts therefor in the name of the Mortgagor; to do no act, nor suffer any to be done, that shall cause, directly or indirectly, any such insurance to be void or vacated in whole or in part; and to deliver to the Mortgagee, at any time upon the Mortgagee's request, all insurance policies or memoranda thereof and to deliver to the Mortgagee new policies or memoranda thereof for any insurance about to expire at least ten (10) days prior to such expiration (hereby granting to the Mortgagee in the event of foreclosure, full authority, as attorney irrevocable of the Mortgagor, to cancel such insurance and retain the return premiums thereof and apply the same to the satisfaction of the Obligation or to transfer such insurance to any person claiming title to the mortgaged premises or any part thereof by virtue of foreclosure proceedings).

2. To pay or cause to be paid when due all taxes, charges, assessments and rates with respect to the mortgaged premises to whomsoever laid or assessed; and, upon demand, to deposit with Mortgagee on each day that periodic payments are required by the terms of the Obligation, in addition to the payments of principal and interest provided therein, a sum equal to such fraction of the real estate taxes and betterment assessments for each year as shall be estimated by Mortgagee to be sufficient to provide in the aggregate, a sum adequate to pay said taxes and betterment assessments as and when they become due and payable, and, in addition, to deposit with Mortgagee any balance necessary to pay

BOOK 11057 PAGE 124

in full said taxes and betterment assessments prior to the date when such taxes or betterment assessments become due and payable; and to forward to the Mortgagee real estate tax bills as soon as the same have been received by Mortgagor.

3. That the Mortgagor will not further encumber the mortgaged premises; and that, in the event the ownership of or title to the mortgaged premises or any part thereof shall become vested in any person other than the Mortgagor without the prior written consent of the Mortgagee, then at any time thereafter, at the option of the Mortgagee, the Obligation shall become due and payable on demand, and the Mortgagee may, without notice to the Mortgagor, deal with any successor in interest with reference to the Mortgage and the Obligation in the same manner as with the Mortgagor without in any way vitiating or discharging the Mortgagor's liability hereunder or upon the Obligation. No sale of the mortgaged premises, no forbearance on the part of the Mortgagee, no extension (whether oral or in writing) of the time for the payment and satisfaction of the whole or any part of the Obligation, and no other indulgence given by the Mortgagee to any person other than the Mortgagor, shall operate to release or in any manner affect the original liability of the Mortgagor, notice of any thereof being waived. The proceeds of any award for damages in connection with any condemnation or other taking of the mortgaged premises or any part thereof, or for conveyance in lieu of condemnation are hereby assigned and shall be paid to the Mortgagee. If the mortgaged premises are abandoned by the Mortgagor or if the Mortgagor fails, after thirty (30) days written notice from the Mortgagee to negotiate a reasonable settlement with the condemnor of an offer to make an award, the Mortgagee is authorized to collect and apply the proceeds of such an award at Mortgagee's option either to the restoration or repair of the mortgaged premises or to the Obligation.

4. That Mortgagee is hereby authorized at its option to pay all costs and expenses which it in good faith determines to be required or desirable to effect compliance with the agreements of the Mortgagor set forth herein or in the Obligation or to protect or maintain the mortgaged premises or Mortgagee's interest therein, such authorization to be in addition to and not in limitation of the rights of Mortgagee under law and under other applicable provisions hereof; and any sum so expended shall be deemed to be a principal advance and shall be equally secured with and be a part of the Obligation.

5. That the Mortgagor is now in a solvent condition and no bankruptcy or insolvency proceedings are pending or contemplated by or against the Mortgagor; and that the Obligation, this Mortgage and the other instruments securing the Obligation or otherwise executed in connection therewith are valid and binding obligations enforceable in accordance with their respective terms and the execution and delivery thereof do not contravene any contact or agreement to which the Mortgagor is a party or by which the Mortgagor or any of the Mortgagor's properties may be

BOOK 11097 PAGE 125

bound or any law, order, decree or regulation to which the Mortgagor is subject.

6. To keep the mortgaged premises in the same repair, order and condition as the same now are or may hereafter be put, reasonable wear and tear only excepted; not to permit or suffer any strip or waste of the mortgaged premises, nor any material change therein, nor any violation of any law or ordinance affecting the same or the use thereof; not to allow to lapse or be revoked any licenses or other governmental authorizations issued to Mortgagor or to any affiliate for the operation of any business on the mortgaged premises; to permit Mortgagee, upon reasonable notice to Mortgagor, to make entry upon and inspect the mortgaged premises; and Mortgagor shall, at Mortgagee's request at reasonable intervals, demonstrate compliance with this and other covenants of this Mortgage.

7. At the option of the Mortgagee, the Obligation shall become immediately due and payable, without notice or demand (a) upon the sale or transfer of any substantial portion of the mortgaged premises (and for purposes of the foregoing, both a transfer of a substantial portion of the beneficial ownership of the Mortgagor and a lease of any substantial portion of the mortgaged premises to or for the benefit of a single lessee for a term (including renewal or option periods) in excess of one (1) year, shall constitute such a sale or transfer giving the Mortgagee the right to accelerate hereunder); (b) in the event of a default in the performance or observance of the terms and provisions of the Obligation, this Mortgage and the other instruments securing the Obligation or otherwise executed in connection therewith; (c) in the event of a default under any other agreement of the Mortgagor in favor of the Mortgagee, whether now existing or hereafter arising;or (d) in the event of a default in the payment of the principal of or the interest on any other indebtedness of the Mortgagor continued for a period sufficient to permit the acceleration of the maturity of such indebtedness. Any forbearance by the Mortgagee in exercising any right or remedy hereunder or otherwise afforded by applicable law shall not be a waiver of or preclude the exercise of any such right or remedy. All remedies provided herein, in the Obligation and other instruments securing the Obligation shall be deemed to be cumulative remedies and may be exercised in any manner the Mortgagee elects.

8. That if any legal proceedings of any nature shall involve the Mortgagee's interest under this Mortgage, however such proceedings shall be commenced and whether or not such proceedings shall be completed, or if the Mortgagee shall enter into possession of the mortgaged premises, then the Mortgagee shall be entitled to collect (and the Mortgagor agrees to reimburse the Mortgagee on demand for) all costs and expenses, including attorneys' fees, incurred by the Mortgagee in any such proceeding or in the protection, care or management of the mortgaged premises; the Mortgagee shall be entitled to purchase the mortgaged premises at

any foreclosure sale; and that if surplus proceeds are realized
from a foreclosure sale, the Mortgagee shall not be liable for
any interest thereon pending distribution of such proceeds by the
Mortgagee.

9. That, if the Mortgagee exercises the POWER OF SALE herein
contained, then: the Mortgagee may sell the mortgaged premises in
parcels; such sales may be held from time to time and said Power
of Sale shall not be exhausted until all of the mortgaged
premises shall have been sold, notwithstanding the Mortgagee's
releasing, from time to time, certain such parcels which are a
part or parts of the mortgaged premises; the Mortgagee may do all
things and take any action, all in the name of the Mortgagor,
which may be necessary to subdivide the mortgaged premises or any
parcel included therein; and the Mortgagee may sell any or all of
such parcels then subject to this Mortgage, notwithstanding that
the proceeds of such sales may exceed the obligations secured by
this Mortgage.

10. That this Mortgage is to secure the payment of the sum of
$__112,000.00, together with interest thereon and all other
charges, all as provided in a promissory note and/or guarantee of
even date herewith given by Mortgagor to Mortgagee and also to
secure the performance of all agreements and conditions herein
contained and all other obligations now existing or hereafter
arising of Mortgagor to Mortgagee, direct or indirect, absolute
or contingent, as well as all other sums (with interest at the
rate provided in said promissory note) advanced to or on behalf
of Mortgagor by Mortgagee for any purpose, whether dependent or
independent of this transaction, all of which shall be equally
secured with and have the same priority as the original advance
hereunder.

11. Other:

This Mortgage is upon the STATUTORY CONDITION, and upon the further condition that all agreements and covenants of the Mortgagor contained in the Obligation, in this Mortgage and in the other instruments securing the Obligation or otherwise executed in connection therewith, shall be kept and fully performed as therein provided, for any breach of which the Mortgagee shall have the STATUTORY POWER OF SALE.

IN WITNESS WHEREOF, the Mortgagor has executed this Mortgage under seal this _____ 27th _____ day of _____ Jun _____, 19__

_____
E. PERRY KING                    (Borrower)

_____
TERRY A. KING                    (Borrower)

Commonwealth of Massachusetts                    Jun 27 ,19 88

 WORCESTER, SS.

Then personally appeared the above-named  E. PERRY KING AND TERRY A. KING  and acknowledged the foregoing instrument to be their free act and deed, before me.

_____
                              Notary Public

My Commission Expires___ 6/10/88

## SCHEDULE A

Worcester, Worcester County, Massachusetts, in the southerly part thereof, in the section known as Irvington, on the southerly side of Canton Street, shown as Lot 17 on a plan of lots drawn for the Ballard Land Company by Buttrick & Pratt, recorded in Book 1537, Page 653 and bounded and described as follows:

BEGINNING at a stone monument set at the northwesterly corner of the herein described premises on the southerly side of Canton Street, formerly known as Albion Avenue;

THENCE southerly by Lot 18, a distance of 100 feet to a stone monument;

THENCE easterly by Lot 35 and Lot 36, a distance of 50 feet to a stone monument;

THENCE northerly by Lot 16, a distance of 100 feet to a stone monument on the southerly side of said Canton Street, formerly Albion Avenue;

THENCE westerly by said Canton Street 50 feet to the point of beginning.

For our Title see Book *8344* Page *333* .

ATTEST: WORC., Anthony J. Vigliotti, Register

Exhibit "B"

COMMONWEALTH OF MASSACHUSETTS

SUFFOLK, ss.

SUPERIOR COURT DEPARTMENT
CIVIL ACTION NO. 97-02013 B

DONNA LEE H. WILLIAMS, INSURANCE      )
COMMISSIONER OF THE STATE OF DELAWARE, )
AS RECEIVER OF NATIONAL HERITAGE LIFE  )
INSURANCE COMPANY IN LIQUIDATION,      )
     Plaintiff,                       )
                             )
                             )
        v.                             )
                             )
                             )
NATIONAL HOUSING EXCHANGE, INC.,       )
APX MORTGAGE SERVICES, INC.,           )
RESOURCE ASSET MANAGEMENT, INC. and    )
SOUTH STAR MANAGEMENT CORPORATION,     )
     Defendants.                      )

JUDGMENT BY DEFAULT

    This action came on for hearing before the Court, _KING_, J.,
presiding, upon the marking of Plaintiff, Donna Lee H. Williams,
Insurance Commissioner of the State of Delaware as Receiver of
National Heritage Life Insurance Company in Liquidation
(hereinafter, "NHL") in the above entitled action, for a default
judgment by the court, pursuant to Rule 55(b)(2) of Mass. R. Civ.
P., and it appearing to the court that the Complaint in said action
was filed on the 17'th day of April, 1997, and that no answer or
other defense has been filed by the said defendants, National
Housing Exchange, Inc. and Resource Asset Management, Inc., and
that default was entered on the _16th_ day of _JUNE_ 1997,
in the office of the clerk of this court, and that no proceedings
have been taken by the said defendant since said default was
entered, it is ordered and adjudged, that judgment by default enter
as against the Defendants, National Housing Exchange, Inc. and
Resource Asset Management, Inc. on Counts I, II and III of NHL's
Complaint, in accordance with the Prayers of that Complaint,
thereby recognizing and giving effect to the following judgments in
Massachusetts:

_Notice
sent
6/16/97
IPC
+F_

JUDGMENT ENTERED ON DOCKET _June 16 1997_
PURSUANT TO THE PROVISIONS OF MASS.R.CIV.P. 58(a)
AND NOTICE SENT TO PARTIES PURSUANT TO THE PRO-
VISIONS OF MASS.R.CIV.P. 77(d) AS FOLLOWS:

Prayer 1:  The Chancery Court of the State of Delaware in and for New Castle County's Liquidation and Injunction Order in Civil Action No. 13530, dated November 21, 1995, a copy of which is attached hereto as Exhibit "A";  and,

Prayer 2:  The United States District Court, Northern District of Illinois, Eastern Division's Amended Declaratory Judgment Order in No. 95 C 4243, dated April 12, 1996, *nunc pro tunc*, April 3, 1996, a copy of which is attached hereto as Exhibit "B";  and,

Prayer 3:  The United States District Court, Northern District of Illinois, Eastern Division's Revised Order Regarding Massachusetts Mortgages No. 95 C 4243, dated February 20, 1997, a copy of which is attached hereto as Exhibit "C".

SO ORDERED:

_____          ,J.
Superior Court Department

Dated: June 16, 1997

# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

## IN AND FOR NEW CASTLE COUNTY

IN THE MATTER OF THE
REHABILITATION OF NATIONAL
HERITAGE LIFE INSURANCE COMPANY

)
)  C.A. No. 13530
)

## LIQUIDATION AND INJUNCTION ORDER

WHEREAS, the Honorable Donna Lee H. Williams, the Insurance Commissioner for the State of Delaware, heretofore appointed as the Receiver of the National Heritage Life Insurance Company in Rehabilitation by Order dated May 25, 1994 (the "Receiver"), has filed with the Court a petition seeking a Liquidation and Injunction Order concerning National Heritage Life Insurance Company ("National Heritage") pursuant to Title 18 Del. C. §5901, et seq.;

WHEREAS, a hearing on the financial status of National Heritage and for interested parties to show cause why National Heritage should not be declared insolvent and ordered liquidated was held by the Court on 11/21/95 ; and

WHEREAS, the Receiver has submitted evidence that National Heritage is insolvent, in that as of September 30, 1995, National Heritage's liabilities exceeded its assets by approximately $214 million and that as of the hearing date, the negative surplus was approximately $214 million.

NOW THEREFORE, the Court finds and IT IS HEREBY ORDERED as follows:

1. National Heritage is insolvent as that term is defined in 18 Del. C. §5901.

2. Sufficient cause exists for the liquidation of the respondent, National Heritage, pursuant to 18 Del. C. §§ 5906 and 5910 and a Liquidation and Injunction Order is hereby entered against National Heritage.

3. The May 25, 1994 Rehabilitation and Injunction Order and the June 27, 1994 Supplemental Rehabilitation Order entered by this Court in this matter are hereby superseded, upon entry of this Order, and the Commissioner shall continue to serve as Receiver of National Heritage for the purpose of liquidation as set forth below.

4. The appointment of the Honorable Donna Lee H. Williams, Commissioner of Insurance of the State of Delaware, and her successors in office, as the Receiver of National Heritage is hereby continued and the Receiver is hereby directed to immediately take or maintain her exclusive possession and control of and to continue or be vested with all right, title and interest in, of or to the property of National Heritage, including, without limitation, all of National Heritage's assets, contracts, rights of action, funds recoverable under treaties and agreements of reinsurance heretofore entered into by National Heritage as the ceding insurer, books, records, bank accounts, certificates of deposit, collateral securing obligations to, or for the benefit of, National Heritage or any trustee, bailee or any agent acting for, or on behalf of, National Heritage (collectively, the "Trustees"), securities or other funds, and all real or personal property of any nature of National Heritage including, without limitation, furniture, fixtures and office supplies, wherever located, and including such property of National Heritage or collateral securing obligations to, or for the benefit of, National Heritage or any Trustee thereof that may be discovered hereafter, and all proceeds of or accessions to any of the foregoing, wherever located, in the possession, custody or control of National Heritage or any Trustee therefore (collectively, the "Assets"), and to liquidate the same pursuant to the provisions of Chapter 59 of the Delaware Insurance Code, and the Receiver is further authorized

to take such actions as the nature of this cause and interests of the policyholders, creditors and stockholders of National Heritage and the public may require.

5. The Receiver is hereby authorized to continue to deal with the Assets, business and affairs of National Heritage, including, without limitation, the right to sue for, defend for or continue suits already commenced by the Receiver for National Heritage, or for the benefit of National Heritage's policyholders, stockholders and creditors, in the courts and tribunals, agencies or arbitration panels in this State and other states in her name as the Commissioner of Insurance of the State of Delaware, or in the name of National Heritage.

6. The filing or recording of this Order or a certified copy hereof with the Clerk of this Court and with the recorder of deeds of the jurisdiction in which National Heritage's corporate and administration offices are located, or, in the case of real estate, with the recorder of deeds of the jurisdictions where the property is located, shall impart the same notice as would be imparted by a deed, bill of sale or other evidence of title duly filed or recorded with that recorder of deeds. Without limiting the foregoing, the filing of this Order with the Clerk of this Court also constitutes notice to all sureties and fidelity bondholders of National Heritage of all potential claims against National Heritage under such policies and shall constitute the perfection of a lien in favor of National Heritage under the Uniform Commercial Code or any like Federal or state law, regulation or order dealing with the priority of claims.

7. Except as otherwise indicated elsewhere in this Order, and upon notice provided by the Receiver, all agents and brokers, former officers, former directors, stockholders and all other persons or entities now or prospectively holding Assets of, or on behalf of, National

Heritage shall forthwith file an accounting of those Assets with the Receiver and shall within ten (10) days of the entry of this Order, turn those Assets over to the Receiver.

8.   The Receiver may, in her discretion, appoint or continue the appointment of a consultant or other person or persons to serve as Special Deputy Receiver(s) to assist the Receiver in accomplishing the directive of this Order.  The Special Deputy Receivers shall serve at the pleasure of the Receiver and, subject to the approval of the Receiver, shall be entitled to exercise all of the powers and authorities vested in the Receiver pursuant to this Order and applicable law.

9.   The Receiver may employ or continue to employ and fix the compensation of such deputies, counsel, clerks, employees, accountants, actuaries, consultants, assistants and other personnel (collectively, the "Designees") as considered necessary, and all compensation and expenses of the Special Deputy Receiver(s) and the Designees and of taking possession of National Heritage and conducting this proceeding shall be paid out of the funds and assets of National Heritage as administrative expenses under Title 18 Del. C. §5913(f).  Each and every Designee shall be deemed to have submitted to the jurisdiction of this Court for the resolution of any disputes between the Receiver and such Designee concerning such Designee's rights, obligations and compensation.

10.   The Receiver, the Special Deputy Receivers and the Designees (collectively, the "Indemnitees") shall have no personal liability for their acts or omissions in connection with their duties during the rehabilitation and liquidation periods, provided that such acts or omissions are or were undertaken in good faith and without willful misconduct, gross negligence or criminal intent.   All expenses, costs and attorney's fees incurred by the Indemnitees in

connection with any lawsuit brought against them in their representative capacities shall be subject to the approval of the Receiver and shall be exclusively paid out of the funds and assets of National Heritage.  The Indemnitees shall not be deemed to be employees of the State of Delaware.

11.  The Receiver's right, title and interest in and to all funds recoverable under treaties and agreements of reinsurance heretofore entered into by National Heritage as the ceding insurer shall continue, and all reinsurance companies involved with National Heritage are enjoined and restrained from making any settlements with any claimant or policyholder of National Heritage other than the Commissioner as Receiver. The amounts recoverable by the Receiver from any reinsurer of National Heritage shall not be reduced as a result of this liquidation proceeding or by reason of any partial payment or distribution on a reinsured policy, contract or claim, and each such reinsurer of National Heritage is hereby enjoined and restrained from terminating, cancelling, failing to extend or renew, or reducing or changing coverage under any reinsurance policy or contract with National Heritage, except for non-payment of premium.  The Receiver may terminate or rescind any contract with a reinsurer or reinsurers that is contrary to the best interests of the estate in liquidation.

12.   The Receiver is hereby authorized to transfer National Heritage's assets and liabilities, to the extent such liabilities are not covered by a state guaranty association, to an affiliate, subsidiary or trust for the overall benefit of National Heritage's policyholders, other creditors, and stockholder, subject to approval by this Court.

13. The Receiver may change to her own name the name of any of National Heritage's accounts, funds or other property or assets held with any bank, savings and loan association or other financial institution, and may withdraw such funds, accounts and other property or assets from such institutions or take any lesser action necessary for the proper conduct of this liquidation.

14. The Receiver may reject any executory contract to which National Heritage is a party that the Receiver may in her discretion determine is burdensome to National Heritage or is otherwise not in its best interest. Any party to a rejected contract may file a claim only for damages arising from such rejection in accordance with paragraph 18, below. All claims of policyholders enumerated in 18 Del. C. §5918(e) shall have priority over all non-policyholder claims arising from the rejection of executory contracts.

15. National Heritage, its former officers, former directors, stockholders, agents, servants and employees and all other persons having notice of these proceedings or of this Order are hereby prohibited from transacting any business of, or on behalf of, National Heritage or selling, transferring, destroying, wasting, encumbering or disposing of any of the Assets, without the prior written permission of the Receiver or until further Order of this Court.

16. All banks, brokerage houses, agents, reinsurers, or other companies or persons, either having in their possession Assets or possible Assets (including, without limitation, books or records of National Heritage), or having notice of these proceedings or of this Order, are hereby enjoined and restrained from disposing of, selling, wasting, encumbering, transferring or destroying any such Assets or possible Assets (including, without limitation, books or records of National Heritage). This prohibition includes, without limitation, Assets, possible Assets,

books or records pertaining to any business transaction between National Heritage and any of said parties. No actions concerning, involving, or relating to such Assets, possible Assets, books or records may be taken by any of the aforesaid persons or entities enumerated herein, without the prior written consent of the Receiver, or until further Order of this Court.

17. All former officers, former directors, stockholders, agents, servants and employees of National Heritage, and all other persons and companies having notice of these proceedings or of this Order, are hereby enjoined and restrained from instituting or further prosecuting any action at law or in equity or in other proceedings against National Heritage, the Commissioner as Receiver, the Special Deputy Receiver(s) or the Designees in connection with their duties as such, or from obtaining preferences, judgments, attachments or other like liens or encumbrances, or foreclosing upon or making of any levy against National Heritage or the Assets, or exercising any right adverse to the right of National Heritage to or in the Assets, or in any way interfering with the Receiver, the Special Deputy Receiver(s) or the Designees either in their possession and control of the Assets, books, and records of National Heritage or in the discharge of their duties hereunder.

18. All persons and companies are hereby enjoined and restrained from asserting any claim against the Commissioner as Receiver of National Heritage, or against the Special Deputy Receiver(s) or the Designees in connection with their duties as such, or against the Assets, except insofar as such claims are brought in the liquidation proceedings of National Heritage.

19.  The Court hereby imposes a temporary moratorium on payment of cash values, surrenders, policy loans or any other right to withdraw funds held in conjunction with the policies or contracts of National Heritage, in addition to the Receiver's and the state guaranty associations' right to implement any contractual provision for deferral of cash payment or policy loans, for a period of 120 days from the date of this Order, provided that any state guaranty association may voluntarily choose to permit a full or partial payment of cash values, surrenders, policy loans or any other right to withdraw funds for claims covered by the applicable state guaranty association law.

20.  Within a reasonable time after receipt of a claim in the liquidation proceedings of National Heritage, the Receiver shall give notice by mail to any and all persons interested in such claim of the Receiver's proposed report and recommendation to the Court regarding the allowance or denial (in whole or in part) of such claim.

21.  Within sixty (60) days of the mailing of the proposed report and recommendation, the interested person being given notice of such proposed report and recommendation may file a written objection thereto with the New Castle County Register in Chancery, 1000 King Street, Wilmington, Delaware, 19801, and the Receiver.

22.  Within a reasonable time after such sixty (60) days, there being no objection to the proposed report and recommendation, the Receiver shall file with the Court such report and recommendation.

23.  No hearing will be held regarding the proposed report and recommendation in the absence of a written objection thereto by a person interested therein.

8

24. The Receiver shall provide semiannual reports on the financial condition of National Heritage and on the actions of the Receiver pursuant to this Order.

25. Hereafter the caption of this cause and all pleadings in this matter shall read as:

"IN THE MATTER OF THE LIQUIDATION OF
NATIONAL HERITAGE LIFE INSURANCE COMPANY"

26. This Court shall retain jurisdiction in this cause for the purpose of granting such other and further relief as this cause, the interests of the policyholders, creditors, stockholders of National Heritage and the public may require. The Receiver, or any interested party upon reasonable notice to the Receiver, may at any time make application for such other and further relief as either sees fit.

27. On or before June 30, 1996, the Receiver shall mail a Notice of Liquidation and Bar Date and a proof of claim form to all known claimants and creditors or persons or entities reasonably believed to be claimants or creditors of National Heritage, by first class mail, postage prepaid, and obtain proof of such mailing on United States Postal Form 3606.

28. ANY AND ALL CLAIMS AGAINST THE NATIONAL HERITAGE LIFE INSURANCE COMPANY IN LIQUIDATION NOT PRESENTED TO THE RECEIVER ON OR BEFORE JUNE 30, 1997 SHALL BE FOREVER BARRED FROM SHARING IN DISTRIBUTIONS OF THE ASSETS OF NATIONAL HERITAGE UNLESS THERE IS A SURPLUS AND NATIONAL HERITAGE IS DEEMED SOLVENT PURSUANT TO 18 DEL. C. §5928(a)(2).

SO ORDERED this 21 day of _____, 1995.

CERTIFIED
AS A TRUE COPY:
ATTEST:
PRISCILLA B. HALESTRAW
REGISTER IN CHANCERY
By _____

Chancellor

9

# United States District Court
## Northern District of Illinois
### Eastern Division

I, MICHAEL W. DOBBINS, Clerk of the United States District Court for the Northern District of Illinois, do hereby attest and certify that the annexed is a true, complete and correct copy of the original document on file in my office and in my legal custody.

IN TESTIMONY WHEREOF, I have hereunto subscribed my name and affixed the seal of the aforesaid Court at Chicago, Illinois.

MICHAEL W. DOBBINS CLERK

_____
Deputy Clerk

Minute Order Form (rev. 12/90)

## UNITED STATES DISTRICT COURT, NORTHERN DISTRICT OF ILLINOIS

| Name of Assigned Judge or Magistrate Judge | Elaine E. Bucklo | Sitting Judge if Other Than Assigned Judge | |
|---|---|---|---|
| Case Number | 95 C 4243 | Date | April 15, 1996 |
| Case Title | Williams, et al. Vs. National Housing, et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion e.g. plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [use listing in "MOTION" box above]

(2) ☐ Brief in support of motion due _____

(3) ☐ Answer brief to motion due _____ Reply to answer brief due _____

Sent for Microfilming

APR 16 1996

(4) ☐ Ruling ☐ Hearing on _____ set for _____ at _____    Filed on _____

(5) Status hearing ☐ held ☐ continued to ☐ set for ☐ re-set for _____ at _____

(6) Pretrial conf. ☐ held ☐ continued to ☐ set for ☐ re-set for _____ at _____

(7) Trial ☐ Set for ☐ re-set for _____ at _____

(8) ☐ Bench Trial ☐ Jury Trial ☐ Hearing held and continued to _____ at _____

(9) ☐ This case is dismissed ☐ without ☐ with prejudice and without costs ☐ by agreement ☐ pursuant to
☐ FRCP 4(j) (failure to serve) ☐ General Rule 21 (want of prosecution) ☐ FRCP 41(a)(1) ☐ FRCP 41(a)(2).

(10) ☒ [Other docket entry] Receiver's motion for an order confirming his authority to convey certain REO property to purchaser and his motion for an order confirming his authority with respect to Arapaho Car wash Loans are granted. Nominal defendants' motion to enlarge time until May 3, 1996 to respond to the counterclaim of RAM is granted. Accordingly, reply is extended to May 24, 1996. Commissioner shall set aside escrow to provide for Continental fees, if ordered by it. Enter Amended Declaratory judgment order nunc pro tunc April 3, 1996 on plaintiff's motion for summary judgment on Count I. RAM has until May 13, 1996 to respond to motions to dismiss count I of RAM's counterclaim by Commissioner and Continental. Ruling set for July 11, 1996 at 8:45 A.M.

[For further detail see order attached to the original minute order form.]

order on the reverse of ☐ order attached to

☐ No notices required, advised in open court.
☐ No notices required.
☐ Notices mailed by judge's staff.
☐ Notified counsel by telephone.
☑ Docketing to mail notices.
☐ Mail AO 450 form.
☐ Copy to judge/magistrate Judge.

courtroom deputy's initials

Date/time received in central Clerk's Office

number of notices

date docketed   APR 16, 1996

docketing dpty. initials

date mailed notice   APR 16 1996

mailing dpty. initials

Document #

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

DONNA LEE H. WILLIAMS, INSURANCE )
COMMISSIONER OF THE STATE OF DELAWARE, )
AS RECEIVER OF NATIONAL HERITAGE LIFE )
INSURANCE COMPANY IN REHABILITATION, )
CONTINENTAL STOCK TRANSFER & TRUST )
COMPANY, MIDWEST INDEPENDENT BANK, )
and MIDWEST MORTGAGE SERVICING, L.L.C., )
)
               Plaintiffs, )  Civil Action 95 C 4243
)  Hon. Elaine E. Bucklo
     v. )  Magistrate Judge
)  Rebecca R. Pallmeyer
NATIONAL HOUSING EXCHANGE INC., APX )
MORTGAGE SERVICES, INC., and )
RESOURCE ASSET MANAGEMENT, INC. )
)
              Defendants. )

## AMENDED DECLARATORY JUDGMENT ORDER

This cause coming to be heard on the Motion for Summary Judgment on Count I, filed by the plaintiff Donna H. Lee Williams, Insurance Commissioner of the State of Delaware, as Receiver of National Heritage Life Insurance Company in Liquidation (the "Commissioner"), due notice having been given and the Court being fully advised in the premises,

    IT IS HEREBY ORDERED, ADJUDGED, DECLARED AND DECREED:

1.   The Commissioner's Motion for Summary Judgment on Count I is granted;

2.   All the rights of National Housing Exchange, Inc. under the Indenture and Servicing Agreement dated December 28, 1993 were terminated on November 7, 1994;

3.   All the rights of APX Mortgage Services, Inc. under the Indenture and Servicing Agreement dated December 28, 1993 were terminated on November 7, 1994;

4.   The rights of both National Housing Exchange, Inc. and APX Mortgage Services, Inc. with respect to the Mortgages, Mortgage Files, Mortgage Loans, Mortgage Impairment Insurance Policy, Mortgage Notes, Mortgaged Property, Pool of Mortgages, Related Security Documents and any and all proceeds thereof, as those terms are defined in the Indenture and Servicing Agreement dated December 28, 1993, are hereby terminated;

5.   No approvals, agreements, consents, signatures or other action of any nature whatsoever of either or both of National Housing Exchange, Inc. and APX Mortgage Services, Inc. is required in connection with any action pursuant to the Indenture and Servicing Agreement dated December 28, 1993; provided however that nothing herein shall be deemed to relieve either or both of National Housing Exchange, Inc. and APX Mortgage Services, Inc. of their respective obligations under the Indenture and Servicing Agreement dated December 28, 1993;

2

6.   The Commissioner is entitled to unencumbered ownership of the Mortgages, Mortgage Files, Mortgage Loans, Mortgage Impairment Insurance Policy, Mortgage Notes, Mortgaged Property, Pool of Mortgages, Related Security Documents and any and all proceeds thereof, as those terms are defined in the Indenture and Servicing Agreement dated December 28, 1993; and,

7.   All right, title and interest in and to the Mortgages, Mortgage Files, Mortgage Loans, Mortgage Impairment Insurance Policy, Mortgage Notes, Mortgaged Property, Pools of Mortgage, Related Security Documents and any and all proceeds thereof, as those terms are defined in the Indenture and Servicing Agreement dated December 28, 1993 is vested in the National Heritage Life Insurance Company in Liquidation (or any affiliate designated by National Heritage Life Insurance Company in Liquidation with respect to any environmentally impaired Mortgaged Property).

ENTER ORDER:

DATED: APRIL 12, 1996,
nunc pro tunc APRIL 3, 1996

Elaine E. Bucklo
United States District Court
Judge

3

CERTIFIED COPY

# United States District Court
### Northern District Illinois
#### Eastern Division

I, MICHAEL W. DOBBINS, CLERK OF THE United States District Court for the Northern District of Illinois, do hereby attest and certify that the annexed document is a true, full, and correct copy of the original(s) on file and of record in my office.

IN TESTIMONY WHEREOF, I have hereunto subscribed my name and affixed the seal of the aforesaid District Court.

MICHAEL W. DOBBINS, CLERK

Deputy Clerk

**UNITED STATES DISTRICT COURT, NORTHERN DISTRICT OF ILLINOIS**

| Name of Assigned Judge or Magistrate Judge | Elaine E. Bucklo | Sitting Judge if Other Than Assigned Judge | |
|---|---|---|---|
| Case Number | 95 C 4243 | Date | February 20, 1997 |
| Case Title | Williams, et al. VS. National Housing, et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd-party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

Sent for Microfilming

(1) Filed motion of [use listing in "MOTION" box above]

(2) Brief in support of motion due _____

(3) Answer brief to motion due _____ Reply to answer brief due _____

(4) Ruling / Hearing on _____ set for _____ at _____

(5) Status hearing held / continued to / set for / re-set for _____ at _____

(6) Pretrial conf. held / continued to / set for / re-set for _____ at _____

(7) Trial Set for / re-set for _____ at _____

(8) Bench Trial / Jury Trial / Hearing held and continued to _____ at _____

(9) This case is dismissed without / with prejudice and without costs by agreement / pursuant to FRCP 4(j) (failure to serve) / General Rule 21 (want of prosecution) / FRCP 41(a)(1) / FRCP 41(a)(2)

(10) [Other docket entry] The Commissioner's motion for the entry of a revised order regarding Massachusetts Mortgage is granted. Enter Revised Order. Plaintiff's motion for reassignment of case number 96 C 8477 based on relatedness is also granted.

FEB 21 1997

FEB 24 1997

Docketed on _____

(11) ✓ [For further detail see] / order on the reverse of / ✓ order attached to the original minute order form.]

| | |
|---|---|
| No notices required, advised in open court. | number of notices |
| No notices required. | |
| Notices mailed by judge's staff. | FEB 21 1997 date docketed |
| Notified counsel by telephone. | |
| ✓ Docketing to mail notices. | docketing dpty. initials |
| Mail AO 450 form. | FEB 2 1 1997 date mailed notice |
| Copy to judge/magistrate Judge. | |
| courtroom deputy's initials | mailing dpty. initials |

RECEIVED ED-11 FOR DOCKETING 97 FEB 20 PM 5: 35

Date/time received in central Clerk's Office

Document # 325

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

DOCKETED

FEB 21 1997

| | |
|---|---|
| DONNA LEE H. WILLIAMS, ET AL. | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) |
| | ) |
| NATIONAL HOUSING EXCHANGE INC., APX | ) |
| MORTGAGE SERVICES, INC., and | ) |
| RESOURCE ASSET MANAGEMENT, INC. | ) |
| | ) |
| Defendants. | ) |

Civil Action 95 C 4243
Hon. Elaine E. Bucklo
Magistrate Judge
Rebecca R. Pallmeyer

## REVISED ORDER REGARDING MASSACHUSETTS MORTGAGES

This matter having come to be heard on the Commissioner's Motion for the Entry of a Revised Order Regarding Massachusetts Mortgages subject to the Amended Declaratory Judgment Order entered April 12, 1996, nunc pro tunc April 3, 1996, a copy of which is attached hereto as Exhibit 1, the Court hereby orders that National Heritage Life Insurance Company, in Liquidation ("NHL"), as to any claim of title and possession by or through National Housing Exchange Inc., APX Mortgage Services, Inc., Resource Asset Management, Inc., and South Star Management Corp. (collectively "the Parties"), has good, valid, and indefeasible ownership of any and all interests, free and clear, and free of any adverse equities and any other claims in and to the mortgages, deeds of trust, trust deeds, deeds to secure debt, security devises or other title retention instruments, whether or not of record, with respect to the real property located in the Commonwealth of Massachusetts and listed in Exhibit 2, which is attached to this Order and incorporated herein (hereinafter such mortgages, deeds of trust, trust deeds, deeds to secure debt, security devises or other title retention instruments shall be referenced as the "Mortgages"), together with:

(1)  any and all notes, loan agreements, credit agreements, guaranties, and any other evidence of indebtedness secured by the Mortgages;

(2)  any and all other security interests or claims pertaining to any indebtedness secured by the Mortgages, including but not limited to any and all (a) security agreements or chattel mortgages, (b) assignments or collateral assignments of rents, leases, and profits, (c) assignments or collateral assignments of accounts receivable, (d) assignments, collateral assignments, or pledges of stock, (e) assignments or collateral assignments of business licenses, permits, service contracts and equipment leases, (f) interests in any insurance proceeds or condemnation awards, (g)

interests in any indemnification agreements, whether with respect to environmental matters or otherwise, (h) interests in any leases, ground leases, proprietary leases, or occupancy agreements, (i) interests in any UCC financing statements, (j) creditor's claims, and (k) if the subject Mortgage is in the process of being foreclosed, any proceeds being held in the registry of the court of competent jurisdiction or held by the court-appointed receiver;   and

(3)   any proceeds thereof.

It is further ordered that to the extent that any Mortgages have been foreclosed or repossessed, or title has otherwise reverted to Defendant prior to this Order, that, as between the Parties and NHL, NHL has good, valid and indefeasible fee simple title, free and clear, and free and clear of any claims in and to the real property that is encumbered by said Mortgages, together with all improvements thereon and easements and appurtenances thereto, and together with any and all proceeds concerning such real property held (1) in the registry of any court where such foreclosure action was pending, (2) by any court-appointed receiver for such real property, (3) by any property manager for such real property, and (4) by any other third party.   (Hereinafter all Mortgages and related assets and real property and related assets shall be referenced as the "Assets".)

It is further ordered that, if necessary, in order to fulfill the terms and intent of this Order, NHL shall have the right (1) to unilaterally record any documents transferring or conveying any rights relating to the Assets and encompassed by this Order into the name of NHL, including but not limited to any assignment of any of the Mortgages or any UCC-3 financing statements, and (2) to unilaterally record any new financing statements to perfect NHL's security interests in the Assets.

It is further ordered that the Commissioner and NHL are not bound by the terms of any oral agreements affecting the Assets made by any predecessor in interest or former servicer of the Assets.

The recording of a certified copy of this Order in any jurisdiction where any Assets are located shall (1) convey title to such Assets to NHL, pursuant to the terms of this Order, and (2) re-establish any lost original instruments or documents pertaining to such Assets.

Dated: 2/20/97          ENTER: _____

                        Hon. Elaine E. Bucklo
                        United States District Court Judge

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

DONNA LEE H. WILLIAMS, INSURANCE )
COMMISSIONER OF THE STATE OF DELAWARE, )
AS RECEIVER OF NATIONAL HERITAGE LIFE )
INSURANCE COMPANY IN REHABILITATION, )
CONTINENTAL STOCK TRANSFER & TRUST )
COMPANY, MIDWEST INDEPENDENT BANK, )
and MIDWEST MORTGAGE SERVICING, L.L.C., )
                                        )
                    Plaintiffs,         )
                                        )    Civil Action 95 C 4243
          v.                            )    Hon. Elaine E. Bucklo
                                        )    Magistrate Judge
NATIONAL HOUSING EXCHANGE INC., APX     )    Rebecca R. Pallmeyer
MORTGAGE SERVICES, INC., and            )
RESOURCE ASSET MANAGEMENT, INC.         )
                                        )
                    Defendants.         )
                                        )

## AMENDED DECLARATORY JUDGMENT ORDER

This cause coming to be heard on the Motion for Summary Judgment on Count I, filed by the plaintiff Donna H. Lee Williams, Insurance Commissioner of the State of Delaware, as Receiver of National Heritage Life Insurance Company in Liquidation (the "Commissioner"), due notice having been given and the Court being fully advised in the premises,

IT IS HEREBY ORDERED, ADJUDGED, DECLARED AND DECREED:

1.   The Commissioner's Motion for Summary Judgment on Count I is granted;

2.   All the rights of National Housing Exchange, Inc. under the Indenture and Servicing Agreement dated December 28, 1993 were terminated on November 7, 1994;

6. The Commissioner is entitled to unencumbered ownership of the Mortgages, Mortgage Files, Mortgage Loans, Mortgage Impairment Insurance Policy, Mortgage Notes, Mortgaged Property, Pool of Mortgages, Related Security Documents and any and all proceeds thereof, as those terms are defined in the Indenture and Servicing Agreement dated December 28, 1993; and,

7. All right, title and interest in and to the Mortgages, Mortgage Files, Mortgage Loans, Mortgage Impairment Insurance Policy, Mortgage Notes, Mortgaged Property, Pools of Mortgage, Related Security Documents and any and all proceeds thereof, as those terms are defined in the Indenture and Servicing Agreement dated December 28, 1993 is vested in the National Heritage Life Insurance Company in Liquidation (or any affiliate designated by National Heritage Life Insurance Company in Liquidation with respect to any environmentally impaired Mortgaged Property).

ENTER ORDER:

DATED: APRIL 12, 1996,
nunc pro tunc APRIL 3, 1996

Elaine E. Bucklo
United States District Court Judge

3

**EXHIBIT 2**

Schedule of XXX Bond Loans Secured by Real Estate

November 8, 1996

| St. | County | Series | Mortgagor | Address | City | Document # | Book # | Page # |
|-----|--------|--------|-----------|---------|------|-----------|--------|--------|
| A | | 15 | Duprey | 81 Sterling Lane | Bradford | 800162 | 9479 | 524 |
| | | 16 | Gilet | 71 Princeton, Unit 108 | North Chelmsford | 33553 | 3538 | 179 |
| | Barnstable | 16 | Most | 108 Rowland Circle, #102 | Brewster | 32748 | 6308 | 112 |
| | Bristol | 14 | Drumheiser | 14 Spruce Street | New Bedford | 22979 | 2228 | 90 |
| | Essex | 15 | Daigle | 200 Wilson Street, Units 2 & 4 | Haverhill | 364 | 10392 | 472 |
| | | | Roberts | 4 Central Avenue | Methuen | 42312 | 67 | 333 |
| | | 16 | Gauthier/Roderick | 407 Forest Hill Road | Dunstable | 79019 | 3841 | 233 |
| | | | Moran | 415 Lafayette St. | Salem | 53 | 9067 | 169 |
| | Hampshire | 15 | Duquette | 72 Barrett Street, Unit 11G | Northhampton | 19366 | (none) | (none) |
| | Hillsborough | 16 | Driscoll/Zuker | 143 Baboosic Lake Rd. | Merrimack | 802728 | 4591 | 115 |
| | Middlesex | 13 | Elliot Group Inc. | 38-40 Sarah Ave./771 Broadway/285-287 Dutton St. | Lowell | 11569 | B05490 | 278 |
| | | 14 | Gavriel | 26-28 Alma | Lowell | 20595 | 4507 | 61 |
| | | 15 | Babcock | 54 Glenside Avenue | Billerica | 12834 | B04452 | 21 |
| | | | Dabilis | 861-871 Middlesex Road | Lowell | 78706 | 3839 | 259 |
| | | | Dabilis/Gavriel | 42 Marshall St. | Lowell | 13934 | 3956 | 338 |
| | | | Duffy | 97 Daniels Street | Malden | 682632 | 998 | 129 |
| | | | Grant | 610B Lawrence Street | Lowell | 36079 | 3556 | 12 |
| | | | Oehley | 11 Pike Street | Hopkinton | (none) | 15414 | 174 |
| | | | Torres/Ramos | 29-31 Queen St. | Lowell | 35435 | 5005 | 150 |
| | | 16 | Arbetter | 78 Captian Eames Circle, #U2B | Ashland | (none) | 18215 | 80 |
| | | | Hague | 40 Aberdeen Street | Lowell | 18871 | 3436 | 109 |
| | | | Hipp | 65 Indian Brook Road | Ashland | 471 | 20144 | 600 |
| | | | Landry | 361 Aiken Avenue, No. 4 | Lowell | 44158 | B05373 | 195 |
| | | | McInnis | 369 Aiken Avenue, Unit 16 | Lowell | 34328 | B04998 | 134 |
| | | 17 | Games | 6 Ledgewood Way, Unit 16 | Peabody | 91 | 9605 | 576 |
| | | | Keomouangchanh | 204 Ludlam St. | Lowell | 24133 | B04533 | 29 |
| | New Haven | 16 | O'Malley | 208 West St., Unit 4A | Milford | (none) | 11971 | 298 |

EXHIBIT 2

Schedule of MHX Bond Loans Secured by Real Estate

November 8, 1996

| St. | County | Series | Mortgagor | Address | City | Document # | Book # | Page # |
|-----|--------|--------|-----------|---------|------|-----------|--------|--------|
| MA | Norfolk | 15 | Giordano | 660 Franklin Street | Wrentham | 2654 | 7474 | 518 |
| | | | Magri | 7-9 Pierce Street | Milton | 44301 | 7047 | 487 |
| | | | Padula | 131, 133, & 135 Creek St. | Wrentham | 492121 | 619 | 119 |
| | | | Reed | 691 Washington Street | Braintree | 25552 | 889 | 695 |
| | | 16 | Brustin | 133 Commander Shea Blvd., Unit 116 | Quincy | 13421 | 7436 | 151 |
| | Plymouth | 15 | Feingold/Connolly | 45 Manomet Rd. | Plymouth | 9742 | 10728 | 95 |
| | | 16 | McCann | 50 Pinewood Lane | Duxbury | (none) | 7044 | 85 |
| | | 17 | Melone | 131 Chapel Street | Pembroke | 76854 | 10509 | 342 |
| | | | Pasquariello | 3-12 School Street | Marshfield | 65134 | 6922 | 146 |
| | | | | 3-7 School Street | Marshfield | 65137 | 6922 | 162 |
| | Suffolk | 14 | Pal | 461 Washington Street, Unit 406 | Boston | 143 | 13522 | 64 |
| | | 15 | Deo | 56 Round Hill Street | Jamaica Plain | 290 | 15403 | 128 |
| | | | Glades Realty Trust | 36-38 Grove St. | Chelsea | 213 | 13630 | 336 |
| | | | Lewis | 135-137 Sydney Street | Boston | (none) | 13669 | 175 |
| | | | Mannix | 29 Vinton Street | South Boston | (none) | 16204 | 136 |
| | | 16 | Cheletzky | 8 Kittredge Street, No. 5K | Rosendale | 239 | 16232 | 60 |
| | | | Glades Realty Trust | 30-34 Grove St. | Chelsea | 213 | 13630 | 336 |
| | | | Grubbs | 20 American Legion Righway | Boston | 33106 | 14939 | 1 |
| | | | Krell | 1607 Commonwealth, Unit 30 | Boston | 41645 - C114-62 | (none) | (none) |
| | | | Mullings | 40 Kingsdale Street | Dorchester | 457044 | (none) | (none) |
| | | 17 | Brown | 18 Burnett Road, #14 | Revere | 173 | 14918 | 220 |
| | Worcester | 14 | Reinold/Firelli | 135 East Main St., Unit C-8 | Westborough | 42917 | 8276 | 321 |
| | | 15 | Choquette | 257 E. Main St. | East Douglas | 8559 | 11900 | 127 |
| | | | Griffin | 5 Griswold Court | Uxbridge | 112513 | 10821 | 265 |
| | | 16 | Humphrey's LTD | 208 West Street, Unit 4A | Hopedale | (none) | 10285 | 188 |
| | | | King | 6 Beckman St. | Worcester | 121706 | 10883 | 243 |

**EXHIBIT 2**

Schedule of XXX Bond Loans Secured by Real Estate

November 8, 1996

| It. | County | Series | Mortgagor | Address | City | Document # | Book # | Page # |
|-----|--------|--------|-----------|---------|------|------------|--------|--------|
| 1 | Worcester | 16 | King | 19 Canton Street | Worcester | 7662 | 11097 | 122 |
| | | 17 | Alex | 61A Fox Meadow Road, Unit 61A | Leominister | 7686 | 1561 | 44 |
| | | | Pasquariello | 4 Oak St., #12/12 Williamsburg Ct., #28/3 & 12 Castle Green, #3 | Shrewsbury | 5730 | 9192 | 161 |
| | | | | 12-4 Oak Street | Shrewsbury | 5733 | 9192 | 171 |

## CERTIFICATE OF SERVICE

I, William P. Ziegelmueller, an attorney, certify that on February 14, 1997, I caused a copy of the foregoing **MOTION FOR A REVISED ORDER REGARDING MASSACHUSETTS MORTGAGES** to be served by U.S. Mail, postage prepaid:

Richard Waris
Pretzel & Srouffer Chartered
One South Wacker Drive
Suite 2500
Chicago, Illinois 60606

James Rolfes
Sachnoff & Weaver, Ltd.
30 S. Wacker Drive
Suite 2900
Chicago, llinois 60606

David J. Krupp
Miller, Shakman, Hamilton,
 Kurtzon & Schlifke
208 South LaSalle Street
Suite 1100
Chicago, Illinois 60604

Robert E. Davy, Jr.
180 N. LaSalle, Suite 2315
Chicago, Illinois 60611

APX Mortgage Services, Inc.
c/o Robert Gorski
P.O. Box 909
Lake Zurich, Illinois  60047-0909

_____
William P. Ziegelmueller

\42272\010\50COUBA7.030

Exhibit "C"

12

COMMONWEALTH OF MASSACHUSETTS

SUFFOLK, ss.
                                    SUPERIOR COURT DEPARTMENT
                                    CIVIL ACTION NO. 97-02013 B


DONNA LEE H. WILLIAMS, INSURANCE          )
COMMISSIONER OF THE STATE OF DELAWARE,    )
AS RECEIVER OF NATIONAL HERITAGE LIFE     )
INSURANCE COMPANY IN LIQUIDATION,         )
        Plaintiff,                        )
                                          )
                                          )
        v.                                )
                                          )
                                          )
NATIONAL HOUSING EXCHANGE, INC.,          )
APX MORTGAGE SERVICES, INC.,              )
RESOURCE ASSET MANAGEMENT, INC. and       )
SOUTH STAR MANAGEMENT CORPORATION,        )
        Defendants.                       )


JUDGMENT BY DEFAULT


        This action came on for hearing before the Court, K I N G, J.,
presiding, upon the marking of Plaintiff, Donna Lee H. Williams,
Insurance Commissioner of the State of Delaware as Receiver of
National Heritage Life Insurance Company in Liquidation
(hereinafter, "NHL") in the above entitled action, for a default
judgment by the court, pursuant to Rule 55(b)(2) of Mass. R. Civ.
P., and it appearing to the court that the Amended Complaint in
said action was filed on the 14'th day of July, 1997, and that no
answer or other defense has been filed by the said Defendants,
National Housing Exchange, Inc., Resource Asset Management, Inc.,
APX MOrtgage Services, Inc., and/or South Star Management Co.,
Inc., and that default on those Counts of the Amended Complaint
wherein default had not previously been entered, was entered on the
_2d_ day of _OCTOBER_ 1997, in the office of the clerk of
this court, and that no proceedings have been taken by the said
Defendants since said default was entered, it is ordered and
adjudged, that judgment by default enter as against the Defendants,
as follows:   as against National Housing Exchange, Inc. and
Resource Asset Management, Inc. on Counts IV and V of the Amended
Complaint;  and, as against APX Mortgage Services, Inc. and South
Star Management Co., Inc. on Counts I, II, III, IV and V of the
Amended Complaint, all in accordance with the Prayers of that
Amended Complaint, thereby recognizing and giving effect to the
following judgments in Massachusetts:

JUDGMENT ENTERED ON DOCKET _October 6, 19 97_
PURSUANT TO THE PROVISIONS OF MASS. R. CIV. P. 58(a)
AND NOTICE SENT TO PARTIES PURSUANT TO THE PRO-
VISIONS OF MASS. R. CIV. P. 77(d) AS FOLLOWS:

JICE
3LCT
0|5|97
J.F.C. Jr.

**AS TO APX AND SOUTH STAR:**

Prayer 1:  The Chancery Court of the State of Delaware in and for New Castle County's Liquidation and Injunction Order in Civil Action No. 13530, dated November 21, 1995, a copy of which is attached hereto as Exhibit "A";  and,

Prayer 2:  The United States District Court, Northern District of Illinois, Eastern Division's Amended Declaratory Judgment Order in No. 95 C 4243, dated April 12, 1996, *nunc pro tunc*, April 3, 1996, a copy of which is attached hereto as Exhibit "B";  and,

Prayer 3:  The United States District Court, Northern District of Illinois, Eastern Division's Revised Order Regarding Massachusetts Mortgages No. 95 C 4243, dated February 20, 1997, a copy of which is attached hereto as Exhibit "C".

**AS TO ALL DEFENDANTS:**

Prayer 4:  The United States District Court, Northern District of Illinois, Eastern Division's Order Particularly Identifying the I-250 Assets No. 95 C 4243 dated February 7, 1997, a copy of which is attached hereto as Exhibit "D".

Prayer 5:  The United States District Court, Northern District of Illinois, Eastern Division's Revised Order Regarding Additional Massachusetts Mortgages No. 95 C 4243, dated April 15, 1997, a copy of which is attached hereto as Exhibit "E".

**SO ORDERED:**

_____ ,J.
Superior Court Department

Dated: October 6, 1997

I HEREBY ATTEST AND CERTIFY ON
Oct 9 1997 THAT THE
FOREGOING DOCUMENT IS A FULL,
TRUE AND CORRECT COPY OF THE
ORIGINAL ON FILE IN MY OFFICE,
AND IN MY LEGAL CUSTODY.

MICHAEL JOSEPH DONOVAN
CLERK/MAGISTRATE
SUFFOLK SUPERIOR CIVIL COURT
DEPARTMENT OF THE TRIAL COURT
BY:



Bk : 10816

IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

IN AND FOR NEW CASTLE COUNTY

IN THE MATTER OF THE ) 
REHABILITATION OF NATIONAL ) C.A. No. 13530
HERITAGE LIFE INSURANCE COMPANY )

## LIQUIDATION AND INJUNCTION ORDER

WHEREAS, the Honorable Donna Lee H. Williams, the Insurance Commissioner for the State of Delaware, heretofore appointed as the Receiver of the National Heritage Life Insurance Company in Rehabilitation by Order dated May 25, 1994 (the "Receiver"), has filed with the Court a petition seeking a Liquidation and Injunction Order concerning National Heritage Life Insurance Company ("National Heritage") pursuant to Title 18 Del. C. §5901, et seq.;

WHEREAS, a hearing on the financial status of National Heritage and for interested parties to show cause why National Heritage should not be declared insolvent and ordered liquidated was held by the Court on 11/21/95 ; and

WHEREAS, the Receiver has submitted evidence that National Heritage is insolvent, in that as of September 30, 1995, National Heritage's liabilities exceeded its assets by approximately $214 million and that as of the hearing date, the negative surplus was approximately $214 million.

NOW THEREFORE, the Court finds and IT IS HEREBY ORDERED as follows:

1. National Heritage is insolvent as that term is defined in 18 Del. C. §5901.

2. Sufficient cause exists for the liquidation of the respondent, National Heritage, pursuant to 18 Del. C. §§ 5906 and 5910 and a Liquidation and Injunction Order is hereby entered against National Heritage.

Bk:10816-102    34843

3.  The May 25, 1994 Rehabilitation and Injunction Order and the June 27, 1994 Supplemental Rehabilitation Order entered by this Court in this matter are hereby superseded, upon entry of this Order, and the Commissioner shall continue to serve as Receiver of National Heritage for the purpose of liquidation as set forth below.

4.  The appointment of the Honorable Donna Lee H. Williams, Commissioner of Insurance of the State of Delaware, and her successors in office, as the Receiver of National Heritage is hereby continued and the Receiver is hereby directed to immediately take or maintain her exclusive possession and control of and to continue or be vested with all right, title and interest in, of or to the property of National Heritage, including, without limitation, all of National Heritage's assets, contracts, rights of action, funds recoverable under treaties and agreements of reinsurance heretofore entered into by National Heritage as the ceding insurer, books, records, bank accounts, certificates of deposit, collateral securing obligations to, or for the benefit of, National Heritage or any trustee, bailee or any agent acting for, or on behalf of, National Heritage (collectively, the "Trustees"), securities or other funds, and all real or personal property of any nature of National Heritage including, without limitation, furniture, fixtures and office supplies, wherever located, and including such property of National Heritage or collateral securing obligations to, or for the benefit of, National Heritage or any Trustee thereof that may be discovered hereafter, and all proceeds of or accessions to any of the foregoing, wherever located, in the possession, custody or control of National Heritage or any Trustee therefore (collectively, the "Assets"), and to liquidate the same pursuant to the provisions of Chapter 59 of the Delaware Insurance Code, and the Receiver is further authorized

Bk : 10816-103   34843

to take such actions as the nature of this cause and interests of the policyholders, creditors and stockholders of National Heritage and the public may require.

5. The Receiver is hereby authorized to continue to deal with the Assets, business and affairs of National Heritage, including, without limitation, the right to sue for, defend for or continue suits already commenced by the Receiver for National Heritage, or for the benefit of National Heritage's policyholders, stockholders and creditors, in the courts and tribunals, agencies or arbitration panels in this State and other states in her name as the Commissioner of Insurance of the State of Delaware, or in the name of National Heritage.

6. The filing or recording of this Order or a certified copy hereof with the Clerk of this Court and with the recorder of deeds of the jurisdiction in which National Heritage's corporate and administration offices are located, or, in the case of real estate, with the recorder of deeds of the jurisdictions where the property is located, shall impart the same notice as would be imparted by a deed, bill of sale or other evidence of title duly filed or recorded with that recorder of deeds. Without limiting the foregoing, the filing of this Order with the Clerk of this Court also constitutes notice to all sureties and fidelity bondholders of National Heritage of all potential claims against National Heritage under such policies and shall constitute the perfection of a lien in favor of National Heritage under the Uniform Commercial Code or any like Federal or state law, regulation or order dealing with the priority of claims.

7. Except as otherwise indicated elsewhere in this Order, and upon notice provided by the Receiver, all agents and brokers, former officers, former directors, stockholders and all other persons or entities now or prospectively holding Assets of, or on behalf of, National

3

Bk :10816-104    34843

Heritage shall forthwith file an accounting of those Assets with the Receiver and shall within ten (10) days of the entry of this Order, turn these Assets over to the Receiver.

8.   The Receiver may, in her discretion, appoint or continue the appointment of a consultant or other person or persons to serve as Special Deputy Receiver(s) to assist the Receiver in accomplishing the directive of this Order.  The Special Deputy Receivers shall serve at the pleasure of the Receiver and, subject to the approval of the Receiver, shall be entitled to exercise all of the powers and authorities vested in the Receiver pursuant to this Order and applicable law.

9.   The Receiver may employ or continue to employ and fix the compensation of such deputies, counsel, clerks, employees, accountants, actuaries, consultants, assistants and other personnel (collectively, the "Designees") as considered necessary, and all compensation and expenses of the Special Deputy Receiver(s) and the Designees and of taking possession of National Heritage and conducting this proceeding shall be paid out of the funds and assets of National Heritage as administrative expenses under Title 18 Del. C. §5913(f).  Each and every Designee shall be deemed to have submitted to the jurisdiction of this Court for the resolution of any disputes between the Receiver and such Designee concerning such Designee's rights, obligations and compensation.

10.  The Receiver, the Special Deputy Receivers and the Designees (collectively, the "Indemnitees") shall have no personal liability for their acts or omissions in connection with their duties during the rehabilitation and liquidation periods, provided that such acts or omissions are or were undertaken in good faith and without willful misconduct, gross negligence or criminal intent.  All expenses, costs and attorney's fees incurred by the Indemnitees in

4

Bk:10816-105    34843

connection with any lawsuit brought against them in their representative capacities shall be subject to the approval of the Receiver and shall be exclusively paid out of the funds and assets of National Heritage. The Indemnitees shall not be deemed to be employees of the State of Delaware.

11. The Receiver's right, title and interest in and to all funds recoverable under treaties and agreements of reinsurance heretofore entered into by National Heritage as the ceding insurer shall continue, and all reinsurance companies involved with National Heritage are enjoined and restrained from making any settlements with any claimant or policyholder of National Heritage other than the Commissioner as Receiver. The amounts recoverable by the Receiver from any reinsurer of National Heritage shall not be reduced as a result of this liquidation proceeding or by reason of any partial payment or distribution on a reinsured policy, contract or claim, and each such reinsurer of National Heritage is hereby enjoined and restrained from terminating, cancelling, failing to extend or renew, or reducing or changing coverage under any reinsurance policy or contract with National Heritage, except for non-payment of premium. The Receiver may terminate or rescind any contract with a reinsurer or reinsurers that is contrary to the best interests of the estate in liquidation.

12. The Receiver is hereby authorized to transfer National Heritage's assets and liabilities, to the extent such liabilities are not covered by a state guaranty association, to an affiliate, subsidiary or trust for the overall benefit of National Heritage's policyholders, other creditors, and stockholder, subject to approval by this Court.

Bk:10816-106    34843

13. The Receiver may change to her own name the name of any of National Heritage's accounts, funds or other property or assets held with any bank, savings and loan association or other financial institution, and may withdraw such funds, accounts and other property or assets from such institutions or take any lesser action necessary for the proper conduct of this liquidation.

14. The Receiver may reject any executory contract to which National Heritage is a party that the Receiver may in her discretion determine is burdensome to National Heritage or is otherwise not in its best interest. Any party to a rejected contract may file a claim only for damages arising from such rejection in accordance with paragraph 18, below. All claims of policyholders enumerated in 18 Del. C. §5918(e) shall have priority over all non-policyholder claims arising from the rejection of executory contracts.

15. National Heritage, its former officers, former directors, stockholders, agents, servants and employees and all other persons having notice of these proceedings or of this Order are hereby prohibited from transacting any business of, or on behalf of, National Heritage or selling, transferring, destroying, wasting, encumbering or disposing of any of the Assets, without the prior written permission of the Receiver or until further Order of this Court.

16. All banks, brokerage houses, agents, reinsurers, or other companies or persons, either having in their possession Assets or possible Assets (including, without limitation, books or records of National Heritage), or having notice of these proceedings or of this Order, are hereby enjoined and restrained from disposing of, selling, wasting, encumbering, transferring or destroying any such Assets or possible Assets (including, without limitation, books or records of National Heritage). This prohibition includes, without limitation, Assets, possible Assets,

Bk=10816-107    34343

books or records pertaining to any business transaction between National Heritage and any of said parties. No actions concerning, involving, or relating to such Assets, possible Assets, books or records may be taken by any of the aforesaid persons or entities enumerated herein, without the prior written consent of the Receiver, or until further Order of this Court.

17. All former officers, former directors, stockholders, agents, servants and employees of National Heritage, and all other persons and companies having notice of these proceedings or of this Order, are hereby enjoined and restrained from instituting or further prosecuting any action at law or in equity or in other proceedings against National Heritage, the Commissioner as Receiver, the Special Deputy Receiver(s) or the Designees in connection with their duties as such, or from obtaining preferences, judgments, attachments or other like liens or encumbrances, or foreclosing upon or making of any levy against National Heritage or the Assets, or exercising any right adverse to the right of National Heritage to or in the Assets, or in any way interfering with the Receiver, the Special Deputy Receiver(s) or the Designees either in their possession and control of the Assets, books, and records of National Heritage or in the discharge of their duties hereunder.

18. All persons and companies are hereby enjoined and restrained from asserting any claim against the Commissioner as Receiver of National Heritage, or against the Special Deputy Receiver(s) or the Designees in connection with their duties as such, or against the Assets, except insofar as such claims are brought in the liquidation proceedings of National Heritage.

Bk:10816-108   34843

19. The Court hereby imposes a temporary moratorium on payment of cash values, surrenders, policy loans or any other right to withdraw funds held in conjunction with the policies or contracts of National Heritage, in addition to the Receiver's and the state guaranty associations' right to implement any contractual provision for deferral of cash payment or policy loans, for a period of 120 days from the date of this Order, provided that any state guaranty association may voluntarily choose to permit a full or partial payment of cash values, surrenders, policy loans or any other right to withdraw funds for claims covered by the applicable state guaranty association law.

20. Within a reasonable time after receipt of a claim in the liquidation proceedings of National Heritage, the Receiver shall give notice by mail to any and all persons interested in such claim of the Receiver's proposed report and recommendation to the Court regarding the allowance or denial (in whole or in part) of such claim.

21. Within sixty (60) days of the mailing of the proposed report and recommendation, the interested person being given notice of such proposed report and recommendation may file a written objection thereto with the New Castle County Register in Chancery, 1000 King Street, Wilmington, Delaware, 19801, and the Receiver.

22. Within a reasonable time after such sixty (60) days, there being no objection to the proposed report and recommendation, the Receiver shall file with the Court such report and recommendation.

23. No hearing will be held regarding the proposed report and recommendation in the absence of a written objection thereto by a person interested therein.

8

Bk = 10816-109   34843

24.  The Receiver shall provide semiannual reports on the financial condition of National Heritage and on the actions of the Receiver pursuant to this Order.

25.  Hereafter the caption of this cause and all pleadings in this matter shall read as:

"IN THE MATTER OF THE LIQUIDATION OF
NATIONAL HERITAGE LIFE INSURANCE COMPANY"

26.  This Court shall retain jurisdiction in this cause for the purpose of granting such other and further relief as this cause, the interests of the policyholders, creditors, stockholders of National Heritage and the public may require.  The Receiver, or any interested party upon reasonable notice to the Receiver, may at any time make application for such other and further relief as either sees fit.

27.  On or before June 30, 1996, the Receiver shall mail a Notice of Liquidation and Bar Date and a proof of claim form to all known claimants and creditors or persons or entities reasonably believed to be claimants or creditors of National Heritage, by first class mail, postage prepaid, and obtain proof of such mailing on United States Postal Form 3606.

28.  ANY AND ALL CLAIMS AGAINST THE NATIONAL HERITAGE LIFE INSURANCE COMPANY IN LIQUIDATION NOT PRESENTED TO THE RECEIVER ON OR BEFORE JUNE 30, 1997 SHALL BE FOREVER BARRED FROM SHARING IN DISTRIBUTIONS OF THE ASSETS OF NATIONAL HERITAGE UNLESS THERE IS A SURPLUS AND NATIONAL HERITAGE IS DEEMED SOLVENT PURSUANT TO 18 DEL. C. §5928(a)(2).

SO ORDERED this 21 day of _____, 1995.

_____
Chancellor

CERTIFIED
AS A TRUE COPY:
ACCENT:
FRANCE B. WITHDRAW
REGISTER IN CHY
By _____

9

Bk = 10816 - 110

Minute Order Form   (rev 12/90)

## UNITED STATES DISTRICT COURT, NORTHERN DISTRICT OF ILLINOIS

| Name of Assigned Judge or Magistrate Judge | Elaine E. Bucklo | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| Case Number | 95 C 4243 | Date | April 15, 1996 |
| Case Title | Williams, et al. Vs. National Housing, et al. | | |

In the following box (a) indicate the party filing the motion e.g. plaintiff defendant 3rd party and (b) state briefly the nature of the motion being presented

**MOTION:**

**DOCKET ENTRY:**

(1) Filed motion of use listing in "MOTION box above]          Sent for MICROFILMING

(2) Brief in support of motion due                                        APR 18 1996

(3) Answer brief to motion due _____ Reply to answer brief due

(4) ☐ Ruling ☐ hearing on _____ set for          Filmed on _____ at _____

(5) Status hearing ☐ held ☐ continued to ☐ set for ☐ re-set for _____ at _____

(6) Pretrial conf. ☐ held ☐ continued to ☐ set for ☐ re-set for _____ at _____

(7) Trial ☐ Set for ☐ re-set for _____ at _____

(8) ☐ Bench Trial ☐ Jury Trial ☐ Hearing held and continued to _____ at _____

(9) This case is dismissed ☐ without ☐ with prejudice and without costs ☐ by agreement ☐ pursuant to
☐ FRCP 4(j) (failure to serve) ☐ General Rule 21 (want of prosecution) ☐ FRCP 41(a)(1) ☐ FRCP 41(a)(2)

(10) ☒ [Other docket entry] **Receiver's motion for an order confirming his authority to convey** certain REO property to purchaser and his motion for an order confirming his authority with respect to Arapaho Car wash Loans are granted. Nominal defendants' motion to enlarge time until May 3, 1996 to respond to the counterclaim of RAM is granted. Accordingly, reply is extended to May 24, 1996. Commissioner shall set aside escrow to provide for Continental fees, if ordered by it. Enter Amended Declaratory judgment order nunc pro tunc April 3, 1996 on plaintiff's motion for summary judgment on Count I. RAM has until May 13, 1996 to respond to motions to dismiss count I of RAM's counterclaim by Commissioner and Continental. Ruling set for July 11, 1996 at 9:45 A.M.

(11) [For further detail see ☐ order on the reverse of ☐ order attached to the original minute order form.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | number of notices |
| | No notices required | | | |
| | Notices mailed by judge's staff | | APR 16 1996 | date docketed |
| ✓ | Notified counsel by telephone | | | |
| ✓ | Docketing to mail notices | | | docketing dpty. initials |
| | Mail AO 450 form | | APR 16 1996 | date mailed notice |
| | Copy to judge/magistrate judge | | | |
| mjy | courtroom deputy's initials | Date time received in central clerk's office | | mailing dpty. initials |

Document #

BK:10816-117  34843

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

DONNA LEE H. WILLIAMS, INSURANCE )
COMMISSIONER OF THE STATE OF DELAWARE, )
AS RECEIVER OF NATIONAL HERITAGE LIFE )
INSURANCE COMPANY IN REHABILITATION, )
CONTINENTAL STOCK TRANSFER & TRUST )
COMPANY, MIDWEST INDEPENDENT BANK, )
and MIDWEST MORTGAGE SERVICING, L.L.C., )
                                        )
                    Plaintiffs,        )    Civil Action 95 C 4243
                                        )    Hon. Elaine E. Bucklo
          v.                            )    Magistrate Judge
                                        )    Rebecca R. Pallmeyer
NATIONAL HOUSING EXCHANGE INC., APX     )
MORTGAGE SERVICES, INC., and            )
RESOURCE ASSET MANAGEMENT, INC.         )
                                        )
                    Defendants.         )

## AMENDED DECLARATORY JUDGMENT ORDER

This cause coming to be heard on the Motion for Summary
Judgment on Count I, filed by the plaintiff Donna H. Lee Williams,
Insurance Commissioner of the State of Delaware, as Receiver of
National Heritage Life Insurance Company in Liquidation (the
"Commissioner"), due notice having been given and the Court being
fully advised in the premises,

IT IS HEREBY ORDERED, ADJUDGED, DECLARED AND DECREED:

1.    The Commissioner's Motion for Summary Judgment on
      Count I is granted;

2.    All the rights of National Housing Exchange, Inc.
      under the Indenture and Servicing Agreement dated
      December 28, 1993 were terminated on November 7,
      1994;

3. All the rights of APX Mortgage Services, Inc. under the Indenture and Servicing Agreement dated December 28, 1993 were terminated on November 7, 1994;

4. The rights of both National Housing Exchange, Inc. and APX Mortgage Services, Inc. with respect to the Mortgages, Mortgage Files, Mortgage Loans, Mortgage Impairment Insurance Policy, Mortgage Notes, Mortgaged Property, Pool of Mortgages, Related Security Documents and any and all proceeds thereof, as those terms are defined in the Indenture and Servicing Agreement dated December 28, 1993, are hereby terminated;

5. No approvals, agreements, consents, signatures or other action of any nature whatsoever of either or both of National Housing Exchange, Inc. and APX Mortgage Services, Inc. is required in connection with any action pursuant to the Indenture and Servicing Agreement dated December 28, 1993; provided however that nothing herein shall be deemed to relieve either or both of National Housing Exchange, Inc. and APX Mortgage Services, Inc. of their respective obligations under the Indenture and Servicing Agreement dated December 28, 1993;

2

Bk:10816-118    34843

6.  The Commissioner is entitled to unencumbered
    ownership of the Mortgages, Mortgage Files,
    Mortgage Loans, Mortgage Impairment Insurance
    Policy, Mortgage Notes, Mortgaged Property, Pool of
    Mortgages, Related Security Documents and any and
    all proceeds thereof, as those terms are defined in
    the Indenture and Servicing Agreement dated
    December 28, 1993; and,

7.  All right, title and interest in and to the
    Mortgages, Mortgage Files, Mortgage Loans, Mortgage
    Impairment Insurance Policy, Mortgage Notes,
    Mortgaged Property, Pools of Mortgage, Related
    Security Documents and any and all proceeds
    thereof, as those terms are defined in the
    Indenture and Servicing Agreement dated December
    28, 1993 is vested in the National Heritage Life
    Insurance Company in Liquidation (or any affiliate
    designated by National Heritage Life Insurance
    Company in Liquidation with respect to any
    environmentally impaired Mortgaged Property).

                        ENTER ORDER:


DATED: APRIL 12, 1996,
nunc pro tunc APRIL 3, 1996

                        Elaine E. Bucklo
                        United States District Court
                        Judge

                           3

EXHIBIT 2

Schedule of XXX Bond Loans Secured by Real Estate

November 1, 1996

| St. | County | Series | Mortgagor | Address | City | Document # | Book # | Page # |
|-----|--------|--------|-----------|---------|------|-----------|--------|--------|
| A | | 15 | Duprey | 61 Sterling Lane | Bradford | 600162 | 3479 | 524 |
| | | 16 | Gilet | 71 Princeton, Unit 108 | North Chelmsford | 33553 | 3538 | 179 |
| | Barnstable | 16 | Host | 104 Howland Circle, #102 | Brewster | 32748 | 6308 | 112 |
| | Bristol | 14 | Drumheiser | 14 Spruce Street | New Bedford | 22979 | 2226 | 90 |
| | Essex | 15 | Daigle | 200 Wilson Street, Units 2 & 4 | Haverhill | 344 | 10390 | 472 |
| | | | Roberts | 4 Central Avenue | Methuen | 42312 | 67 | 333 |
| | | 16 | Gauthier/Roderick | 407 Forest Hill Road | Dunstable | 79019 | 3841 | 233 |
| | | | Moran | 415 Lafayette St. | Salem | 53 | 9067 | 169 |
| | Hampshire | 15 | Duquette | 72 Barrett Street, Unit 110 | Northhampton | 19366 | (none) | (none) |
| | Hillsborough | 16 | Driscoll/Baker | 143 Baboosic Lake Rd. | Merrimack | 402724 | 4591 | 115 |
| | Middlesex | 13 | Elliot Group Inc. | 38-40 Sarah Ave./771 Broadway/285-287 Dutton St. | Lowell | 11569 | BC5490 | 278 |
| | | 14 | Gavriel | 26-28 Alma | Lowell | 20595 | 4507 | 61 |
| | | 15 | Babcock | 54 Glenside Avenue | Billerica | 12834 | BO4452 | 21 |
| | | | Dabilis | 861-871 Middlesex Road | Lowell | 78706 | 3839 | 259 |
| | | | Dabilis/Gavriel | 42 Marshall St. | Lowell | 13934 | 3956 | 338 |
| | | | Duffy | 97 Daniels Street | Malden | 682632 | 998 | 129 |
| | | | Grant | 810B Lawrence Street | Lowell | 36079 | 3556 | 12 |
| | | | Oehley | 11 Pike Street | Hopkinton | (none) | 15414 | 174 |
| | | | Torres/Ramos | 29-31 Queen St. | Lowell | 35435 | 5005 | 150 |
| | | 16 | Arbetter | 78 Captian Eames Circle, #02B | Ashland | (none) | 16215 | 80 |
| | | | Hague | 40 Aberdeen Street | Lowell | 18871 | 3436 | 109 |
| | | | Hipp | 65 Indian Brook Road | Ashland | 471 | 20144 | 600 |
| | | | Landry | 361 Aiken Avenue, Fo 4 | Lowell | 44158 | BC5373 | 195 |
| | | | McInnis | 369 Aiken Avenue, Unit 16 | Lowell | 34329 | BO4998 | 134 |
| | | 17 | Games | 6 Ledgewood Way, Unit 16 | Peabody | 91 | 9605 | 576 |
| | | | Keomouangchanh | 204 Ludlam St. | Lowell | 24133 | BO4533 | 29 |
| | New Haven | 16 | O'Malley | 204 West St., Unit 4A | Milford | (none) | 11971 | 298 |

BK:10816-120    34849

EXHIBIT 2

Schedule of XXX Bond Loans Secured by Real Estate                    November 4, 1994

| St. | County | Series | Mortgagor | Address | City | Document # | Book # | Page # |
|-----|--------|--------|-----------|---------|------|-----------|--------|--------|
| MA | Norfolk | 15 | Giordano | 660 Franklin Street | Wrentham | 2654 | 7474 | 514 |
| | | | Magri | 7-9 Pierce Street, | Milton | 44301 | 7047 | 467 |
| | | | Padula | 131, 133, & 135 Creek St. | Wrentham | 49212? | 615 | 113 |
| | | | Reed | 691 Washington Street | Braintree | 25552 | 933 | 655 |
| | | 16 | Brustin | 133 Commander Shea Blvd., Unit 116 | Quincy | 13421 | 7436 | 181 |
| | Plymouth | 15 | Feingold/Connolly | 45 Manomet Rd. | Plymouth | 9742 | 10728 | 95 |
| | | 16 | McCann | 50 Pinewood Lane | Duxbury | (none) | 7044 | 85 |
| | | 17 | Melone | 131 Chapel Street | Pembroke | 76854 | 10509 | 342 |
| | | | Pasquariello | 3-12 School Street | Marshfield | 65134 | 6922 | 146 |
| | | | | 3-7 School Street | Marshfield | 65137 | 6922 | 162 |
| | Suffolk | 14 | Pal | 461 Washington Street, Unit 406 | Boston | 143 | 13522 | 64 |
| | | 15 | Deo | 56 Round Hill Street | Jamaica Plain | 290 | 15403 | 128 |
| | | | Glades Realty Trust | 36-38 Grove St. | Chelsea | 213 | 13630 | 336 |
| | | | Lewis | 135-137 Sydney Street | Boston | (none) | 13669 | 175 |
| | | | Mannix | 29 Vinton Street | South Boston | (none) | 16204 | 136 |
| | | 16 | Cheletzky | 8 Kittredge Street, No. 5K | Rosendale | 239 | 16232 | 60 |
| | | | Glades Realty Trust | 30-34 Grove St. | Chelsea | 213 | 13630 | 336 |
| | | | Grubbs | 20 American Legion Highway | Boston | 33106 | 14939 | 1 |
| | | | Krell | 1607 Commonwealth, Unit 30 | Boston | 41645 - C114-62 | (none) | (none) |
| | | | Mullings | 40 Kingsdale Street | Dorchester | 457044 | (none) | (none) |
| | | 17 | Brown | 18 Burnett Road, #18 | Revere | 173 | 14918 | 220 |
| | Worcester | 14 | Reinold/Firell | 135 East Main St., Unit C-81 | Westborough | 42917 | 8276 | 321 |
| | | 15 | Choquette | 257 E. Main St. | East Douglas | 8559 | 11900 | 127 |
| | | | Griffin | 5 Griswold Court | Oxbridge | 112513 | 13821 | 265 |
| | | 16 | Humphrey's LTD | 208 West Street, Unit 4A | Hopedale | (none) | 10285 | 188 |
| | | | Ring | 6 Beckman St | Worcester | 121706 | 10883 | 243 |

BK:10816-121    34843

**EXHIBIT 1**
Schedule of XXX Bond Loans Secured by Real Estate

November 4, 1996

| t. | County | Series | Mortgagor | Address | City | Document # | Book # | Page # |
|---|---|---|---|---|---|---|---|---|
| Worcester | | 16 | King | 19 Canton Street | Worcester | 7662 | 11097 | 122 |
| | | 17 | Alex | 61A Fox Meadow Road, Unit 61A | Leominster | 7686 | 1561 | 44 |
| | | | Pasquariello | 4 Oak St., #12/12 Williamsburg Ct., #28/3 & 12 Castle Green, #3 | Shrewsbury | 5730 | 9192 | 161 |
| | | | | 12-4 Oak Street | Shrewsbury | 5733 | 9192 | 171 |

Bk:10816-122 · 34843

## CERTIFICATE OF SERVICE

     I, William P. Ziegelmueller, an attorney, certify that

on February 14, 1997, I caused a copy of the foregoing MOTION FOR

A REVISED ORDER REGARDING MASSACHUSETTS MORTGAGES to be served by

U.S. Mail, postage prepaid:

Richard Waris
Pretzel & Stouffer Chartered
One South Wacker Drive
Suite 2500
Chicago, Illinois 60606

James Rolfes
Sachnoff & Weaver, Ltd.
30 S. Wacker Drive
Suite 2900
Chicago, Illinois 60606

David J. Krupp
Miller, Shakman, Hamilton,
 Kurtzon & Schlifke
208 South LaSalle Street
Suite 1100
Chicago, Illinois 60604

Robert E. Davy, Jr.
180 N. LaSalle, Suite 2315
Chicago, Illinois 60611

APX Mortgage Services, Inc.
c/o Robert Gorski
P.O. Box 909
Lake Zurich, Illinois  60047-0909

                    _____
                    William P. Ziegelmueller

Bk :10816

## UNITED STATES DISTRICT COURT, NORTHERN DISTRICT OF ILLINOIS

| Name of Assigned Judge or Magistrate Judge | Elaine E. Bucklo | Sitting Judge if Other Than Assigned Judge | |
|---|---|---|---|
| Case Number | 95 C 4243 | Date | February 20, 1997 |
| Case Title | Williams, et al. VS. National Housing, et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

Sent for Microfilming

(1) Filed motion of [use listing in "MOTION" box above]

(2) Brief in support of motion due _____

(3) Answer brief to motion due _____    Reply to answer brief

FEB 21 1997    Entered on FEB 24 1997

(4) Ruling / Hearing  on _____    set for _____    at _____

(5) Status hearing [ ] held [ ] continued to [ ] set for [ ] re-set for _____ at _____

(6) Pretrial conf. [ ] held [ ] continued to [ ] set for [ ] re-set for _____ at _____

(7) Trial [ ] Set for [ ] re-set for _____ at _____

(8) [ ] Bench Trial [ ] Jury Trial [ ] Hearing   held and continued to _____ at _____

(9) This case is dismissed [ ] without [ ] with prejudice and without costs [ ] by agreement [ ] pursuant to
[ ] FRCP 4(j) (failure to serve) [ ] General Rule 21 (want of prosecution) [ ] FRCP 41(a)(1) [ ] FRCP 41(a)(2)

(10) [X] [Other docket entry]  The Commissioner's motion for the entry of a revised order regarding Massachusetts Mortgage is granted. Enter Revised Order. Plaintiff's motion for reassignment of case number 96 C 8477 based on relatedness is also granted.

(11) [✓] [For further detail see] [ ] order on the reverse of [ ] order attached to   the original minute order form.]

| | |
|---|---|
| No notices required, advised in open court. | |
| No notices required | number of notices |
| Notices mailed by judge's staff. | |
| Notified counsel by telephone. | date docketed FEB 21 1997 |
| [✓] Docketing to mail notices. | |
| Mail AO 450 form. | docketing dpty. initials |
| Copy to judge/magistrate Judge. | date mailed notice FEB 21 1997 |
| courtroom deputy's initials | mailing |

RECEIVED FOR DOCKETING
ED-11
97 FEB 20 PM 5:35

Date/time received in central Clerk's Office

Document #
325

Bk : 10816-115   34843

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

DOCKETED

FEB 21 1997

DONNA LEE H. WILLIAMS, ET AL.              )
                                            )
                    Plaintiffs,             )   Civil Action 95 C 4243
                                            )   Hon. Elaine E. Buckle
        v.                                  )   Magistrate Judge
                                            )   Rebecca R. Pallmeyer
NATIONAL HOUSING EXCHANGE INC., APX         )
MORTGAGE SERVICES, INC., and                )
RESOURCE ASSET MANAGEMENT, INC.             )
                                            )
                    Defendants.             )

## REVISED ORDER REGARDING MASSACHUSETTS MORTGAGES

This matter having come to be heard on the
Commissioner's Motion for the Entry of a Revised Order Regarding
Massachusetts Mortgages subject to the Amended Declaratory
Judgment Order entered April 12, 1996, _nunc pro tunc_ April 3,
1996, a copy of which is attached hereto as Exhibit 1, the Court
hereby orders that National Heritage Life Insurance Company, in
Liquidation ("NHL"), as to any claim of title and possession by
or through National Housing Exchange Inc., APX Mortgage Services,
Inc., Resource Asset Management, Inc., and South Star Management
Corp. (collectively "the Parties"), has good, valid, and
indefeasible ownership of any and all interests, free and clear,
and free of any adverse equities and any other claims in and to
the mortgages, deeds of trust, trust deeds, deeds to secure debt,
security devises or other title retention instruments, whether or
not of record, with respect to the real property located in the
Commonwealth of Massachusetts and listed in Exhibit 2, which is
attached to this Order and incorporated herein (hereinafter such
mortgages, deeds of trust, trust deeds, deeds to secure debt,
security devises or other title retention instruments shall be
referenced as the "Mortgages"), together with:

(1)  any and all notes, loan agreements, credit agreements,
     guaranties, and any other evidence of indebtedness
     secured by the Mortgages;

(2)  any and all other security interests or claims
     pertaining to any indebtedness secured by the
     Mortgages, including but not limited to any and all (a)
     security agreements or chattel mortgages, (b)
     assignments or collateral assignments of rents, leases,
     and profits, (c) assignments or collateral assignments
     of accounts receivable, (d) assignments, collateral
     assignments, or pledges of stock, (e) assignments or
     collateral assignments of business licenses, permits,
     service contracts and equipment leases, (f) interests
     in any insurance proceeds or condemnation awards, (g)

Bk:10816—116   34843

interests in any indemnification agreements, whether
with respect to environmental matters or otherwise, (h)
interests in any leases, ground leases, proprietary
leases, or occupancy agreements, (i) interests in any
UCC financing statements, (j) creditor's claims, and
(k) if the subject Mortgage is in the process of being
foreclosed, any proceeds being held in the registry of
the court of competent jurisdiction or held by the
court-appointed receiver;  and

(3)   any proceeds thereof.

It is further ordered that to the extent that any
Mortgages have been foreclosed or repossessed, or title has
otherwise reverted to Defendant prior to this Order, that, as
between the Parties and NHL, NHL has good, valid and indefeasible
fee simple title, free and clear, and free and clear of any
claims in and to the real property that is encumbered by said
Mortgages, together with all improvements thereon and easements
and appurtenances thereto, and together with any and all proceeds
concerning such real property held (1) in the registry of any
court where such foreclosure action was pending, (2) by any
court-appointed receiver for such real property, (3) by any
property manager for such real property, and (4) by any other
third party.  (Hereinafter all Mortgages and related assets and
real property and related assets shall be referenced as the
"Assets".)

It is further ordered that, if necessary, in order to
fulfill the terms and intent of this Order, NHL shall have the
right (1) to unilaterally record any documents transferring or
conveying any rights relating to the Assets and encompassed by
this Order into the name of NHL, including but not limited to any
assignment of any of the Mortgages or any UCC-3 financing
statements, and (2) to unilaterally record any new financing
statements to perfect NHL's security interests in the Assets.

It is further ordered that the Commissioner and NHL are
not bound by the terms of any oral agreements affecting the
Assets made by any predecessor in interest or former servicer of
the Assets.

The recording of a certified copy of this Order in any
jurisdiction where any Assets are located shall (1) convey title
to such Assets to NHL, pursuant to the terms of this Order, and
(2) re-establish any lost original instruments or documents
pertaining to such Assets.

Dated: 2/20/97          ENTER: _____

                                Hon. Elaine E. Bucklo
                                United States District Court Judge

## UNITED STATES DISTRICT COURT, NORTHERN DISTRICT OF ILLINOIS

| Name of Assigned Judge or Magistrate Judge | Elaine E. Bucklo | Sitting Judge if Other Than Assigned Judge | |
|---|---|---|---|
| Case Number | 95 C 4243 | Date | February 7, 1997 |
| Case Title | Williams, et al. Vs. National Housing, et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd-party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) Filed motion of [use listing in "MOTION" box above]

(2) Brief in support of motion due _____

(3) Answer brief to motion due _____ Reply to answer brief due _____

(4) ☐ Ruling ☐ Hearing on _____ set for _____

(5) Status hearing ☐ held ☐ continued to ☐ set for ☐ re-set for _____ at _____

(6) Pretrial conf. ☐ held ☐ continued to ☐ set for ☐ re-set for _____ at _____

(7) Trial ☐ Set for ☐ re-set for _____ at _____

(8) ☐ Bench Trial ☐ Jury Trial ☐ Hearing held and continued to _____ at _____

(9) This case is dismissed ☐ without ☐ with prejudice and without costs ☐ by agreement ☐ pursuant to
☐ FRCP 4(j) (failure to serve) ☐ General Rule 21 (want of prosecution) ☐ FRCP 41(a)(1) ☐ FRCP 41(a)(2)

(10) ☒ [Other docket entry] Commissioner's motion for the entry of an order particularly identifying the I-250 assets is granted. Enter Order.

Sent for Microfilming

FEB 1 0 1997

Filmed on _____

(11) ☑ [For further detail see ☐ order on the reverse of ☑ order attached to the original minute order form.]

| | | |
|---|---|---|
| ☐ No notices required, advised in open court. | | number of notices |
| ☐ No notices required. | | |
| ☐ Notices mailed by judge's staff. | FEB 1 0 1997 | date docketed |
| ☐ Notified counsel by telephone. | | |
| ☑ Docketing to mail notices. | | docketing dply. initials |
| ☐ Mail AO 450 form. | | date mailed notice |
| ☐ Copy to judge/magistrate Judge. | | |
| courtroom deputy's | Date/time received in central Clerk's Office | mailing |

Document #

320

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

DONNA LEE H. WILLIAMS, ET AL.          )
                                       )
                   Plaintiffs,         )   Civil Action 95 C 4243
                                       )   Hon. Elaine E. Bucklo
          v.                           )   Magistrate Judge
                                       )   Rebecca R. Pallmeyer
NATIONAL HOUSING EXCHANGE INC., APX    )
MORTGAGE SERVICES, INC., and           )
RESOURCE ASSET MANAGEMENT, INC.        )
                                       )
                   Defendants.         )

**ORDER PARTICULARLY IDENTIFYING THE I-250 ASSETS**

DOCKETED
FEB 10 1997

This matter having come to be heard on the
Commissioner's Motion for the Entry of an Order Particularly
Identifying the I-250 Assets, the Court hereby orders that
National Heritage Life Insurance Company, in Liquidation ("NHL")
has good, valid, and indefeasible ownership of any and all
interests, all free and clear of any defects of title and free
and clear of any leases, liens, security interests, encumbrances,
adverse equities and any other claims of any other person or
entity, in and to the mortgages, deeds of trust, trust deeds,
deeds to secure debt, security devises or other title retention
instruments, whether or not of record, with respect to the real
property listed in Exhibit A, which is attached to this Order and
incorporated herein (hereinafter such mortgages, deeds of trust,
trust deeds, deeds to secure debt, security devises or other
title retention instruments shall be referenced as the
"Mortgages"), together with:

(1)    any and all notes, loan agreements, credit agreements,
       guaranties, and any other evidence of indebtedness
       secured by the Mortgages;

(2)    any and all other security interests or claims
       pertaining to any indebtedness secured by the
       Mortgages, including but not limited to any and all (a)
       security agreements or chattel mortgages, (b)
       assignments or collateral assignments of rents, leases,
       and profits, (c) assignments or collateral assignments
       of accounts receivable, (d) assignments, collateral
       assignments, or pledges of stock, (e) assignments or
       collateral assignments of business licenses, permits,
       service contracts and equipment leases, (f) interests
       in any insurance proceeds or condemnation awards, (g)
       interests in any indemnification agreements, whether
       with respect to environmental matters or otherwise, (h)
       interests in any leases, ground leases, proprietary
       leases, or occupancy agreements, (i) interests in any

UCC financing statements, (j) creditor's claims, and (k) if the subject Mortgage is in the process of being foreclosed, any proceeds being held in the registry of the court of competent jurisdiction or held by the court-appointed receiver; and

(3)   any proceeds thereof.

It is further ordered that to the extent that any Mortgages have been foreclosed, NHL has good, valid and indefeasible fee simple title, free and clear of any defects of title and free and clear of any claims of any other person or entity, in and to the real property that is encumbered by said Mortgages, together with all improvements thereon and easements and appurtenances thereto, and together with any and all proceeds concerning such real property held (1) in the registry of any court where such foreclosure action was pending, (2) by any court-appointed receiver for such real property, (3) by any property manager for such real property, and (4) by any other third party.  (Hereinafter all Mortgages and related assets and real property and related assets shall be referenced as the "Assets".)

It is further ordered that, if necessary, in order to fulfill the terms and intent of this Order, NHL shall have the right (1) to unilaterally record any documents transferring or conveying any rights relating to the Assets and encompassed by this Order into the name of NHL, including but not limited to any assignment of any of the Mortgages or any UCC-3 financing statements, and (2) to unilaterally record any new financing statements to perfect NHL's security interests in the Assets.

It is further ordered that the Commissioner and NHL are not bound by the terms of any oral agreements affecting the Assets made by any predecessor in interest or former servicer of the Assets.

The recording of a certified copy of this Order in any jurisdiction where any Assets are located shall (1) convey title to such Assets to NHL, pursuant to the terms of this Order, and (2) re-establish any lost original instruments or documents pertaining to such Assets.

Dated:  2/7/97        ENTER:  _Elaine Bucklo_
                              Hon. Elaine E. Bucklo
                              United States District Court Judge

\42272\010\50COUBAZ.028

ge 1

ARCH PHRASE:  CLASSIF CONTAINS 1-250 AND NOT CLASSIF CONTAINS bond AND NOT CURSTAT    CONTAINS "paid off"

| ATE COUNTY | MORTGAGR | ADDR | CITY | DOCNO. | BK# | PAGENO. | SHARES | UCC# | COOP |
|---|---|---|---|---|---|---|---|---|---|
| San Bernadino | Hobbs | 1358 N. Idyllwild | Rialto | 84-304157 | (none) | (none) | | | |
| Fairfield | Bacon | 120 Huntington Tpk., Unit 303 | Bridgeport | 16789 | 2355 | 211 | | | |
| Lucas | Lenci | 248 Willow St. | Waterbury | 2145 | 2586 | 106 | | | |
| New Haven | Lenci | 242-244 Willow St. | Waterbury | 2143 | 2586 | 94 | | | |
| New Haven | Batam Associates | 1070 New Haven, Unit 53 | Milford | 10648 | 1607 | 125 | | | |
| Orleans Parish | Davis | 1371-1373 St. Bernard Avenue | New Orleans | 482917 | MOB2414 | 136 | | | |
| St. Bernard Parish | Aries Enterprise | 201, 203 & 205 South Pl. | Chalmette | (none) | 142 | 196 | | | |
| Essex | Chimenti | F-1 Colonial Dr., Unit 6 | Andover | (none) | 2522 | 105 | | | |
| Gloucester | Afotey | 520 Cascade Ct., Unit 520 | Sewell | 11348 | MB 1528 | 87 | | | |
| New York | Eisenberg | 66-33 98th Pl., Unit 3J | Rego Park | Stock #154 | | | 204 | (none) | 98th Place Owners |
| New York | Poupon | 5 Tudor City Pl., Unit 308 | New York | Stock #A602 | | | 156 | 95PN18564 | Windsor Owners |
| New York | Verigan | 5 Tudor City Pl., Unit 237 | New York | Stock #A610 | | | 145 | 95PN18563 | Windsor Owners |
| New York | Jenkins | 5 Tudor City Pl., Unit 437 | New York | Stock #A580 | | | 149 | 95PN34567 | Windsor Owners |
| New York | Suh | 5 Tudor City Pl., Unit B-17 | New York | Stock #A582 | | | 284 | 95PN18119 | Windsor Owners |
| New York | McKennan | 5 Tudor City Pl., Unit 715 | New York | Stock #8364 | | | 189 | 38PN67159 | Tudor Owners |
| Queens | Brodigan | 5 Bedford Ave. | Rockaway Park | Stock #9471 | | | 175 | 151741 | Breezy Point Cooperative, Inc. |
| Suffolk | Gill | 365 County Rd., Unit 39 | Shinnecock Hills | CO 53814 | 2307 | 391 | | | |

Page 2

SEARCH PHRASE: CLASSIF CONTAINS I-250 AND NOT C    IF CONTAINS bond AND NOT CURSTAT    CONTAINS "paid off"

| STATE | COUNTY | MORTGAGR | ADDR | CITY | DOCNO. | BK# | PAGENO. | SHARES | UCC# | COOP |
|---|---|---|---|---|---|---|---|---|---|---|
| H | Franklin | Messenger | 6798 Lehman Rd. | Canal Winchester | (none) | 3469 | 633 | | | |
| H | Franklin | Singer | 809-811 E. 2nd Ave. | Columbus | 23694 | 11293 | 803 | | | |
| H | Franklin | Mullen | 333 S. Sylvan Ave. | Columbus | 5710 | 11073 | 820 | | | |
| H | Lucas | Hudson | 2741 Stickney Ave. | Toledo | 20062 | 83 | 912009 | | | |
| H | Warren | Green | 395 Morrow Rd. | South Lebanon | 12684 | 037 | 89 | | | |
| A | Philadelphia | Laren | 213 S. 46th St. | Philadelphia | (none) | M0922 | 316 | | | |
| X | Collin | Malone, II | Lot 1 in Block 6 of Bent Trail Addition 3 | Dallas | 43529 | 2894 | 384 | | | |
| X | Lubbock | Patton | 1205-1207 34th St. | Lubbock | 11558 | 2794 | 32 | | | |
| X | Nueces | Loas Tire & Auto Supply | 4015 Ayers | Corpus Christi | 596050 | Roll 195 | 1705 | | | |
| A | Loudoun | Ritenour | South-West corner of Church & State Sts. | Leesburg | 11314 | 1043 | 1333 | | | |
| A | Washington | Kassir/KHS Associates | 920-924 Business Pk. | Chesapeake | 22634 | 2324 | 697 | | | |

## UNITED STATES DISTRICT COURT, NORTHERN DISTRICT OF ILLINOIS

| Name of Assigned Judge or Magistrate Judge | Elaine E. Bucklo | Sitting Judge if Other Than Assigned Judge | |
|---|---|---|---|
| Case Number | 95 C 4243 | Date | April 16, 1997 |
| Case Title | Williams, et al. Vs. National Housing, et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd-party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [use listing in "MOTION" box above]

Sent for Microfilming

(2) ☐ Brief in support of motion due _____

(3) ☐ Answer brief to motion due _____ Reply to answer brief due _____ APR 17 1997

(4) ☐ Ruling
    ☐ Hearing    on _____ set for _____    Filmed on APR 21 1997

(5) ☐ Status hearing ☐ held ☐ continued to ☐ set for ☐ re-set for _____ at _____

(6) ☐ Pretrial conf. ☐ held ☐ continued to ☐ set for ☐ re-set for _____ at _____

(7) ☐ Trial ☐ Set for ☐ re-set for _____ at _____

(8) ☐ Bench Trial ☐ Jury Trial ☐ Hearing    held and continued to _____ at _____

(9) ☐ This case is dismissed ☐ without ☐ with prejudice and without costs ☐ by agreement ☐ pursuant to
    ☐ FRCP 4(j) (failure to serve) ☐ General Rule 21 (want of prosecution) ☐ FRCP 41(a)(1) ☐ FRCP 41(a)(2)

(10) ☒ [Other docket entry] Enter order regarding additional Massachusetts mortgages.

(11) ☑ [For further detail see ☐ order on the reverse of ☑ order attached to the original minute order form.]

| | |
|---|---|
| ☐ No notices required, advised in open court. | number of notices |
| ☐ No notices required. | |
| ☐ Notices mailed by judge's staff. | date docketed    APR 17 1997 |
| ☐ Notified counsel by telephone. | |
| ☑ Docketing to mail notices. | docketing dpty. initials |
| ☐ Mail AO 450 form. | date mailed notice    APR 17 1997 |
| ☐ Copy to judge/magistrate Judge. | Document # 351 |
| courtroom deputy's Initials | Date/time received in central Clerk's Office    mailing dpty. Initials |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

DOCKETED

APR 17 1997

| | | |
|---|---|---|
| DONNA LEE H. WILLIAMS, ET AL. | ) | |
| | ) | |
| Plaintiffs, | ) | Civil Action 95 C 4243 |
| | ) | Hon. Elaine E. Bucklo |
| v. | ) | Magistrate Judge |
| | ) | Rebecca R. Pallmeyer |
| NATIONAL HOUSING EXCHANGE INC., APX | ) | |
| MORTGAGE SERVICES, INC., and | ) | |
| RESOURCE ASSET MANAGEMENT, INC. | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER REGARDING ADDITIONAL MASSACHUSETTS MORTGAGES

This matter having come to be heard on the Commissioner's Emergency Motion for an Order Confirming Title to Additional Massachusetts Mortgages, the Court hereby orders that National Heritage Life Insurance Company, in Liquidation ("NHL") has good, valid, and indefeasible ownership of any and all interests, all free and clear of any defects of title and free and clear of any leases, liens, security interests, encumbrances, adverse equities and any other claims of any other person or entity, in and to the mortgages, deeds of trust, trust deeds, deeds to secure debt, security devises or other title retention instruments, whether or not of record, with respect to the real property located in the State of Massachusetts and listed in Exhibit A, which is attached to this Order and incorporated herein (hereinafter such mortgages, deeds of trust, trust deeds, deeds to secure debt, security devises or other title retention instruments shall be referenced as the "Mortgages"), together with:

(1)  any and all notes, loan agreements, credit agreements, guaranties, and any other evidence of indebtedness secured by the Mortgages;

(2)  any and all other security interests or claims pertaining to any indebtedness secured by the Mortgages, including but not limited to any and all (a) security agreements or chattel mortgages, (b) assignments or collateral assignments of rents, leases, and profits, (c) assignments or collateral assignments of accounts receivable, (d) assignments, collateral assignments, or pledges of stock, (e) assignments or collateral assignments of business licenses, permits, service contracts and equipment leases, (f) interests in any insurance proceeds or condemnation awards, (g) interests in any indemnification agreements, whether with respect to environmental matters or otherwise, (h) interests in any leases, ground leases, proprietary

leases, or occupancy agreements, (i) interests in any UCC financing statements, (j) creditor's claims, and (k) if the subject Mortgage is in the process of being foreclosed, any proceeds being held in the registry of the court of competent jurisdiction or held by the court-appointed receiver; and

(3)    any proceeds thereof.

It is further ordered that to the extent that any Mortgages have been foreclosed, NHL has good, valid and indefeasible fee simple title, free and clear of any defects of title and free and clear of any claims of any other person or entity, in and to the real property that is encumbered by said Mortgages, together with all improvements thereon and easements and appurtenances thereto, and together with any and all proceeds concerning such real property held (1) in the registry of any court where such foreclosure action was pending, (2) by any court-appointed receiver for such real property, (3) by any property manager for such real property, and (4) by any other third party. (Hereinafter all Mortgages and related assets and real property and related assets shall be referenced as the "Assets".)

It is further ordered that, if necessary, in order to fulfill the terms and intent of this Order, NHL shall have the right (1) to unilaterally record any documents transferring or conveying any rights relating to the Assets and encompassed by this Order into the name of NHL, including but not limited to any assignment of any of the Mortgages or any UCC-3 financing statements, and (2) to unilaterally record any new financing statements to perfect NHL's security interests in the Assets.

It is further ordered that the Commissioner and NHL are not bound by the terms of any oral agreements affecting the Assets made by any predecessor in interest or former servicer of the Assets.

The recording of a certified copy of this Order in any jurisdiction where any Assets are located shall (1) convey title to such Assets to NHL, pursuant to the terms of this Order, and (2) re-establish any lost original instruments or documents pertaining to such Assets.


Dated: _____    ENTER: _____
                                  Hon. Elaine E. Bucklo
                                  United States District Court Judge


\42272\010\50COUBAZ.042

age 1

| EARCH PHRASE: STATE COUNTY | CURSTAT CONTAINS nf MORTGAGR | AND CLASSIF CONTAINS bond ADDR | AND BK# EXISTS AND CITY | STATE DOCNO. | BK# | CONTAINS ma PAGENO. |
|------|------|------|------|------|------|------|
| A Bristol | Briarcliff 90 Realty Trust | 152 N. Main St., Units 1-8 172 N. Main St., Units 1-8 110 Briarcliff Rd., Units 1-8 100 Briarclif Rd., Units 1-8 90 Briarcliff Rd., Units 1-8 | Raynham | | 4650 | :37 |
| A Middlesex | Tiger Realty Trust | 225 Steadman St., Units 29 & 30 | Lowell | 34116 | 4602 | 181 |
| A Middlesex | Adams | 223 Courtland Street | Holliston | | 21050 | 88 |
| A Plymouth | Ciampa | 40 Matakeesett St., Unit 24 | Pembroke | 14473 | 10170 | 112 |
| A Suffolk | Thomas | 151 Tremont Street, No. 23P | Boston | 464 | 14983 | 325 |
| A Suffolk | Watkins/Williams | 158 Glenway St. | Dorchester | 283 | 14751 | 151 |

Exhibit "D"

BK27191PG112

152487

45 my
20

# DEED

We. E. PERRY KING AND T.A. KING

Of

grant to ~~Mansour Gaval~~ Mansour Gaval    and Nader Gawal

of 431 SALiSBuRy St WoRe MA #1609

for consideration of ~~NINETY SEVEN THOUSAND AND 00/100 DOLLARS ($97,000.00)~~
ONE HUNDRED TEN THOUSAND AND 00/100 DOLLARS    ($110,000.00)

with quitclaim covenants

SEE LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF.

02 AUG -9 PM 2:02

*Witness* our hands and seals this 15TH      day of  July, 2002

_____       _____
E. PERRY KING                 T.A. KING

THE COMMONWEALTH OF MASSACHUSETTS

Worcester, *s.s.*                              *JULY 15, 2002*

Then personally appeared the above named E. PERRY KING AND T.A. KING and acknowledged the foregoing to be THEIR free act and deed before me,

_____
Notary Public: ALAN MASON
My commission expires: MARCH 21, 2008

WORCESTER
DEEDS REG 20
WORCESTER

CANCELLED                01

FEE        $501.60

CASH    $501.60

PROPERTY ADDRESS: 19 CANTON STREET, WORCESER, MA

BK27191PG113

### SCHEDULE A

Worcester, Worcester County, Massachusetts, in the southerly part thereof, in the section known as Irvington, on the southerly side of Canton Street, shown as Lot 17 on a plan of lots drawn for the Ballard Land Company by Buttrick & Pratt, recorded in Book 1537, Page 653 and bounded and described as follows:

BEGINNING at a stone monument set at the northwesterly corner of the herein described premises on the southerly side of Canton Street, formerly known as Albion Avenue;
THENCE southerly by Lot 18, a distance of 100 feet to a stone monument;
THENCE easterly by Lot 35 and Lot 36, a distance of 50 feet to a stone monument;
THENCE northerly by Lot 16, a distance of 100 feet to a stone monument on the southerly side of said Canton Street, formerly Albion Avenue;
THENCE westerly by said Canton Street 50 feet to the point of beginning.

TITLE REF   BOOK 8344   PAGE 333-334

19 Canton Street, Worcester, MA

Exhibit "E"

Bk: 32728 Pg: 33  Doc: DEED
Page: 1 of 2    01/28/2004 04:01 PM

2004  00014541

30901

## QUITCLAIM DEED

a/k/a Nader Gawel

## WE, MANSOUR GAVAL and NADER GAVAL, TENANTS IN COMMON, OF WORCESTER, WORCESTER COUNTY, MASSACHUSETTS

**For consideration paid TWO HUNDRED FIVE THOUSAND AND 00/100-- ($205,000.00) ------------------------dollars**

## Grants to SANDRA KATZ, INDIVIDUALLY, OF WORCESTER WORCESTER COUNTY, MASSACHUSETTS

### With quitclaim covenants:

The land in Worcester, Worcester County, Massachusetts, ini the southerly part thereof, in the section known as Irvington, on the southerly side of Canton Street, shown as Lot 17 on a plan of lots drawn for the Ballard Land Company by Buttrick & Pratt, recorded in Book 1537, Page 653, and bounded and described as follows:

BEGINNING at a stone monument set at the northwesterly corner of the herein described premises on the southerly side of Canton Street, formerly known as Albion Avenue;

THENCE Southerly by Lot 18, a distance of 100 feet to a stone monument;

THENCE Easterly by Lot 35 and 36, a distance of 50 feet to a stone monument;

THENCE Northerly by Lot 18, a distance of 100 feet to a stone monument on the southerly side of said Canton Street, formerly of Albion Avenue;

THENCE Westerly by said Canton Street, 50 feet to the point of beginning.

See Title reference recorded in Book 8344, Pages 333-334.

PROPERTY ADDRESS: 19 CANTON STREET, WORCESTER, MA

MASSACHUSETTS EXCISE TAX
Worcester District ROD #20 001
Date: 01/28/2004 04:01 PM
Ctrl# 014565 17630 Doc# 00014541
Fee: $934.80 Cons: $205,000.00

BEING the same premises conveyed to the grantors by deed recorded at the Worcester District Registry of Deeds in Book 27191, Page 112.

Witness our hands and seals this 19th day of December, 2003.

~~19 CANTON STREET REALTY TRUST~~

By: _____
Mansour Gaval, ~~Trustee~~

_Nader Gaval_ ~~XXXXXXXXXXXXX~~
Nader Gaval, ~~Trustee~~

THE COMMONWEALTH OF MASSACHUSETTS

_WORCESTER_ , ss.                    DECEMBER 19 , 2003

Then personally appeared the above-named MANSOUR GAVAL and NADER GAVAL, ~~TRUSTEES OF 19 CANTON STREET REALTY TRUST~~ and acknowledged the foregoing instrument to be their free act and deed, before me,

_____
Notary Public: Alan Mason

My commission expires: 3/21/08

ATTEST: WORC. Anthony J. Vigliotti, Register

Exhibit "F"



Bk: 35934 Pg: 39    Doc: DEED
Page: 1 of 2    03/22/2005 11:44 AM

Metropolitan Title Co.
96 W. Main St.
Northborough, MA

QUITCLAIM DEED

I, Sandra Katz  of Worcester, Worcester County, Massachusetts in consideration of THREE HUNDRED THOUSAND AND 00/100 ($300,000.00) DOLLARS

grant to            Fatu Miller

of                 19 Canton Street
                   Worcester, Massachusetts

with **QUITCLAIM covenants**

**PROPERTY ADDRESS:**   19 Canton Street, Worcester, MA

The land in Worcester, Worcester County, Massachusetts, mi the southerly part thereof, in the section known as Irvington, on the southerly side of Canton Street, shown as Lot 17 on a plan of lots drawn for the Ballard Land Company by Buttrick & Pratt, recorded in Book 1537, Page 653, and bounded and described as follows:

BEGINNING at a stone monument set at the northwesterly corner of the herein described premises on the southerly side of Canton Street, formerly known as Albion Avenue;

THENCE Southerly by Lot 18, a distance of 100 feet to a stone monument;

THENCE Easterly by Lot 35 and 36, a distance of 50 feet to a stone monument;

THENCE Northerly by Lot 18, a distance of 100 feet to a stone monument on the southerly side of said Canton Street, formerly of Albion Avenue;

THENCE Westerly by said Canton Street, 50 feet to the point of beginning.

19 CANTON STREET, WORCESTER

MASSACHUSETTS EXCISE TAX
Worcester District ROD #20 001
Date: 03/22/2005 11:44 AM
Ctrl# 033457 32307  Doc# 00043493
Fee: $1,368.00  Cons: $300,000.00

Return To:

The Law Office Of Joseph P Lussier
484 Main St.
Suite 420
Worcester, MA  01608
(508)799-7400

②

Page 1 of 2

BEING the same premises conveyed to the grantors by deed dated December 19, 2003 and recorded with the Worcester District Registry of Deeds in Book 32728, Page 33.

Executed as a sealed instrument this **18th** day of **March** , 2005.

_Sandra Katz_
Sandra Katz

COMMONWEALTH OF MASSACHUSETTS     WORCESTER SS

On this **18th** day of **March** , 2005, before me, the undersigned notary public, personally appeared <u>Sandra Katz</u> , proved to me through satisfactory evidence of identification which were <u>Driver's Licenses</u> to be the person whose name is signed on the preceeding or attached document, and acknowledged to me that he/she/they signed it voluntarily for its stated purpose.

Official signature and seal of notary **Cheryl J. Morrill**
My commission expires: **February 23, 2012**

OFFICIAL SEAL
CHERYL J. MORRILL
NOTARY PUBLIC
COMMONWEALTH OF MASSACHUSETTS
My Comm. Expires Feb. 23, 2012

Page 2 of 2

ATTEST: WORC. Anthony J. Vigliotti, Register